# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Root, Inc.,** *et al.*, | : | Case No. 2:23-cv-512 |
| | : | |
| *Plaintiffs,* | : | Judge Sarah D. Morrison |
| | : | |
| v. | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| **Silver,** *et al.*, | : | |
| | : | |
| *Defendants.* | : | |

### DECLARATION OF LAUREN LANSKIE

I, Lauren Lanskie, hereby declare as follows on the basis of my personal knowledge:

1.      I am over eighteen years of age and competent to testify about the matters contained herein.

2.      I was employed by Defendant Collateral Damage LLC ("Collateral Damage") from November 25, 2019, until February 16, 2020.

3.      Defendant Brinson Caleb Silver ("Silver") hired me in November 2019 to work for him as his Executive Assistant in connection with various companies including Collateral Damage and a company called Grind Banking, Inc. ("Grind Banking"). At that time, Collateral Damage claimed to be a start-up marketing agency. As an Executive Assistant, my job was to set up payroll and medical insurance for the employees. I also performed other human resources and office tasks.

4.      I was never promoted during my employment at Collateral Damage and at all times held the title of Executive Assistant. I never had an ownership interest in Collateral Damage.

1

5. During my employment, I was provided a Collateral Damage email address - lauren@collateraldamage.agency. To the best of my knowledge, Silver knew my password and he could access my Collateral Damage email account.

6. During my employment, Collateral Damage employed approximately five other people.

7. During my employment, Collateral Damage operated out of a shared office space in Pasadena, California (the "Pasadena Office"). To my knowledge, the Pasadena Office was the only business location for Collateral Damage.

8. Silver ran other start-up companies out of the Pasadena Office. One such company was Grind Banking, which claimed to be a banking start up geared towards serving underprivileged populations. While I was formally employed by Collateral Damage, I also did some work for Grind Banking.

9. During my employment, I believe that Silver and Collateral Damage failed to pay their employees fully or on time. My first paycheck was late and other employees began leaving Collateral Damage shortly after I arrived because I believe they were not paid for their work.

10. During my employment, to the best of my knowledge, Collateral Damage was not paid for any marketing work.

11. After Silver and Collateral Damage failed to pay my compensation, I submitted my letter of resignation to Silver on February 16, 2020, a true and accurate copy of which is attached hereto as **Exhibit A**. I downloaded this form resignation letter from the internet and added a personal note.

12. After my employment with Collateral Damage ended on February 16, 2020, I did not perform any more work for Collateral Damage. I did not send any emails on behalf of

2

Collateral Damage after February 16, 2020. I did not sign any invoices, contracts, or any other documents on behalf of Collateral Damage after February 16, 2020.

13. In the summer of 2020 (and after I left the employ of Collateral Damage), I attempted to contact Silver via text message about my outstanding paychecks but he did not answer. I have not had any further contact with Silver since the summer of 2020.

14. On March 17, 2020, I filed a claim with the California Department of Industrial Relations Labor Commissioner's Office against Silver and Collateral Damage for non-payment of $8,648.01 plus interest and penalties ("Labor Commission Claim"). Neither Silver nor a representative for any of his companies defended themselves or appeared for hearings and conferences. The Department awarded me $25,466.89 against Collateral Damage, Silver, and Silver's other companies—MVMT Finance LLC, Grind Banking. and Eclipse Vision LLC (the "Judgment"). Silver has evaded the Judgment and I have not collected the $25,466.89. A true and accurate copy of my personal file related to my Labor Commission Claim is attached hereto as **Exhibit B**.

15. I have reviewed the emails sent from and received by my former Collateral Damage email address attached hereto as **Exhibits C, D, E, F, G, H, I, and J** (the "Emails").

a. I did not send or receive the Emails.

b. I am not familiar with the substance of the Emails.

c. I had not seen the Emails prior to the filing of the above-captioned lawsuit.

d. I am not familiar with the following entities or persons referred to in the Emails—Quantasy & Associates LLC; William Campbell; Root, Inc.; Paige McDaniel; Eli; and Cyntoria.

3

e. Contrary to substance of the Emails, I never held the title of "Accounts Payable" at Collateral Damage.

16. I have reviewed contracts sent from my former Collateral Damage email address attached to **Exhibit J** (the "Contracts").

   a. I did not draft the Contracts.

   b. I did not sign the Contracts.

   c. I am not familiar with the substance of the Contracts.

   d. I had not seen the Contracts prior to the filing of the above-captioned lawsuit.

   e. I did not authorize Silver or anyone else at Collateral Damage to send or sign documents on my behalf.

   f. Contrary to the substance of the Contracts, I was never a principal or owner of Collateral Damage.

17. I have reviewed invoices sent from my former Collateral Damage email address attached to **Exhibits C, D, E, G, and H** (the "Invoices").

   a. I did not send the Invoices.

   b. I am not familiar with the substance of the Invoices.

   c. I had not seen the Invoices prior to the filing of the above-captioned lawsuit.

   d. I did not authorize Silver or anyone else at Collateral Damage to send or sign the Invoices on my behalf.

18. To the best of my knowledge, the only person who has access to my former Collateral Damage email account is Silver.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this __13__ day of February 2023 in **Los Angeles**,

4

California.

Lauren Lanskie

# LANSKIE DECLARATION EXHIBIT A

February 16, 2020

Brinson Silver
CEO
Collateral Damage, LLC.
45 S. Arroyo Pkwy
Pasadena,CA 91105

Dear Brinson,

Please accept this letter as notice of my resignation from my position as Executive Assistant at Collateral Damage, LLC. My last day of employment will be February 21st, 2020.

After much thought, I have decided it would be best for me to move on. The constant delay of pay has caused both financial and personal stress/strain. It is in my best interest to prevent that current total from growing. On my final day (2/21/2020) the gross amount that I'm owed is $6,924.00.

Thank you for giving me this opportunity to work with a great group of people and learn things that I would have never been able to learn elsewhere. Wish you and the team nothing but the best, look forward to seeing where the world takes the company.

Sincerely,

Lauren Lanskie

# LANSKIE DECLARATION EXHIBIT B

**STATE OF CALIFORNIA**
**Department of Industrial Relations**
**Labor Commissioner's Office**
6150 Van Nuys Blvd, Room 206
Van Nuys, CA 91401
Email: laborcomm.wca.vno@dir.ca.gov
Fax: (818) 901-5307



**PLAINTIFF:**
    **Lauren Lanskie**
    **8472 GARIBALDI AVE**
    **SAN GABRIEL, CA 91775**

**DEFENDANT:**
    **Collateral Damage LLC, a California Limited Liability Corporation**
    6311 SUMMERTIME LN
    CULVER CITY, CA 90230

| State Case Number<br>WC-CM-782464 | **NOTICE OF CLAIM AND CONFERENCE** |
| --- | --- |

**ALL PARTIES** in the above matter **ARE TO APPEAR** for a conference to be held in the Office of the State Labor Commissioner as follows:

## TELEPHONIC CONFERENCE – SEE ADDENDUM FOR INSTRUCTIONS

**DATE:**    **Monday, September 14, 2020**
**TIME:**    **10:30 AM**

The purpose of this conference is to discuss the validity and to settle the claim filed with this Division by the Plaintiff shown above alleging non-payment of:

| CLAIM | Amount Earned or Accrued | Less Amount Paid | Balance Due |
| --- | --- | --- | --- |
| REGULAR WAGES -- From 11/25/2019 through 02/22/2020, plaintiff claims wages earned at the rate of $28.85 per hour, for 519.93 regular hours worked. | $14,999.98 | $6,351.97 | $8,648.01 |
| LIQUIDATED DAMAGES: Failure to Pay Minimum Wages -- At least minimum wage must be paid for all hours worked, including any overtime hours worked. An employee is entitled to recover liquidated damages in an amount equal to minimum wages earned but not paid as required by law. (See Labor Code Section 1194.2) From 11/25/2019 through 02/21/2020, plaintiff claims liquidated damages, as follows:<br>Minimum wages earned at $14.25 per hour, for a total of 299.76 hour(s) where at least minimum wage was not paid. Less a total of $0.00 paid. Liquidated damages equal the balance due. | $4,271.58 | | $4,271.58 |
| WAITING TIME PENALTIES – If an employer willfully fails to pay, in accordance with Labor Code Section 202, any wages of an employee who quits, the wages of the employee continue as a | $6,924.00 | | $6,924.00 |

Under Labor Code Section 558.1, any employer or other person acting on behalf of an employer who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Labor Code Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation. For purposes of Labor Code Section 558.1, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer.

Under Labor Code section 2810.3, a labor contractor(s) and the business entity (a "Client Employer") that was provided with workers by the contractor(s) to perform labor within the Client Employer's usual course of business may be held jointly and severally liable for any wages, damages, and penalties found due to the workers who performed the labor. A contract for the provision of labor between the contractor(s) and the Client Employer is not required for liability to attach under the law.

Under Labor Code Section 238.5(a)(1) "Any individual or business entity, regardless of its form, that, as a part of its business, contracts for services in the property services or long-term care industries shall be jointly and severally liable for any unpaid wages, including interest,… to the extent the amounts are for services performed under that contract." "Property services" industry includes: "janitorial, security guard, valet parking, landscaping, and gardening services." § 238.5(e)(1).

**While this claim is before the Labor Commissioner, you are required under Labor Code Section 98(a) to notify the Labor Commissioner *in writing* of any change in your business or personal address within 10 days after any change occurs.**

NOTICE DATE: August 18, 2020

Marilyn Garrido
Deputy Labor Commissioner
(818) 901-5308

# Have questions? Contact us by e-mail

In an effort to better communicate case status information, you can now ask questions regarding any open or closed wage claim in the Van Nuys district office by sending an email to

## LaborComm.WCA.VNO@dir.ca.gov.

This email is currently for:

- Open or closed wage claims that are handled by the Van Nuys district office;
- Examples of types of questions that can be addressed by e-mail:
    - What is the status of my claim?
    - What is the next step in my claim?
    - I have information you need to know about this claim;
    - When is my conference?
    - When will I get a hearing?
    - Is there anything I need to do before I get a hearing?
    - What is the status of my request for a continuance (all requests for a continuance need to be in writing and should be supported by evidence)?
    - When will I get a decision from my hearing?
    - Did the defendant pay or appeal the decision on my claim?
    - Can I appear by telephone?
    - What is the status of collecting on my judgment?
    - Any other question you may have regarding an open or closed wage claim that is handled by the Van Nuys district office.

# ¿Tiene preguntas?
# Comuníquese con nosotros por correo electrónico

En un esfuerzo para mejorar la comunicación de cada caso, usted puede hacer preguntas sobre un caso referido a sueldos abierto o cerrado en la oficina del distrito de Van Nuys mandando un correo electrónico a

## LaborComm.WCA.VNO@dir.ca.gov.

Este correo electrónico se utiliza actualmente:

- Este correo electrónico se refiere a reclamos de sueldo que han sido manejados por la oficina del distrito de Van Nuys;
- Ejemplo de tipo de preguntas que se puede hacer por correo electrónico:
    - ¿Cuál es el estado de mi reclamo?
    - ¿Cuál es el próximo paso de mi reclamo?
    - Yo tengo información que usted necesita saber sobre mi reclamo;
    - ¿Cuándo es mi conferencia?
    - ¿Cuándo es mi audiencia?
    - ¿Hay algo que yo necesito hacer antes de la audiencia?
    - Cuál es el estado de mi pedido para una suspensión (todos los pedidos para una suspensión deben ser por escrito y apoyados por evidencia)
    - ¿Cuándo tendré una resolución de mi audiencia?
    - ¿El defendido pagó o apelo la decisión de mi reclamo?
    - ¿Puedo apelar por teléfono?
    - ¿Cuál es el estado de recolección de mi juicio?
    - Cualquier otra pregunta que usted pueda tener referida a un reclamo abierto o cerrado que es manejado por la oficina del distrito de Van Nuys.

**STATE OF CALIFORNIA**                                     Gavin Newsom, *Governor*

**DEPARTMENT OF INDUSTRIAL RELATIONS**
**Labor Commissioner's Office**
6150 Van Nuys Blvd, Room 206
Van Nuys, CA 91401
Email: laborcomm.wca.vno@dir.ca.gov • Fax: (818) 901-5307 •www.dir.ca.gov



## ADDENDUM
## TELEPHONIC CONFERENCE
## INSTRUCTIONS

Dear Sir/Madam:

In order to minimize potential risks during the ongoing COVID-19 pandemic, the Labor Commissioner will conduct a conference in the above-captioned matter via telephone.

If you failed to provide a phone number, your phone number has changed or you need to be called at another number, contact us immediately in writing at: mgarrido@dir.ca.gov, or by fax or mail indicated on the letterhead. Please include your claim number and any other specific contact details and/or other relevant information as requested on the notice of conference.

**Plaintiff:** If you fail to provide updated contact information, we will contact you at the phone number indicated on the original claim form. Please verify your records to assure we have the correct number. Failure to respond may result in closure of your case due to lack of prosecution.

**Defendant:** You are obligated to provide the Labor Commissioner with your most current contact information. Please update our records and provide this information, including a valid contact phone number so that we may contact you during the scheduled time indicated on the conference notice. Please submit any documentation as requested on the notice in advance of this meeting.

**All Parties:** You must be available at that number for **up to one hour after the time of the conference**. The deputy may contact the parties jointly and/or separately.

If the deputy deems it appropriate, they will contact the parties in advance to provide alternative dial-in options to facilitate this meeting.

If you fail to receive a call and/or are having technical difficulties, please contact the deputy at their office line immediately. If possible, please email us a note immediately indicating any technical issues.

Sincerely,

Labor Commissioner's Office – Van Nuys Wage Claim Adjudication

**Date  (Fecha):** _____ **Case Number (No. de Caso):**  _____

## APPEARING FOR A CONFERENCE/HEARING

## APARIENCIA PARA UNA CONFERENCIA/ AUDIENCIA

| Hold on to this form and **GIVE** it to the deputy when called. |
| Favor de retener esta forma y **ENTREGUESELA** al diputado cuando sea llamado. |

**Your Full Name:**_____

*(Su Nombre)*

**Your Title:**  _____

*(Su Titulo)*

**Your Address:**  _____

*(Su Domicilio)*

**Email Address:**_____

(Correo Electronico)

**Mailing Address:**_____

(if Different than above)

*(Su Direccion si es diferente)*_____

**Your Telephone Number:**_____(_____)_____

*(No. de Telefono)*

**Work or Message Number:**_____(_____)_____

*(No. de Teléfono de Trabajo o Mensaje)*

### In What Capacity Are You Appearing?
### *(En Que Capacidad Se Presenta)*

| | | | |
|---|---|---|---|
| ☐ | **Plaintiff:** | ☐ | **Defendant:** |
| | *(Demandante)* | | *(Demandado)* |
| ☐ | **Plaintiff's Attorney:** | ☐ | **Defendant's Attorney/Rep:** |
| | *(Abogado del Demandante)* | | *(Abogado del Demandado)* |
| ☐ | **Plaintiff's Witness:** | ☐ | **Defendant's Witness:** |
| | *(Testigo del Demandante)* | | *(Testigo del Demandado)* |
| ☐ | **Observer:** | ☐ | **Appellant:** |
| | *(Observador)* | | *(Apelante)* |
| ☐ | **Other:** | ☐ | **Appellant's Attorney/Rep:** |
| | *(Otro)* | | *(Abogado del Apelante)* |
| ☐ | **BOFE** | ☐ | **Appellant's Witness:** |
| | | | *(Testigo del Apelante)* |

### PLEASE ATTACH BUSINESS CARD, IF AVAILABLE

### INTERPRETER INFORMATION

**LANGUAGE**_____

Name:_____        Agency:_____

Start Time: _____        End Time:_____

Interpreter Initials:_____        Staff Initials:_____

| CLAIM | Amount Earned or Accrued | Less Amount Paid | Balance Due |
|---|---|---|---|
| penalty from their due date at the same rate until paid, up to a maximum of 30 days. (See Labor Code Section 203) Plaintiff provided at least 72 hours' notice of quitting, effective 02/16/2020, on which date wages were due. Plaintiff claims waiting time penalties for 30 days' worth of wages, based on a rate of pay of $230.80 per day. Daily rate of pay is calculated as follows: $28.85 per hour x 8 hours per day. | | | |
| LATE PAYROLL: Penalty – Failure by an employer to pay the wages of each employee as provided in Sections 201.3, 204, 204(b), 204.1, 204.2, 204.11, 205.5 and 1197.5, entitles the employee to a penalty of one hundred dollars ($100) for any initial violation. Two hundred dollars ($200) for each subsequent violation, or any willful or intentional violation, plus 25 percent of the amount unlawfully withheld. Plaintiff was not paid timely during the period from 11/25/2020 to 02/21/2020 and claims 1 as a willful or intentional violation, at $200 each plus 25 percent of 8648.01 payroll totaling for a total of [(1) X 200.00 + .25 X 8648.01] | $2,362.00 | | $2,362.00 |
| **TOTAL CLAIMED** | | | **$22,205.59** |

A document detailing the amount(s) due may be attached. Claim amounts may be approximate and subject to modifications as the claim proceeds. In addition, the employer may be subject to penalties due to the State of California, which may be assessed pursuant to Labor Code Section 210, 225.5 and 226.8.

This notice constitutes demand on behalf of the Plaintiff that all wages due be mailed immediately to the Labor Commissioner at the address listed above. Prior to the conference, Defendant may submit to this office a written reply regarding this claim. However, the parties should still attend the conference, unless otherwise notified. **If Defendant wants to resolve this claim without the need to appear at conference,** Defendant may do so by **immediately** mailing to this office a check or money order made payable to the **Plaintiff** for the full amount of this claim, **including penalties** and any liquidated damages. If Defendant concedes that part of the claim is valid the conceded amount **must be paid immediately** as required by Labor Code Section 206. Any disputed amount will be discussed at the scheduled conference. No payroll deductions shall be taken from amounts paid as penalties.

**PLAINTIFF:** Please bring any relevant documents to support your claim, which might include payroll records, time records, W-2s, including any other information that could be used in order to identify the correct legal entity for defendant(s).

### WITNESSES & OBSERVERS MAY NOT PERMITTED AT CONFERENCES

**If this claim is not settled, it may be resolved through a hearing as provided by Section 98 of the Labor Code which includes the accrual of interest pursuant to Labor Code Section 98.1(c), 1194.2 and/or 2802(b).**

With respect to the claims above, the basis for liability may be determined on various grounds, including but not limited to liability pursuant to Labor Code sections 2810.3 and/or 238.5, and/or **individual liability** pursuant to Labor Code section 558.1.

Lauren Lanskie
8472 GARIBALDI AVE
SAN GABRIEL, CA  91775

STATE CASE NUMBER: WC-CM-782464

State of California
Department of Industrial Relations
DIVISION OF LABOR STANDARDS ENFORCEMENT

### CERTIFICATION OF SERVICE BY MAIL
### (C.C.P. 1013A) OR CERTIFIED MAIL

I, Georgia Jemmott, do hereby certify that I am a resident of or employed in the County of Los Angeles, over 18 years of age, not a party to the within action, and that I am employed at and my business address is:

**LABOR COMMISSIONER, STATE OF CALIFORNIA**
6150 Van Nuys Blvd Room 206
Van Nuys, CA 91401
Tel: (818) 901-5315    Fax: (415) 329-1659

I am readily familiar with the business practice of my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On August 12, 2022, at my place of business, a copy of the **following document(s):**

### Order, Decision or Award

was(were) placed for deposit in the United States Postal Service in a sealed envelope, by First Class with postage fully prepaid, addressed to:

NOTICE TO:

Lauren Lanskie,

|  | Service Address |
|---|---|
| Collateral Damage LLC, a California Limited Liability Corporation | 6311 SUMMERTIME LN<br>CULVER CITY, CA 90230 |
| Brinson Silver, an Individual | 10736 JEFFERSON BLVD # 632<br>CULVER CITY, CA 90230-4933 |
| LEGALZOOM.COM, INC., Agent for Service on behalf of Collateral Damage LLC, a California Limited Liability Corporation | 101 N BRAND BLVD FL 11<br>GLENDALE, CA 91203-2638 |
| MVMT FINANCE LLC, a Limited Liability Company | 45 S. ARROYO PKWY<br>PASADENA, CA 91105 |
| LEGALZOOM.COM, INC., Agent for Service on behalf of MVMT FINANCE LLC, a Limited Liability Company | ATTN: Joyce Yi<br>101 N BRAND BLVD FL 11<br>GLENDALE, CA 91203-2638 |
| GRIND BANKING, INC., a Foreign Corporation | 8 THE GREEN STE B<br>DOVER, DE 19901 |

|  | Service Address |
|---|---|
| Brinson Silver, an Individual Agent for Service on behalf of GRIND BANKING, INC., a Foreign Corporation | 6111 S. GRAMERCY PLACE STE 4 LOS ANGELES, CA 90047 |
| ECLIPSE VISION LLC, a Limited Liability Company | 30 N. GOULD ST STE R SHERIDAN, WY 82801 |
| LEGALZOOM.COM, INC.,  Agent for Service on behalf of ECLIPSE VISION LLC, a Limited Liability Company | ATTN: Joyce Yi 101 N BRAND BLVD FL 11 GLENDALE, CA 91203-2638 |

|  | Additional Service Address(es) |
|---|---|
| Brinson Silver, an Individual | 45 S ARROYO PLWY PASADENA, CA 91105 |

and that envelope was placed for collection and mailing on that date following ordinary business practices.

*I certify under penalty of perjury that the foregoing is true and correct.*

Executed on August 12, 2022, at Van Nuys, California.

STATE CASE NUMBER: WC-CM-782464

/s/ Georgia Jemmott

| STATE OF CALIFORNIA<br>**Department of Industrial Relations**<br>**Labor Commissioner's Office**<br>6150 Van Nuys Blvd, Room 206<br>Van Nuys, CA 91401<br>EMAIL: laborcomm.wca.vno@dir.ca.gov<br>FAX: (415) 329-1659 | For Court Use Only: |
|---|---|
| Plaintiff:<br>Lauren Lanskie, | Court Number: |
| Defendant:<br>Collateral Damage LLC, a California Limited Liability Corporation | |
| Case No.: WC-CM-782464 | ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER |

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

   **DATE: 8/2/2022 8:30 AM          CITY: 6150 Van Nuys Blvd, Room 206, Van Nuys, CA 91401**

2. IT IS ORDERED THAT: Plaintiff recover from Defendant:

| | Balance Due to Employee(s) | Interest Balance Due | Line Total |
|---|---|---|---|
| REGULAR WAGES | $8,648.01 | $2,130.02 | $10,778.03 |
| LIQUIDATED DAMAGES | $3,971.82 | $978.26 | $4,950.08 |
| WAITING TIME PENALTIES | $6,924.00 | $0.00 | $6,924.00 |
| PENALTIES PURSUANT TO LC 210 | $2,814.78 | $0.00 | $2,814.78 |
| **Totals** | $22,358.61 | $3,108.28 | **$25,466.89** |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer (See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero. **PLEASE TAKE NOTICE**: Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking. Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond. While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after change occurs.

Notice Date: August 3, 2022

*California Superior Court, County of Los Angeles, Stanley Mosk Courthouse
111 North Hill Street Room 102
Los Angeles, CA 90012

By _____

Marc Perel, Hearing Officer

WCA 75 - Order, Decision or Award of the Labor Commissioner (Rev. 9/15)

| STATE OF CALIFORNIA<br>**Department of Industrial Relations**<br>**Labor Commissioner's Office**<br>6150 Van Nuys Blvd, Room 206<br>Van Nuys, CA 91401<br>EMAIL: laborcomm.wca.vno@dir.ca.gov<br>FAX: (415) 329-1659 | For Court Use Only: |
|---|---|
| Plaintiff:<br>Lauren Lanskie, | Court Number: |
| Defendant:<br>Brinson Silver, an Individual | |
| **Case No.: WC-CM-782464** | **ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER** |

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

**DATE: 8/2/2022 8:30 AM**      **CITY: 6150 Van Nuys Blvd, Room 206, Van Nuys, CA 91401**

2. IT IS ORDERED THAT: Plaintiff recover from Defendant:

| | Balance Due to Employee(s) | Interest Balance Due | Line Total |
|---|---|---|---|
| REGULAR WAGES | $8,648.01 | $2,130.02 | $10,778.03 |
| LIQUIDATED DAMAGES | $3,971.82 | $978.26 | $4,950.08 |
| WAITING TIME PENALTIES | $6,924.00 | $0.00 | $6,924.00 |
| PENALTIES PURSUANT TO LC 210 | $2,814.78 | $0.00 | $2,814.78 |
| Totals | $22,358.61 | $3,108.28 | $25,466.89 |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer (See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero. **PLEASE TAKE NOTICE**: Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking. Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond. While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after change occurs.

Notice Date: August 3, 2022

*California Superior Court, County of Los Angeles, Stanley Mosk Courthouse
111 North Hill Street Room 102
Los Angeles, CA 90012

By _____

Marc Perel, Hearing Officer

WCA 75 - Order, Decision or Award of the Labor Commissioner (Rev. 9/15)

| | |
|---|---|
| **STATE OF CALIFORNIA**<br>**Department of Industrial Relations**<br>**Labor Commissioner's Office**<br>6150 Van Nuys Blvd, Room 206<br>Van Nuys, CA 91401<br>EMAIL: laborcomm.wca.vno@dir.ca.gov<br>FAX: (415) 329-1659 | For Court Use Only: |
| Plaintiff:<br>Lauren Lanskie, | Court Number: |
| Defendant:<br>MVMT FINANCE LLC, a Limited Liability Company | |
| Case No.: WC-CM-782464 | ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER |

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

   **DATE: 8/2/2022 8:30 AM**      **CITY: 6150 Van Nuys Blvd, Room 206, Van Nuys, CA 91401**

2. IT IS ORDERED THAT: Plaintiff recover from Defendant:

| | Balance Due to Employee(s) | Interest Balance Due | Line Total |
|---|---|---|---|
| REGULAR WAGES | $8,648.01 | $2,130.02 | $10,778.03 |
| LIQUIDATED DAMAGES | $3,971.82 | $978.26 | $4,950.08 |
| WAITING TIME PENALTIES | $6,924.00 | $0.00 | $6,924.00 |
| PENALTIES PURSUANT TO LC 210 | $2,814.78 | $0.00 | $2,814.78 |
| **Totals** | $22,358.61 | $3,108.28 | **$25,466.89** |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer (See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero. **PLEASE TAKE NOTICE**: Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking. Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond. While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after change occurs.

Notice Date: August 3, 2022

*California Superior Court, County of Los Angeles, Stanley Mosk
 Courthouse
111 North Hill Street Room 102
Los Angeles, CA 90012

By _____

Marc Perel, Hearing Officer

WCA 75 - Order, Decision or Award of the Labor Commissioner (Rev. 9/15)

| STATE OF CALIFORNIA<br>**Department of Industrial Relations**<br>**Labor Commissioner's Office**<br>6150 Van Nuys Blvd, Room 206<br>Van Nuys, CA 91401<br>EMAIL: laborcomm.wca.vno@dir.ca.gov<br>FAX: (415) 329-1659 | For Court Use Only: |
|---|---|
| Plaintiff:<br>Lauren Lanskie, | Court Number: |
| Defendant:<br>GRIND BANKING, INC., a Foreign Corporation | |
| Case No.: WC-CM-782464 | ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER |

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

   **DATE: 8/2/2022 8:30 AM**          **CITY: 6150 Van Nuys Blvd, Room 206, Van Nuys, CA 91401**

2. IT IS ORDERED THAT: Plaintiff recover from Defendant:

| | Balance Due to Employee(s) | Interest Balance Due | Line Total |
|---|---|---|---|
| REGULAR WAGES | $8,648.01 | $2,130.02 | $10,778.03 |
| LIQUIDATED DAMAGES | $3,971.82 | $978.26 | $4,950.08 |
| WAITING TIME PENALTIES | $6,924.00 | $0.00 | $6,924.00 |
| PENALTIES PURSUANT TO LC 210 | $2,814.78 | $0.00 | $2,814.78 |
| **Totals** | $22,358.61 | $3,108.28 | **$25,466.89** |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer (See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero. **PLEASE TAKE NOTICE:** Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking. Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond. While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after change occurs.

Notice Date: August 3, 2022

*California Superior Court, County of Los Angeles, Stanley Mosk Courthouse
111 North Hill Street Room 102
Los Angeles, CA 90012

By _____

Marc Perel, Hearing Officer

WCA 75 - Order, Decision or Award of the Labor Commissioner (Rev. 9/15)

| STATE OF CALIFORNIA<br>**Department of Industrial Relations**<br>**Labor Commissioner's Office**<br>6150 Van Nuys Blvd, Room 206<br>Van Nuys, CA 91401<br>EMAIL: laborcomm.wca.vno@dir.ca.gov<br>FAX: (415) 329-1659 | For Court Use Only: |
|---|---|
| Plaintiff:<br>Lauren Lanskie, | Court Number: |
| Defendant:<br>ECLIPSE VISION LLC, a Limited Liability Company | |
| Case No.: WC-CM-782464 | ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER |

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

   **DATE: 8/2/2022 8:30 AM**   **CITY: 6150 Van Nuys Blvd, Room 206, Van Nuys, CA 91401**

2. IT IS ORDERED THAT: Plaintiff recover from Defendant:

| | Balance Due to Employee(s) | Interest Balance Due | Line Total |
|---|---|---|---|
| REGULAR WAGES | $8,648.01 | $2,130.02 | $10,778.03 |
| LIQUIDATED DAMAGES | $3,971.82 | $978.26 | $4,950.08 |
| WAITING TIME PENALTIES | $6,924.00 | $0.00 | $6,924.00 |
| PENALTIES PURSUANT TO LC 210 | $2,814.78 | $0.00 | $2,814.78 |
| **Totals** | $22,358.61 | $3,108.28 | **$25,466.89** |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer (See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero. **PLEASE TAKE NOTICE:** Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking. Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond. While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after change occurs.

Notice Date: August 3, 2022

*California Superior Court, County of Los Angeles, Stanley Mosk Courthouse
111 North Hill Street Room 102
Los Angeles, CA 90012

By _____

Marc Perel, Hearing Officer

WCA 75 - Order, Decision or Award of the Labor Commissioner (Rev. 9/15)

BEFORE THE LABOR COMMISSIONER

OF THE STATE OF CALIFORNIA

LAUREN LANSKIE,

          Plaintiff,

      v.

COLLATERAL DAMAGE LLC, a
California limited liability
corporation; BRINSON SILVER, an
individual; MVMT FINANCE LLC, a
limited liability company; GRIND
BANKING, INC., a foreign
corporation; ECLIPSE VISION LLC, a
limited liability company

          Defendant.

CASE NO.   WC-CM-782464

ORDER, DECISION, OR AWARD
OF THE LABOR COMMISSIONER

## BACKGROUND

Plaintiff filed an initial claim with the Labor Commissioner's office on March 17, 2020. The complaint raises the following allegations:

1. Wages earned, but unpaid, from November 25, 2019 through February 16, 2020, for 519.93 hours at $28.85 an hour; claiming $14,999.98 less $6,351.97 being $8,648.01;

2. Liquidated damages pursuant to Labor Code Section 1194.2 equal to the amount in unpaid minimum wages;

3. Interest pursuant to Labor Code sections 98.1, 1194.2, and/or 2802;

4. Waiting time penalties pursuant to Labor Code section 203 for an indeterminate number of days not to exceed 30 days; and

5. Late payroll penalties pursuant to Labor Code section 210(a) for one hundred dollars ($100) for any initial violation. Two hundred dollars ($200) for each subsequent violation, or any willful or intentional violation, plus 25 percent of the amount unlawfully withheld.

1    On August 2, 2022 a hearing was conducted remotely via the Labor Commissioner's
2    Office, before the undersigned hearing officer designated by the Labor Commissioner to
3    hear this matter. Plaintiff Lauren Lanskie appeared in pro per. Collateral Damage LLC, a
4    California limited liability corporation, ("Collateral"), Brinson Silver, an individual
5    ("Silver"), MVMT Finance LLC, a limited liability company ("MVMT"), Grind Banking,
6    Inc., a foreign corporation ("Grind"), Eclipse Vision LLC, a limited liability company
7    ("Eclipse"), each failed to appear and did not submit an Answer to Plaintiff's complaint.

8    Due consideration having been given to the testimony, documentary evidence, and
9    arguments presented, the Labor Commissioner hereby adopts the following Order,
10   Decision, or Award.

11   FINDINGS OF FACT

12   Plaintiff was employed by Silver to perform personal administrative services for
13   Silver's financial tech company business with approximately 7 employees for the period
14   November 24, 2019 through February 16, 2020 in the City of Pasadena, County of Los
15   Angeles, California, under the terms of an oral agreement at the promised rate of $28.85 an
16   hour paid on biweekly pay periods. Plaintiff quit with notice, effective February 16, 2020.
17   Plaintiff worked an average of 8 hours per day; thus, her earnings were $230.80 per day (8
18   hours x $28.85 per hour).

19   Plaintiff testified that she was hired by Silver to perform administrative work for
20   several companies which he owned and operated: Collateral, MVMT, Grind and Eclipse.
21   Plaintiff testified that she was paid her wages through digital payment services Venmo and
22   Zelle through Silver's personal account under Silver's name.

23   Plaintiff testified that while she was paid some of her wages she was not paid for all
24   her hours worked. Plaintiff testified that she had worked 519.93 hours at $28.85 per hour,
25   earning a total of $14,999.98 less $6,351.97 with a balance claimed of $8,648.01.

26   The May 17, 2019 California Secretary of State Statement of Information for Collateral,
27   the most current Statement at the time of Plaintiff's employment with Silver, lists Silver as
28   the sole manager of the company. The most current Statement of Information dated as May

10, 2022 also lists Silver as the sole manager of Collateral. Collateral is listed as an active LLC at the time of the hearing. However, the records of the California Secretary of State show this entity was suspended from January 4, 2022 until it was revived on May 11, 2022.

The California Secretary of State lists MVMT, Grind and Eclipse as suspended corporations at the time of the hearing.

The case notes recorded with the Labor Commissioner's office on this matter show that Silver responded to a call from Deputy Labor Commissioner Marilyn Garrido on September 14, 2020 in which he provided his personal address at which he was served notice for the instant hearing. No representative for any Defendant appeared at hearing.

LEGAL ANALYSIS

Plaintiff, as the party asserting the affirmative, has the burden of proof, including the initial burden of going forward and the burden of persuasion by a preponderance of the evidence. California Evidence Code Section 140 defines "evidence" as testimony, writings, material objects, or other things presented to the senses that are offered to prove or disprove a fact at issue.

"Preponderance of the evidence" means the evidence that, when weighed with that opposed to it, has more convincing force and the greater probability of truth.

Here, Plaintiff was credible as evidenced by her consistent, persuasive and forthright testimony at the hearing. In addition, Defendants failed to appear at the hearing and did not submit an answer; therefore there is no evidence before the undersigned hearing officer which disputes the Plaintiff's assertions.

1. **Joint Employer**

Because Plaintiff originally named multiple entities as joint employers, the issue of joint employment must be addressed before determining the wages due to Plaintiff by one or more of the entities. The California Supreme Court in *Martinez v. Combs* (2010) 49 Cal.4th 35 held that "no generally applicable rule of law imposes on anyone other than an employer a duty to pay wages." (Id. at 49, italics added.) *Martinez* set forth the definition of employer

1  under the Industrial Welfare Commission Wage Orders as: "(a) to exercise control over the
2  wages, hours, or working conditions or (b) to suffer or permit to work or (c) to engage,
3  thereby creating a common law employment relationship." (Id. at 64.) Where more than one
4  entity falls within the definition of an "employer" under the applicable Wage Order with
5  respect to the person performing work, the entities may be joint employers of the person.  It
6  is under this definition that the relationships between Plaintiff and the named Defendants
7  must be analyzed.

8      In this matter, Plaintiff credibly and without dispute testified that she performed work
9  for Collateral, MVMT, Grind and Eclipse at the same time, all of whom clearly exercised
10  control over Plaintiff's working conditions. Plaintiff was directed by Silver to perform work
11  for each of these locations throughout her employment from November 24, 2019 to February
12  16, 2020. Since Plaintiff clearly worked for all corporate Defendants at the same time,
13  Collateral, MVMT, Grind and Eclipse shall be considered Plaintiff's joint employers herein.

14
15  **2.  Individual Defendant**
16      Plaintiff named Brinson Silver, an individual, in addition to the corporate Defendants.
17  There is no dispute that Brinson Silver was the in-fact owner and manager of each of the
18  corporate Defendants. The issue of whether the corporate veil can be pierced to hold
19  individual corporate agents liable as alter egos of the corporation was determined in
20  *Reynolds v. Bement* (2005) 36 Cal.4th 1075, at 1089. In California, two conditions must be met
21  before the alter ego doctrine will be invoked. First, there must be such a unity of interest and
22  ownership that the separate personalities of the corporation and the shareholder do not in
23  reality exist. Second, there must be an inequitable result if the acts in question are treated as
24  those of the corporation alone.

25      As to the first element above, Plaintiff presented credible and uncontested testimonial
26  evidence to support the unity of interest and ownership such that the separate personalities
27  of the corporate Defendants and Silver do not exist. Plaintiff was paid directly from the
28  personal accounts of Silver and was directed to work between multiple different entities

with the only uniting factor being that they were owned and operated by Silver. The preponderance of the evidence clearly shows that Silver used these businesses such that there is no line between the corporations and the owner. Therefore, the first element above has been met.

As to the second element above, the individual defendant has allowed three of these businesses, MVMT, Grind an Eclipse to become suspended to absolve himself of paying his employee – an inequitable situation which he created. While Collateral remains an active company there is reason to believe that Silver could very well allow this business to become suspended to avoid liability as he did with his other ventures. In fact, this entity was suspended for a time from January 4, 2022 to May 11, 2022. Were this to occur it would limit Plaintiff's availability to collect any amount of her owed wages, creating an inequitable result.

As such, the finding is that Defendant Silver is liable as an alter ego of Collateral, MVMT, Grind and Eclipse and shall be responsible to the same extent as the corporations.

### 3. Regular Wages

Defendant's business is regulated by the Industrial Welfare Commission Order ("Wage Order") Number 4 – 2001. Section 7 (A)(3) of the Wage Order requires an employer to maintain time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Section 7 (C) of the Order requires that records be maintained for a period of 3 years.

The court has held that in the absence of the legally required time records, an employee's reasonable and credible testimony as to the number of hours worked is entitled to receive substantial evidentiary weight and is sufficient to meet the burden of proof required by law. *Hernandez v. Mendoza* (1988) 199 Cal.App.3rd 721.

Section 3 of the Wage Order and Labor Code Section 510 requires that employees be paid at one and one-half times their regular rate of pay for all hours worked in excess of 8 hours in 1 workday and/or in excess of 40 hours in any workweek. Any work in excess of

12 hours in 1 day shall be compensated at twice the regular rate of pay. In addition, any work in excess of 8 hours on any seventh day of the workweek shall be compensated at the rate of no less than twice the regular rate of pay.

The credible and uncontested testimony was sufficient to support a finding that Plaintiff is entitled to recover from Defendants 519.93 hours of unpaid wages earned from November 25, 2019 to February 16, 2020, at the rate of $28.85 per hour, earning $14,999.98 less $6,351.97 paid being **$8,648.01**, as claimed.

### 4. Liquidated Damages

Labor Code Section 1194.2 (a) states, in relevant part, that, "In any action under Section 98, 1193.6, or 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Further, it is the policy of the Labor Commissioner to award liquidated damages for all wages which were due but unpaid at the time a claimant filed their wage claim even if these wages were eventually paid.

In the instant matter, from November 25, 2019 to February 16, 2020, Plaintiff worked 299.76 uncompensated hours; hence there was a minimum wage violation here, as Plaintiff was not paid at least the guaranteed local Pasadena minimum wage for employers with less than 26 employees of $13.25 per hour for each hour worked. As a result, Plaintiff is awarded 299.76 hours of liquidated damages at $13.25 per hour, being **$3,971.82**.

### 5. Interest

Pursuant to Labor Code sections 98.1 and 1194.2(a), all awards granted pursuant to a hearing shall accrue interest on all due and unpaid wages and liquidated damages. Therefore, Plaintiff is entitled to recover interest in the sum of **$3,108.28**.

### 6. Waiting Time Penalties

Labor Code Section 202 establishes that if an employee, not having a written contract for a definite period, quits employment, wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours prior notice of the intention to quit, in which case the employee is entitled to the wages at the time of quitting.

Labor Code Section 203 provides that if an employer willfully fails to pay, without abatement or reduction, in accordance with Labor Code Section 202, the wages of the affected employee shall continue as a penalty from the due date thereof, at the same rate until paid, up to a maximum of 30 calendar days. This penalty is commonly referred to as waiting time penalties.

Additionally, it is noted that willful, as used in Section 203, does not require malice or blamable conduct, but merely that the failure to pay was intentional. Intentional as defined by the statute and case law does not mean with evil intent, but simply that the employer knows, or should have known such wages were due and fails to pay them. Unlike criminal violations which may arise under the law for failure to pay wages, the civil penalty assessed pursuant to Labor Code Section 203 does not require that the employer intended the action; merely that the action occurred and it was within the employer's control. *(Davis v. Morris (1940) 37 Cal.App.2d 269).*

In the instant matter, Plaintiff quit with notice effective on February 16, 2020. Final wages were due on February 16, 2020, and Plaintiff has yet to receive final payment of all of her earned wages. The Defendant knew that Plaintiff's wages were due and failed to pay them. Therefore, the finding is that Defendant willfully withheld Plaintiff's wages within the meaning of Labor Code Section 203. Accordingly, Plaintiff is awarded the maximum 30 days of penalties pursuant to Labor Code Section 203 at $230.80 per day (8 hours x $28.85 per hour), totaling **$6,924.00.**

### 7. Penalties pursuant to Labor Code section 210(a) for failure to pay wages

Labor Code section 210(a) provides that:

[E]very person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 204.11, 205, 205.5, and 1197.5, shall be subject to a penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

As previously stated, willful, as used in Section 203, does not require malice or blamable conduct, but merely that the failure to pay was intentional. The Defendant knew that Plaintiff's wages were due and failed to pay them timely.

Plaintiff was not paid timely during the period from November 25, 2019 to February 8, 2020 for 5 biweekly payroll periods as willful or intentional violations, at $200.00 each plus 25 percent of $7,259.12 payroll[1] totaling for a total of [(5) X $200.00 + .25 X $7,259.12]; being $2,814.78.

However, Plaintiff also claims 210 penalties for her final pay period of February 9, 2020 to February 16, 2020. Any employee in active, ongoing employment who has not been fully paid for all wages earned during a pay period at the time when such payment is due pursuant to section 204 is entitled to penalties under section 210 as a result of the violation of section 204 for the pay period in question. Likewise, any separated employee who was not paid all wages due for one or more pay periods *prior to the employee's final pay period* would certainly have a claim for 210 penalties as to all such pay periods prior to their final pay period; and a claim for 203 penalties based on the failure to pay all wages due upon separation of employment.

The right to section 210 penalties arises from violations that are distinct from the violations that give rise to section 203 penalties. Section 210 penalties are "in addition to,

---

[1] 519.93 hours worked / 54 days worked x 49 days excluding final pay period x $28.85 per hour - $6,351.97 paid

ORDER, DECISION, OR AWARD OF THE LABOR COMMISSIONER

and entirely independent and apart from any other penalty provided by this article." (Lab. Code sect. 210(a).) This means that a worker may be entitled to both section 210 and section 203 penalties, provided that there was a violation of a statute that supports the imposition of section 210 penalties *and* a violation of a statute that supports the imposition of section 203 penalties. It does not mean that section 210 penalties can be imposed for a violation that only supports the imposition of section 203 penalties, or that section 203 penalties can be imposed for a violation that only supports the imposition of section 210 penalties.

Section 210(a) states that the penalties established under that section can be imposed when an employer fails to pay wages as required under Section 204 (governing the payment of all wages owed to all workers "**other than those mentioned in sections 201**, 201.3, **202,** 204.1, or 204.2." Section 204 generally requires payment of all wages earned for work performed during a pay period on the regularly scheduled pay day for that pay period, which must be scheduled not later than 10 or 11 days after the final date of the pay period. Section 210 penalties for violations of section 204 are imposed for each separate violation – i.e., for each pay period as to which the wages due under section 204 were not paid in accordance with the requirements of section 204. These penalties are applicable not only as to wages that were never paid, but also, as to wages that were untimely paid).

As stated, Plaintiff's claim involves the untimely payment of wages that were earned during her final pay period. Defendant, in this situation, is *not* violating Labor Code section 204 because section 204 expressly does not cover wages "mentioned in Section 201 … [or] 202 …" Instead, the employer is violating section 201, and thus, the only penalties that can be imposed for the late payment are those provided under section 203. Thus, Plaintiff would be due the penalties only for the 5 prior pay periods and not her final pay period. As stated above, this amount is **$2,814.78**.

## CONCLUSIONS

For all the reasons set forth above, IT IS HEREBY ORDERED that Defendants **Collateral Damage LLC, a California limited liability corporation, Brinson Silver, an individual, MVMT Finance LLC, a limited liability company, Grind Banking, Inc., a foreign corporation** and **Eclipse Vision LLC, a limited liability company,** shall pay Plaintiff **a total amount of $25,466.89,** as indicated below:

1. $8,648.01 as earned but unpaid regular wages;

2. $3,971.82 as liquidated damages pursuant to Labor Code section 1194.2;

3. $3,108.28 as interest pursuant to Labor Code sections 98.1 and 1194.2;

4. $6,924.00 as waiting time penalties pursuant to Labor Code section 203; and

5. $2,814.78 as late payroll penalties pursuant to Labor Code section 210(a).

**The total amount of Plaintiff's award to which Plaintiff is entitled is $25,466.89. All Defendants share liability for the full amount of Plaintiff's award.** This award is not yet a final judgment. This award shall become final and enforceable as a judgment in court against each Defendant who does not file an appeal pursuant to Labor Code Section 98.2. Once a final judgment based on this award is entered in court against any non-appealing Defendant, Plaintiff may seek to recover the amounts set forth in the judgment against that non-appealing Defendant – **but Plaintiff can only recover a total of $25,466.89 from all Defendants together.** The Labor Commissioner's Office will immediately proceed to obtain a final judgment against any Defendant who does not appeal this award.

Dated: August 3, 2022                    Marc Perel, Hearing Officer

| **STATE OF CALIFORNIA**<br>**Department of Industrial Relations**<br>**Labor Commissioner's Office**<br>6150 Van Nuys Blvd, Room 206<br>Van Nuys, CA 91401<br>Email: laborcomm.wca.vno@dir.ca.gov<br>Fax: (818) 901-5307 | | **DATE FILED**<br>03-17-2020 |
|---|---|---|
| | | **DISTRICT OFFICE**<br>Van Nuys WCA |
| | | **TAKEN BY**<br>Elia Madera |
| **PLAINTIFF:**<br>Lauren Lanskie, | | |
| **DEFENDANT(S):**<br>Collateral Damage LLC, a California Limited Liability Corporation;<br>Brinson Silver, an Individual; MVMT FINANCE LLC, a Limited Liability<br>Company; GRIND BANKING, INC., a Foreign Corporation;<br>ECLIPSE VISION LLC, a Limited Liability Company | | **DOES I**<br>**THROUGH**<br>**V,**<br>**Defendant(s)** |
| **State Case Number:**<br>WC-CM-782464 | **COMPLAINT** | |

## PLAINTIFF ALLEGES:

1. Plaintiff was/is employed by the defendant(s) named above to perform personal services as:
   Administrative

2. for the period November 24, 2019 to February 16, 2020

3. in the County of Los Angeles, California; under the terms of an oral agreement.

4. that there is due, owing and payable from the defendant to the plaintiff an amount as and for wages,
   penalties and/or other demands for compensation as set out below:

| CLAIM | Amount Earned or Accrued | Less Amount Paid | Balance Due |
|---|---|---|---|
| REGULAR WAGES -- From 11/25/2019 through 02/22/2020, plaintiff claims wages earned at the rate of $28.85 per hour, for 519.93 regular hours worked. | $14,999.98 | $6,351.97 | $8,648.01 |
| LIQUIDATED DAMAGES: Failure to Pay Minimum Wages -- At least minimum wage must be paid for all hours worked, including any overtime hours worked. An employee is entitled to recover liquidated damages in an amount equal to minimum wages earned but not paid as required by law. (See Labor Code Section 1194.2)<br>From 11/25/2019 through 02/21/2020, plaintiff claims liquidated damages, as follows:<br>Minimum wages earned at $14.25 per hour, for a total of 299.76 hour(s) where at least minimum wage was not paid. Less a total of $0.00 paid. Liquidated damages equal the balance due. | $4,271.58 | | $4,271.58 |
| WAITING TIME PENALTIES -- If an employer willfully fails to pay, in accordance with Labor Code Section 202, any wages of an employee who quits, the wages of the employee continue as a penalty from their due date at the same rate until paid, up to a maximum of 30 days. (See Labor Code Section 203)<br>Plaintiff provided at least 72 hours' notice of quitting, effective 02/16/2020, on which date wages were due. Plaintiff claims waiting time penalties for 30 days' worth of wages, based on a rate of pay of $230.80 per day. Daily rate of pay is calculated as follows: $28.85 per hour x 8 hours per day. | $6,924.00 | | $6,924.00 |
| LATE PAYROLL: Penalty – Failure by an employer to pay the wages of each employee as provided in Sections 201.3, 204, 204(b), 204.1, 204.2, 204.11, 205.5 and 1197.5, entitles the employee to a penalty of one hundred dollars ($100) for any | $2,362.00 | | $2,362.00 |

| CLAIM | Amount Earned or Accrued | Less Amount Paid | Balance Due |
|---|---|---|---|
| subsequent violation, or any willful or intentional violation, plus 25 percent of the amount unlawfully withheld.<br><br>Plaintiff was not paid timely during the period from 11/25/2020 to 02/21/2020 and claims 1 as a willful or intentional violation, at $200 each plus 25 percent of 8648.01 payroll totaling for a total of [(1) X 200.00 + .25 X 8648.01] | | | |
| **TOTAL CLAIMED** | | | $22,205.59 |

**Interest pursuant to Labor Code Section(s) 98.1(c), 248.5(f), 1194.2 and/or 2802(b).**

A document detailing the amount(s) due may be attached. Amount(s) due as set forth herein may be approximate and subject to modification based on evidence presented at hearing.

**PLAINTIFF CERTIFIES THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF.**

Executed at:  Van Nuys,  County of Los Angeles, California

Dated:  ___11/5/20___          _____
　　　　　Date of Signature　　　　　　　　　　　Signature of Plaintiff

Lauren Lanskie
8472 GARIBALDI AVE
SAN GABRIEL CA 91775

STATE CASE NUMBER: WC-CM-782464

State of California
Department of Industrial Relations
DIVISION OF LABOR STANDARDS ENFORCEMENT

**CERTIFICATION OF SERVICE BY MAIL**
**(C.C.P. 1013A) OR CERTIFIED MAIL**

I, Jason Kwan, do hereby certify that I am a resident of or employed in the County of Los Angeles, over 18 years of age, not a party to the within action, and that I am employed at and my business address is:

**LABOR COMMISSIONER, STATE OF CALIFORNIA**
6150 Van Nuys Blvd Room 206
Van Nuys, CA 91401
Tel: (818) 901-5315    Fax: (415) 329-1659

I am readily familiar with the business practice of my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On July 8, 2022, at my place of business, a copy of the **following document(s):**

**Notice of Hearing, Complaint and Answer**

was(were) placed for deposit in the United States Postal Service in a sealed envelope, by First Class and Certified with postage fully prepaid, addressed to:

NOTICE TO:

Lauren Lanskie,

|  | Service Address |
|---|---|
| Brinson Silver, an Individual | 10736 JEFFERSON BLVD # 632 CULVER CITY, CA 90230-4933 |
| Legalzoom.com, Inc., Agent for Service for Collateral Damage LLC, a California Limited Liability Corporation | 101 N BRAND BLVD FL 11 GLENDALE, CA 91203-2638 |
| Legalzoom.com, Inc., Agent for Service on behalf of MVMT FINANCE LLC, a Limited Liability Company | 101 N BRAND BLVD FL 11 GLENDALE, CA 91203-2638 |
| Brinson Silver, Agent for Service on behalf of GRIND BANKING, INC., a Foreign Corporation | 6111 S. GRAMERCY PLACE STE 4 LOS ANGELES, CA 90047 |
| Legalzoom.com, Inc., Agent for Service on behalf of ECLIPSE VISION LLC, a Limited Liability Company | 101 N BRAND BLVD FL 11 GLENDALE, CA 91203-2638 |
|  | **Additional Service Address(es)** |
| Brinson Silver, an Individual | 45 S ARROYO PLWY PASADENA, CA 91105 |

and that envelope was placed for collection and mailing on that date following ordinary business practices.

*I certify under penalty of perjury that the foregoing is true and correct.*

Executed on July 8, 2022, at Van Nuys, California.

STATE CASE NUMBER: WC-CM-782464

/s/ Jason Kwan

WCA 66 (Rev. 3/06) Certification of Mailing                                                    Page **1** of 1

**STATE OF CALIFORNIA**
**Department of Industrial Relations**
**Labor Commissioner Office**
6150 Van Nuys Blvd, Room 206
Van Nuys, CA 91401
EMAIL: laborcomm.wca.vno@dir.ca.gov
FAX: (415) 329-1659

**PLAINTIFF:**
　Lauren Lanskie,

**DEFENDANT:**
　Collateral Damage LLC, a California Limited Liability Corporation; Brinson Silver, an
　　Individual; MVMT FINANCE LLC, a Limited Liability Company; GRIND BANKING, INC.,
　　a Foreign Corporation; ECLIPSE VISION LLC, a Limited Liability Company

| State Case Number WC-CM-782464 | NOTICE OF HEARING REMOTE |
|---|---|

# IMPORTANT: Carefully read this notice and the instructions below. Submit the enclosed Appearance Sheet and any relevant documents two weeks prior to the scheduled hearing. Failure to follow the instructions may impact your ability to present or defend this claim. Please do not appear in person unless instructed otherwise.

**NOTICE:** All parties in the above matter are to appear for a remote hearing as follows:

**DATE:**　**August 2, 2022**

**TIME:**　**8:30 AM**

**HEARING TYPE:**　__Remote video__

**DIAL-IN/CONNECT:**

> Zoom link: https://zoom.us/join
> Meeting ID: 929 118 6130

**You are required to dial in/connect by using the information above. If you are unable to connect via phone, computer and/or do not have stable internet access, please contact our office immediately at (818) 901-5315 or via email at_ laborcomm.wca.vno@dir.ca.gov (preferred). It is recommended that you contact us at least two weeks prior to your meeting if you require special assistance or other arrangements.**

This hearing will be held pursuant to Labor Code Section 98(a) et. seq.

This notice constitutes demand on behalf of the Plaintiff that all wages due be mailed immediately to the Labor Commissioner at the address listed above. Willful failure to pay when wages are due implicates waiting time penalties pursuant to Labor Code section 203.

**TO THE PLAINTIFF:**

1. Any correspondence regarding the scheduled hearing in this matter should be directed to the Office of the Labor Commissioner shown above.
2. Failure to attend the scheduled hearing will result in the dismissal of your complaint.
3. You may, but need not be, represented by an attorney. You have the right to have a representative present at the hearing. It is not necessary that the representative be an attorney.
4. If you have any reason to believe that the person or corporation named as the defendant in this Notice of Hearing is not correct, you are urged to contact the Office of the Labor Commissioner.

**TO THE DEFENDANT(S):**

1. You may file an Answer with the Labor Commissioner at the office shown above. The hearing scheduled in this matter will be conducted regardless of whether you file or submit an Answer.
2. You may be, but need not be, represented by counsel. You have the right to have a representative present at the hearing. It is not necessary that such representation be an attorney. If you wish to seek the advice of counsel in this matter you should do so promptly so that your written answer, if any, may be filed on time.
3. The scheduled hearing in this matter will be held regardless of whether you appear. An Order, Decision or Award will be issued in accordance with the evidence offered at the hearing. A copy of the rules of practice and procedure governing these hearings is available at any district office of the Labor Commissioner.
4. Any wages awarded pursuant to this hearing will accrue interest from the date they were due until they are paid, in accordance with Labor Code Section 98.1(c). Any liquidated damages awarded due to unpaid minimum wages include interest thereon under Labor Code Section 1194.2. Interest also accrues on any unreimbursed business expenses awarded pursuant to Labor Code Section 2802(b).
5. In addition, you may be subject to civil penalties due the State of California, pursuant to Labor Code Section(s) 210 and/or 225.5, if applicable. You may also be subject to civil penalties due to the State of California, pursuant to Labor Code Section 226.8, if it is determined that you engaged in willful misclassification of the plaintiff as an independent contractor or other unlawful conduct related to any such misclassification.
6. This matter can be disposed of without hearing by remitting in full the total amount specified in the Complaint, including liquidated damages and penalties pursuant to Labor Code Section(s) 1194.2, 203 and 203.1 (if stated in the Complaint), in which event you need not file or submit an Answer.
   With respect to the claims set forth in the Complaint, the basis for liability may be determined on various grounds, including but not limited to liability pursuant to Labor Code sections 2810.3 and/or 238.5, and/or **individual liability** pursuant to Labor Code section 558.1.
   Under Labor Code Section 558.1, any employer or other person acting on behalf of an employer who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or

causes to be violated, Labor Code Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation. For purposes of Labor Code Section 558.1, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer.

Under Labor Code section 2810.3, a labor contractor(s) and the business entity (a "Client Employer") that was provided with workers by the contractor(s) to perform labor within the Client Employer's usual course of business may be held jointly and severally liable for any wages, damages, and penalties found due to the workers who performed the labor. A contract for the provision of labor between the contractor(s) and the Client Employer is not required for liability to attach under the law.

Under Labor Code Section 238.5(a)(1) "Any individual or business entity, regardless of its form, that, as a part of its business, contracts for services in the property services or long-term care industries shall be jointly and severally liable for any unpaid wages, including interest,... to the extent the amounts are for services performed under that contract." "Property services" industry includes: "janitorial, security guard, valet parking, landscaping, and gardening services." § 238.5(e)(1).

**TO BOTH PARTIES**
1. You will be given the opportunity at the scheduled hearing to present any relevant evidence, to call witnesses and to cross-examine witnesses testifying against you. Application for the issuance of subpoenas to compel the attendance of necessary witnesses and the production of books and documents can be made to the Office of the Labor Commissioner. A copy of the rules of practice and procedures governing these hearings is available at any office of the Labor Commissioner.
2. While this claim is before the Labor Commissioner, you are required under Labor Code Section 98(a) to notify the Labor Commissioner in writing of any change in your business or personal address within 10 days after any change occurs.

**SPECIAL INSTRUCTIONS FOR REMOTE APPEARANCES**
1. You must complete the attached **Appearance Sheet** and submit as soon as possible or at least **two weeks prior** to the date of your meeting. It is critical that you provide this information in the event we need to contact you.
2. If you plan to call witnesses, provide the name and contact information of the witnesses in the Appearance Sheet. The Hearing Officer has the discretion to limit the number of witnesses at the time of hearing. Witness participation will be limited to the duration of their own testimony.
3. On the date and time of your meeting, parties are required to dial or connect according to the instructions on this notice. Please attempt to dial in or connect at least 5 minutes prior to the meeting.
4. Assure you have a fully charged telephone or other device and uninterrupted time to participate in this meeting.
5. Please note that prior to or during the hearing, the Hearing Officer will have discretion to postpone the matter to a later date if she or he decides that (a) the claim is inappropriate for a remote hearing and/or (b) any technical or logistical issues arise while conducting the hearing.

**DOCUMENTS/EXHIBITS**

1. If you intend to submit documents or exhibits, please submit **two weeks prior** to the meeting.
2. If you submit evidence via email, please submit to **LaborComm.WCA.VNO@dir.ca.gov**. For security reasons, please do not include links as we may be unable to open these links.
3. If you do not have access to email, please submit two (2) physical copies, one for the other party and the other for the hearing officer.
4. Do not submit any confidential or private information. Remove this information from any documents prior to sending documents or exhibits.
5. On a limited basis, other records may be accepted at the time of hearing based on the hearing officer's discretion. If there are concerns with record submissions, including technical issues, please contact our office immediately.
6. You are also responsible for providing your witness with a copy of any documents relevant to testimony they will provide at the hearing. The hearing officer and other parties should also be provided with copies of such documents in advance.

NOTICE DATE:  July 8, 2022


Marc Perel
Hearing Officer

# LANSKIE DECLARATION EXHIBIT C

**To:** Will Campbell[will@quantasy.com]
**From:** Lauren Lanskie[lauren@collateraldamage.agency]
**Sent:** Fri 3/25/2022 7:48:14 PM (UTC)
**Subject:** Quantasy Invoice
Quantasy Invoice - March 2022.pdf

Good Afternoon Will,
The invoice is attached.

Regards,
Lauren

--



**Lauren Lanskie ▍ Executive Assistant ▍** www.CollateralDamage.com

# INVOICE

**BILL TO:**

Quantasy, LLC.

312 S. Alameda Street, Suite 102
Los Angeles, CA 90013

| | |
|---|---|
| INVOICE # | 03012021 |
| INVOICE DATE | March 1, 2022 |
| DUE DATE | March 17, 2022 |

| DESCRIPTION | PRICE | QUANTITY | AMOUNT |
|---|---|---|---|
| CAMPAIGN DESIGN SUPPORT | $96,111.25 | 1 | $96,111.25 |
| | | | $96,111.25 |

* 2% of total price will be apply for delay of payment per week.

| SUBTOTAL | AMOUNT |
|---|---|
| TAX | - |
| AMOUNT DUE | $96,111.25 |

# THANK YOU

# INSTRUCTIONS

**COLLATERAL DAMAGE LLC.**

45 S Arroyo Pkwy
Pasadena, CA 91105 415.919.9131

www.collateraldamage.agency

Questions please contact
lauren@collateraldamage.agency

**ELECTRONIC PAYMENT INSTRUCTIONS**

| | |
|---|---|
| **Bank** | Bank of America<br>12316 W. Washington Blvd<br>Los Angeles, CA 90066 |
| **Routing #** |  - Paper & Electronic<br> - Wires |
| **Account #** | |

# THANK YOU

# LANSKIE DECLARATION EXHIBIT D

**From:** Lauren Lanskie <lauren@collateraldamage.agency>
**Sent:** Thur 4/7/2022 11:29:36 PM (UTC)
**Subject:** Sports Marketing Invoice
**To:** Will Campbell <will@quantasy.com>
Quantasy Invoice - April 2022.pdf

Hello Will,

Please see the invoice attached.

Regards,
Lauren

--



**Lauren Lanskie ❚ Executive Assistant ❚** www.CollateralDamage.com

# INVOICE

**BILL TO:**

Quantasy, LLC.

312 S. Alameda Street, Suite 102
Los Angeles, CA 90013

| | |
|---|---|
| INVOICE # | 04012021 |
| INVOICE DATE | April 1, 2022 |
| DUE DATE | April 1, 2022 |

| DESCRIPTION | PRICE | QUANTITY | AMOUNT |
|---|---|---|---|
| Campaign Management Support Sport Marketing Strategy and Implementation - NFL, NHL, Nascar and MLB | $2,800,000 | 1 | $2,800,000.00 |
| | | | $2,800,000.00 |

* 2% of total price will be apply for delay of payment per week.

| SUBTOTAL | AMOUNT |
|---|---|
| TAX | - |
| AMOUNT DUE | $2,800,000.00 |

# THANK YOU

# INSTRUCTIONS

**COLLATERAL DAMAGE LLC.**

45 S Arroyo Pkwy
Pasadena, CA 91105 415.919.9131

www.collateraldamage.agency

Questions please contact
lauren@collateraldamage.agency

**ELECTRONIC PAYMENT INSTRUCTIONS**

| | |
|---|---|
| **Bank** | Bank of America<br>12316 W. Washington Blvd<br>Los Angeles, CA 90066 |
| **Routing #** |  - Paper & Electronic<br> - Wires |
| **Account #** | |

# THANK YOU

# LANSKIE DECLARATION EXHIBIT E

**To:**      Will Campbell[will@quantasy.com]
**From:**  Lauren Lanskie[lauren@collateraldamage.agency]
**Sent:**    Fri 4/8/2022 7:21:59 PM (UTC)
**Subject:** Re: Sports Marketing Invoice
Quantasy Invoice - April 2022 (1).pdf

Hello Will,

Please see the updated invoice. Let me know if you have any questions.

Regards,
Lauren

On Thu, Apr 7, 2022 at 4:29 PM Lauren Lanskie <lauren@collateraldamage.agency> wrote:

> Hello Will,
>
> Please see the invoice attached.
>
> Regards,
> Lauren
> --



**Lauren Lanskie** ❙ **Executive Assistant** ❙ www.CollateralDamage.com

--



**Lauren Lanskie** ❙ **Executive Assistant** ❙ www.CollateralDamage.com

# INVOICE

**BILL TO:**

Quantasy, LLC.

312 S. Alameda Street, Suite 102
Los Angeles, CA 90013

| | |
|---|---|
| INVOICE # | 04012021 |
| INVOICE DATE | April 1, 2022 |
| DUE DATE | April 1, 2022 |

**Overview:** Collateral Damage (CD) will implement a sports marketing program integrating athletes and sports organizations (i.e. NFL, NHL, MLB, Nascar) to activate for Root Insurance in support of national awareness with an additional regional two-state focus in Colorado and Oklahoma. Program to include:

| DESCRIPTION | QUANTITY | AMOUNT |
|---|---|---|
| I. **A-List Pro Athlete Partnership:** CD will negotiate, secure and integrate athlete marketing partnership with A-list pro athlete Russell Wilson or pro athlete of similar stature (i.e. NFL, NHL, MLB, Nascar) and regard. Athlete will participate in content, social media posting and appearances including promotion of in-market activations in Colorado during Q2/Q3 2022. | 1 | $1,500,000 |
| II. **Sports Influencers:** CD will negotiate, secure and integrate up to ten but no less than six (6-10) athlete/influencer endorsements for Root Sports Influencer Marketing program. Athletes will participate in core campaign activations including online and in-market appearances | 1 | $1.100,000 |
| III. **Sports Teams and Venue Partnership Activations:** CD will negotiate, secure and integrate sports partnerships (i.e. NFL, NHL, MLB, Nascar) with sports teams and venues to activate against Root Insurance campaign creative. | 1 | $3,000,000 |
| IV. **Strategy and Implementation Support:** CD will provide strategy and execution services to integrate sport marketing programs across campaign elements including Best Driver in America Challenge, In-Market activations and takeovers, online integrations | 1 | **Included** |

* 2% of total price will be apply for delay of payment per week.

# THANK YOU

| SUBTOTAL | AMOUNT |
|---|---|
| Total | $5,600,000 |
| **AMOUNT DUE** | |
| 4/1 | $2,800,000 |
| 4/15 | $2,800,000 |

# INSTRUCTIONS

**COLLATERAL DAMAGE LLC.**

45 S Arroyo Pkwy
Pasadena, CA 91105 415.919.9131

www.collateraldamage.agency

Questions please contact
lauren@collateraldamage.agency

**ELECTRONIC PAYMENT INSTRUCTIONS**

| | |
|---|---|
| **Bank** | Bank of America<br>12316 W. Washington Blvd<br>Los Angeles, CA 90066 |
| **Routing #** |  - Paper & Electronic<br> - Wires |
| **Account #** | |

# THANK YOU

# LANSKIE DECLARATION EXHIBIT F

**To:** David Rodriguez[david@quantasy.com]
**From:** Will Campbell[will@quantasy.com]
**Sent:** Fri 4/22/2022 3:45:36 PM (UTC)
**Subject:** Fwd: Updated invitation: Quantasy + Collateral Intro @ Fri Apr 22, 2022 12pm - 1pm (PDT) (Will Campbell)
Mail Attachment.ics
invite.ics

---

Will Campbell | CEO | **Quantasy, LLC** | 312 S. Alameda Street, Suite 102 | Los Angeles, CA 90013 | P: 424.331.9260 | **quantasy.com**

Begin forwarded message:

**From:** lauren@collateraldamage.agency
**Subject: Updated invitation: Quantasy + Collateral Intro @ Fri Apr 22, 2022 12pm - 1pm (PDT) (Will Campbell)**
**Date:** April 22, 2022 at 7:38:40 AM PDT
**To:** Will Campbell <will@quantasy.com>, cyntoria@collateraldamage.agency, eli@collateraldamage.agency, Hello BC <hello@bc-silver.com>, paige@collateraldamage.agency
**Reply-To:** lauren@collateraldamage.agency

**This event has been changed.**

## Quantasy + Collateral Intro

| When | **Changed:**Fri Apr 22, 2022 12pm   1pm Pacific Time - Los Angeles |
|------|------|
| Calendar | Will Campbell |
| Who | lauren@collateraldamage.agency - organizer |
| | cyntoria@collateraldamage.agency |
| | eli@collateraldamage.agency |
| | Hello BC |
| | paige@collateraldamage.agency |
| | Will Campbell |

**more details »**
Going (will@quantasy.com)?   **Yes** - **Maybe** - **No**   more options »

Invitation from Google Calendar

You are receiving this email at the account will@quantasy.com because you are subscribed for updated invitations on calendar Will Campbell.

To stop receiving these emails, please log in to https://calendar.google.com/calendar/ and change your notification settings for this calendar.

Forwarding this invitation could allow any recipient to send a response to the organizer and be added to the guest list, or invite others regardless of their own invitation status, or to modify your RSVP. Learn More.

LANSKIE DECLARATION EXHIBIT G

**To:**      Will Campbell[will@quantasy.com]
**From:**    Lauren Lanskie[lauren@collateraldamage.agency]
**Sent:**    Wed 4/27/2022 1:55:52 AM (UTC)
**Subject:** CD W9 and Invoice
Quantasy Invoice - April 15 2022.pdf
Collateral_Damage_W9_Signed_PL.pdf

Please see the attached W9 and Invoice.

Form **W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

☒ Go to www.irs.gov/FormW9 for instructions and the latest information.

Give Form to the
requester. Do not
send to the IRS.

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Paige Lynette

2 Business name/disregarded entity name, if different from above

Collateral Damage LLC

3 Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the
following seven boxes.

☐ Individual/sole proprietor or single-member LLC    ☐ C Corporation    ☐ S Corporation    ☐ Partnership    ☐ Trust/estate

☑ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ☒

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check
LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is
another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that
is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ☒

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

(Applies to accounts maintained outside the U.S.)

5 Address (number, street, and apt. or suite no.) See instructions.

5576 Alexanders Lake Rd. SW

6 City, state, and ZIP code

Stockbridge, GA 30281

Requester's name and address (optional)

7 List account number(s) here (optional)

Print or type.
See Specific Instructions on page 3.

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid
backup withholding. For individuals, this is generally your social security number (SSN). However, for a
resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other
**entities, it is your employer identification number (EIN). If you do not have a number, see** How to get a
TIN, later.

Note: If the account is in more than one name, see the instructions for line 1. Also see What Name and
Number To Give the Requester for guidelines on whose number to enter.

Social security number

☐☐☐ – ☐☐ – ☐☐☐☐

or

Employer identification number

8 8 – 1 7 5 3 3 5 8

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue
Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am
no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because
you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid,
acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments
other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

Sign
Here

Signature of
U.S. person ☒    *Paige Lynette*    Date ☒ 04/26/2022

## General Instructions

Section references are to the Internal Revenue Code unless otherwise
noted.

Future developments . For the latest information about developments
related to Form W-9 and its instructions, such as legislation enacted
after they were published, go to www.irs.gov/FormW9.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an
information return with the IRS must obtain your correct taxpayer
identification number (TIN) which may be your social security number
(SSN), individual taxpayer identification number (ITIN), adoption
taxpayer identification number (ATIN), or employer identification number
(EIN), to report on an information return the amount paid to you, or other
amount reportable on an information return. Examples of information
returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual
funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross
proceeds)

• Form 1099-B (stock or mutual fund sales and certain other
transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest),
1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident
alien), to provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might
be subject to backup withholding. See What is backup withholding,
later.

Cat. No. 10231X

Form **W-9** (Rev. 10-2018)

# INVOICE

**BILL TO:**

Quantasy, LLC.

312 S. Alameda Street, Suite 102
Los Angeles, CA 90013

| | |
|---|---|
| INVOICE # | 04152021 |
| INVOICE DATE | April 15, 2022 |
| DUE DATE | April 15, 2022 |

**Overview:** Collateral Damage (CD) will implement a sports marketing program integrating athletes and sports organizations (i.e. NFL, NHL, MLB, Nascar) to activate for Root Insurance in support of national awareness with an additional regional two-state focus in Colorado and Oklahoma. Program to include:

| DESCRIPTION | QUANTITY | AMOUNT |
|---|---|---|
| I. **A-List Pro Athlete Partnership:** CD will negotiate, secure and integrate athlete marketing partnership with A-list pro athlete Russell Wilson or pro athlete of similar stature (i.e. NFL, NHL, MLB, Nascar) and regard. Athlete will participate in content, social media posting and appearances including promotion of in-market activations in Colorado during Q2/Q3 2022. | 1 | $1,500,000 |
| II. **Sports In uencers:** CD will negotiate, secure and integrate up to ten but no less than six (6-10) athlete/in uencer endorsements for Root Sports In uencer Marketing program. Athletes will participate in core campaign activations including online and in-market appearances | 1 | $1.100,000 |
| III. **Sports Teams and Venue Partnership Activations:** CD will negotiate, secure and integrate sports partnerships (i.e. NFL, NHL, MLB, Nascar) with sports teams and venues to activate against Root Insurance campaign creative. | 1 | $3,000,000 |
| IV. **Strategy and Implementation Support:** CD will provide strategy and execution services to integrate sport marketing programs across campaign elements including Best Driver in America Challenge, In-Market activations and takeovers, online integrations | 1 | **Included** |

* 2% of total price will be apply for delay of payment per week.

# THANK YOU

| SUBTOTAL | AMOUNT |
|---|---|
| Total | $5,600,000 |
| **AMOUNT DUE** | |
| 4/1 | $2,800,000 |
| 4/15 | $2,800,000 |

# INSTRUCTIONS

**COLLATERAL DAMAGE LLC.**

45 S Arroyo Pkwy
Pasadena, CA 91105 415.919.9131

www.collateraldamage.agency

Questions please contact
lauren@collateraldamage.agency

**ELECTRONIC PAYMENT INSTRUCTIONS**

| Bank | Bank of America<br>12316 W. Washington Blvd<br>Los Angeles, CA 90066 |
|---|---|
| Routing # |  - Paper & Electronic<br> - Wires |
| Account # | |

# THANK YOU

# LANSKIE DECLARATION EXHIBIT H

**To:**      Will Campbell[will@quantasy.com]
**From:**    Lauren Lanskie[lauren@collateraldamage.agency]
**Sent:**    Wed 5/11/2022 4:10:30 AM (UTC)
**Subject:** Quantasy May 10 Invoice
Quantasy Invoice - May 10 2022.pdf

Hello Will,
Attached is the May 10th invoice. Have a great evening.

Thanks
BC

--

**Lauren Lanskie** ❙ Accounts Payable ❙ www.CollateralDamage.agency

# INVOICE

| BILL TO: |
|---|
| Quantasy, LLC. |
| 312 S. Alameda Street, Suite 102 |
| Los Angeles, CA 90013 |

| INVOICE # | 05092022 |
|---|---|
| INVOICE DATE | May 1  2022 |
| DUE DATE | May 10, 2022 |

**Overview:** Collateral Damage (CD) will implement a sports marketing program integrating athletes and sports organizations (i.e. NFL, NHL, MLB, Nascar)  to activate for brand clients. in support of national awareness with an additional regional and national executions. Program to include:

| DESCRIPTION | QUANTITY | AMOUNT |
|---|---|---|
| I. **A-List Pro Athlete Partnership:**  CD will negotiate, secure and integrate athlete marketing partnership with A-list pro athlete Russell Wilson or pro athlete of similar stature (i.e. NFL, NHL, MLB, Nascar) and regard. Athlete will participate in content, social media posting and appearances including promotion of in-market activations during Q3/Q4 2022. | 1 | $1,000,000 |
| II. **Sports In uencers:**  CD will negotiate, secure and integrate up to ten but no less than six (6-10) athlete/in uencer endorsements for Root Sports In uencer Marketing program. Athletes will participate in core campaign activations including online and in-market appearances | 1 | $1.100,000 |
| III. **Sports Teams and Venue Partnership Activations:** CD will negotiate, secure and integrate sports partnerships (i.e. NFL, NHL, MLB, Nascar) with sports teams and venues to activate against Root Insurance campaign creative. | 1 | $1,400,000 |
| IV. **Strategy and Implementation Support:** CD will provide strategy and execution services to integrate sport marketing programs across campaign elements including Best Driver in America Challenge, In-Market activations and takeovers, online integrations | 1 | **Included** |

* 2% of total price will be apply for delay of payment per week.

# THANK YOU

| SUBTOTAL | AMOUNT |
|---|---|
| Total | $3,500,000 |
| **AMOUNT DUE** | |
| 5/10 | $3,500,000 |

# INSTRUCTIONS

**COLLATERAL DAMAGE LLC.**

45 S Arroyo Pkwy
Pasadena, CA 91105 415.919.9131

www.collateraldamage.agency

Questions please contact
lauren@collateraldamage.agency

**ELECTRONIC PAYMENT INSTRUCTIONS**

| | |
|---|---|
| **Bank** | Bank of America<br>12316 W. Washington Blvd<br>Los Angeles, CA 90066 |
| **Routing #** |  - Paper & Electronic<br>- Wires |
| **Account #** | |

# THANK YOU

# LANSKIE DECLARATION EXHIBIT I

**To:** Hello BC[hello@bc-silver.com]; paige@collateraldamage.agency[paige@collateraldamage.agency];
lauren@collateraldamage.agency[lauren@collateraldamage.agency]
**From:** David Rodriguez[david@quantasy.com]
**Sent:** Thur 9/22/2022 11:33:47 PM (UTC)

Hey BC,
Hope you're well.

Just wanted to verify with you that the $9.1M that is currently with CD can be fully allocated to 2023 paid media.

Can you confirm?

Thanks,
David



**QUANTASY + ASSOCIATES   EVP & HEAD OF CLIENT SERVICES   DAVID@QUANTASY.COM   312 S ALAMEDA ST, LOS ANGELES, CA   QUANTASY.COM**

# LANSKIE DECLARATION EXHIBIT J

**To:** BC Silver[bc.silver@joinroot.com]
**From:** Lauren Lanskie[lauren@collateraldamage.agency]
**Sent:** Wed 11/9/2022 7:02:36 PM (UTC)
**Subject:** Re: Root Q1 Planning
SOW Change Request Form 2022 shift to 2023.pdf
Root January Media Spend_CMA_10 08 22.pdf
Subcontractor Agreement CD | Root.pdf

Hi BC -
Here are the Collateral Damage contracts we have to date per your request. We look forward to continuing to work with Root for 2023!

Best,

On Wed, Nov 9, 2022 at 9:24 AM BC Silver <bc.silver@joinroot.com> wrote:

   Hello Lauren,

   Can you make sure you send me all the Collateral Damage contracts we have to date. I want to make sure Root has them all on file for subcontractor work in the future. We look forward to seeing great results at the beginning of 2023.

   Please make sure you send this morning.

   Regards,
   BC
   415.919.9131

--



**Lauren Lanskie** ▮ **Executive Assistant** ▮ www.CollateralDamage.com

## SCOPE OF WORK AGREEMENT                    CHANGE REQUEST

**Project Name:**

H2 2022 Marketing Plan Shifting to January 2023

**Effective Date of Change:**

10/04/2022

**Client Requesting Change:**

| Name: | BC Silver |
|---|---|
| Title: | CMO |

**Requested Change:**

| Original SOW item(s) | Description of Change |
|---|---|
| H2 Marketing Spend Shift | We are shifting 2022 H2 Marketing plans to January 2023. All remaining budget will be leveraged next year. |

**Reason for Change:**

We are shift Marketing strategies from Brand building to Profit focus. We are slowing our growth expectations for the year based on that shift. We expect to drive growth beginning in Q1/Q2 of 2023.

**Budget Change:**

| Original Contracted Amount | $9.1M |
|---|---|
| Net Budget Change (+/-) | $0.00 |
| Revised Contracted Amount | $9.1M |

The parties agree that this Change Request is subject to the original Additional Terms and Services, unless otherwise outlined herein.

**Root Insurance**

By: 

| Name: | BC Silver |
|---|---|
| Title: | CMO |

**Collateral Damage**

By: Lauren Lanski

Name: Lauren Lanski

Title: Principal

# Client Media Authorization (CMA)



**CMA#: 121**

**Date: Mon, Oct 10, 2022**

**Company:** Root Insurance

**Agency Media Contact:**

Lauren Lanski  |

lauren@collateraldamage.agency

**Client Contact:** BC Silver |
bc.silver@joinroot.com

877-882-0578

**Agency Billing:**

**Client Billing Contact:** invoices@joinroot.com

CD Billing | invoices@collateraldamage.agency

Flight Dates: 1/1/23 - 1/31/23

Client Media Authorization must be signed prior to the agency placing any media insertion orders or signing any publisher contracts on your company's behalf.

## Estimated Budget by Partner

| Title | Imp. |
|---|---|
| ESPN: | 2,222,222 |
| Barstool Sports: | 4,370,629 |
| iHeart: | 2,507,149 |
| Adserving | Included |

| | |
|---|---|
| Services Sub-total | $0.00 |
| Materials Sub-total | $9,100,000.00 |
| **Total** | **$9,100,00.00** |

Advertiser Representative

10/10/22

BC Silver
CMO

Agency Representative

*Lauren Lanskie*

10/10/22

Lauren Lanskie
Principal/Owner

## Terms & Conditions

1. This CMA is governed by the Master Service Agreement. By signing this CMA, Advertiser/Agency is agreeing to all terms specified, unless otherwise noted.

2. This Client Media Authorization (CMA) represents a pre-optimized budget distribution. Optimizations and budgets shifts may occur after the signing of this CMA, but total amount of original CMA shall not be exceeded without explicit permission and documented change order to CMA.

3. In purchasing media, materials or services on Client's behalf, Collateral Damage shall act as Client's agent and all orders placed and contracts entered into by Collateral Damage for such purposes shall be billed to Client in accordance with the terms of this Agreement. Collateral Damage shall be authorized to proceed with such expenditures on behalf of Client upon receipt of Client's signed Client Media Authorization. Collateral Damage is not responsible for the failure of media providers to provide their services.

4. Media Billing. In the event Collateral Damage is paying for media on Client's behalf, all such media shall be billed monthly to Client at the initiation of media buy, upon receipt of CMA and shall be subsequently reconciled to actual cost within ninety (90) daysafter receipt of media/site invoice documentation. Client acknowledges that Collateral Damage is not responsible for financing Client'sadvertising or media purchases, that Collateral Damage shall make no commitments to purchase media until it has received payment therefore from Client, and that Collateral Damage is merely acting as Client's agent in placing such orders. In the event of late payment, Collateral Damage reserves the right in its sole discretion to place on hold media purchases on Client's behalf until all outstanding invoices have been paid by Client. In the event of Client's failure to pay, Client will be directly liable to media vendors for any outstanding amounts due.

5. Regardless of termination, at no time shall Collateral Damage be required to repay or return any monies that have been paid to Collateral Damage pursuant to this Agreement and/or the services that Collateral Damage has provided hereunder. All monies paid hereunder to Collateral Damage shall be non-refundable. All payments made by Client hereunder shall be nonrefundable and deemed fully earned upon receipt. At no time and for no reason, shall Client nor any third party have the right to claw back any monies received by Collateral Damage hereunder. All purchases made by Collateral Damage hereunder shall be non-refundable.

**6. First Month's Payment and pre-paid media due upon receipt of invoice.**

7. Asterisk notes media spend that is directly billed to client on platform or by partnering agency.

# Subcontractor Agreement

This Subcontractor Agreement (the "Agreement") is entered into as of _____ 10/04/22 _____,
2022 (the "Effective Date") by and between Root Insurance Agency, LLC (hereinafter referred to as
"Contractor") and Collateral Damage, LLC (hereinafter "Subcontractor").

1. **Engagement**

   Subcontractor engages Contractor to serve as a Subcontractor for the provision of strategy,
   branding, media, and production services for Quantasy, LLC, pursuant to the Scope of Work
   Agreement between Contractor and Quantasy, which is incorporated herein by referenced. The
   aforementioned services shall be provided for a term ("Term") as hereinafter provided.

2. **Scope of Services**

   Subcontractor will provide Contractor, for the benefit of Quantasy, with the services provided in
   Schedule 1, attached hereto. Should Contractor request Subcontractor to perform additional
   services beyond what is provided in Schedule 1, Contractor and Subcontractor will negotiate in
   good faith with respect to the terms, conditions, and compensation for such additional services.
   Any agreement for additional services will be in writing and considered an addendum to this
   Agreement.

3. **Term**

   The term of this Agreement shall commence on the date provided in Schedule 1 ("Commencement
   Date") and shall continue until terminated by either party upon ninety (90) days' prior written
   notice ("Notice Period"), provided that this Agreement may not be terminated effective prior to the
   expiration of six (6) months from the Commencement Date. Notice shall be deemed given on the
   day of certified mailing or. During the Notice Period, Subcontractor's rights, duties, and
   responsibilities shall continue.

   Regardless of termination, at no time shall Subcontractor be required to repay or return any monies
   that have been paid to Subcontractor pursuant to this Agreement and/or the services that
   Subcontractor has provided to Quantasy on behalf of Contractor. All monies paid hereunder to
   Subcontractor shall be non-refundable.

4. **Compensation and Billing Procedure**

   Subcontractor will be compensated and Contractor will be billed as provided in Schedule 1,
   attached hereto. All payments made to Subcontractor hereunder shall be nonrefundable and
   deemed fully earned upon receipt.

   At no time and for no reason, shall Contractor nor any third party have the right to claw back any
   monies received by Subcontractor hereunder.

5. **Confidentiality and Safeguard of Property**

   Subcontractor and Contractor respectively agree to keep in confidence, and not to disclose or use
   for its own respective benefit or for the benefit of any third party (except as may be required for the
   performance of services under this Agreement or as may be required by law), any information,
   documents, or materials that are reasonably considered confidential regarding each other's
   products, business, customers, Subcontractors, suppliers, or methods of operation; provided,
   however, that such obligation of confidentiality will not extend to anything in the public domain or
   that was in the possession of either party prior to disclosure. Contractor and Subcontractor will take

reasonable precautions to safeguard property of the other entrusted to it, but in the absence of negligence or willful disregard, neither Contractor nor Subcontractor will be responsible for any loss or damage.

## 6. Indemnities

Contractor agrees to indemnify and hold Subcontractor harmless with respect to any claims or actions by third parties against Subcontractor for any and all claims that may be brought against Subcontractor by virtue of this Agreement, including, but not limited to any claims that may be brought by Quantasy against Subcontractor.

Contractor shall be responsible for fully indemnifying and holding harmless Subcontractor from any and all such claims, including covering Subcontractor's legal fees, costs, and/or any settlement payments or judgments that may require money to be paid by Subcontractor.

## 7. Limitation of Liability

EXCEPT FOR LIABILITY ARISING FROM A PARTY'S INDEMNIFICATION OBLIGATIONS, UNDER NO CIRCUMSTANCES AND UNDER NO LEGAL THEORY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY CHARACTER, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF GOODWILL, LOST PROFITS, LOST SALES OR BUSINESS, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, LOST DATA, OR FOR ANY AND ALL OTHER DAMAGES OR LOSSES, EVEN IF A REPRESENTATIVE OF A PARTY HAS BEEN ADVISED, KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES. EXCEPT FOR LIABILITY ARISING FROM A PARTY'S INDEMNIFICATION OBLIGATIONS, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY DIRECT DAMAGES, COSTS, OR LIABILITIES

## 8. Amendments

Any amendments to this Agreement must be in writing and signed by Contractor and Subcontractor.

## 9. Notices

Any notice shall be deemed given on the day of certified mailing or, if notice is by e-mail, on the next day following the day notice is e-mailed:

To:
**Root Insurance, LLC**

_____
_____
_____

To:
**Collateral Damage, LLC**

_____
_____
_____

## 10. Governing Law

This Agreement shall be interpreted in accordance with the laws of the State of California without regard to its principles of conflicts of laws. Jurisdiction and venue shall be solely within the State of California.

## 11. No Presumption Against Drafter

Each of the parties has jointly participated in the negotiation and drafting of this Agreement. In the event of an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by each of the parties and no presumptions or burdens of proof shall arise favoring any party by virtue of the authorship of any of the provisions of this Agreement.

## 12. Advice of Counsel

In entering into this Agreement, each party has relied upon the advice of counsel, or has been advised, and has had reasonable time and opportunity, to consult counsel of its own choosing. Each party has completely read, fully understands, and voluntarily accepts the terms of this Agreement.

## 13. Cumulative Rights and Remedies

The rights and remedies provided for in this Agreement shall be cumulative; resort to one right or remedy shall not preclude resort to another or to any other right or remedy provided for by law or in equity.

## 14. Counterparts

This Agreement can be executed in counterparts, and each counterpart, when executed, shall have the effectiveness of a signed original. Photocopies of such signed counterparts may be used in lieu of the originals for any purpose.

## 15. Enforceability Representation

Each party to this Agreement represents that this Agreement constitutes the legally valid and binding obligation of that party, enforceable against that party in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or affecting creditors' rights generally (including, without limitation, fraudulent conveyance laws) and by general principles of equity, including without limitation, concepts of materiality, reasonableness, good faith and fair dealing and the possible unavailability of specific performance or injunctive relief, regardless of whether considered in a proceeding in equity or at law.

IN WITNESS WHEREOF, Contractor and Subcontractor have executed this Agreement.

**CONTRACTOR,**

Root Insurance, LLC:

By: _____

Name:_____BC Silver_____

Title:_____CMO_____


**SUBCONTRACTOR,**

Collateral Damage, LLC:

By: _____Lauren Lanski_____

Name:_____Lauren Lanski_____

Title:_____Officer_____

## Schedule 1: Scope of Work and Fees

**Description**

A-List Pro Athlete Partnership: CD will negotiate,
secure and integrate athlete marketing
partnership with A-list pro athlete Russell Wilson
or pro athlete of similar stature (i.e. NFL, NHL,
MLB, Nascar) and regard. Athlete will participate
in content, social media posting and
appearances including promotion of in-market
activations in Colorado during Q2/Q3 2022.

Sports Influencers: CD will negotiate, secure and
integrate up to ten but no less than six (6-10)
athlete/influencer endorsements for Root Sports
Influencer Marketing program. Athletes will
participate in core campaign activations including
online and in-market appearances

Sports Teams and Venue Partnership
Activations: CD will negotiate, secure and
integrate sports partnerships (i.e. NFL, NHL,
MLB, Nascar) with sports teams and venues to
activate against Root Insurance campaign
creative.

Strategy and Implementation Support: CD will
provide strategy and execution to integrate sport
marketing programs across campaign elements
including Best Driver in America Challenge, In-

Market activations and integrations.
**Total**                                 **$9,100,000.00**

## SCOPE OF WORK AGREEMENT                    CHANGE REQUEST

**Project Name:**

H2 2022 Marketing Plan Shifting to January 2023

**Effective Date of Change:**

10/04/2022

**Client Requesting Change:**

| Name: | BC Silver |
|-------|-----------|
| Title: | CMO |

**Requested Change:**

| Original SOW item(s) | Description of Change |
|----------------------|------------------------|
| H2 Marketing Spend Shift | We are shifting 2022 H2 Marketing plans to January 2023. All remaining budget will be leveraged next year. |

**Reason for Change:**

We are shift Marketing strategies from Brand building to Profit focus. We are slowing our growth expectations for the year based on that shift. We expect to drive growth beginning in Q1/Q2 of 2023.

**Budget Change:**

| Original Contracted Amount | $9.1M |
|----------------------------|-------|
| Net Budget Change (+/-) | $0.00 |
| Revised Contracted Amount | $9.1M |

The parties agree that this Change Request is subject to the original Additional Terms and Services, unless otherwise outlined herein.

**Root Insurance**                            **Collateral Damage**

By:                                           By: Lauren Lanski

Name:        BC Silver                        Name: Lauren Lanski

Title:       CMO                              Title: Principal

# Client Media Authorization (CMA)



**CMA#: 121**

**Date: Mon, Oct 10, 2022**

**Company:** Root Insurance

,

**Client Contact:** BC Silver |
bc.silver@joinroot.com

**Client Billing Contact:** invoices@joinroot.com

**Agency Media Contact:**

Lauren Lanski   |

lauren@collateraldamage.agency

877-882-0578

**Agency Billing:**

CD Billing | invoices@collateraldamage.agency

Flight Dates: 1/1/23 - 1/31/23

Client Media Authorization must be signed prior to the agency placing any media insertion orders or signing any publisher contracts on your company's behalf.

## Estimated Budget by Partner

| Title | Imp. |
|---|---|
| ESPN: | 2,222,222 |
| Barstool Sports: | 4,370,629 |
| iHeart: | 2,507,149 |
| Adserving | Included |

| | |
|---|---|
| Services Sub-total | $0.00 |
| Materials Sub-total | $9,100,000.00 |
| **Total** | **$9,100,00.00** |

Advertiser Representative

10/10/22

BC Silver
CMO

Agency Representative

*Lauren Lanski*

10/10/22

Lauren Lanskie
Principal/Owner

## Terms & Conditions

1. This CMA is governed by the Master Service Agreement. By signing this CMA, Advertiser/Agency is agreeing to all terms specified, unless otherwise noted.

2. This Client Media Authorization (CMA) represents a pre-optimized budget distribution. Optimizations and budgets shifts may occur after the signing of this CMA, but total amount of original CMA shall not be exceeded without explicit permission and documented change order to CMA.

3. In purchasing media, materials or services on Client's behalf, Collateral Damage shall act as Client's agent and all orders placed and contracts entered into by Collateral Damage for such purposes shall be billed to Client in accordance with the terms of this Agreement. Collateral Damage shall be authorized to proceed with such expenditures on behalf of Client upon receipt of Client's signed Client Media Authorization. Collateral Damage is not responsible for the failure of media providers to provide their services.

4. Media Billing. In the event Collateral Damage is paying for media on Client's behalf, all such media shall be billed monthly to Client at the initiation of media buy, upon receipt of CMA and shall be subsequently reconciled to actual cost within ninety (90) daysafter receipt of media/site invoice documentation. Client acknowledges that Collateral Damage is not responsible for financing Client'sadvertising or media purchases, that Collateral Damage shall make no commitments to purchase media until it has received payment therefore from Client, and that Collateral Damage is merely acting as Client's agent in placing such orders. In the event of late payment, Collateral Damage reserves the right in its sole discretion to place on hold media purchases on Client's behalf until all outstanding invoices have been paid by Client. In the event of Client's failure to pay, Client will be directly liable to media vendors for any outstanding amounts due.

5. Regardless of termination, at no time shall Collateral Damage be required to repay or return any monies that have been paid to Collateral Damage pursuant to this Agreement and/or the services that Collateral Damage has provided hereunder. All monies paid hereunder to Collateral Damage shall be non-refundable. All payments made by Client hereunder shall be nonrefundable and deemed fully earned upon receipt. At no time and for no reason, shall Client nor any third party have the right to claw back any monies received by Collateral Damage hereunder. All purchases made by Collateral Damage hereunder shall be non-refundable.

**6. First Month's Payment and pre-paid media due upon receipt of invoice.**

7. Asterisk notes media spend that is directly billed to client on platform or by partnering agency.

# Subcontractor Agreement

This Subcontractor Agreement (the "Agreement") is entered into as of _____ 10/04/22 _____,
2022 (the "Effective Date") by and between Root Insurance Agency, LLC (hereinafter referred to as
"Contractor") and Collateral Damage, LLC (hereinafter "Subcontractor").

## 1. Engagement

Subcontractor engages Contractor to serve as a Subcontractor for the provision of strategy,
branding, media, and production services for Quantasy, LLC, pursuant to the Scope of Work
Agreement between Contractor and Quantasy, which is incorporated herein by referenced. The
aforementioned services shall be provided for a term ("Term") as hereinafter provided.

## 2. Scope of Services

Subcontractor will provide Contractor, for the benefit of Quantasy, with the services provided in
Schedule 1, attached hereto. Should Contractor request Subcontractor to perform additional
services beyond what is provided in Schedule 1, Contractor and Subcontractor will negotiate in
good faith with respect to the terms, conditions, and compensation for such additional services.
Any agreement for additional services will be in writing and considered an addendum to this
Agreement.

## 3. Term

The term of this Agreement shall commence on the date provided in Schedule 1 ("Commencement
Date") and shall continue until terminated by either party upon ninety (90) days' prior written
notice ("Notice Period"), provided that this Agreement may not be terminated effective prior to the
expiration of six (6) months from the Commencement Date. Notice shall be deemed given on the
day of certified mailing or. During the Notice Period, Subcontractor's rights, duties, and
responsibilities shall continue.

Regardless of termination, at no time shall Subcontractor be required to repay or return any monies
that have been paid to Subcontractor pursuant to this Agreement and/or the services that
Subcontractor has provided to Quantasy on behalf of Contractor. All monies paid hereunder to
Subcontractor shall be non-refundable.

## 4. Compensation and Billing Procedure

Subcontractor will be compensated and Contractor will be billed as provided in Schedule 1,
attached hereto. All payments made to Subcontractor hereunder shall be nonrefundable and
deemed fully earned upon receipt.

At no time and for no reason, shall Contractor nor any third party have the right to claw back any
monies received by Subcontractor hereunder.

## 5. Confidentiality and Safeguard of Property

Subcontractor and Contractor respectively agree to keep in confidence, and not to disclose or use
for its own respective benefit or for the benefit of any third party (except as may be required for the
performance of services under this Agreement or as may be required by law), any information,
documents, or materials that are reasonably considered confidential regarding each other's
products, business, customers, Subcontractors, suppliers, or methods of operation; provided,
however, that such obligation of confidentiality will not extend to anything in the public domain or
that was in the possession of either party prior to disclosure. Contractor and Subcontractor will take

reasonable precautions to safeguard property of the other entrusted to it, but in the absence of negligence or willful disregard, neither Contractor nor Subcontractor will be responsible for any loss or damage.

**6. Indemnities**

Contractor agrees to indemnify and hold Subcontractor harmless with respect to any claims or actions by third parties against Subcontractor for any and all claims that may be brought against Subcontractor by virtue of this Agreement, including, but not limited to any claims that may be brought by Quantasy against Subcontractor.

Contractor shall be responsible for fully indemnifying and holding harmless Subcontractor from any and all such claims, including covering Subcontractor's legal fees, costs, and/or any settlement payments or judgments that may require money to be paid by Subcontractor.

**7. Limitation of Liability**

EXCEPT FOR LIABILITY ARISING FROM A PARTY'S INDEMNIFICATION OBLIGATIONS, UNDER NO CIRCUMSTANCES AND UNDER NO LEGAL THEORY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY CHARACTER, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF GOODWILL, LOST PROFITS, LOST SALES OR BUSINESS, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, LOST DATA, OR FOR ANY AND ALL OTHER DAMAGES OR LOSSES, EVEN IF A REPRESENTATIVE OF A PARTY HAS BEEN ADVISED, KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES. EXCEPT FOR LIABILITY ARISING FROM A PARTY'S INDEMNIFICATION OBLIGATIONS, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY DIRECT DAMAGES, COSTS, OR LIABILITIES

**8. Amendments**

Any amendments to this Agreement must be in writing and signed by Contractor and Subcontractor.

**9. Notices**

Any notice shall be deemed given on the day of certified mailing or, if notice is by e-mail, on the next day following the day notice is e-mailed:

To:
**Root Insurance, LLC**

_____
_____
_____

To:
**Collateral Damage, LLC**

_____
_____
_____

**10. Governing Law**

This Agreement shall be interpreted in accordance with the laws of the State of California without regard to its principles of conflicts of laws. Jurisdiction and venue shall be solely within the State of California.

**11. No Presumption Against Drafter**

Each of the parties has jointly participated in the negotiation and drafting of this Agreement. In the event of an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by each of the parties and no presumptions or burdens of proof shall arise favoring any party by virtue of the authorship of any of the provisions of this Agreement.

**12. Advice of Counsel**

In entering into this Agreement, each party has relied upon the advice of counsel, or has been advised, and has had reasonable time and opportunity, to consult counsel of its own choosing. Each party has completely read, fully understands, and voluntarily accepts the terms of this Agreement.

13. **Cumulative Rights and Remedies**

The rights and remedies provided for in this Agreement shall be cumulative; resort to one right or remedy shall not preclude resort to another or to any other right or remedy provided for by law or in equity.

14. **Counterparts**

This Agreement can be executed in counterparts, and each counterpart, when executed, shall have the effectiveness of a signed original. Photocopies of such signed counterparts may be used in lieu of the originals for any purpose.

15. **Enforceability Representation**

Each party to this Agreement represents that this Agreement constitutes the legally valid and binding obligation of that party, enforceable against that party in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or affecting creditors' rights generally (including, without limitation, fraudulent conveyance laws) and by general principles of equity, including without limitation, concepts of materiality, reasonableness, good faith and fair dealing and the possible unavailability of specific performance or injunctive relief, regardless of whether considered in a proceeding in equity or at law.

IN WITNESS WHEREOF, Contractor and Subcontractor have executed this Agreement.

**CONTRACTOR,**

Root Insurance, LLC:

By:

Name:_____ BC Silver_____

Title:_____ CMO_____


**SUBCONTRACTOR,**

Collateral Damage, LLC:

By:_____ *Lauren Lanski*_____

Name:_____ Lauren Lanski_____

Title:_____ Officer_____

## Schedule 1: Scope of Work and Fees

**Description**

A-List Pro Athlete Partnership: CD will negotiate, secure and integrate athlete marketing partnership with A-list pro athlete Russell Wilson or pro athlete of similar stature (i.e. NFL, NHL, MLB, Nascar) and regard. Athlete will participate in content, social media posting and appearances including promotion of in-market activations in Colorado during Q2/Q3 2022.

Sports Influencers: CD will negotiate, secure and integrate up to ten but no less than six (6-10) athlete/influencer endorsements for Root Sports Influencer Marketing program. Athletes will participate in core campaign activations including online and in-market appearances

Sports Teams and Venue Partnership Activations: CD will negotiate, secure and integrate sports partnerships (i.e. NFL, NHL, MLB, Nascar) with sports teams and venues to activate against Root Insurance campaign creative.

Strategy and Implementation Support: CD will provide strategy and execution to integrate sport marketing programs across campaign elements including Best Driver in America Challenge, In-

Market activations and integrations.
**Total**                              **$9,100,000.00**