**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **Root, Inc.,** *et al.*, | : | Case No. 2:23-cv-512 |
| Plaintiffs, | : | Judge Sarah D. Morrison |
| v. | : | Magistrate Judge Chelsey M. Vascura |
| **Silver,** *et al.*, | : | **EVIDENTIARY HEARING REQUESTED** |
| Defendants. | : |  |

**MOTION FOR CONTEMPT**

Pursuant to 18 U.S.C. § 401(3) and this Court's inherent authority, Plaintiffs Root, Inc., Caret Holdings, Inc., and Root Insurance Agency, LLC (collectively, "Plaintiffs" or "Root") respectfully move for an order holding Defendant Brinson Caleb "BC" Silver ("Silver") and his company, Defendant Eclipse Home Design, LLC ("Eclipse") (together, "Defendants"), in contempt for violating the Court's February 27, 2023 Preliminary Injunction Order ("Order") (ECF No. 42). The Order expressly prohibits Silver and entities he controls from disposing or transferring assets in amounts greater than $7,500 and $5,000 per month, respectively. Nevertheless, bank account information obtained in discovery revealed that hundreds of thousands of dollars have been paid or transferred from Silver-controlled accounts over the past two months and while Silver was prohibited by this Court from spending or transferring those funds.

Without further intervention from the Court, funds will continue to be drained from Silver's accounts in violation of this Court's Order. Silver, who controls these accounts and is subject to the Court's orders, should be held in contempt and sanctioned to force compliance with the Court's Order. Root further requests expedited briefing on this motion and an in-person evidentiary hearing, requiring the personal attendance of Silver.

1

Pursuant to S.D. of Ohio Civ. R. 7.3, Root's counsel met and conferred with Defendants' counsel but were unable to resolve the issues set forth herein. A memorandum in support of this motion is attached. A proposed order is also attached.

Respectfully submitted,

/s/ William D. Kloss, Jr.
William D. Kloss, Jr. (0040854), Trial Attorney
Elizabeth S. Alexander (0096401)
Grace E. Saalman (0101603)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone (614) 464-6360
Fax (614) 719-4807
wdklossjr@vorys.com
esalexander@vorys.com
gesaalman@vorys.com

Matthew L. Kutcher (IL Bar No. 6275320)
Cooley LLP *Admitted Pro Hac Vice*
110 N. Wacker Drive Suite 4200
Chicago, IL 60606
Phone (312) 881-6500
Fax (312) 881 6598
mkutcher@cooley.com

Kristine A. Forderer (CA Bar No. 278754)
Cooley LLP *Admitted Pro Hac Vice*
3 Embarcadero Center
San Francisco, CA 94111
Phone (415) 693-2128
kforderer@cooley.com

*Counsel for Plaintiffs*

**MEMORANDUM IN SUPPORT**

Plastic surgery, mortgages, private schooling, credit card payments, and PayPal transfers are just some of the items that Silver and Eclipse have spent money on since this Court entered the temporary restraining order and preliminary injunction in this case. Those orders were designed to control Silver's lavish lifestyle and bring some semblance of control to the spending of the funds he plundered from Root. Regrettably, despite this Court's spending cap, Silver managed to squander at least $170,000 in less than 45 days. And this is only the amount that Root has thus far discovered – who knows what else will be found? Silver and Eclipse should be held in contempt.

**I.     BACKGROUND**

This case stems from Silver's brazen scheme to defraud Root of millions of dollars for his and his co-conspirators' own personal use. Anticipating that Silver would attempt to liquidate his assets in response to this litigation, Root sought – and the Court entered – an injunction to freeze Defendants' assets except for normal day-to-day transactions for both Silver and the companies he controls, totaling $7,500 and $5,000, respectively. Now, after receiving subpoena responses from various banks, Root has discovered that transfers and expenditures throughout March, totaling hundreds of thousands of dollars, have been made from Silver-controlled bank accounts in violation of the Court's Order. Consistent with the behavior that brought him to litigation, Root believes Silver is continuing to use back-door methods of moving money between accounts and entities and dispersing assets to unknown accounts and persons. Because of this active dissipation of assets – which should be set aside to satisfy a judgment at the conclusion of this litigation – Root respectfully requests the Court's attention to these violations of the Court's Order.

**A.  The Court Issued a Temporary Restraining Order and Preliminary Injunction.**

In early February, shortly after filing the Complaint in this matter, Root learned that Silver was attempting to sell at least one luxury home that had been originally purchased with Root's

funds and that Silver had opened at least one off-shore bank account. Believing Silver was attempting to conceal and disperse his assets, Root filed a motion for a temporary restraining order. The Court held a hearing on Plaintiffs' motion for temporary restraining order on February 16, 2023, which Silver's counsel attended. That same day, pursuant to Fed. Civ. R. 65(a), the Court entered a Temporary Restraining Order prohibiting Silver, Collateral Damage, and Eclipse from spending assets or incurring charges in amounts greater than $5,000. (ECF No. 30, "TRO".) The Court also set a hearing on Root's motion for preliminary injunction.

In lieu of proceeding with the scheduled hearing, Defendants' counsel and Root submitted an Agreed Preliminary Injunction to the Court. On February 27, 2023, the Court entered the Agreed Preliminary Injunction, which extended and slightly modified the TRO's conditions. (ECF No. 42, "Preliminary Injunction".) Among other restrictions, the Preliminary Injunction provides:

- Silver shall not individually, nor through others (including but not limited to any entity Silver owns or controls whether in whole or part) use, convert, sell or otherwise dispose of any assets in his possession, custody, and control totaling more than **$5,000** without leave of this Court. (ECF No. 42 at ¶ 4) (emphasis added).

- Silver shall not individually, nor through others (including but not limited to any entity Silver owns or controls whether in whole or part), incur charges or cash advances on any credit card, debit card, or checking card or incur liens or encumbrances on real personal property or other assets, including intangible assets. Notwithstanding, Silver may pay **personal expenses for day-to-day living in an amount no greater than $7,500 in total per month**. Any amount greater than that shall require leave of this Court. (*Id.* at ¶ 5) (emphasis added).

- Collateral Damage and Eclipse shall not directly, nor through others, use, convert, sell or otherwise dispose of any assets in their possession, custody, and control totaling more than **$5,000** without leave of this Court. (*Id.* at ¶ 6) (emphasis added).

- Collateral Damage and Eclipse shall not directly nor through others incur charges or cash advances on any credit card, debit card, or checking card, or incur liens or encumbrances on real property, personal property or other assets, in an amount greater than **$5,000 in total per month**. Any amount

4

greater than that shall require leave of this Court. (*Id.* at ¶ 7) (emphasis added).

### B. Root Obtained Third-Party Discovery, Demonstrating That Silver Disregarded the Preliminary Injunction by Incurring Charges and Dispersing Assets.

Thereafter, Root subpoenaed numerous third parties, including Bank of America. Bank of America's document production demonstrates that hundreds of thousands of dollars have been spent or transferred from Silver controlled accounts over the past two months without leave of Court and in violation of the Court's Order.[1] Indeed, it appears that between February 16, 2023 and March 29, 2023 Silver spent approximately $170,000 on a broad list of items including, plastic surgery, mortgages, private schooling, credit card payments and PayPal transfers.[2] Furthermore, over $150,000 was transferred by Silver between his accounts, including an unknown account for which Root has no records. And these only represent the accounts located by Root thus far. Undoubtedly, there are more.

By way of example only, the following are a few of Silver's specific and direct violations of the Court's Order:

- On March 8, 2023, **$21,937.59** was wired to Southwest Plastic Surgery from Silver's bank account. (Silver Bank of America 6351 Statements p. 3, attached as **Exhibit A**.)

- From March 6 to March 20, 2023, **$28,992.58** was disbursed from Silver's account in the form of payments to credit cards, debit and checkcard withdrawals, and cash withdrawals. (Silver Bank of America 3853 Statements pp. 6-7, attached as **Exhibit B**.)

- On March 20, 2023, a **$7,672.01** payment was made to Blackbaund Tuition Management, for private school tuition. (Ex. B p. 7.)

---

[1] Upon review of the third-party discovery responses, which include bank records for Collateral Damage, it appears that Silver plundered all of Collateral Damage's assets before the Court issued the Order.

[2] Root has yet to receive bank records for the time periods after March 29, 2023. In light of what has occurred already, one can only imagine what those records will show.

5

- On March 15, 2023, three installments totaling **$42,067.94** were made from Defendant Eclipse's account to a company called NewRez-Shellpoint. (Eclipse Bank of America 3297 Statements p. 3, attached as **Exhibit C**.)[3]

Silver and his entities did not seek leave of Court for these transactions. These examples are only a few of the problematic charges that have been incurred since the Preliminary Injunction was issued in February.

In addition to the direct violations of the Order, Root has strong reason to believe that Silver is disposing of additional assets beyond what is listed in the few statements to which Root has access. For example, from February 16, 2023 to March 29, 2023:

- $152,190.47 was received into Silver's account from an unknown account;

- Approximately $150,000 of that money was wired to another Silver controlled account;

- Then, approximately $88,000 was wired from Silver's account to an unknown Paypal account.

(Ex. A pp. 3-4.; Ex. B pp. 5-6.) The fact that Silver's account received $152,000 demonstrates that Silver has access to additional assets that Root is not aware of and that the Court cannot monitor. Equally suspicious are the payments totaling over $88,000 to a PayPal account. In sum, it appears that in addition to spending significant amounts of cash, other significant amounts are being liquidated and dispersed to unknown persons and accounts from Silver's accounts. It is very likely that Silver made these transactions to conceal his spending from Root and this Court before he faces judgment in this litigation, and that he will continue to do so without the Court's intervention.

---

[3] **Exhibit D**, attached to this Motion, is a Declaration of Bank of America Bank Officer and/or Custodian of Records that Root's counsel received with Bank of America's production. **Exhibit E**, attached to this Motion, is a declaration of Attorney Grace Saalman verifying Root's counsel's receipt of the bank account statements and declaration from Bank of America.

## II. ARGUMENT

### A. The Court Should Exercise Its Authority to Hold Silver and Eclipse in Contempt.

This Court has the authority – rooted in statute and common law – to hold parties in contempt for their violation of a court order. Pursuant to 18 U.S.C. § 401 (3), "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." In addition, the Sixth Circuit has long recognized that the "power to enforce obedience . . . is a power which is inherent in all courts." *In re Manufacturers Trading Corp.*, 194 F.2d 948, 955 (6th Cir. 1952); *see also Mitan v. International Fidelity Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) ("The federal courts' inherent power to protect the orderly administration of justice and to maintain the authority and dignity of the court extends to a full range of litigation abuses."). Indeed, "[a] court's ability to issue injunctions, and then enforce those injunctions with a finding of contempt, springs from the court's inherent equitable powers." *CFE Racing Prods v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2016) (quoting *Innovation Ventures, LLC v. N2G Distrib.*, 763 F.3d 524, 544 (6th Cir. 2014)).

To support a motion for civil contempt, a plaintiff must establish by "clear and convincing evidence that the defendant violated a definite and specific order of the court requiring the defendant to perform or refrain from performing a particular act or acts with knowledge of the court's order." *CFE Racing*, 793 F.3d at 598 (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). "There is no requirement to show intent beyond knowledge of the order." *Id.* (citing *In re Jacques*, 761 F.2d 302, 306 (6th Cir. 1985)). Here, Defendants: (1) were subject to a definite and specific order; (2) knew of the order; and (3) violated the order.

7

First, the Court imposed a "definite and specific order" which required Defendants to "refrain from performing a particular act." *See CFE Racing*, 793 F.3d at 598. The Court ordered that Silver was prohibited from spending, transferring, or incurring charges greater than $5,000 per month, except that he could spend up to $7,500 per month on day-to-day expenses. (Order at 3.) The Order prohibited Eclipse from spending, transferring, or incurring charges greater than $5,000 per month. (*Id.* at 4.)

Second, Silver was aware of the Court's orders. Silver's counsel was present at the TRO hearing in which the Court first ordered that Silver, Collateral Damage, and Eclipse shall cease spending more than $5,000. (*See* Informal Hearing Minute Entry, ECF No. 28.) Then, over the next few weeks, Silver's counsel worked with Root's counsel to draft and submit the Proposed Agreed Preliminary Injunction, which was adopted by the Court. (*See* Preliminary Injunction, ECF No. 42.) Silver's counsel received copies of the TRO and Preliminary Injunction and has represented that he discussed each with his client. At bottom, Silver knew he was prohibited from spending and transferring his money above the Court's restrictions.

Third, the evidence demonstrates that Silver appears to be violating the Court's Order. Silver violated the Order when more than $7,500 was spent from his accounts within a one-month period, including a $21,000 charge for plastic surgery on March 8th and more than $28,000 in credit card expenses in March. (Ex. A p. 3; Ex. B pp. 6-7.) In addition, Silver and, through Silver, Eclipse, also violated the Court's Order. Eclipse violated the Order by spending more than $5,000 without leave of Court, including its payment of $42,000 to an unknown company on March 15th. (Ex. C p. 3.)

Therefore, pursuant to this Court's statutory and inherent authority, Defendants should be held in contempt.

8

### B. The Court Should Order Appropriate Remedies to Coerce Silver's Compliance with the Preliminary Injunction and Compensate Root for Its Losses.

The purposes of imposing sanctions for civil contempt are to coerce the defendant into complying with the court's order and to compensate the movant for any losses sustained. *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947). In line with these objectives, Root requests that the Court exercise its statutory and inherent authority to coerce Silver into complying with its orders by: (1) appointing a receiver to make an accounting of the disputed assets and safeguard the disputed assets until litigation is concluded by taking control of all of Silver's assets and issuing Silver a $7,500 monthly allowance; or (2) imprisoning Silver; and (3) awarding Root attorneys' fees and costs for this motion and other sanctions the Court deems appropriate. It is of paramount importance that Silver's reckless spending of Root's funds be brought under control. Regrettably, the Court's temporary restraining order and preliminary injunction have had little effect on Silver's conscious actions. Thus, the Court must resort to more significant restrictions. Otherwise, the assets stolen by Silver will be gone.

### 1. The Court Should Appoint a Receiver to Manage Silver's Assets and Provide Him a Monthly Allowance.

Root requests the Court appoint a receiver to control Silver's assets. Federal Rule of Civil Procedure 66 permits courts to appoint a receiver to administer property and funds in accordance "with the historical practice in federal courts or with a local rule." A court-appointed receiver's role is to safeguard assets and administer property to in accordance with a district court's orders. *Liberte Capital Group, LLC*, 462 F.3d at 551 (quoting 13 Moore's Federal Practice 66.02-.03 (3d ed.1999)) ("A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation."). In the Sixth Circuit, district courts are directed to consider the following factors in deciding whether to appoint a receiver:

> whether the property at issue is in imminent danger of . . . being lost, concealed, injured, diminished in value, or squandered, whether the defendant engaged in fraudulent conduct, the inadequacy of the available legal remedies, the lack of less drastic equitable remedies, and the likelihood that the appointment will do more good than harm, . . . whether there is inadequate security for a debt and whether a debtor is insolvent.

*Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (internal quotations omitted) (quoting 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2983 (3d ed. 2014)).

All of the above considerations weigh in favor of appointing a receiver in this case. Silver's funds are in imminent danger of being lost, concealed, squandered, and diminished in value if the spending and transferring of funds to unknown persons and accounts continues at anywhere near the pace of the last two months. Furthermore, the evidence in this case will demonstrate that Silver used an affiliated entity to siphon over $10 million from Root, Silver clearly knows how to conceal and disperse funds, and will continue to do so if those funds are not frozen or protected. There are no adequate legal remedies once the money is gone, and appointment of a receiver will ensure that Root will be able to recover after final judgment.

As courts have noted, "[t]he appointment of a receiver is an especially appropriate remedy in cases involving fraud and the possible dissipation of assets since the primary consideration in determining whether to appoint a receiver is the necessity to protect, conserve and administer property pending final disposition of a suit." *In re McGaughey*, 24 F.3d 904, 908 (7th Cir. 1994) (finding appointment of a receiver was prudent where the debtor had a history of fraud, tax evasion, and asset dissipation). Indeed, this Court has previously appointed a receiver to stop defendants from violating injunctive orders. In *McGirr v. Rehme*, No. 16-464, 2018 U.S. Dist. LEXIS 130673, at *31 (S.D. Ohio Aug. 3, 2018), the court appointed a receiver where there was a history of fraudulent transfers, ample evidence that the defendants were disposing of assets in violation of

the temporary restraining order, and the property was "in imminent danger of being lost or diminishing in value." The same circumstances exist here.

### 2. In Lieu of Appointing a Receiver, the Court Could Imprison Silver.

The Court also has power to imprison Silver, especially in light of the fact that an order is demonstrably insufficient to prevent him from dispersing assets. Imprisonment is an appropriate remedy to prevent future violations of the Court's Order. 18 U.S.C. § 401 (authorizing district courts to "punish by fine or imprisonment, or both," a defendant's "[d]isobediance or resistance to [a] lawful . . . order"); *see United States v. Tankersley*, 277 F. Supp. 2d 908, 916 (N.D. Ind. 2003) (civil defendant imprisoned for contempt because he sold his yacht and attempted to transfer proceeds of the sale to an off-shore account after the Court issued a preliminary injunction freezing his assets); *Singh v. Capital Univ. Law & Graduate Ctr.*, 6th Cir. No. 00-3244, 2000 U.S. App. LEXIS 29134, at *1 (Nov. 7, 2000) (affirming Southern District of Ohio Court's imprisoning a plaintiff after he was found in civil contempt of court for refusing to perform community service as an alternative to paying final judgment); *United States v. Koubriti*, 305 F. Supp. 2d 723, 741 (E.D. Mich. 2003) (noting that a court may imprison a defendant as a civil contempt sanction to coerce him to commit an affirmative act) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994)).

### 3. Root is Entitled to Monetary Sanctions, Including Attorneys' Fees and Costs of Investigating Silver's Conduct Violating the Preliminary Injunction.

Root also requests the Court award its attorneys' fees and costs stemming from this contempt motion, including costs of creating and serving subpoenas on Defendants' banks, costs of investigating Defendants' bank account transactions that violate the Preliminary Injunction, and attorneys' fees for filing this motion and attending the hearing. *See Redken Labs. v. Levin*, 843 F.2d 226, 230 (6th Cir. 1988) (finding a successful movant may recover attorney fees and costs in

connection in the contempt proceeding). Due to Silver's willful violation of the Court's Order, monetary sanctions are appropriate here.

### III. CONCLUSION

For the foregoing reasons, Root respectfully asks the Court to grant its motion, order Silver to attend an in-person hearing to determine the extent of Silver's violation of this Court's Order, hold Silver and Eclipse in contempt, and order any other such relief as is requested herein and as this Court deems appropriate.

Respectfully submitted,

*/s/ William D. Kloss, Jr.*
William D. Kloss, Jr. (0040854), Trial Attorney
Elizabeth S. Alexander (0096401)
Grace E. Saalman (0101603)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone (614) 464-6360
Fax (614) 719-4807
wdklossjr@vorys.com
esalexander@vorys.com
gesaalman@vorys.com

Matthew L. Kutcher (IL Bar No. 6275320*)*
Cooley LLP *Admitted Pro Hac Vice*
110 N. Wacker Drive Suite 4200
Chicago, IL 60606
Phone (312) 881-6500
Fax (312) 881 6598
mkutcher@cooley.com

Kristine A. Forderer (CA Bar No. 278754)
Cooley LLP *Admitted Pro Hac Vice*
3 Embarcadero Center
San Francisco, CA 94111
Phone (415) 693-2128
kforderer@cooley.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of the foregoing was filed electronically on this 2nd day of May 2023 with the Clerk of Court using the CM/ECF system.  Service will be made through the Court's CM/ECF system on all parties and attorneys so registered, and all parties may access this filing through the Court's system.

      A copy was also sent by regular U.S.P.S. mail and email to the following:

Paige McDaniel  
5576 Alexanders Lake Road  
Stockbridge, GA  30281

                                              */s/ William D. Kloss, Jr.*  
                                              William D. Kloss, Jr.  (0040854)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | : | |
|---|---|---|
| **Root, Inc.,** *et al.*, | : | **Case No. 2:23-cv-512** |
| | : | |
| Plaintiffs, | : | **Judge Sarah D. Morrison** |
| | : | |
| V. | : | **Magistrate Judge Chelsey M. Vascura** |
| | : | |
| **Silver,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

### [PROPOSED] ORDER OF CONTEMPT

This matter is before the Court on the Motion for Contempt filed by Plaintiffs Root, Inc., Caret Holdings, Inc., and Root Insurance Agency, LLC's (collectively, "Plaintiffs" or "Root") against Defendants Brinson Caleb "BC" Silver ("Silver") and Eclipse Home Design, LLC ("Eclipse"). (ECF No. __.) On February 27, 2023, the Court entered a Preliminary Injunction Order against Silver and Eclipse. (ECF No. 42.) Upon receiving Root's Motion for Contempt, the Court ordered expedited briefing and held an in-person evidentiary hearing on _____.

For good cause shown, Root's Motion for Contempt is **GRANTED**. The Court **ORDERS** as follows:

1. The Court finds Silver and Eclipse in contempt of the Court's February 27, 2023 Preliminary Injunction Order;

2. The Court appoints _____ as the receiver of all monetary and real property assets in the possession, custody, or control of Silver, including but not limited to the monetary and real property assets of Defendant Collateral Damage, LLC and Eclipse;

14

3. Silver shall relinquish access and control all of his monetary and real property assets, including but not limited to bank accounts, cash, Venmo and PayPal accounts, credit and debit cards, investment property, and real property to a court-appointed receiver within 7 days of this Order;

4. Silver shall submit to the Court and/or receiver an accounting of all of his monetary and real property assets and accounts, as well as personal assets with values greater than $5,000, within 7 days of this Order;

5. Silver shall submit to the Court and/or receiver an accounting of his monthly mortgage payments so the receiver may distribute funds necessary for mortgage payments within 7 days of this Order;

6. Silver shall not access or open, or attempt to access or open, any bank accounts, credit cards, debit cards, investment property, or other financial accounts;

7. The receiver shall permit a monthly allowance of $7,500 per month to Silver for day-to-day expenses, starting on the date the receiver gains control of all Silver's assets.

8. All other funds requested by Silver to the receiver must first be approved by this Court.

9. Any and all expenses and withdrawals by Eclipse and Collateral Damage must first be approved by this Court.

10. The receiver shall pay Root its reasonable attorneys' fees and costs connected to the Motion for Contempt in amount of $ _____ .

This Order shall remain in effect until further order of this Court.

**IT IS SO ORDERED.**

Date: _____

        **SARAH D. MORRISON**
        **UNITED STATES DISTRICT JUDGE**