**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROOT, INC.,** *et al,* | ) | CASE NO.: 2:23-CV-00512-SDM-CMV |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE: SARAH D. MORRISON |
| | ) | |
| **BRINSON CALEB SILVER,** et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SPECIALLY APPEARING DEFENDANTS QUANTASY & ASSOCIATES LLC'S AND WILLIAM CAMPBELL'S MOTION TO DISMISS COMPLAINT

Specially Appearing Defendants Quantasy & Associates LLC and William Campbell ("Quantasy Defendants") hereby respectfully move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing Plaintiffs' Amended Complaint against the Quantasy Defendants with prejudice. A memorandum in support of this motion is attached hereto and incorporated as if fully stated herein.

Respectfully submitted,

*/s/ Matthew D. Ridings*
Matthew D. Ridings, Trial Attorney
(0079402)
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, Ohio 44114
Telephone: 216.566.5561
Facsimile: 216.566.5800
Matt.Ridings@ThompsonHine.com

Joan E. Meyer
(Admitted *Pro Hac Vice*)
THOMPSON HINE LLP
1919 M Street, N.W.
Suite 700
Washington, D.C. 20036-3537
Telephone:  202.263.4115
Facsimile:  202.331.8330
Joan.Meyer@ThompsonHine.com

Jamar T. King (0091093)
THOMPSON HINE LLP
10050 Innovation Drive, Suite 400
Miamisburg, OH 45342
Telephone:  937.443.6852
Facsimile:  937.443.6635
Jamar.King@ThompsonHine.com

Karim Sabbidine
(Admitted *Pro Hac Vice*)
THOMPSON HINE LLP
335 Madison Avenue
12th Floor
New York, NY 10017
Telephone:  212.908.3944
Facsimile:  212.344.6101
Karim.Sabbidine@ThompsonHine.com

Joshua H. Epstein
(Admitted *Pro Hac Vice*)
Eva M. Jimenez
(Admitted *Pro Hac Vice*)
DAVIS+GILBERT LLP
1675 Broadway
New York, NY 10019
Telephone:  212.468.4869
jepstein@dglaw.com
ejimenez@dglaw.com

*Attorneys for Specially Appearing Defendants
William Campbell and Quantasy &
Associates, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROOT, INC.,** *et al,* | ) | CASE NO.: 2:23-CV-00512-SDM-CMV |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE: SARAH D. MORRISON |
| | ) | |
| **BRINSON CALEB SILVER,** et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF SPECIALLY APPEARING DEFENDANTS QUANTASY & ASSOCIATES LLC'S AND WILLIAM CAMPBELL'S MOTION TO DISMISS COMPLAINT

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................... 1

Relevant Alleged Facts .................................................................................................. 3

Law & Argument ............................................................................................................ 7

I.      Count I of the Amended Complaint Must Be Dismissed Because the RICO
        Claims Are Insufficiently Pled as to Both Quantasy and Campbell. ..................... 8

        A.      The Amended Complaint Fails to Allege a Pattern of Racketeering
                Activity as to Either Quantasy or Campbell. ............................................ 8

A RICO plaintiff must allege that each defendant, not merely the enterprise as a whole, personally participated in series of predicate acts that have continuity and are related. Continuity is centrally a temporal concept, and the predicate acts alleged by Quantasy, at most, cover one month of time and involve a single scheme with a single victim. This is not sufficient to allege a pattern of racketeering activity.

*Primary authority:*

*H.J., Inc v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Third Millennium Materials, LLC v. Baker*, 2020 U.S. Dist. LEXIS 48480 (S.D. Ohio 2020); *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006).

        B.      The Predicate Acts Attributed to the Quantasy Defendants Cannot
                Form the Basis of a RICO Claim in This Instance. ................................. 13

In order to bring a RICO claim, plaintiffs must show that the Quantasy Defendants' commission of the alleged predicate acts was the but-for and proximate cause of Root's injuries. The Amended Complaint alleges that the frauds committed by the Quantasy Defendants occurred *after* Silver instructed Quantasy to transfer Root's advertising funds to Collateral Damage; accordingly, Root cannot show that its damages were the cause of its injuries or that it relied on Quantasy's alleged misrepresentation in such a way as to cause its injuries.

*Primary authority:*

*Bridge v. Phx. Bond & Indemn. Co.*, 553 U.S. 639 (2008); *Grange Mut. Cas. Co. v. Mack*, 290 Fed App'x 832 (6th Cir. 2008).

        C.      The Amended Complaint Fails to Allege an Association-in-Fact
                Enterprise ............................................................................................... 15

An association-in-fact enterprise must have an ascertainable structure with at least three features: a common purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the

# TABLE OF CONTENTS
## (continued)

Page

associates to pursue the enterprises purpose.  The enterprise that is alleged by Root is a rimless hub-and-spoke arrangement with Silver at the center and the other alleged participants as the spokes.  There is no allegation, however, that the spokes were aware of each other's conduct and that they worked together in a way to further the purpose of the enterprise or that the participants had a common purpose.  This is insufficient to plead an enterprise.

*Primary authority:*

*Boyle v. United States*, 556 U.S. 938 (2009); *D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018); *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010).

D. The Amended Complaint Fails to Allege Quantasy or Campbell Participated in the Operation or Management of the Enterprise............. 17

To be liable for damages caused by a RICO enterprise, a defendant must participate in the operation or management of the enterprise.  The complaint does not adequately allege the Quantasy Defendants played a role in leading, directing, or managing the enterprise's affairs.  Because the test is a test of control of the enterprise, and not mere involvement, the plaintiffs are unable to plead their RICO claim against the Quantasy Defendants.

*Primary authority:*

*Reves v. Ernst & Young*, 507 U.S. 170 (1993); *United States v. Fowler*, 535 F.3d 408 (6th Cir. 2008); *Stone v. Kirk*, 8 F.3d 1079 (6th Cir. 1993).

II. Plaintiffs' Fraud Claims Fail Because They Are Duplicative of Their Breach of Contract Claim. ................................................................................... 19

Where the same facts give rise to both a fraud claim and a breach of contract claim, the fraud claim is generally precluded by the contract claim under Ohio law and can only proceed in limited circumstances not present here.  The facts alleged for the purported fraud completely overlap the contract claim, and the two counts seek the same damages.  Because of this overlap, the fraud claim cannot proceed.

*Primary authority:*

*WMS Monroe LLC v. Gulfport Energy Corp.*, No. 2:19-cv-2908, 2020 U.S. Dist. LEXIS 265937 (S.D. Ohio Jan. 6, 2020); *Gregoire v. Rice Drilling D. LLC*, No. 2:21-cv-463, 2021 U.S. Dist. LEXIS 263733, at *3 (S.D. Ohio Nov. 17, 2021).

A. Root's Fraudulent Concealment Claim Fails on Its Face and Should be Dismissed............................................................................... 22

# TABLE OF CONTENTS
(continued)

A fraudulent concealment claim is not actionable in Ohio unless the defendant has a duty to disclose the purportedly concealed facts. Plaintiffs' claim that Quantasy had a duty to disclose because it was in a business transaction is not consistent with Ohio law, which does not create a duty to disclose from mere participation in a business transaction.

*Primary authority:*

*Demcyzk v. Lesh, Casner & Miller (In re Kirkpatrick)*, 254 B.R. 378 (N.D. Ohio 2000); *Steinfels v. Ohio Dept. of Commerce*, 129 Ohio App. 3d 800 (1998).

1. The Quantasy Defendants Had No Duty to Disclose .................. 24

2. The Complaint Does Not Plausibly Allege that Quantasy Concealed Material Facts from Root. .......................................... 26

3. Root Does Not Plausibly Allege Scienter. ................................... 29

B. Root's Fraudulent Misrepresentation Claim Fails as a Matter of Law ....................................................................................................... 31

III. Plaintiffs Have Failed to Demonstrate That Campbell is Personally Liable ....... 33

Plaintiffs' theory of liability for Mr. Campbell is not clear, and to the extent that it seeks personal liability based on his ownership of Quantasy, the Plaintiffs have failed to allege that veil piercing is proper in this situation. The fundamental rule of corporate law is that shareholder of a corporation are not liable for the acts of the corporation except if they plead and prove that the corporation is the alter ego of the shareholder, the shareholder committed a fraud, and the plaintiff suffered a loss from the improper control of the company by the shareholder. None of these prongs have been met.

*Primary authority:*

*Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274 (1993); *Rui He v. Rom*, 751 F. App'x 664 (6th Cir. 2018).

A. Plaintiffs Have Failed to Demonstrate That Quantasy is an Alter-Ego of Campbell ...................................................................................... 34

B. Plaintiffs Have Failed to Demonstrate that Campbell Committed a Fraud ...................................................................................................... 36

C. Plaintiffs Have Not Shown a Loss Stemming from the Allegedly Improper Control ............................................................................... 37

IV. Ohio Law Does Not Permit a Claim for Conversion of Money in This Instance ................................................................................................ 37

# TABLE OF CONTENTS
(continued)

Ohio law permits a conversion claim for money only if the money is earmarked or is a specific corpus of money, which is not what is alleged here.

*Primary authority:*

*RAE Assocs., Inc. v. Nexus Communications, Inc.*, 63 N.E.3d 757 (Ohio Ct. App. 10th Dist. 2015).

V.    Plaintiffs' Claims Under Ohio Rev. Code 2307.60 Are Not Permitted by the Statute and Must be Dismissed. .................................................................... 39

Ohio Revised Code § 2307.60 applies only to tort actions, which are defined to exclude contract claims. Because the Plaintiffs have alleged a contract claim in this action that arises out of the same common core of facts, the existence of a contract claim precludes the assertion of tort claims under Section 2307.60.

*Primary authority:*

*STE Invs., LLC v. Macprep, Ltd.*, 2022-Ohio-2614, ¶42.

VI.    Plaintiffs Have Failed to State a Claim for Breach of Contract. .......................... 42

Plaintiffs' contract claim alleges three breaches: (1) entering into a subcontract with Collateral Damage; (2) failing to provide the agreed-upon service; (3) breach of the implied covenant of good faith and fair dealing. None of these grounds are sufficient because the plaintiffs did not identify the provisions of the agreement it alleges that Quantasy breached, the entry of a subcontract was expressly permitted by the agreements, and breach of the implied covenant of good faith and fair dealing does not support a stand-alone contract claim.

*Primary authority:*

*Doe v. BMG Sports, LLC*, 584 F. Supp. 3d 497 (S.D. Ohio 2022); *Williams v. NAACP*, 2019-Ohio-1897, at ¶ 26 (10th Dist. 2019).

VII.    Plaintiffs' Civil Conspiracy Count Must be Dismissed. ..................................... 45

VIII.    This Court Does Not Have Personal Jurisdiction Over Either Quantasy or Campbell. .......................................................................................................... 46

Plaintiffs do not identify a basis for this Court's exercise of personal jurisdiction over the Quantasy Defendants, but assuming that they are relying on RICO's nationwide service of process provision, they have failed to establish that the ends of justice require the Court to exercise jurisdiction over Quantasy and Campbell, and the exercise of jurisdiction over two California citizens without minimum contacts with Ohio would violate due process.

# TABLE OF CONTENTS
(continued)

**Page**

*Primary authority:*

*Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432 (6th Cir. 2022); *E&M Props. v. RazorGator, Inc.*, 2008 U.S. Dist. LEXIS 33384 (E.D. Mich. 2008); *Enginetec Corp. v. Boutin*, 2008 U.S. Dist. LEXIS 137939 (N.D. Ohio 2008).

A.    Facts Relevant to Personal Jurisdiction ..................................................... 46

B.    Plaintiffs Have Not Met Their Burden to Show that the Court Can Exercise Personal Jurisdiction Over the Quantasy Defendants. .............. 49

IX.    Conclusion ......................................................................................................... 54

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800537 Ont. Inc. v. Auto Enters.*,
   113 F. Supp. 2d 1116 (E.D. Mich. 2000) ............................................................................51

*Aces High Coal Sales, Inc. v. Cmty. Bank & Trust*,
   768 Fed. Appx. 446 (6th Cir. 2019) ...................................................................................12

*Am. Coal Sales Co. v. N.S. Power, Inc.*,
   2009 U.S. Dist. LEXIS 13550 (S.D. Ohio Feb. 23, 2009) ...................................................25

*Am. Eagle Credit Corp. v. Gaskins*,
   920 F.2d 352 (6th Cir. 1990) ............................................................................................12

*Amazon.com v. WDC Holdings, LLC*,
   2023 U.S. Dist. LEXIS 61285 (E.D. Va. April 6, 2023) ......................................................16

*ArmorSource LLC v. Kapah*,
   No. 2:18-cv-905, 2020 U.S. Dist. LEXIS 53159 (S.D. Ohio Mar. 26, 2020) .........................41

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. *passim*

*B&P Co. v. TLK Fusion Entm't LLC*,
   2013 U.S. Dist. LEXIS 26131 (S.D. Ohio Feb. 26, 2013) ...................................................22

*Barbara Mills v. City of Westlake*,
   8th Dist. Cuyahoga No. 103643, 2016-Ohio-5836 ...............................................................44

*Barnes v. First Am. Title Ins. Co.*,
   2006 U.S. Dist. LEXIS 54984 (N.D. Ohio Aug. 4, 2006) ...................................................37

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................................28

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007), and (iii) ............................................................................7, 24, 28, 44

*Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*,
   67 Ohio St. 3d 274 (Ohio 1993) ...................................................................................33, 36

*Bennett v. MIS Corp.*,
   607 F.3d 1076 (6th Cir. 2010) .....................................................................................23, 31

*Boyle v. United States*,
    556 U.S. 938 (2009)...................................................................................................15, 17

*Bridge v. Phx. Bond & Indem. Co.*,
    553 U.S. 639 (2008)............................................................................................13, 14, 15

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).........................................................................................................52

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986) .....................................................................................49, 50

*Carter v. Natl'l City Bank*,
    2018 U.S. Dist. LEXIS 122683 (S.D. Ohio July 23, 2018) ............................................29, 30

*Cianfaglione v. Lake Nat'l Bank*,
    2019- Ohio 1299, 134 N.E.3d 661 (Ohio Ct. App. 2019).................................................23

*City of Monroe Emples. Ret. Sys. v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005) .........................................................................................28

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, et al.*,
    752 F. Supp. 2d 1047 (S.D. Ohio 2010) .........................................................................30

*Columbia Park East MHP, LLC v. U.S. Bank, N.A.*,
    2018 U.S. Dist. LEXIS 136268 (N.D. Ohio Aug. 12, 2018) ............................................12, 13

*Compound Prop. Mgmt. v. Build Reality, Inc.*,
    462 F.Supp.3d 839 (S.D. Ohio 2020) ..............................................................................9

*Cory v. Aztec Steel Bldg., Inc.*,
    468 F.3d 1226 (10th Cir. 2006) ....................................................................................49

*Courser v. Mich. House of Representatives*,
    831 Fed. Appx. 161 (6th Cir. 2020)................................................................................8, 9

*CPG Int'l, LLC v. A&R Logistics, Inc.*,
    No. 1:15-cv-00451, 2016 U.S. Dist. LEXIS 173478 (S.D. Ohio Dec. 15, 2016)...................22

*Crest Constr. II, Inc. v. Doe*,
    660 F.3d 346 (8th Cir. 2011) ..........................................................................................9

*D'Addario v. D'Addario*,
    901 F.3d 80 (2d Cir. 2018)..............................................................................................16

*Dana Ltd. v. Aon Consulting*,
    984 F. Supp. 3d 755 (N.D. Ohio 2013)............................................................................38

*De Boer Structures (U.S.A.) v. Shaffer Tent & Awning Co.*,
   233 F. Supp. 2d 934 (S.D. Ohio 2002) .................................................................25

*Decaprio v. Gas & Oil*,
   2012-Ohio-5866 (Ohio Ct. App. 9th Dist. 2012) ...............................................35

*Delay v. Rosenthal Collins Grp., LLC*,
   585 F.3d 1003 (6th Cir. 2009) ...........................................................................48

*Demcyzk v. Lesh, Casner & Miller (In re Kirkpatrick)*,
   254 B.R. 378 (N.D. Ohio 2000) .........................................................................24

*Doe v. BMG Sports, LLC*,
   584 F. Supp. 3d 497 (S.D. Ohio 2022) .........................................................43, 44

*E&M Props. v. RazorGator, Inc.*,
   2008 U.S. Dist. LEXIS 33384 (S.D. Mich. 2008) ..........................................50, 51

*Ebenisterie Beaubois Ltee v. Marous Bros. Constr., Inc.*,
   No. 02 CV 985, 2002 U.S. Dist. LEXIS 26625 (N.D. Ohio Oct. 17, 2002) ...........21

*Edmonson & Gallagher v. Alban Towers Tenants Ass'n*,
   48 F.3d 1260 (D.C. Cir. 1995) ...........................................................................11

*Enginetec Corp. v. Boutin*,
   2008 U.S. Dist. LEXIS 137939 (N.D. Ohio 2008) ..............................................51

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976).............................................................................................28

*FC Inv. Grp. LC v. IFX Mkts., Ltd.*,
   529 F.3d 1087 (D.C. Cir. 2008), *overruled on other grounds*, 985 F.3d 883
   (D.C. Cir. 2021) ...................................................................................................49

*Fed. Ins. Co. v. Fredericks, Inc.*,
   2015-Ohio-694 (Ohio Ct. App. 2nd Dist. 2015)................................................35

*Fenner v. GM, LLC*,
   298 F. Supp. 3d 1037 (E.D. Mich. 2018)..............................................................9

*FERC v. Coaltrain Energy, L.P.*,
   501 F. Supp. 3d. 503 (S.D. Ohio 2020) .............................................................28

*Floyd v. Kent County*,
   454 Fed. Appx. 493 (6th Cir. 2012).....................................................................7

*Foster v. Health Recovery Servs.*,
   493 F. Supp. 3d 622 (S.D. Ohio 2020) ...............................................................44

*Fox v. Nationwide Mut. Ins. Co.*,
2018-Ohio-2830 (10th Dist. 2018) ......................................................................43

*Frank v. D'Ambrosi*,
4 F.3d 1378 (6th Cir. 1993) ................................................................................15

*Franke v. Norfolk S. Ry. Co.*,
No. 3:20 CV 2152, 2021 U.S. Dist. LEXIS 159285 (N.D. Ohio Aug. 24, 2021)
.............................................................................................................................31

*Gascho v. Global Fitness Holdings, LLC*,
863 F. Supp. 2d 677 (S.D. Ohio 2012) ................................................................37

*GE Inv. Private Placement Partners II v. Parker*,
247 F.3d 543 (4th Cir. 2001) ..............................................................................12

*Glimcher Co., LLC v. Deavers the Shops at Ety Vill.*,
2010 U.S. Dist. LEXIS 38214 (S.D. Ohio Apr. 19, 2010) ..................................28

*Goren v. New Vision Int'l, Inc.*,
156 F.3d 721 (7th Cir. 1998) .........................................................................18, 19

*Gould, Inc. v. Mitsui Min. & Smelting Co.*,
750 F. Supp. 838 (N.D. Ohio 1990)....................................................................10

*Grange Mut. Cas. Co. v. Mack*,
290 Fed. App'x 832 (6th Cir. 2008) ....................................................................14

*Gregoire v. Rice Drilling D. LLC*,
No. 2:21-cv-463, 2021 U.S. Dist. LEXIS 263733 (S.D. Ohio Nov. 17, 2021) ..........20, 21, 22

*Grubbs v. Sheakley Group, Inc.*,
807 F.3d 785 (6th Cir. 2015) ..............................................................................11

*H. J., Inc. v. Northwestern Bell Tel. Co.*,
492 U.S. 229 (1989).....................................................................................8, 9, 12

*Hensley Mfg. v. ProPride, Inc.*,
579 F.3d 603 (6th Cir. 2009) ................................................................................7

*Hirsch v. Wells Fargo Bank, N.A.*,
No. 1:13-cv-01489, 2014 U.S. Dist. LEXIS 29587 (N.D. Ohio Mar. 7, 2014)......................28

*United States ex rel. Howard v. Lockheed Martin Corp.*,
499 F. Supp. 2d 972 (S.D. Ohio 2007) ................................................................23

*Innovative Metal Design, Inc. v. U.S. Bank Nat'l Ass'n*,
2015 U.S. Dist. LEXIS 171329 (D. Ore. Nov. 18, 2015)......................................9

*In re Insurance Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010)................................................................16

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)............................................................................52

*Johnson v. U.S. Bank Nat'l Ass'n & Nat'l City Bank*,
No. 1:09-cv-492, 2010 U.S. Dist. LEXIS 153047 (S.D. Ohio May 12, 2010)......................31

*Joseph v. Joseph*,
No. 19-3350, 2022 U.S. App. LEXIS 23216 (6th Cir. Aug. 18, 2022) ......................23, 24, 27

*Kattula v. Jade*,
2007 U.S. Dist. LEXIS 42365 (W.D. Ky. 2007) ................................................51

*Kelly v. U.S. Bank Nat'l Ass'n*,
2015 U.S. Dist. LEXIS 132734 (N.D. Ohio Sept. 30, 2015)................................30

*Koyo Corp. v. Comerica Bank*,
2011 U.S. Dist. LEXIS 111880 (N.D. Ohio Sept. 29, 2011)................................27

*Lisak v. Mercantile Bancorp, Inc.*,
834 F.2d 668 (7th Cir. 1987) ................................................49

*Lopardo v. Lehman Bros., Inc.*,
548 F. Supp. 2d 450 (N.D. Ohio 2008)................................................7

*Macula v. Lawyers Title Ins. Corp.*,
Case No. 1:07 CV 1545, 2008 U.S. Dist. LEXIS 90468 (N.D. Ohio Aug. 14, 2008) ................................................38

*Mafcote, Inc. v. Genatt Assocs.*,
No 1:04-CV-853, 2007 U.S. Dist. LEXIS 10117 (S.D. Ohio Feb. 14, 2007) ......................32

*Med. Billing, Inc. v. Med. Mgmt. Sciences, Inc.*,
212 F.3d 332 (6th Cir. 2000) ................................................22

*Medpace, Inc. v. Insiremd, Inc.*,
No. 1:16cv00830-WOB, 2017 U.S. Dist. LEXIS 75237 (S.D. Ohio May 17, 2017) ................................................44

*Meinert Plumbing v. Warner Indus.*,
2017-Ohio-8863 (Ohio Ct. App. 8th Dist. 2017)................................................35

*Moon v. Harrison Piping Supply*,
465 F.3d 719 (6th Cir. 2006) ................................................8, 11

*Morin v. Trupin*,
711 F. Supp. 97 (S.D.N.Y. 1989) ....................................................................32

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289 (E.D.N.Y. 2017) ............................................................17

*Neder v. United States*,
527 U.S. 1 (1999).............................................................................................15

*NPF IV, Inc. v. Transitional Health Services*,
922 F. Supp. 77 (S.D. Ohio 1996) ..................................................................37

*NxSystems, Inc. v. Monterey Cty. Bank*,
No. 12-cv-5458 KAW, 2013 U.S. Dist. LEXIS 14265 (N.D. Cal. Feb. 1, 2013)...................32

*Oliver v. ARS Ohio LLC*,
No. 5:18-cv-967, 2019 U.S. Dist. LEXIS 13201 (N.D. Ohio Jan. 28, 2019) ........................41

*Onx USA LLC v. Sciacchetano*,
No. 1:11CV2523, 2013 U.S. Dist. LEXIS 49649 (N.D. Ohio Apr. 5, 2013) .........................28

*Penn, LLC v. Prosper Bus. Dev. Corp.*,
No. 2:10-cv-993, 2011 U.S. Dist. LEXIS 57366 (S.D. Ohio May, 27, 2011) ........................28

*Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*,
40 F.4th 432 (6th Cir. 2022) ..............................................................45, 49, 50

*Phillips v. Spitzer Chevrolet Co.*,
2006-Ohio-4701 (5th Dist. 2006) ....................................................................42

*Princeton Radiology Assocs., PA v. Advocate Radiology Billing & Reimbursement Specialists, LLC*,
2020 U.S. Dist. LEXIS 265724 (S.D. Ohio Mar. 5, 2020).................................22

*PT United Can Co. v. Crown Cork & Seal Co.*,
138 F.3d 65 (2nd Cir. 1998)......................................................................49, 50

*RAE Assocs., Inc. v. Nexus Communications, Inc.*,
63 N.E.3d 757 (Ohio Ct. App. 10th Dist. 2015) .............................................37

*Rainworks Ltd. v. Mill-Rose Co.*,
609 F.Supp.2d 732 (N.D. Ohio 2009).............................................................35

*Ramjet Aviation, Inc. v. My Parts Locator, Inc.*,
2023 U.S. Dist. LEXIS 6178 (N.D. Ohio 2023) ..............................................34

*Rao v. BP Prods. N. Am., Inc.*,
589 F.3d 389 (7th Cir. 2009) ..........................................................................17

*Red Roof Franchising, LLC v. Riverside Macon Grp., LLC*,
    2020 U.S. Dist. LEXIS 84997 (S.D. Ohio May 14, 2020) ....................................................23

*Redtail Leasing, Inc. v. Bellezza*,
    1999 U.S. Dist. LEXIS 486 (S.D.N.Y. Jan. 21, 1999).............................................................17

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2012) ...............................................................................................36

*Republic of Pan. v. BCCI Holdings (Lux.) S.A.*,
    119 F.3d 935 (11th Cir. 1997) ..............................................................................................49

*Reves. Dahlgren v. First Nat'l Bank of Holdrege*,
    533 F.3d 681,690 (8th Cir. 2008) .........................................................................................18

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ..............................................................................................................17

*RLFShop, LLC v. Am. Express Co.*,
    No. 3:17-cv-405, 2019 U.S. Dist. LEXIS 20506 (S.D. Ohio Feb. 8, 2019) ...........................38

*In re Royal Appliance Mfg. Co. Secs. Litig.*,
    2010 U.S. Dist. LEXIS 101367 (N.D. Ohio Sept. 27, 2010)..................................................30

*Ruggles v. Bulkmatic Transp. Co.*,
    No. C2-03-617, 2004 U.S. Dist. LEXIS 30588 (S.D. Ohio June 23, 2004) ...........................22

*Rui He v. Rom*,
    751 F. App'x 664 (6th Cir. 2018) .........................................................................................34

*Sanderson v. HCA-The Healthcare Co.*,
    447 F.3d 873 (6th Cir. 2006) ...............................................................................................31

*Scarbrough v. Perez*,
    870 F.2d 1079 (6th Cir. 1989) ..............................................................................................34

*Sec'y of Labor v. Macy's, Inc.*,
    No. 1:17-cv-541, 2021 U.S Dist. LEXIS 221603 (S.D. Ohio Nov. 17, 2021) .......................31

*Sedima. S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S 479 (1985)........................................................................................................8, 10, 13

*Sheet Metal Workers Local No. 20 Welfare & Ben. Fed. v. CVS Pharm., Inc.*,
    305 F. Supp. 3d 337 (D.R.I. 2018)........................................................................................16

*Shepard & Assocs. v. Lokring Tech., LLC*,
    2022 U.S. Dist. LEXIS 19219 (N.D. Ohio 2022) ..................................................................52

*Smith v. Gen. Motors LLC,*
    988 F.3d 873 (6th Cir. 2021) ...................................................................31

*Smith v. GM LLC,*
    998 F.3d 873 (6th Cir. 2021) ...................................................................31

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.,*
    532 F.3d 496 (6th Cir. 2008) ...................................................................23

*Spool v. World Child Int'l Adoption Agency,*
    520 F.3d 178 (2d Cir. 2008)......................................................................12

*Starfish Inv. Corp. v. Hansen,*
    370 F. Supp. 2d 759 (N.D. Ill. 2005) .........................................................9

*STE Invs., LLC v. Macprep, Ltd.,*
    2022-Ohio-2614 ......................................................................................39

*Stone v. Kirk,*
    8 F.3d 1079 (6th Cir. 1993) .....................................................................18

*Stonebridge Collection, Inc. v. Carmichael,*
    791 F.3d 811 (8th Cir. 2015) ...................................................................12

*Taylor Steel, Incorporated v. Keeton,*
    417 F.3d 598 (6th Cir. 2005) ...................................................................34

*Taylor v. KeyCorp,*
    678 F. Supp. 2d 633 (N.D. Ohio 2009)......................................................1

*Theunissen v. Matthews,*
    935 F.2d 1454 (6th Cir. 1991) .................................................................50

*Third Millennium Materials, LLC v. Baker,*
    2020 U.S. Dist. LEXIS 48480 (S.D. Ohio March 20, 2020) .................10, 11, 12, 13

*Turner v. N.J. State Police,*
    2017 U.S. Dist. LEXIS 48036 (D.N.J. 2017) ..........................................12

*United States v. Fowler,*
    535 F.3d 408 (6th Cir. 2008) ...................................................................17

*United States v. Skeddle,*
    940 F. Supp. 1146 (N.D. Ohio 1996)........................................................10

*Wilkins ex rel. United States v. State of Ohio,*
    885 F. Supp. 1055 (S.D. Ohio 1995) .......................................................32

*United States v. Swan*,
  250 F.3d 495 (7th Cir. 2001) ...................................................................................19

*University Circle Research Ctr. Corp. v. Galbreath, Co.*,
  106 Ohio App.3d 835 (Ohio Ct. App. 8th Dist. 1995)............................................35

*Vemco, Inc. v. Camardella*,
  23 F.3d 129 (6th Cir. 1994) ....................................................................................11

*W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*,
  54 F. Supp. 3d 888 (S.D. Ohio 2014) ......................................................................1

*Waste Conversion Techs., Inc. v. Warren Recycling, Inc.*,
  191 Fed. Appx. 429 (6th Cir. 2006)........................................................................34

*Wheat v. Chase Bank*,
  2014 U.S. Dist. LEXIS 14003 (S.D. Ohio 2014)....................................................38

*Wildcat Drilling, LLC v. Discovery Oil & Gas, LLC*,
  2018-Ohio-4015 (7th Dist. 2018) ...........................................................................39

*Williams v. Aetna Fin. Co.*,
  83 Ohio St. 3d 464 (1998)........................................................................................44

*Williams v. NAACP*,
  2019-Ohio-1897 (10th Dist. 2019) ..........................................................................43

*Williams v. United States Bank Shaker Square*,
  8th Dist. Cuyahoga No. 89760, 2008-Ohio-1414 ...................................................45

*WMS Monroe LLC v. Gulfport Energy Corp.*,
  No. 2:19-cv-2908, 2020 U.S. Dist. LEXIS 265937 (S.D. Ohio Jan. 6, 2020).........20

*Wuliger v. Liberty Bank, N.A.*,
  2004 U.S. Dist. LEXIS 27353 (N.D. Ohio March 4, 2004)....................................19

*Yeager v. U.S. Bank*,
  2021-Ohio-1972, 2021 Ohio App. LEXIS 1944 (Ohio Ct. App. 1st Dist. June
  11, 2021) ..................................................................................................................41

*Yuhasz v. Brush Wellman, Inc.*,
  341 F.3d 559 (6th Cir. 2003) ..................................................................................23

*Zigdon v. LVNV Funding, LLC*,
  2010 U.S. Dist. LEXIS 53813 (N.D. Ohio Apr. 23, 2010).....................................27

## **Introduction**

Plaintiffs Root, Inc., Caret Holdings, Inc. and Root Insurance Agency LLC's (collectively "Root" or "Plaintiffs") Amended Complaint ("Am. Cmplt.") alleges that Root's Chief Marketing Officer, B.C. Silver, perpetrated a brazen fraud on Root that allowed him to abscond with approximately $10 million of Root's money.  In its most recent 10-K report filed with the SEC, Root publicly disclosed that, in 2022, its

> control deficiencies related to monitoring and the control environment, including the circumvention of control activities, [] contributed to the suspected fraud perpetrated by a former senior marketing employee, and aggregated to a material weakness.  Specifically, the material weakness relates to inadequate hiring practices for employees in senior leadership positions whose roles and responsibilities include the initiation of transactions with third parties; and ineffective control and monitoring activities, including the circumvention of certain control activities related to the review, authorization, and approval of third-party vendors, and associated contracts for services and approval of third-party vendor payments.[1]

In other words, Root failed to supervise Mr. Silver, failed to adopt adequate controls that would have prevented him from defrauding the company, and failed to put into place controls that would have detected Mr. Silver's fraud.  Despite this, Plaintiffs' complaint shifts blame to two innocent parties:  a small, minority-owned business, Quantasy + Associates, and its principal, Will Campbell (collectively, the "Quantasy Defendants").  Ironically, Quantasy and Campbell were *themselves* defrauded by Root's C-suite executive, who was enabled to accomplish his fraud by Root's own negligence and its corporate controls and governance failures.  Rather than taking

---

[1] Root, Inc., Form 10-K Annual Report for the Year Ended December 31, 2022, at p. 135 (Feb. 22, 2023),  *available at*  https://ir.joinroot.com/sec-filings/sec-filing/10-k/0001628280-23-004580. This Court may take judicial notice of an SEC filing without converting a motion to dismiss into a motion for summary judgment.  *See W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 898 (S.D. Ohio 2014) ("The Court may consider SEC filings, other public records, and other materials appropriate for the taking of judicial notice without converting a Rule 12(b)(6) motion into a Rule 56 motion."); *Taylor v. KeyCorp*, 678 F. Supp. 2d 633, 638 (N.D. Ohio 2009) (noting that a court may consider, on a motion to dismiss, the content of the complaint and matters of public record, including SEC filings).

ownership of these failures and responsibility for its employee's scheme to defraud Quantasy of the fruits of its advertising contract with Root, Root has instead chosen to file a baseless complaint against victims of Silver's fraud.

Upon discovery of Silver's scheme, Quantasy cooperated with Root's investigation. Quantasy voluntarily provided documents and text messages from Silver to Root, which have become a key part of Root's case against Silver. Quantasy repeatedly participated in interviews with Root and, later, its counsel. After Quantasy was advised that Root was not proceeding with certain elements of its advertising campaign, it voluntarily returned millions of dollars to Root. Quantasy believed that it was being a good citizen by assisting Root, but it was instead repaid by this lawsuit. It is now clear that, all along, Root considered Quantasy its scapegoat, on which the failures and negligence of its executive management team could be laid and, equally important, from which money could be recovered.

The weaknesses of Root's claims against Quantasy and Campbell are clear from the face of the Amended Complaint. The few allegations that are directly addressed towards Quantasy or Campbell are vague and conclusory, and the RICO allegations fail in a multitude of ways, including that the Plaintiffs fail to allege that the Quantasy Defendants participated in a pattern of racketeering activity, there is no causation, and that there is no ascertainable structure to the claimed enterprise. There are no facts alleged – not even a conclusory statement – that Quantasy or Campbell were even *aware of the existence* of Eclipse or Paige McDaniel, two other supposedly key members of the claimed enterprise, let alone that they agreed on a common purpose with these members of the enterprise. Instead, the complaint details *Silver's* alleged wrongdoings and misrepresentations, *Silver's* fraud scheme with Eclipse, Collateral Damage, and McDaniel, and then throws in Quantasy and Campbell in a half-hearted attempt to pad its recovery.

The stark contrast between Silver and the Quantasy Defendants has only been underscored by the recent events in which Silver disregarded this Court's orders to transfer and secret hundreds of thousands of dollars and then left the country for a purported job search in the United Arab Emirates – notably, a country which does not have a formal extradition treaty with the United States. Mr. Campbell has worked his entire adult life to build, from scratch, a thriving, successful small business. He is truly an American success story. Everything that he is built is now in crisis that was brought on by Silver and his schemes. This is an unfortunate situation, but those circumstances do not excuse Root's obligation to plead valid claims against Quantasy and Campbell *individually*. It has not – and cannot – do so. The complaint against Quantasy and Root should be dismissed with prejudice.

## Relevant Alleged Facts

Quantasy is a Los Angeles-based advertising and marketing company that has been operating for approximately twelve years, with a stable of well-known clients. Among Quantasy's clients was Root, Inc., an insurance company based in Columbus. (Am. Cmplt., ECF No. 20. ¶ 1, PageID 98). Quantasy was hired by Root to lead and develop Root's brand strategy, including creating a go-to-market strategic plan for Root. (Am. Cmplt. Ex. 3, ECF No. 20-3, PageID 152). Quantasy was retained in February 2022 by Root's Chief Marketing Officer ("CMO"), B.C. Silver. (Am. Cmplt., ECF No. 20, ¶30, PageID 102). Silver was hired as Root's CMO in November 2021, *id.* at ¶ 22, through a process that it later admitted was inadequate for employees occupying senior leadership positions whose responsibilities include the initiation of transactions with third parties. (Root 2023 10-K, at p. 135).

Shortly before Quantasy was officially retained, Root's CMO sent Quantasy a "Root Insurance Gap Analysis" dated January 28, 2022 that was used to inform Quantasy of marketing

and advertising gaps that Root had identified. (Am. Cmplt. Ex. 2, ECF No. 20-2, PageID 149). On February 1, 2022, Root and Quantasy signed a statement of work that memorialized the creative work that Quantasy was to perform. (Am. Cmplt. Ex. 3, ECF No. 20-3, PageID 154). The first statement of work ("SOW #1") was signed by Jill Neely, Root's Vice President, Creative. (*Id.*). To develop the strategic marketing plan, Root paid Quantasy approximately $1.2 million. (*Id.*, PageID 153).

After being retained by Root, Quantasy began work on Root's marketing and advertising strategy. Silver, Root's Chief Marketing Officer, was keenly interested in Quantasy's advertising strategy, and on February 9, requested a "preview" of Quantasy's presentation to Root's executive team scheduled for later in February. (Am. Cmplt. Ex. 6, ECF No. 20-6, PageID 162). At around the same time, Root's Chief Marketing Officer directed Quantasy to utilize another company, Collateral Damage, to perform certain aspects of the marketing and advertising work. (Am. Cmplt., ECF No. 20, ¶ 34, PageID 103). Quantasy, at the instruction of Root's CMO, wired a portion of the fees that Root had paid to Quantasy to the new subcontractor, Collateral Damage. (*Id.* at ¶ 39, PageID 105). Throughout the relationship, Quantasy insisted that business formalities be observed: among other things, Quantasy required invoices from Collateral Damage in order for any payment to issue. (*Id.* at ¶ 43, PageID 106). Quantasy requested the invoices from Lauren Lanskie, a person who Silver, Root's CMO, had introduced to Quantasy as an employee of Collateral Damage. (*Id.* at ¶¶ 43, 53, PageID 106, 108). Thereafter, invoices from Collateral Damage originated from what as purportedly Lanskie's email address at Collateral Damage; Root alleges that these were forgeries prepared by Silver. (*Id.* at ¶ 54, PageID 108).

On February 24, 2022, Quantasy met with Root's executive leadership team to present the brand marketing strategy that Quantasy had developed on behalf of Root. (*Id.* at ¶ 41, PageID

105).  The meeting "went great," and Quantasy did "an awesome job" at the presentation.  (Am. Cmplt. Ex. 9, ECF No. 20-9, PageID 168).  During this time, one of the Chief Marketing Officer's subordinates, the Vice President, Creative, had been slow to pay Quantasy's invoices.  After a complaint from Quantasy regarding the late payment, Silver, Root's CMO, instructed Quantasy to send its invoices directly to his attention, noting that he couldn't "have our vendors not being paid on time."  (Am. Cmplt. at ¶ 50; PageID 107; Am. Cmplt Ex. 15, ECF No. 20-15, PageID 182).

Because of Quantasy's "awesome job" with SOW #1, Root elected to enter into a second statement of work with Quantasy ("SOW #2").  (Am. Cmplt. Ex. 19, ECF No. 20-19, PageID 192). This statement of work was designed to execute the brand strategy that Quantasy had developed in connection with SOW #1; the project budget included specific projects, including "athlete driver content series," and "best driver in America national program development."  (*Id.*, PageID 194). These were developed by Quantasy because Root is primarily an automobile insurance company. The budget also included 6-10 celebrity endorsements, media activation (web ads), e-sports, in-market gas station takeover, and a driver appreciation program.  (*Id.*).  The total cost to Root, which included the expenses connected with purchasing web ads, paying celebrity endorsers, and running the campaign, was $14.9 million.  (*Id.*).  Root's Chief Marketing Officer approved SOW #2. Notably, because of Root's request that Quantasy sub-contract a portion of the advertising campaign to Collateral Damage, Quantasy included a provision in SOW #2 that explicitly permitted the use of subcontractors.  The agreement provides that "Agency may subcontract third parties in Agency's discretion to perform certain Services . . . to be provided pursuant to this Agreement."  (*Id.* at § 4, PageID 193).

As the work needed to complete SOW #2 was being determined, Quantasy determined that it needed a subcontracting agreement with Collateral Damage, and it began to draft the agreement.

(Am. Cmplt. Ex. 23, ECF No. 20-23, PageID 205). At the same time, Quantasy had begun to believe that Silver had some interest in Collateral Damage, so it requested that another executive at Root approve the subcontract as a means to avoid any conflict of interest. (*Id.*). In response, Silver reported to Quantasy that he was "completely removed from any previous ownership of CD." (Am. Cmplt., ECF No. 20 at ¶ 63, PageID 111). Quantasy accepted the CMO's representation, but Silver deceived Quantasy. Instead, Silver had registered Collateral Damage to do business in California under his own name. (*Id.* at ¶ 65, PageID 111).

Quantasy continued its business as usual, receiving invoices purportedly from Lauren Lanskie at Collateral Damage, which even prepared and sent Quantasy a W-9 tax form that was signed by a person named Paige Lynette, who Root alleges is Paige McDaniel, Silver's sister. (*Id.* at ¶ 71, PageID 112). Again, Silver deceived Quantasy by sending the invoices and tax forms to Quantasy using Lanskie's email address and electronic signature. (*Id.*). The invoices that Quantasy received from Collateral Damage had specific tasks and line items of the work that it was to perform for Root, including "implement a sports marketing program integrating athletes and sports organizations . . . for Root." (*Id.* at ¶ 72, PageID 113).

On July 5, 2022, Root's Chief Marketing Officer formalized a change order in which Root requested a "re-focus" of Q2 activation budgets from brand marketing to Q3/Q4 paid partnerships/ad programming across sports marketing and gaming partners and channels (pausing the Drive Slow and related creative production efforts." (Am. Cmplt. Ex. 35, ECF No. 20-35 at PageID 239). In other words, Root direct Quantasy to "pause" its creative efforts. A week later, on July 12, Root's Chief Marketing Officer issued a second change order to "reduce total paid media and partnership activation spends." (*Id.* at PageID 240). This change order reduced the

overall budget by $1.2 million, which Quantasy voluntarily returned to Root. (Am. Cmplt., ECF No. 20 at ¶ 94, PageID 122; Am. Cmplt. Ex. 35, ECF No. 20-35 at PageID 240).

The Amended Complaint alleges that Root's internal audit team questioned Quantasy on August 22, 2022, but the Amended Complaint does not contain any description of the meeting, the questions asked during the meeting, or any answers provided during the meeting by Quantasy. (Am. Cmplt., ECF No. 20 at ¶ 97, PageID 123). In a September email, Root corresponded with David Rodriguez, a Quantasy employee, about the status of Root's marketing budget, and whether a portion of the 2022 marketing spend could be allocated to paid media in 2023. (*Id.* at ¶ 97, PageID 123). Rodriguez responded that it could be used for paid media in 2023, which was consistent with his understanding that the subcontractor, selected by Root's Chief Marketing Officer, could delay Root's advertising until the following year. There are no factual, non-conclusory allegations in the Amended Complaint that Rodriguez or Quantasy was aware that the money paid to Collateral Damage was not available for use by paid media in 2023.

## **Law & Argument**

A court may dismiss a Complaint when its fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[T]o survive a motion to dismiss the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim for relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action" is insufficient). Claims must be plausible, not merely "conceivable." *Lopardo v. Lehman Bros., Inc.*, 548 F. Supp. 2d 450, 454 (N.D. Ohio 2008); *Hensley Mfg.*, 579 F.3d at 609; *Floyd v. Kent County,* 454 Fed. Appx. 493, 497 (6th Cir.

2012) ("A complaint suggesting 'the mere possibility of misconduct' is insufficient.") (quoting *Twombly*, *supra*).

I.      **Count I of the Amended Complaint Must Be Dismissed Because the RICO Claims Are Insufficiently Pled as to Both Quantasy and Campbell.**

Plaintiffs allege both Quantasy and Campbell violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  The crux of Plaintiffs' RICO claim is the allegation the Quantasy Defendants somehow defrauded Root by following the instructions of Root's Chief Marketing Officer, who instructed Quantasy to utilize a subcontractor, Collateral Damage, in carrying out work that Quantasy was to perform on behalf of Root.  (Am. Cmplt., ECF No. 20, at ¶ 3, PageID 98).

Section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . ."  18 U.S.C. § 1962(c).  To plausibly allege a civil RICO claim under § 1962(c), Plaintiffs must plead that each defendant (1) conducted, (2) an enterprise, (3) through a pattern of (4) racketeering activity.  *Sedima. S.P.R.L. v. Imrex Co., Inc*., 473 U.S 479, 496 (1985); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).

A.      *The Amended Complaint Fails to Allege a Pattern of Racketeering Activity as to Either Quantasy or Campbell.*

A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other.  18 U.S.C. § 1961(5).  Both the Sixth Circuit and the Supreme Court, however, have recognized "the minimum two acts are not necessarily sufficient" to establish a pattern of racketeering activity.  *Sedima*, 473 U.S. at 496, n. 14 ("In common parlance, two of anything do not generally form a 'pattern.'").  For a pattern to exist, the racketeering activity at issue must also have (1) continuity and (2) relationship.  *H. J., Inc. v. Northwestern Bell Tel. Co*.,

492 U.S. 229, 239 (1989). A plaintiff can establish the continuity requirement by showing either a "close ended" or an "open ended" pattern. *Courser v. Mich. House of Representatives*, 831 Fed. Appx. 161, 186 (6th Cir. 2020). A "closed-ended" pattern is "a series of related predicate acts extending over a substantial period of time," *id.* (internal quotations omitted), while open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241. Continuity, therefore, is "centrally a temporal concept." *Id.* at 241-242. In a closed-ended case, meaning that the predicate acts that do not threaten to repeat into the future, continuity will be found only when the predicate acts "extend[ed] over a substantial period of time." *Id.* at 242. The Court did not define substantial period of time except to say that "a few weeks or months and no threatening future criminal conduct is not enough." *Id.*

Further, each element of a RICO offense must be pleaded and proven for *each defendant*; accordingly, the complaint must allege that each defendant personally participated in a pattern of racketeering activity. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 358 (8th Cir. 2011) (holding that the complaint must identify at least two specific predicate acts for each defendant); *Urbanek v. All State Home Mortgage*, 2006 U.S. Dist. LEXIS 81301, at *8 (N.D. Ohio Oct. 27, 2006) ("[P]laintiff must allege that each defendant engaged in a 'predicate act'."); *Fenner v. GM, LLC*, 298 F. Supp. 3d 1037, 1082 (E.D. Mich. 2018) (must provide allegations for each individual defendant); *Innovative Metal Design, Inc. v. U.S. Bank Nat'l Ass'n*, 2015 U.S. Dist. LEXIS 171329, at *7-*8 (D. Ore. Nov. 18, 2015) (holding that in multiple defendant RICO cases a plaintiff must allege each defendant engaged in a pattern of racketeering activity); *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 780 (N.D. Ill. 2005) ("[I]t is clear that liability under RICO is limited to persons who have personally committed at least two predicate acts of racketeering."). In other words, a RICO defendant cannot be held liable for predicate acts performed by others.

Here, the Amended Complaint both fails to identify whether the alleged pattern is an open-ended or closed-ended scheme. Although it alleges predicate acts of money laundering and wire fraud (Am. Cmplt., ECF No. 20 at ¶ 109, PageID 127), the complaint is completely silent as to what conduct plaintiffs allege constitutes money laundering, and it does not identify any specific statements that the plaintiffs believe support a predicate act of wire fraud. Because of this, it is difficult to make a determination of the duration of the claimed predicate acts, but the entirety of the complaint identifies only two purportedly fraudulent statements made by Quantasy employees: a failure to disclose by Campbell on August 22, 2022, that Root's payments had been sent to Collateral Damage at Silver's instruction (*id*. at ¶ 97, PageID 123); and Rodriguez's statement on September 22, 2022 that $10.7 million of the $14.7 million paid was unallocated. (*Id*. at ¶ 98, PageID 123).

With respect to defendant Campbell, the Amended Complaint wholly fails to allege that he *personally* committed two predicate acts. At best, it alleges one purported omission – the August 22 meeting.[2] This is insufficient to establish continuity as a matter of law, and the RICO claim as to Mr. Campbell must be dismissed. *Sedima*, 473 U.S. at 496, n. 14.

For defendant Quantasy, the Amended Complaint alleges that its employees committed two predicate acts, but "two of anything do not generally form a 'pattern.'" *Id*. This is particularly so where the allegations involve a single scheme, single victim, and single goal, as Plaintiffs'

---

[2] Plaintiffs' reliance on an omission theory raises the separate issues of whether Campbell or Quantasy (1) had a duty to disclose the existence of Collateral Damage as a matter of law, *see United States v. Skeddle*, 940 F. Supp. 1146, 1149 (N.D. Ohio 1996) (noting that a mail fraud based on omissions must be accompanied by proof that the defendants had a duty to disclose); *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 750 F. Supp. 838, 843 (N.D. Ohio 1990) (finding that a duty to disclose is "necessary" when a material omission is alleged in a mail or wire fraud claim); or (2) that even if a duty existed, Silver's knowledge – as an officer of Root – satisfied any duty to disclose. Because Plaintiffs' RICO claim fails for a host of other reasons, these issues need not be determined.

allegations do in this case. "If the alleged scheme involve[s] a single scheme and a single goal, the continuity requirement is not met." *Third Millennium Materials, LLC v. Baker,* 2020 U.S. Dist. LEXIS 48480, at *15 (S.D. Ohio March 20, 2020) (Smith, J.) (citing *Aces High Coal Sales, Inc. v. Cmty. Bank & Trust*, 768 Fed. Appx. 446, 457 (6th Cir. 2019)). Here, the alleged pattern *with respect to the Quantasy Defendants*, involves, at most, a single scheme and goal: to defraud Root with respect to the 2023 marketing spend. The September 22, 2022, statement alleged to have been made by Rodriguez was that $10.7 million of the 2023 spend was unallocated and uncommitted at this time. (Am. Cmplt., ECF No. 20 at ¶98, Page ID 123). Nothing in the Amended Complaint alleges that *Quantasy* was involved in multiple schemes or had more than one goal with respect to the claimed fraud. Indeed, the language of the complaint itself confirms that there was only a single scheme. (*Id* at ¶ 109, Page ID 127) ("Defendants associated together as an enterprise for the purpose of executing *a scheme*.").

Nowhere does the Amended Complaint allege that there were multiple goals or multiple schemes, particularly with respect to the Quantasy Defendants, and the RICO claims must be dismissed on this basis alone. *Third Millennium Materials*, 2020 U.S. Dist. LEXIS 48480, at *16-17; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 725-26 (6th Cir. 2006) (finding no continuity, even though the predicate acts occurred over two and one-half years, because the predicate acts were all keyed to a single objective); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134-35 (6th Cir. 1994) (holding that a single scheme in connection with a construction contract, involving a single victim over seventeen months lacked continuity); *Grubbs v. Sheakley Group, Inc.,* 807 F.3d 785, 805 (6th Cir. 2015) (holding that a single eight-month scheme with a single victim does not qualify for closed-ended continuity); *see also Edmonson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (observing that it is "virtually

impossible" to meet RICO's pattern requirement with a single scheme, single injury, and few victims).

Even if the Plaintiffs could establish continuity with their allegations of a single scheme and single goal, the Supreme Court has emphasized that continuity, at its core, is a temporal concept, and "predicate acts extending over a few weeks or months" cannot demonstrate closed ended continuity. *H.J., Inc.*, 492 U.S. at 241-242. Here, the predicate acts identified for Quantasy and Campbell last a period of one month – from August 22 to September 22, 2022. This is insufficient to establish closed-ended continuity. *See Third Millennium Materials*, 2020 U.S. Dist. LEXIS 48480, at *18 ("The Court finds a period of 20 months insufficient to satisfy closed-ended continuity."); *Am. Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 355 (6th Cir. 1990) (holding that a scheme lasting six months was of insufficient duration to state a pattern); *Columbia Park East MHP, LLC v. U.S. Bank, N.A.*, 2018 U.S. Dist. LEXIS 136268, at *4 (N.D. Ohio Aug. 12, 2018) (holding that one year is insufficiently long to establish continuity); *Aces High*, 768 Fed. Appx at 458 (no close ended continuity where alleged scheme lasted thirteen months).[3]

The Amended Complaint also fails to demonstrate open-ended continuity. In determining open-ended continuity, the Court should consider the duration of the alleged racketeering activity (the longer the better), the number of schemes (the more the better), the number of predicate acts

---

[3] Courts outside of the Sixth Circuit agree that the related predicate acts must last longer than one year to establish a closed-ended pattern. *See, e.g.*, *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("Since the Supreme Court decided H.J. Inc., we have never held a period of less than two years to constitute a substantial period of time."); *Turner v. N.J. State Police*, 2017 U.S. Dist. LEXIS 48036, *82 (D.N.J. 2017) ("In the Third Circuit, predicate acts spanning a year or less generally do not occupy the 'substantial period of time' required for close-ended conduct."); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 550-51 (4th Cir. 2001) (finding that a two-year fraudulent scheme did not "present the type of persistent, long-term fraudulent conduct" to which RICO was intended to apply); *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 824 (8th Cir. 2015) (holding that a scheme must last at least one year).

(the more the better), the variety of species of predicate acts (the more the better), the distinct types of injury (the more the better), the number of victims (the more the better), and the number of perpetrators (the less the better). *Third Millennium Materials*, 2020 U.S. Dist. LEXIS 48480, at *18-19 (quoting *Columbia Nat. Res. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995)).

Here, all the factors weigh against a finding of open-ended continuity: the duration of the alleged racketeering activity by Quantasy was only one month, only two predicate acts (at best) are alleged, there is only one "species" of predicate acts (wire fraud), one type of injury, and only one victim alleged with respect to Quantasy. Moreover, according to the Amended Complaint, the supposed fraud could not continue indefinitely into the future because the allegations of Rodriguez's supposedly fraudulent statement related *only* to Root marketing spend in 2023. Even viewed in a light most favorable to Plaintiffs, this alleged fraud inherently is one with a fixed end date: the completion of Root's 2023 marketing plan. Likewise, there is no allegation that fraudulent schemes are Quantasy's "regular way of doing business." As such, with respect to the Quantasy Defendants, plaintiffs are unable to establish open-ended continuity, and their RICO claims must be dismissed. *Third Millennium Materials*, 2020 U.S. Dist. LEXIS 48480, at *20-21; *Columbia Park East MHP, LLC v. U.S. Bank, N.A.*, 2018 U.S. Dist. LEXIS 136268, *4 (N.D. Ohio Aug. 13, 2018) *aff'd Columbia Park East MHP, LLC v. U.S. Bank N.A.,* 766 Fed. App'x. 271, 274 (6th Cir. 2019).

> **B.    The Predicate Acts Attributed to the Quantasy Defendants Cannot Form the Basis of a RICO Claim in This Instance.**

In addition to proving the elements of the RICO offense, the Supreme Court has also explained that in order to have standing to bring a RICO cause of action, the plaintiff must allege an injury "caused by predicate acts sufficiently related to constitute a pattern." *Sedima*, 473 U.S. at 497. As discussed above, the predicate acts alleged for the Quantasy Defendants consist of (at

most) two allegations of wire fraud. To have standing to bring their RICO action, the plaintiffs must therefore allege that they have suffered injury *by reason of* the alleged wire frauds undertaken by Quantasy or Campbell. *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 647 (2008).

Here, the Plaintiffs cannot show that they suffered any injury "by reason of" – or as a "but-for cause of" – the alleged frauds of the Quantasy Defendants. This is because the supposed omission and misrepresentation each occurred *after* the money had been transferred to Collateral Damage and allegedly misappropriated by Silver. According to the Amended Complaint, it was *Silver's* conduct that was the but-for cause of Plaintiff's injury. The last time that Quantasy transferred money to Collateral Damage – at Root's instruction through Silver – occurred on May 17, 2022. (Am. Cmplt., ECF No. 20 at ¶ 84, PageID 119). Thereafter, Silver allegedly used the money to purchase various homes and other items, in total exceeding $10 million. (*Id.* at ¶ 95, PageID 119). Quantasy's alleged omission and misrepresentation occurred on August 22 and September 22, respectively – at least four months after Plaintiffs allege that Silver used their money to purchase homes and other items for his own benefit. Because Plaintiffs had already suffered its full injury in May 2022, it is impossible that the Quantasy Defendants' supposed misstatements later in the summer and fall of 2022 were the *reason* for Plaintiffs' injuries.

After the Supreme Court's decision in *Bridge*, the Sixth Circuit took up this issue to explain at length the pleading requirements in a RICO case based on mail or wire fraud. *Grange Mut. Cas. Co. v. Mack*, 290 Fed. App'x 832, 835 (6th Cir. 2008). In *Grange*, the Sixth Circuit wrote that although a mail or wire fraud offense does not require any showing of reliance as an *element* of wire fraud, a plaintiff in a RICO case "still must establish that the alleged violation was the cause (both 'but for' and proximate) of her injury. Usually, this will require a showing of first or third-party reliance. *Bridge*, 553 U.S. at 658 ('In most cases, the plaintiff will not be able to establish

even but-for causation if no one relied on the misrepresentation.' . . . To establish proximate cause for a § 1962(c) violation, plaintiffs must allege that [the defendants'] *own violations* of § 1962(c) led directly to plaintiff's injuries." *Id.* (emphasis added).[4]

The Plaintiffs have not met this this requirement. They have not alleged reliance on either of the Quantasy Defendants' alleged misstatements, and as a matter of temporal impossibility, they likewise cannot show that the Quantasy Defendants' *own violations* were the but-for and proximate cause of their injury, as the injury had already occurred before the commission of Quantasy's predicate acts. Because Plaintiffs cannot show that they were harmed as a result of the predicate offenses alleged to have been conducted by the Quantasy Defendants, their RICO claim as to those defendants must be dismissed.

### C.     The Amended Complaint Fails to Allege an Association-in-Fact Enterprise

In addition to the other failings of Plaintiffs' RICO claim against the Quantasy Defendants, the Amended Complaint does not plead facts sufficient to show an association-in-fact enterprise. The Supreme Court has held that an association-in-fact enterprise must have an ascertainable structure with at least three features: a common purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). The Sixth Circuit stated an association-in-fact may be shown by "an ongoing organization, its members must function as a continuing unit, and must be separate from the pattern of racketeering activity in which it engages." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993) (citation omitted).

---

[4] Although the Supreme Court's opinion in *Bridge* clarified that detrimental reliance is not a requirement of federal mail or wire fraud, materiality of falsehood *is* a requirement of wire fraud. *Neder v. United States*, 527 U.S. 1, 25 (1999). Given the chronology, the Amended Complaint likewise cannot be said to allege materiality of falsehood for any of the Quantasy Defendants.

Here, there are no allegations that Quantasy and Campbell functioned "as a continuing unit" with the other members of the purported enterprise. Rather, what Plaintiffs have alleged is a "rimless" hub-and-spoke arrangement whereby Silver was the hub who directed the activities of all the defendants, and the other defendants were the spokes. The wheel, however, is a rimless one because there is no relationship that connects the spokes, no allegation that the spokes worked together in any way in furtherance of the scheme or, indeed, that the spokes were even aware of each other. The Amended Complaint contains no allegations the Quantasy Defendants had any interactions, or even any awareness, of defendants McDaniel or Eclipse Home Design, and their purchase of residential properties. (*See* Am. Cmplt, ECF No. 20 at ¶ 86, PageID 119). There are also no allegations indicating these defendants knew the Quantasy Defendants were remitting funds to Collateral Damage at Silver's direction.

Courts around the country have routinely held that hub-and-spoke allegations fail the Boyle relationship test. *See, e.g.*, *D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018) (holding that rimless hub-and-spoke conspiracies cannot be considered a RICO association in fact because separate agreements with the hub to defraud the victim does not support an inference that the defendants all agreed to join forces with each other to pursue a goal of defrauding the victim); *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010) (finding that allegations of a rimless hub and spoke structure did not plausibly allege concerted action and thus did not adequately plead an association-in-fact enterprise); *Amazon.com v. WDC Holdings, LLC*, 2023 U.S. Dist. LEXIS 61285, at *28 (E.D. Va. April 6, 2023) (granting summary judgment for defendants where the facts supported only a rimless wheel structure – "a type of structure that is insufficient to establish an enterprise."); *Sheet Metal Workers Local No. 20 Welfare & Ben. Fed. v. CVS Pharm., Inc.*, 305 F. Supp. 3d 337 (D.R.I. 2018) ("Hub-and-spoke enterprises have

routinely been found insufficient to support RICO claims.") (citing *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 263 F. Supp. 2d 172, 183) (D. Mass. 2003) ("Most courts have found that complaints alleging hub-and-spoke enterprises fail to satisfy the RICO requirement."); *see also Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009) (affirming dismissal of RICO claim where the plaintiff failed to allege how the different actors were associated or acted together for a common purpose).

None of Root's allegations give rise to an inference the Quantasy Defendants had a common purpose with the other members of alleged enterprise – especially McDaniel and Eclipse – beyond simply performing what it believed to be its contractual duties under the SOWs. These allegations do not create an association-in-fact, and the RICO claims as to the Quantasy Defendants should be dismissed for this reason. *Moss v. BMO Harris Bank, N.A.,* 258 F. Supp. 3d 289, 301-303 (E.D.N.Y. 2017).

> D. **The Amended Complaint Fails to Allege Quantasy or Campbell Participated in the Operation or Management of the Enterprise.**

Even if the Plaintiffs could satisfy the *Boyle* factors and show that there is an ascertainable structure to the claimed enterprise, Plaintiffs must also set forth allegations the Quantasy Defendants conducted or participated, "directly or indirectly, in the conduct of [the RICO] enterprise's affairs" 18 U.S.C. § 1962(c). The Supreme Court has held this requires allegations that the defendants participated "in the operation or management" of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (internal quotation marks omitted). In the Sixth Circuit, this requires a plaintiff to provide allegations that a defendant made "decisions on behalf of the enterprise" or knowingly carried them out. *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008). As the Southern District of New York has explained, "the operation and management test . . . is a very difficult test to satisfy. . . . There is a difference between actual control over an

enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient under *Reves* because the test is not involvement but control. *Redtail Leasing, Inc. v. Bellezza*, 1999 U.S. Dist. LEXIS 486, at *11 (S.D.N.Y. Jan. 21, 1999) (quotations omitted). This is especially true for unaffiliated persons outside the chain of command. Courts have routinely held that outsiders that do not engage in decision-making for the enterprise cannot be liable under *Reves. Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681,690 (8th Cir. 2008) ("Bankers do not become racketeers by acting like bankers."). The same is true here: advertising executives do not become racketeers by acting like advertising agents. Instead, outsiders, like bankers or ad agencies, are "best characterized as contractors hired by the enterprise." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 n. 3 (7th Cir. 1998).

Here, the Amended Complaint does not contain any allegations suggesting either Quantasy or Campbell played any part whatsoever in leading, directing, or managing the enterprise's affairs. To the contrary, the allegations against the Quantasy Defendants amount to nothing more than following the directions of Root or Silver. (Am. Cmplt, ECF No. 20 at ¶ 14, PageID 100). Even if the Court believes that the allegations are sufficient to find that the Quantasy Defendants knowingly participated in Silver's scheme, mere participation is not sufficient for RICO liability. *Stone v. Kirk*, 8 F.3d 1079, 1092 (6th Cir. 1993) (holding that although the defendant engaged in a pattern of racketeering activity, the defendant could not be held liable because he did not direct the enterprise's affairs). The Amended Complaint repeatedly describes Silver as directing the enterprise, with Quantasy and Campbell plainly in a subordinate position, as one would expect in a client-service provider, or "outsider," relationship. *See, e.g.*, Am. Cmplt. ECF 20, at ¶ 32, PageID 103 (describing Collateral Damage as Silver's company); *id.* at ¶ 45, PageID 106 (describing Silver's role in running Collateral Damage's affairs); *id.* at ¶ 50, PageID 107 (Silver instructed

Quantasy where to send invoices); *id.* at ¶ 64, PageID 111 (alleging Silver's and McDaniel's role in incorporating Collateral Damage in Georgia); *id.* at ¶ 65, PageID 111 ("Silver registered Collateral Damage as a California LLC in his own name."); *id.* at ¶ 67, PageID 112 ("Silver sent Campbell a WhatsApp message outlining specific directions to follow when creating and sending invoices to Root."); *id.* at ¶ 86, PageID 119 (discussing Silver's ownership and control of Eclipse, which Silver used to hide his ownership of properties); *id.* at ¶ 89, PageID 120 (observing that Silver is the managing member of Eclipse); *id.* at ¶ 105, PageID 127 (describing Silver's direction to have other Root vendors pay Collateral Damage). In fact, there is not even a boilerplate, conclusory allegation that Quantasy or Campbell participated meaningfully in the operation or the management of the alleged enterprise. Without valid allegations that Quantasy or Campbell directed or managed the enterprise's affairs (a tall order owing to the lack of allegations that Quantasy Defendants were even *aware* of the existence of some of the alleged members of the enterprise), the complaint must be dismissed. *See Goren*, 156 F.3d at 727-28 ("In short, mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or the management of the enterprise. . . . Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability."); *Wuliger v. Liberty Bank, N.A.*, 2004 U.S. Dist. LEXIS 27353, at * 28 (N.D. Ohio March 4, 2004) ("Participation in a business relationship without more does not equate to liability under [RICO]."); *United States v. Swan*, 250 F.3d 495, 499 (7th Cir. 2001).

## II.    Plaintiffs' Fraud Claims Fail Because They Are Duplicative of Their Breach of Contract Claim.

The Amended Complaint asserts two fraud claims against Quantasy and Campbell: (i) fraudulent concealment (Count II), and (ii) fraudulent misrepresentation (Count III). It also asserts a breach of contract claim, alleging that Quantasy breached SOW #1 and SOW #2 (the

"Contracts") by "failing to provide the agreed-upon marketing services to Root as set forth in SOW #1 and SOW #2 and by entering into a purported subcontract with Collateral Damage without Root's knowledge or permission." (Am. Cmplt., ECF No. 20, ¶ 161, PageID 138).  According to the Complaint, "[a]s a direct and proximate cause of Quantasy's breaches of the contract, Plaintiffs have suffered damages greater than $9.4 million."  (*Id.* at ¶ 163, PageID 138.)  Each of Plaintiffs' fraud claims seek the same damages. (*Id.* at ¶¶ 121, 133, PageID 131, 133.)

Under Ohio law, "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *WMS Monroe LLC v. Gulfport Energy Corp.*, No. 2:19-cv-2908, 2020 U.S. Dist. LEXIS 265937, at *6 (S.D. Ohio Jan. 6, 2020) (citing *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). "A tort action arising out of a breach of contract claim is permitted only when two requirements are met: (1) if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed; and (2) the fraud action includes actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach." *Gregoire v. Rice Drilling D. LLC*, No. 2:21-cv-463, 2021 U.S. Dist. LEXIS 263733, at *3 (S.D. Ohio Nov. 17, 2021).[5]

Here, Plaintiffs' fraud claims should be dismissed because they: (i) do not allege any duty separate from the obligations purportedly breached under the Contracts, and (ii) seek damages identical to those sought by Plaintiffs' breach of contract claim.

The fraudulent concealment claim asserts that Campbell and Quantasy:

---

[5] Even if a plaintiff successfully establishes the existence of an extra contractual duty to support a simultaneous fraud claim, "any award of damages . . . arising from . . . [a fraud claim] must be separate and distinct from the damages . . . on [a plaintiff's] claim for breach of contract." *Gregoire*, 2021 U.S. Dist. LEXIS 263733, at *5 (citing *Med. Billing, Inc. v. Med. Mgmt. Sciences, Inc.*, 212 F.3d 332, 338 (6th Cir. 2000)).

- "[S]et up a scheme by which Quantasy would transfer funds to [] Collateral Damage" (Am. Cmplt., ECF No. 20 at ¶ 32, PageID 103) and that Quantasy made payments to Collateral Damage in connection with the SOWs (*Id*. at ¶¶ 36-37, 43, 49, 58, 60-61, 63; 68-70, 72, 73., PageID 104-113).

- "[H]ad a duty to disclose to Root…Quantasy's intent to subcontract marketing work for Root to Collateral Damage; Quantasy's intent to work out a private payment structure with Silver that was not disclosed to anyone else at Root; [and] that…Quantasy and Campbell were channeling funds to Collateral Damage." (*Id*. at ¶ 119, PageID 130.)

The same factual allegations underpin the breach of contract claim, which alleges that "Quantasy entered into a "purported subcontract with Collateral Damage without Root's knowledge or permission." (Am. Cmplt., ECF No. 20, ¶ 148, PageID 161.) The fraudulent concealment claim should be dismissed for this reason alone. *See Gregoire*, 2021 U.S. Dist. LEXIS 263733, at *6 (fraud claim failed where plaintiff did not plausibly allege that defendants owed any duty separate from those created by contracts); *Ebenisterie Beaubois Ltee v. Marous Bros. Constr., Inc*., No. 02 CV 985, 2002 U.S. Dist. LEXIS 26625, at *30-31 (N.D. Ohio Oct. 17, 2002) (dismissing fraud claim where agreement spelled out parties' rights and obligations, and no independent duty was established).

Plaintiffs' fraudulent misrepresentation claim is also based on the same factual allegations as their breach of contract claim (that Quantasy entered into and maintained a relationship with Collateral Damage "without Root's knowledge or permission"). (Am. Cmplt., ECF No. 20, ¶ 39, 81, 85, 86, 112 – 114, PageID 105-130). The fraudulent misrepresentation claim therefore alleges the breach of a duty that is not separate from the parties' obligations under the Contracts. As a

result, Plaintiffs fail to demonstrate that Quantasy would have owed a duty "even if no contract existed," *Gregoire*, 2021 U.S. Dist. LEXIS 263733, at *3, and its fraudulent misrepresentation claim should be dismissed. *See CPG Int'l, LLC v. A&R Logistics, Inc.*, No. 1:15-cv-00451, 2016 U.S. Dist. LEXIS 173478, at *22-23 (S.D. Ohio Dec. 15, 2016); *Ruggles v. Bulkmatic Transp. Co.*, No. C2-03-617, 2004 U.S. Dist. LEXIS 30588, at *22 (S.D. Ohio June 23, 2004).

Even if Plaintiffs have plausibly alleged a breach of duty independent of the Contracts (which they have not), both of their fraud claims fail because they seek the same damages -- $9.4 million -- sought by the breach of contract claim. (Am. Cmplt., ECF No. 20, ¶121, 133, 163., PageID 131, 133, 138.) The Complaint offers no explanation of how Plaintiffs' fraud damages are separate and distinct from their contract damages, and the fraud claims should be dismissed as a result. *See, e.g., Med. Billing, Inc. v. Med. Mgmt. Scis.*, Inc., 212 F.3d 332, 339 (6th Cir. 2000) (finding district court erred in denying Rule 50(b) motion as to fraudulent inducement claim where damages "did not arise uniquely from [defendant's] fraudulent misrepresentation," but were instead related to breach of parties' agreement); *Gregoire*, 2021 U.S. Dist. LEXIS 263733, at *6 (dismissing complaint where plaintiffs failed to allege fraud damages that were separate and distinct from the damages arising from breach of contract claim); *Princeton Radiology Assocs., PA v. Advocate Radiology Billing & Reimbursement Specialists, LLC*, 2020 U.S. Dist. LEXIS 265724, at *14 (S.D. Ohio Mar. 5, 2020) (same); *B&P Co. v. TLK Fusion Entm't LLC*, 2013 U.S. Dist. LEXIS 26131, at *29 (S.D. Ohio Feb. 26, 2013) (same).

### A. Root's Fraudulent Concealment Claim Fails on Its Face and Should be Dismissed

In order to state a claim for fraud under Ohio law, a plaintiff must allege

> (a) a representation, or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable

reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Joseph v. Joseph*, No. 19-3350, 2022 U.S. App. LEXIS 23216, at *16-17 (6th Cir. Aug. 18, 2022) (quoting *Russ v. TRW, Inc.*, 59 Ohio St. 3d 42, 570 N.E.2d 1076, 1083-84 (Ohio 1991)).[6]

Federal Rule of Civil Procedure 9(b) requires that "in any complaint averring fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (*quoting* Fed. R. Civ. P. 9(b)).  The Sixth Circuit has explained that to satisfy Rule 9(b), a plaintiff must at a minimum "allege the time, place, and content of the alleged misrepresentation" as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (internal citations omitted).[7]  A complaint's failure to comply with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). *United States ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 976 (S.D. Ohio 2007).

Root claims that Campbell and Quantasy engaged in fraudulent concealment because they "had a duty to disclose to Root":

> Quantasy's intent to subcontract marketing work for Root to Collateral Damage; Quantasy's intent to work out a private payment structure with Silver that was not disclosed to anyone else at Root; that instead of performing marketing work for

---

[6] "Similar elements are necessary for fraudulent concealment, which also requires the actual concealment of a material fact and knowledge of the fact concealed." *Cianfaglione v. Lake Nat'l Bank*, 2019- Ohio 1299, 134 N.E.3d 661, 666 (Ohio Ct. App. 2019). *See Red Roof Franchising, LLC v. Riverside Macon Grp., LLC*, 2020 U.S. Dist. LEXIS 84997, at *16-17 (S.D. Ohio May 14, 2020) (same as to fraudulent misrepresentation).

[7] The requirement "reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotation marks omitted).

Root, Quantasy and Campbell were channeling funds to Collateral Damage even though Collateral Damage was not performing marketing services.

(Am. Cmplt., ECF No. 20 at ¶ 120, PageID 131.) The Complaint alleges that "[t]his information was material to Root's business relationship with Quantasy because Root would not have entered into a business relationship with Quantasy with this knowledge." (*Id*.)

As set forth below, Root's fraudulent concealment claim should be dismissed because it: (i) is premised on a "duty to disclose" that does not exist under Ohio law, (ii) does not adequately allege concealment of material facts thereby failing to satisfy Ohio's fraud standard and the plausibility requirement articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007), and (iii) does not plausibly allege scienter.

1.    <u>The Quantasy Defendants Had No Duty to Disclose</u>.

As the Sixth Circuit has made clear, a fraudulent concealment claim is not actionable unless a defendant has a duty to disclose the purportedly concealed facts to the plaintiff. *Joseph*, 2022 U.S. App. LEXIS 23216, at \*16-17. Here, the Complaint insists that "Quantasy had a duty to disclose" because it was "a party to the business transaction between Root and Quantasy." (Am. Cmplt., ECF No. 20 at ¶ 120, PageID 131). Simply participating "in a business transaction," however, does not create a duty to disclose under Ohio law. In *Demcyzk v. Lesh, Casner & Miller (In re Kirkpatrick)*, 254 B.R. 378 (N.D. Ohio 2000), Judge Gwin explained that a duty to disclose does not exist unless "some type of special relationship exist[s]":

> The duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. The term 'fiduciary relationship' has been defined as a relationship in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.

*Id.* at 386 (quoting *Steinfels v. Ohio Dept. of Commerce*, 129 Ohio App. 3d 800, 807, 719 N.E.2d 76, 82 (Ohio 10th Dist. 1998)).

It is well established that ordinary contractual relations, like those between Root and Quantasy, do not give rise to a fiduciary relationship, or place Quantasy in "a resulting position of superiority or influence, acquired by virtue of [a] special trust." *See, e.g., Am. Coal Sales Co. v. N.S. Power, Inc.*, 2009 U.S. Dist. LEXIS 13550, at *77 (S.D. Ohio Feb. 23, 2009) (no duty to disclose where such duty was not imposed by contract); *De Boer Structures (U.S.A.) v. Shaffer Tent & Awning Co.*, 233 F. Supp. 2d 934, 946 (S.D. Ohio 2002) (duty to disclose does not arise from contract for sale of business).

Root does not allege, nor could it, that the relationship between an advertiser and its advertising agency is "a fiduciary or other similar relation of trust and confidence." The Amended Complaint states that Root and Quantasy were contractual counterparties. It offers no basis upon which the Court could determine that they were in "a relationship in which special confidence and trust is reposed in the integrity and fidelity of another."[8]

In light of the above, it is clear that Quantasy could not (and did not) have a duty to disclose. Root's attempt to impose such a duty here is based only on its own *ipse dixit.* Its fraudulent concealment claim cannot survive the operation of Rule 12(b)(6) and should be dismissed.

---

[8] It is clear that Campbell bore no duty to disclose here, as he was acting only in his capacity as Quantasy's President and had no individual relationship (fiduciary or otherwise) with Root.

2.     The Complaint Does Not Plausibly Allege that Quantasy Concealed Material Facts from Root.

The Complaint alleges that the facts Quantasy "concealed" were "material to Root's business relationship with Quantasy because Root would not have entered into a business relationship with Quantasy with this knowledge." (Am. Cmplt., ECF No. 20 at ¶ 120, PageID 131)[9] According to the Complaint, Root "entered into a business relationship with Quantasy" on February 3, 2022. (*Id.* at ¶ 30, PageID 102.)

However, the Complaint is devoid of any allegation that Quantasy knew *anything* about Collateral Damage as of that date. While Plaintiffs insist that Quantasy "concealed" material facts about Collateral Damage from Root before February 3, 2022, the Complaint does not even attempt to explain how or when Quantasy became aware of those facts. It does not allege that Silver briefed Quantasy about his intended use of Collateral Damage.[10] It does not state that Quantasy

---

[9]     According to the Amended Complaint, Quantasy "concealed" its "intent to subcontract marketing work for Root to Collateral Damage; [its] intent to work out a private payment structure with Silver that was not disclosed to anyone else at Root; [and] that instead of performing marketing work for Root, Quantasy and Campbell were channeling funds to Collateral Damage even though Collateral Damage was not performing marketing services. (Am. Cmplt., ECF No. 20 at ¶ 120, PageID 131.)

[10] In fact, the Complaint strongly suggests that Silver concealed critical facts about Collateral Damage from Quantasy:

- On March 2, 2022, Campbell asked Silver to have Lauren Lanskie send "the second invoice from Collateral Damage" to Quantasy, even though "Lanskie was not working for Collateral Damage or Silver and had no contact with Silver." (Am. Cmplt., ECF. 20, at ¶ 43 – 45.) If Campbell or Quantasy were "co-conspirators" in Silver's fraudulent scheme (as Root alleges (*Id.* at ¶ 4)) there would be no reason why Campbell would ask Silver to have a non-existent Collateral Damage employee send an invoice. The obvious implication of Campbell's reference to Lanskie here is that: (i) Campbell and Quantasy had no idea that Lanskie was not an actual employee of a bona fide marketing agency, and (ii) did not know that Collateral Damage was the sham entity alleged in the Complaint that "was not performing marketing services" for Root.
- Similarly, on March 9, 2022, Campbell notified Silver that had not yet received Collateral Damages' invoice "from Lauren." (*Id.* at ¶ 48.) This clearly reflects Campbell's good faith

---

knew whether Collateral Damage would (or would not be) "performing marketing services" for Root. Nor does it assert that Quantasy acquired that knowledge from any other source.  Instead, the Complaint simply assumes that, as of February 3, 2022, Quantasy had a fully formed "intent" to "subcontract" with, and "channel funds" to, Collateral Damage even though it fails to provide any factual support for those assertions.[11]

Moreover, there are no factual allegations in the complaint that would indicate that the decision to sub-contract a portion of Root's marketing work was material to Root at all, notwithstanding its conclusory assertion.  The first statement of work, which was signed on behalf of Root not by Silver, but by Root's Vice President, Creative, Jill Neely, does not contain any prohibition on subcontracting.  Indeed, the SOW's terms and conditions, which are expressly incorporated into the SOW at paragraph seven, contemplates the use of third-party subcontractors. The Terms and Conditions provide "[w]e will bill for any third party services and materials that are part of or needed for our provision of services and materials outlined herein."  (SOW #1, at

---

belief that Lanskie was a Collateral Damage employee with the authority to send out invoices.

- On March 25, 2022, Campbell again asked Silver to "[p]lease have Lauren send an invoice," and – significantly – "Silver responded … that Lauren 'sent the invoice'."  (*Id.* at ¶ 53.)  This does not support Root's claim that Quantasy knew Collateral Damage was a sham entity, but instead shows that Silver was defrauding Quantasy and Campbell along with Root.
- On April 27 and May 11, 2022, Silver sent a tax form and a Collateral Damage invoice to Campbell using Lanskie's purported email address at Collateral Damage.  (*Id.* at ¶¶ 71, 77.) There is no plausible explanation for why Silver would do so other than his intent to defraud Campbell and Quantasy.

[11] Nor does the Amended Complaint allege that Quantasy knew "Collateral Damage was not performing marketing services" for Root at any point during the months-long process (from February 3 to May 17, 2022) during which: (i) Root executed both Contracts, (ii) Root made six wire transfers to Quantasy totaling over $15 million, and (iii) Quantasy allegedly transferred $9,484,444 to Collateral Damage.  (*Id.* at ¶¶ 30-84.)

Terms and Conditions ¶ 1(b), Am. Cmplt. Ex. 3, ECF No. 20-3, PageID 155).  If it were material to Root that Quantasy not subcontract the work, Root's Vice President would have included a provision in the agreement that prohibits subcontractors or, at the very least, would have objected to the terms and conditions that expressly contemplated the use of third-parties by Quantasy to perform the services.  Root did not.  Its claim now that Quantasy hiring a subcontractor somehow worked a fraud on Root cannot be reconciled with the terms of the actual agreement between Quantasy and Root.

The Amended Complaint therefore fails to allege Quantasy's concealment of material facts, a required element of Root's fraudulent concealment claim, and is dismissible for that reason alone. *See Joseph v. Joseph*, 2022 U.S. App. LEXIS 23216, at *16-17 (6th Cir. Aug. 18, 2022); *Koyo Corp. v. Comerica Bank,* 2011 U.S. Dist. LEXIS 111880, at *23 (N.D. Ohio Sept. 29, 2011); *Zigdon v. LVNV Funding, LLC*, 2010 U.S. Dist. LEXIS 53813, at *25 (N.D. Ohio Apr. 23, 2010).

In addition, Root's strained attempt to assert that Quantasy "concealed" facts it did not possess requires dismissal of Root's fraudulent concealment claim under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007).  In *Ashcroft*, the Supreme Court held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" explaining that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).  Ohio federal courts routinely dismiss fraud claims that fail to pass scrutiny under *Ashcroft* and *Twombly*.  *See Hirsch v. Wells Fargo Bank, N.A.*, No. 1:13-cv-01489, 2014 U.S. Dist. LEXIS 29587, at *8 (N.D. Ohio Mar. 7, 2014) (dismissing fraud claim where allegations not plausible); *Onx USA LLC v. Sciacchetano*, No. 1:11CV2523, 2013 U.S. Dist.

LEXIS 49649, at *10 (N.D. Ohio Apr. 5, 2013) (dismissing fraud claim as not facially plausible); *Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-cv-993, 2011 U.S. Dist. LEXIS 57366, at *42 (S.D. Ohio May, 27, 2011) (same).  Here, Root pleads <u>no</u> "factual content" allowing this Court to "draw the reasonable inference" that Quantasy concealed material facts from Root before the parties "entered into a business relationship" on February 3, 2022.  Root's fraudulent concealment claim does not satisfy the *Ashcroft/Twombly* standard and should be dismissed for this reason as well.

3.     <u>Root Does Not Plausibly Allege Scienter</u>.

To state an actionable fraudulent concealment claim, the Amended Complaint must allege that Quantasy "concealed" these facts with scienter, or a "conscious intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976); *City of Monroe Emples. Ret. Sys. v. Bridgestone Corp*., 399 F.3d 651, 682 (6th Cir. 2005) ("Scienter is a mental state embracing intent to deceive, manipulate, or defraud"); *FERC v. Coaltrain Energy*, *L.P.*, 501 F. Supp. 3d. 503, 531 (S.D. Ohio 2020) (same); *Glimcher Co., LLC v. Deavers the Shops at Ety Vill*., 2010 U.S. Dist. LEXIS 38214, at *16 (S.D. Ohio Apr. 19, 2010) (same).

In order for the Amended Complaint to satisfy this standard, it must allege that, while Quantasy knew that Silver was aware of all of the allegedly "concealed" facts, it also knew that Silver was not sharing these facts with anyone else at Root.  In other words, in order for Quantasy to possess the requisite intent to deceive Root, the Amended Complaint must allege that Quantasy knew that Silver was hiding the facts regarding Collateral Damage from other members of Root's management.

The Amended Complaint does not do so.  Instead, it repeats, metronomically, that every action Quantasy took in relation to Collateral Damage was "unbeknownst to Root management (other than Silver)."  (Am. Cmplt., ECF No. 20. at ¶¶ 49, 55, 56, 69, 72, 78, 79, 85, 94, 97, 100,

PageID 107-109, 112-115, 119, 122-124.) But the Amended Complaint nowhere alleges that Quantasy knew (or had reasonable cause to believe) that Silver was not sharing any of the "concealed" facts with his colleagues. That is not good enough. The Amended Complaint merely establishes that Quantasy had legitimate reason to believe that Root, via its Chief Marketing Officer, was aware of each and every allegedly "concealed" fact. As a result, the Amended Complaint does not, and cannot, allege that Quantasy acted with the intent to deceive required by Ohio law.

Root's allegations make it clear that Quantasy had no reason to believe that Silver was not sharing this information with others at Root. Silver was Root's Chief Marketing Officer, and thus an authorized agent of Root. As an authorized agent, Silver was authorized to act on Root's behalf and to share information with others at Root. Quantasy had no reason to suspect that Silver was not sharing this information, and thus cannot be said to have had a conscious intent to deceive, manipulate, or defraud Root.

Where, as here, a fraud complaint fails to plead any basis upon which a court can conclude that a defendant acted with intent to deceive, it is dismissible as a matter of law. In *Carter v. Natl'l City Bank*, 2018 U.S. Dist. LEXIS 122683, at *22 (S.D. Ohio July 23, 2018), Judge Litkovitz dismissed plaintiff's fraud claim because plaintiff "offered no plausible facts demonstrating that defendants acted with an intent to deceive." The court found that plaintiff's conclusory allegations that defendants "manufacture[d]" and "create[d] fake…documents" were insufficient to support a fraud claim because the plaintiff failed to allege any facts demonstrating the defendant's intent to deceive. Id. at *3, 22. See *Kelly v. U.S. Bank Nat'l Ass'n*, 2015 U.S. Dist. LEXIS 132734, at *6 (N.D. Ohio Sept. 30, 2015) (dismissing fraud claim where plaintiff "[did] not identify any false statements [defendant] made to her with an intent to deceiver her"); *City of Pontiac Policemen's*

*& Firemen's Ret. Sys. v. UBS AG, et al.*, 752 F. Supp. 2d 1047 (S.D. Ohio 2010) (dismissing complaint for failure to plead scienter, finding that the plaintiffs had not adequately alleged that the defendants had the requisite intent to deceive or defraud investors); *In re Royal Appliance Mfg. Co. Secs. Litig.*, 2010 U.S. Dist. LEXIS 101367 (N.D. Ohio Sept. 27, 2010) (dismissing complaint for failure to plead scienter, where plaintiffs failed to allege specific facts indicating that the defendants had intent to mislead).

### B. Root's Fraudulent Misrepresentation Claim Fails as a Matter of Law

In its fraudulent misrepresentation claim (Count III), Root alleges that it was "directly and proximately injured as a result of [its] reliance" on three "material misrepresentations" by Quantasy and Campbell. (Am. Cmplt, ECF No. 20, ¶¶ 125-127, 133, PageID 132-133.) As set forth below, this claim should be dismissed because: (i) it is not pleaded with the particularity required by Rule 9(b), and (ii) Root cannot possibly show that it was "proximately injured as a result of" its reliance on alleged misrepresentations made months after it had completed its payments to Quantasy.

First, Root alleges that Quantasy and Campbell "made material misrepresentations during the February 24, 2022 presentation by Quantasy regarding the work that Quantasy intended to do for Root." (Am. Cmplt, ECF No. 20, ¶ 125, PageID 132.) This allegation cannot possibly satisfy Rule 9(b), as the Complaint fails to identify the content of the purported misrepresentations.[12] *See, e.g., Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (to satisfy Rule 9(b), a plaintiff must at a minimum "allege the time, place, and **content** of the alleged misrepresentation")

---

[12] The Amended Complaint offers no detail regarding what was purportedly said at the "February 24, 2022 presentation" referred to in Paragraph 125, alleging only that "[o]n February 24, 2022, Campbell met, via videoconference, with certain members of Root management, including Silver, to present Quantasy's ideas for Root's marketing campaigns." (Am. Cmplt., ECF No. 20 at ¶ 41.)

(emphasis supplied); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006);

*Smith v. Gen. Motors LLC*, 988 F.3d 873, 884 (6th Cir. 2021).

Second, the Complaint alleges, '[o]n information and belief," that "Campbell and Quantasy

made material misrepresentations to the Root internal audit team in August 2022." (Am. Cmplt.,

ECF No. 20, ¶ 127, PageID 132.) This too fails to satisfy Rule 9(b), as facts pleaded on

'information and belief' do not fulfill the Rule's particularity requirement. *Smith v. GM LLC,* 998

F.3d 873, 885 (6th Cir. 2021) (claims premised on "'information and belief'… 'must set forth a

factual basis for such belief,' and plaintiffs cannot 'base claims of fraud on speculation and

conclusory allegations.'") (citing *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th

Cir. 2006)); *Sec'y of Labor v. Macy's, Inc.*, No. 1:17-cv-541, 2021 U.S Dist. LEXIS 221603, at

*59 (S.D. Ohio Nov. 17, 2021) ("mere 'information and belief' is an insufficient basis for plausible

entitlement to relief arising out of [a] conclusory statement …") (citing *Total Benefits Planning

Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)); *Franke v.

Norfolk S. Ry. Co.*, No. 3:20 CV 2152, 2021 U.S. Dist. LEXIS 159285, at *29 (N.D. Ohio Aug.

24, 2021) ("conclusory, non-specific, 'information and belief' allegations… are insufficient to

satisfy Rule 9(b)"); *Johnson v. U.S. Bank Nat'l Ass'n & Nat'l City Bank,* No. 1:09-cv-492, 2010

U.S. Dist. LEXIS 153047, at *33 (S.D. Ohio May 12, 2010) (dismissing fraud claim alleged based

upon information and belief as it failed to satisfy Rule 9(b)'s specificity requirement).[13]

Third, Root alleges that in September 2022, "Silver, Campbell and Quantasy made material

misrepresentations to Root concerning the transaction between Root and Quantasy by claiming

---

[13] While there is an exception to the Rule 9(b) particularity requirement when the relevant facts
"lie exclusively within the knowledge and control of the opposing party." *Wilkins ex rel. United
States v. State of Ohio*, 885 F. Supp. 1055, 1061 (S.D. Ohio 1995), that is obviously not the case
here, as Root alleges that the "material misrepresentations" at issue were made to its own "internal
audit team." (Am. Cmplt., ECF No. 20 at ¶ 127.)

that the money Root had already paid Quantasy constituted 'prepaid funds' that were available for future spend in 2023." (Am. Cmplt., ECF No. 20, ¶ 126, PageID 132.) However, contrary to the Amended Complaint, Root could not have justifiably relied upon, or been "proximately injured as a result of," this alleged "misstatement" because it occurred approximately four months after Root made its final wire transfer to Quantasy on April 25, 2022. (*Id.* at ¶ 70, PageID 112.) It is axiomatic that allegedly fraudulent misstatements or omissions made <u>after</u> a plaintiff has suffered all of its claimed damages cannot form the basis of an actionable fraud claim. *See Mafcote, Inc. v. Genatt Assocs.*, No 1:04-CV-853, 2007 U.S. Dist. LEXIS 10117, at \*33 (S.D. Ohio Feb. 14, 2007) (alleged fraudulent misrepresentations in connection with insurance policy purchase occurred after purchase and, as such, plaintiff could not prove reliance or damages thereby); *NxSystems, Inc. v. Monterey Cty. Bank*, No. 12-cv-5458 KAW, 2013 U.S. Dist. LEXIS 14265, at \*15 (N.D. Cal. Feb. 1, 2013) (dismissing fraud claim where alleged misrepresentations occurred after the events giving rise to damages and, thus, plaintiffs could not demonstrate reliance); *Morin v. Trupin*, 711 F. Supp. 97, 104 (S.D.N.Y. 1989) (alleged misrepresentation could not form basis of fraud claim where it occurred ten months after damages sustained by plaintiff).

### III. Plaintiffs Have Failed to Demonstrate That Campbell is Personally Liable

The basis of Campbell's claimed liability is not precisely clear from the complaint, but to the extent that it is based his behavior while acting on behalf of Quantasy, it is a fundamental principle of corporate law that, generally, shareholders, officers, and directors cannot be liable for the wrongdoings of the corporation. *See Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 287 (Ohio 1993); *Tenable Protective Srvs. v. Bit E-Technologies, L.L.C.*, 8th Dist. (Cuyahoga) No. 89958, 2008-Ohio-4233, ¶¶ 6-7, 22-24, 28 (affirming dismissal of claims for fraud and misrepresentation against members of an LLC in their personal capacities, reasoning that they cannot be held liable for the company's actions even if

sounding in tort and agreeing that amendment to add additional allegations of fraud against the members would be futile). Quantasy is a Delaware limited liability company that exists as an entirely separate entity from Mr. Campbell. Plaintiffs cannot hold Mr. Campbell liable for Quantasy's allegedly tortious conduct.

To the extent that Plaintiffs are attempting to pierce the corporate veil and hold Mr. Campbell liable for the actions of Quantasy, the Amended Complaint lacks a single allegation to support this. Indeed, in certain circumstances, the corporate form may be disregarded, and the corporate veil pierced for the purpose of reaching the assets of the corporation's individual shareholders. Specifically, a plaintiff may only pierce the corporate veil if the following is shown:

(1)     control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own,

(2)     control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act [or a similarly unlawful act] against the person seeking to disregard the corporate entity, and

(3)     injury or unjust loss resulted to the plaintiff from such control and wrong.

*Rui He v. Rom*, 751 F. App'x 664, 672 (6th Cir. 2018) (quoting *Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506, 2008-Ohio-4827, 895 N.E.2d 538). A plaintiff's successful proof of each of the three elements will result in individual shareholders being held liable for corporate misdeeds because "it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." *Waste Conversion Techs., Inc. v. Warren Recycling, Inc.*, 191 Fed. Appx. 429, 433 (6th Cir. 2006) (citing *Belvedere* at 287, 617 N.E.2d 1075). Critically, the Amended Complaint does not contain even a threadbare recital of the elements or any allegation that Plaintiffs seek to pierce the corporate veil. Therefore, Plaintiffs fail to allege sufficient facts to meet this standard.

> A.     *Plaintiffs Have Failed to Demonstrate That Quantasy is an Alter-Ego of Campbell*

The first element is a restatement of the alter-ego doctrine, which requires that plaintiff "show that the individual and the corporation are fundamentally indistinguishable." *Taylor Steel, Incorporated v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005); *see also Ramjet Aviation, Inc. v. My Parts Locator, Inc.*, 2023 U.S. Dist. LEXIS 6178, *17 (N.D. Ohio 2023) (a corporate veil may only be pierced where there are allegations or evidence that a party used a corporate form an "alter ego").  "In assessing whether a corporation is an individual's alter ego, courts consider whether the parties observe corporate formalities, maintain corporate records, commingle corporate and personal funds, and use corporate property for personal purposes." *Id.*  The Amended Complaint is completely devoid of any these types of allegations.  The Complaint states only that Mr. Campbell is the Chief Executive Officer of Quantasy.  (Am. Cmplt., ECF No. 20, ¶ 18, PageID 101).  However, simply being a chief executive officer and an owner of a company is not enough to pierce the corporate veil.  *See Scarbrough v. Perez*, 870 F.2d 1079, 1083 (6th Cir. 1989) ("[W]here a court is without justification for piercing the veil separating a corporate employer from its owner-chief executive, the owner-executive may not be held personally answerable for the corporation's delinquent contributions."); *University Circle Research Ctr. Corp. v. Galbreath, Co.*, 106 Ohio App.3d 835, 840 (Ohio Ct. App. 8th Dist. 1995) (noting that being the sole shareholder, as well as officer and director, of a corporation "does not, per se" warrant piercing the corporate veil).

Ohio courts have repeatedly emphasized that piercing the corporate veil is a "rare exception" and those seeking to pierce the corporate veil bear a heavy burden.  *Meinert Plumbing v. Warner Indus.*, 2017-Ohio-8863, ¶ 41 (Ohio Ct. App. 8th Dist. 2017); *Decaprio v. Gas & Oil*, 2012-Ohio-5866, ¶¶ 11-13 (Ohio Ct. App. 9th Dist. 2012).  In the same vein, courts routinely caution that the corporate form is not lightly to be disregarded.  *Fed. Ins. Co. v. Fredericks, Inc.*,

2015-Ohio-694, ¶ 67 (Ohio Ct. App. 2nd Dist. 2015); *Rainworks Ltd. v. Mill-Rose Co.*, 609 F.Supp.2d 732, 737 (N.D. Ohio 2009) ("Generally, the corporate form is accorded a great deal of respect. Limited liability is the rule, not the exception; and on that assumption large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted. Consequently, a court may pierce the corporate veil only rarely.") (internal citations and quotations omitted).

Plaintiffs have offered no allegations to show that Mr. Campbell has "unequivocal total control" of Quantasy and this instance should not be one of those "rare exceptions" where the corporate veil is pierced.  Plaintiffs have failed to plausibly allege any facts to support piercing the corporate veil.  *See Med. Supply Distrib., LLC*, 2021 U.S. Dist. LEXIS 263748 at *6-8 (dismissing claims against individually named defendant where plaintiff failed to allege any factual allegations to support piercing the corporate veil.)

> ### B.    *Plaintiffs Have Failed to Demonstrate that Campbell Committed a Fraud*

The second element requires that Plaintiffs allege and prove that the individuals used their control over the corporation to commit fraud or some other illegal act causing damage to the plaintiff.[14]  To the extent courts impose personal liability on a member for an LLC's alleged fraud, Rule 9 still applies and requires a party alleging fraud to "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent."  *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (emphasis added).  Plaintiffs fail to meet this standard.

As explained above in Section II, the Amended Complaint fails to plead a fraud that satisfies Rule 9's requirements, and this is particularly so with Campbell personally.  The

---

[14] At the outset, and as demonstrated above, Plaintiffs have failed to demonstrate that Campbell and Quantasy are "fundamentally indistinguishable" and as such, the Court need not reach the second factor of piercing the corporate veil.

Amended Complaint contains nothing but conclusory statements about Campbell, including that on a call with Root about work that Quantasy was performing, Campbell acted both in his capacity as an employee for Quantasy and in his own capacity. (Am. Cmplt., ECF No. 20, ¶ 127, PageID 132.) There is no basis for the claim that Campbell acted in his own capacity, and there is no reason for him to have done so; he was speaking to a Quantasy client about work being performed by Quantasy for the client. Plaintiffs' naked allegation regarding Campbell's personal activities cannot be credited.

<strong>C.</strong>     <em>Plaintiffs Have Not Shown a Loss Stemming from the Allegedly Improper Control</em>

The third prong of the *Belvedere* test requires a plaintiff to allege that it suffered loss *from* the defendant's improper control of the corporation *and* the fraudulent conduct. *Belvedere*, 67 Ohio St. 3d 274, at syl. ¶ 3. The Amended Complaint is completely devoid of any allegation that Plaintiffs were harmed because of Campbell's improper control of Quantasy. Indeed, as noted above, even assuming that Campbell made any fraudulent statements to Root, those statements post-dated Root's transfer of money; it is thus impossible for Plaintiffs to have suffered harm by both Campbell's improper control of Quantasy and his allegedly fraudulent conduct. Because Plaintiffs cannot demonstrate that Quantasy is Campbell's alter ego, it cannot pierce Quantasy's corporate veil to hold Campbell personally liable.

## IV. Ohio Law Does Not Permit a Claim for Conversion of Money in This Instance

Root alleges that Quantasy "converted" Root's funds by transferring them to Collateral Damage and refusing to return them upon its demand. (Am. Cmplt., ECF No. 20, ¶¶ 135-138.) But Root's claim involves non-earmarked funds—non-identifiable chattel—and, thus, should fail.

To prevail on a claim for conversion, Plaintiffs must demonstrate: 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a

wrongful act or disposition of plaintiff's property rights; and 3) damages. *Barnes v. First Am. Title Ins. Co.*, 2006 U.S. Dist. LEXIS 54984, (N.D. Ohio Aug. 4, 2006). Moreover, "in order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner." *Id.* (citing *Tabar v. Charlie's Towing Serv., Inc.*, (1994) 97 Ohio App.3d 423, 427-28, 646 N.E.2d 1132).

The "general rule in Ohio is that money is intangible property that cannot be subject to conversion, except when specifically identified monies are at issue." *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012). A conversion claim involving money can only be maintained if "the funds were earmarked, that is, that the defendant had an obligation to deliver a specific corpus of money capable of identification and not merely that the defendant had an obligation to pay a certain sum as a general debt." *RAE Assocs., Inc. v. Nexus Communications, Inc.*, 63 N.E.3d 757, 765-66 (Ohio Ct. App. 10th Dist. 2015) (internal citations omitted); *see also NPF IV, Inc. v. Transitional Health Services*, 922 F. Supp. 77, 82 (S.D. Ohio 1996) ("[a]n action for conversion…requires that defendant have an obligation to deliver specific money as opposed to merely a certain sum of money."); *Macula v. Lawyers Title Ins. Corp.*, Case No. 1:07 CV 1545, 2008 U.S. Dist. LEXIS 90468, at *13-14 (N.D. Ohio Aug. 14, 2008) ("[c]onversion of money occurs only when money is specifically earmarked, or capable of identification such as 'money in a bag, coins or notes that have been entrusted to the defendants care, or funds that have otherwise been sequestered.'") (citing *Haul Transp. of VA v. Morgan*, Case No. CA 14895, 1995 Ohio App. LEXIS 2240, at *10 (Ohio Ct. App. 2nd Dist. June 2, 1995)).

While the Amended Complaint states that Root paid certain "funds" to Quantasy (Am. Cmplt., ECF 20, ¶¶ 136-137), it fails to allege that these payments were earmarked or sequestered,

or that there is a specific corpus of money (*i.e.,* "money in a bag, coins or notes") at issue. Root's conversion claim fails as a result and should be dismissed. *See RLFShop, LLC v. Am. Express Co.*, No. 3:17-cv-405, 2019 U.S. Dist. LEXIS 20506, at *20 (S.D. Ohio Feb. 8, 2019) (conversion claim failed where no allegation that funds were earmarked or sequestered); *Dana Ltd. v. Aon Consulting,* 984 F. Supp. 3d 755, 769 (N.D. Ohio 2013) (dismissing conversion claim where no "specific, segregated, identifiable money" at issue); *Macula*, 2008 U.S. Dist. LEXIS 90468, at *14 (dismissing conversion claim because plaintiffs "[did] not allege that the money paid to [defendant] was identifiable, or that [defendant was] obligated to return specific money (*i.e.*, specific bills)").[15]

## V. Plaintiffs' Claims Under Ohio Rev. Code 2307.60 Are Not Permitted by the Statute and Must be Dismissed.

Root also asserts a claim for "civil action for criminal theft" against Quantasy. Ohio Rev. Code § 2307.60 provides that "[a]nyone injured in person or property by a criminal act…may recover full damages…, costs…and attorney's fees" in a civil action. And Ohio Rev. Code § 2307.61 allows a property owner to bring a civil action "to recover damages from any person who willfully damages the owner's property or commits a theft offense." The statute, however, applies only to "tort claims." Specifically, "R.C. 2307.60 (B) (1) (a) defines a 'tort action' as 'a civil action for damages for injury, death, or loss to person or property *other than* a civil action for damages for a breach of contract or another agreement between persons.'" *STE Invs., LLC v. Macprep, Ltd.*, 2022-Ohio-2614, ¶42. "The existence of a contract precludes the assertion of a tort

---

[15] Plaintiff's conversion claim as to Campbell also fails for the simple reason the Amended Complaint makes no allegation that Campbell ever personally possessed the funds. (*See e.g.,* Am. Cmplt., ECF No. 20, ¶ 136, PageID 134 ". . .by transferring the funds to Quantasy and then to Collateral Damage."). Where a party never gains possession of the property in question, they cannot be held liable for conversion. *Wheat v. Chase Bank*, 2014 U.S. Dist. LEXIS 14003, *81 (S.D. Ohio 2014) ("No reasonable jury could find either party liable for conversion without having had possession of Plaintiff's funds.").

claim based on the same conduct unless there is a duty owed separate from the contract." (*Id.*). As established above (*see supra* § II), neither Quantasy nor Campbell owed a separate duty to Plaintiffs, and the Plaintiffs' claims are duplicative of their breach of contract claim and are therefore barred as a matter of law. *See Wildcat Drilling, LLC v. Discovery Oil & Gas, LLC*, 2018-Ohio-4015, ¶ 43 (7th Dist. 2018) (holding R.C. 2307.60 inapplicable to breach of contract claim) *rev'd on other grounds*, 164 Ohio St. 3d 480 (2020).

Even if the Court should find that Section 2307.60 applies in this instance, however, the allegations in the Amended Complaint are insufficient to survive a motion to dismiss, as the Complaint is devoid of any facts that would support Plaintiffs' claim that Quantasy or Campbell committed a theft offense as required by the statute.

Root makes conclusory allegations that Quantasy "knowingly obtained or exerted control over the funds [Root paid to Quantasy] without Plaintiffs' consent" and then "took steps to actively conceal their scheme." (Am. Cmplt, ECF No. 20, ¶¶ 142-144, PageID 135.) Nonetheless, Plaintiffs fail to plead that Quantasy acted with the requisite knowledge or intent to support its civil theft claim. To adequately plead a theft offense under Ohio law, Root must demonstrate that Quantasy acted with the "*purpose to execute or otherwise further* the scheme to defraud" it (Ohio Rev. Code § 2913.05) (emphasis added), or that it, with intent to deprive the owner of property, "*knowingly obtained or exert[ed] control*…without the consent of the owner or person authorized to give consent" (Ohio Rev. Code § 2913.02) (emphasis added).

The complaint, however, makes no factual allegations whatsoever that would be sufficient to support a conclusion that either Quantasy or Campbell intended to defraud Root, and thus the claims under Sections 2913.02 and 2913.05 both fail. There is no allegation in the Amended Complaint – not even upon information and belief – that Root's Chief Marketing Officer told

Quantasy or Campbell that Collateral Damage was a fraudulent company or that he was using Root's money for purposes other than that intended by Root. There is no allegation in the Amended Complaint that *any person* at Root instructed or informed Quantasy that its Chief Marketing Officer did not have authority to enter into contracts or to direct and carry out the marketing and advertising activities of Root.

Contrary to Plaintiff's naked conclusion that the Quantasy Defendants were part of the fraud, the Amended Complaint alleges facts, even viewed in a light most favorable to the Plaintiffs, that Silver actively deceived and lied to Quantasy in order to perpetrate and conceal his own fraud: Silver repeatedly communicated with Campbell using a fake name and email address of a Collateral Damage employee (Am. Cmplt., ECF No. 20, ¶ 45, PageID 106), and he explicitly lied to Quantasy and Campbell when sending Collateral Damage invoices. (*Id.* at ¶ 53, PageID 108). Root's Chief Marketing Officer also falsely told Quantasy that Root's Vice President of Creative, who signed SOW#1, was in trouble for not paying Quantasy's invoices in a timely fashion and that, accordingly, all invoices should be sent directly to him. (*Id.* at ¶ 50, PageID 107).

In contrast to Silver's actions, Quantasy insisted on written documentation, invoices, contracts, and tax forms in its dealings with Root and Collateral Damage, all for the purpose of turning square corners. Quantasy entered into Statements of Work, subcontractor agreements, and assignment agreements with Root and/or Collateral Damage.

Additionally, Section 2913.02 also contains an additional element[16] – that the exercise of control be done "beyond the scope of the express or implied consent of the owner or person

---

[16] With respect to Defendant Campbell personally, Section 2913.02 requires that the Defendant "obtain or exert control" over the property. The Amended Complaint alleges that Root's money was transferred to Quantasy and then to Collateral Damage. There is no allegation that Campbell personally obtained or exerted control over Root's money, and the claim against Campbell fails for this reason as well.

-41-

authorized to give consent." Critically, there is *no* allegation in the Amended Complaint that Root's Chief Marketing Officer was not in fact authorized to enter into agreements with advertising contractors, to direct payments to subcontractors, or to authorize payment of money by Root. Indeed, there is no allegation that Silver's transfer of Root's money to Quantasy was improper or not authorized by Root. At most, Plaintiffs allege that they don't like *how* Silver chose to spend the money, or that Silver was not authorized to engage Collateral Damage – but these are all controls deficiencies, not a theft by Quantasy.

The simple fact is that Silver was authorized to sign the Quantasy contract and others at Root was aware he had done so. There is no allegation that the Quantasy Defendants obtained or controlled Root's money without its consent, and there is no factual, non-conclusory allegation that Quantasy whatsoever that Quantasy deceived Root in order to obtain or exert control over the money. Accordingly, Root's civil theft claim should fail. *See Yeager v. U.S. Bank*, 2021-Ohio-1972, 2021 Ohio App. LEXIS 1944, at ¶ 22 (Ohio Ct. App. 1st Dist. June 11, 2021) (conclusory allegations of defendant's prior knowledge of employee's embezzlement insufficient to state civil theft claim); *ArmorSource LLC v. Kapah*, No. 2:18-cv-905, 2020 U.S. Dist. LEXIS 53159, at *13-14 (S.D. Ohio Mar. 26, 2020) (allegation of "defendant's conversion and wrongful taking of funds" did not state claim for civil theft); *Oliver v. ARS Ohio LLC*, No. 5:18-cv-967, 2019 U.S. Dist. LEXIS 13201, at *13-14 (N.D. Ohio Jan. 28, 2019) (civil theft claim not adequately pled where complaint relied on conclusory allegations that defendants committed "theft crimes").

## VI. Plaintiffs Have Failed to State a Claim for Breach of Contract.

Plaintiffs have likewise failed to meet the pleading standards for its breach of contract claim against Quantasy. The elements of a breach of contract claim in Ohio are (1) the existence of a binding agreement; (2) performance by the non-breaching party; (3) failure to perform by the

other party without excuse; and (4) damages.  *Phillips v. Spitzer Chevrolet Co.*, 2006-Ohio-4701, at ¶ 17 (5th Dist. 2006).

The two contracts purportedly at issue are SOW #1 and SOW #2.  With respect to SOW #1, the Amended Complaint alleges a valid contract but claims that Quantasy breached the agreement by (i) "entering into a purported subcontract with Collateral Damage"; (ii) "failing to provide the agreed-upon marketing services"; and (iii) "breach[ing] the implied covenant of good faith and fair dealing."  For the first alleged breach, there is no provision in SOW #1 that prohibits Quantasy from subcontracting its work to third parties.  To the contrary, as discussed above in Quantasy's discussion of the fraud claim (further reinforcing that the fraud claim improperly overlaps with Root's contract claim), the Terms and Conditions to SOW #1 contemplates that Quantasy will hire third-party contractors: "[w]e will bill for any third party services and materials that are part of or needed for our provision of services and materials outlined herein."  (Am. Cmplt. Ex. 3, ECF No. 20-3, PageID 155).

The second ground for breach is Quantasy's alleged failure to provide the agreed-upon marketing services.  The Amended Complaint fails to identify the agreed-upon marketing services that Quantasy supposedly did not provide, which is because Quantasy provided Root exactly what it expected to see.  The scope of SOW #1 was to create a brand strategy and advertising strategy for Root.  (*Id.*).  Quantasy did this: it met with members of Root's executive leadership team (Am. Cmplt., ECF No. 20, ¶ 41, 93, PageID 105, 122), the meeting went "great" and Root did an "awesome job" (Am. Cmplt. Ex. 9, ECF No. 20-9, PageID 168), and Quantasy developed an advertising strategy that was adopted by Root as part of SOW #2, which included the Athlete Driver Content Series, the Best Driver in America National Program, athlete endorsements, a driver appreciation program, and in-market gas station takeovers.  (Am. Cmplt. Ex. 19, ECF No.

20-19, Page ID 192-197). Root now complains that Quantasy's work was overpriced, but the value of the services that Quantasy provides is the *ideas*. Coming up with ideas for a brand strategy is extraordinarily valuable. Indeed, Root must have thought as much, as it authorized additional spending in SOW #2.

Last, the third alleged breach – the implied covenant of good faith and fair dealing – does not create a standalone cause of action for breach of contract. *Williams v. NAACP*, 2019-Ohio-1897, at ¶ 26 (10th Dist. 2019); *Fox v. Nationwide Mut. Ins. Co.*, 2018-Ohio-2830, at ¶ 60 (10th Dist. 2018).

Plaintiffs allege the same three breaches for SOW #2, and its claims fail for the same reasons. Quantasy notes that in SOW #2, Root "acknowledge[d] that [Quantasy] may subcontract to third parties in [Quantasy's] discretion[.]" (Am. Cmplt. Ex. 19, ECF No. 20-19, §4(b), PageID 193). Quantasy could not have breached the agreement by doing what it was expressly permitted to do under the terms of that agreement.

With respect to SOW #2, Plaintiffs again fail to point to any contractual provisions that were breached by Quantasy. "As the Sixth Circuit has explained, '[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached.'" *Doe v. BMG Sports, LLC*, 584 F. Supp. 3d 497, 507 (S.D. Ohio 2022) (quoting *Northampton Rest. Group, Inc. v. FirstMerit Bank, N.A.*, 492 Fed. Appx. 518, 522 (6th Cir. 2012)); *see also Foster v. Health Recovery Servs.*, 493 F. Supp. 3d 622, 640 (S.D. Ohio 2020). Root's "vague assertions amount, in substance, to a mere recitation of the elements of breach of contract action. More is required, even under the liberal pleading standard of Fed. R. Civ. P. 8." *Medpace, Inc. v. Insiremd, Inc.*, No. 1:16cv00830-WOB,

2017 U.S. Dist. LEXIS 75237, *1 (S.D. Ohio May 17, 2017); *see also Twombly*, 550 U.S. at 554; *Iqbal*, 556 U.S. at 679-80; *Doe*, 584 F. Supp. 3d at 507.

Moreover, Quantasy remains ready, willing, and able to perform under SOW #2. It began work on SOW #2, and it was instructed to "pause" advertising and marketing spending on behalf of Root until Q3/Q4 2022, and later, until 2023, which it has done. (Am. Cmplt. Ex. 35, ECF No. 20-35, PageID 239). At the time that Quantasy was instructed to pause its work on behalf of Root, it had spent $2.7 million as part of committed and allocated spending, program expenditures, agency fees, production cancellation costs, etc. (*Id.* at PageID 240).

Accordingly, Count VIII for breach of contract against Quantasy fails as a matter of law and should be dismissed.

**VII.    Plaintiffs' Civil Conspiracy Count Must be Dismissed**.

Civil conspiracy requires an underlying unlawful act independent from the actual conspiracy. *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (1998); *Barbara Mills v. City of Westlake*, 8th Dist. Cuyahoga No. 103643, 2016-Ohio-5836, ¶47. As set forth above, Plaintiffs' tort claims against Campbell fail as a matter of law. Accordingly, the civil conspiracy claim also fails. *Barbara Mills*, 2016-Ohio-5836, ¶48. Moreover, even if the failure of Plaintiffs' other tort claims did not mandate dismissal of the conspiracy claim, the Amended Complaint fails to adequately allege facts to support civil conspiracy claim as to Campbell personally. The Amended Complaint merely recites the elements of conspiracy and generically refers to the Defendants without specific factual allegations detailing any actions taken by Campbell. (Am. Cmplt., ECF No. 20, ¶¶ 172-174, PageID 140). Plaintiffs' conclusory recitations are insufficient to state a civil conspiracy claim. *Williams v. United States Bank Shaker Square*, 8th Dist. Cuyahoga No. 89760, 2008-Ohio-1414, ¶17 (affirming dismissal of civil conspiracy claim because "vague and

conclusory allegations were not supported by any specific factual allegations"). Accordingly, Count X for civil conspiracy must be dismissed.

## VIII. This Court Does Not Have Personal Jurisdiction Over Either Quantasy or Campbell.

With no allegations in the Amended Complaint to support personal jurisdiction over Quantasy and Campbell, Plaintiffs apparently rely on the nationwide service of process provision of RICO to try to establish personal jurisdiction. In a case of first impression, the Sixth Circuit adopted the majority "forum-state approach" followed by the Second, Third, Seventh, Ninth, Tenth and D.C. Circuits and held that 18 U.S.C. §1965(b), rather than subsection (d), gives RICO its nationwide jurisdictional reach and governs service of out-of-district defendants. *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432 (6th Cir. 2022). Accordingly, the Sixth Circuit approach requires that at least one defendant have traditional forum state contacts – minimum contacts – and that "the other summonses can be served nationwide on other defendants *if required by the ends of justice*." *Id.* at 441 (emphasis added).

Here, Plaintiffs do not establish that this Court is required by the ends of justice to exercise personal jurisdiction over California residents Quantasy or Campbell. Even assuming one other defendant has the requisite minimum contacts under RICO, Quantasy and Campbell could not anticipate being haled into court in a far-flung jurisdiction like Ohio such that the ends of justice require this suit to be dismissed. All claims against Quantasy and Campbell should be dismissed for lack of personal jurisdiction or the case transferred to the Central District of California.

### A. Facts Relevant to Personal Jurisdiction

Quantasy is a limited liability company formed in Delaware and with its place of business in Los Angeles County California from which it has been operating since 2012. (Am. Cmplt., ECF No. ¶17, PageID 100). Campbell, the CEO of Quantasy, is an individual residing in Los Angeles County California and is a citizen of California (Am. Cmplt., ECF No. 20, ¶18, PageID 100;

Declaration of William Campbell ("Campbell Decl.," attached as Ex. A at ¶ 1). According to the Amended Complaint, defendant Silver and Campbell were previous acquaintances who worked together at some point before Silver was recruited to become Root's Chief Marketing Officer. (Am. Cmplt., ECF No. 20, ¶¶22, 26, PageID 101-102). Silver is also a resident of California. (*Id*. at ¶14, PageID 100).

Neither Campbell nor Quantasy contacted Silver or Plaintiffs to solicit any work or to advertise Quantasy's services. (Campbell Decl. at ¶ 8; Declaration of Quantasy LLC ("Quantasy Decl."), attached as Exhibit B at ¶ 6; Am. Cmplt., ECF No. 20, ¶3, PageID 98). Neither Campbell nor Quantasy have ever solicited work in Ohio or advertised their services in Ohio. (Campbell Decl. at ¶ 3; Quantasy Decl. at ¶ 5.) Quantasy has never had a location in Ohio. (Quantasy Decl. ¶ 3). Campbell has never resided in Ohio and traveled to Ohio decades ago and on only two occasions for personal reasons unrelated to his work with Quantasy or Silver. (Campbell Decl. ¶ 4). Campbell did not enter into any agreements with Plaintiffs in his individual, personal capacity. (Campbell Decl. ¶ 14).

Silver contacted Campbell approximately two weeks after he was hired as CMO in late November 2022 to discuss retention of Quantasy as a marketing vendor for Root. (Am. Cmplt., ECF No. 20, ¶¶26-30, PageID 102). Quantasy ultimately signed four agreements related to this matter, all of which were discussed and negotiated with Silver. (Quantasy Decl. ¶ 8). Other than Silver, no one from Root was involved in the negotiations of these agreements. (Quantasy Decl. ¶ 9).

The four agreements were all signed by Quantasy in California, Quantasy negotiated and exchanged drafts of the agreements with Silver (who Quantasy believed was located in California), and the agreements provide for the application of California or New York law. (Am. Cmplt., ECF

No. 20,  ¶¶26-30, 57, 96, 100, PageID 102, 109, 123, 124; Quantasy Decl. ¶ 9.)  All these agreements contain choice of law provisions – three provide for California law and one New York law – and one provides for exclusive jurisdiction in the state and federal courts of New York. Specifically, SOW #1 and SOW #2 contain the following provision: "[t]his Agreement shall be governed and construed in accordance with the laws of the State of California for contracts made and to be performed entirely therein, without reference to conflict of law principles." (Am. Cmplt. Ex 3, ECF No. 20-3, §13, PageID 156; Am. Cmplt. Ex. 19, ECF No. 20-19, §12, PageID 197). The Assignment contains a similar provision. (Am. Cmplt. Ex. 40, ECF No. 20-40, ¶5, PageID 258). The Subcontractor Agreement provides that the laws of the State of New York shall govern the agreement and that the parties consent to the exclusive jurisdiction by the state and federal courts in New York for any dispute arising out of or relating to the agreement. (Am. Cmplt. Ex. 36, ECF No. 20-36, ¶11(b), PageID 245-246). None of these agreements provide for the application of Ohio law or jurisdiction or venue of Ohio courts.

At all times during the course of these negotiations and their business dealings, Campbell and Quantasy believed and understood that Silver was located in California and resided in California. (Campbell Decl. ¶ 12; Quantasy Decl. ¶ 9).[17] Silver and Campbell communicated by text message and WhatsApp and email and Silver also used personal email. (Am. Cmplt., ECF No.

---

[17] The remaining defendants are Paige McDaniel and Eclipse Home Design, LLC. Paige McDaniel is a member of Collateral Damage and Silver's sister and signed the subcontractor agreement on behalf of Collateral Damage. (Am. Cmplt., ECF No. 20, ¶15, PageID 100; Am. Cmplt. Ex. 36, ECF No.20-36, PageID 246.) Collateral Damage is located at 45 S Arroyo Parkway, Pasadena, California 91105 according to its own records (Am. Cmplt. Ex. 14, ECF No. 20-14, PageID 179-180) and the California Secretary of State. https://bizfileonline.sos.ca.gov/search/business, last accessed May 7, 2023. Eclipse Home Design, LLC is formed under the laws of Delaware and located in Miami, Florida and has Silver (a California resident) as its sole member. (Am. Cmplt., ECF No. 20, ¶19, PageID 101.) A limited liability company has the citizenship of each of its members, and Eclipse Home Design is therefore a citizen of California. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

20, ¶149, PageID 135-136). Neither Campbell nor any Quantasy representatives traveled to Ohio to meet with Plaintiffs. (Campbell Decl. ¶ 12; Quantasy Decl. ¶ 9). Campbell met with Silver in February 2022 in Quantasy's Los Angeles offices. (Am. Cmplt., ECF No. 20, ¶36, PageID 104). Quantasy representatives participated in two video calls with representatives of Plaintiffs – Campbell in his role as Quantasy's CEO met with Silver and other Root representatives in February 2022 by video to present marketing ideas and a Quantasy representative met with Root in November 2022. (Campbell Decl. ¶ 12; Quantasy Decl. ¶ 9; Am. Cmplt., ECF No. 20, ¶¶ 36, 103, PageID 104, 126). Invoices that Quantasy received from Collateral Damage, a California limited liability company, lists a Pasadena, California address, and Quantasy made payments to Collateral Damage to a bank in Pasadena. (Am. Cmplt., ECF No. 20, ¶¶16, 32, 39, 49, 55, 73, 74, 79, 81, 82; PageID 100, 103, 105, 107-108, 113-116; Am. Cmplt. Ex. 14, ECF No. 20-14, PageID 179-180.) Further, all communications regarding Quantasy's return of $1.2 million in July 2022 were with Silver without involvement of any other representatives of Plaintiffs. (Quantasy Decl. ¶ 9).

> B. *Plaintiffs Have Not Met Their Burden to Show that the Court Can Exercise Personal Jurisdiction Over the Quantasy Defendants.*

Plaintiffs cannot maintain an action in Ohio federal court against Quantasy and Campbell. Plaintiffs claim jurisdiction is proper in this court because there is a federal question (RICO claim) and complete diversity of citizenship with supplemental jurisdiction over the state law claims. (Am. Cmplt., ECF No. 20, ¶¶7-9, PageID 99). There are no allegations in the Amended Complaint other than these relative to jurisdiction, and Plaintiffs do not specifically allege that Quantasy or Campbell have minimum contacts with Ohio. Quantasy and Campbell therefore presume that Plaintiffs intend to argue that this court has jurisdiction under RICO based on "national contacts" under 18 U.S.C. §1965(d). *See, e.g., Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935,

942 (11th Cir. 1997).  Last year, however, the Sixth Circuit followed the majority of circuit courts in rejecting this approach and adopted the "forum state" approach, holding that "§1965(b) extends personal jurisdiction through nationwide service of process over 'other parties residing in any other district,' as long as venue is proper…and the 'ends of justice' require it."  *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 440 (6th Cir. 2022); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71-72 (2nd Cir. 1998); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538-39 (9th Cir. 1986); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229-32 (10th Cir. 2006); *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1098-1100 (D.C. Cir. 2008), *overruled on other grounds*, 985 F.3d 883, 892 (D.C. Cir. 2021).  Accordingly, under the Sixth Circuit's approach, if one defendant is subject to personal jurisdiction in Ohio, the issue becomes whether the "ends of justice" require that Campbell and Quantasy be brought before this court.  *Peters Broad Eng'g, Inc.*, 40 F.4th at 443.  For purposes of argument only, Quantasy and Campbell assume that this court has personal jurisdiction over at least one of the other defendants.  Here, the ends of justice do not require that Quantasy or Campbell be hauled into court in this far-flung forum under 18 U.S.C. §1965.

Plaintiffs have not met their burden to show that the ends of justice require the exercise of personal jurisdiction over Quantasy and Campbell.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (plaintiff bears the burden of establishing that personal jurisdiction exists).  First, the RICO claim is inadequate as a matter of law.  *Supra* at Section I. To assert personal jurisdiction over Quantasy and Campbell solely based on a single inadequately plead RICO claim would not serve the "ends of justice."  *E&M Props. v. RazorGator, Inc.*, 2008 U.S. Dist. LEXIS 33384 at *19-20 (E.D. Mich. 2008) (granting motion to dismiss as court could not assert personal

jurisdiction over non-resident defendant for "six causes of action, only two of which are federal in nature, based on inadequately plead RICO claims at this, would not serve "the ends of justice."). Plaintiffs attempt here to convert the fraud of Root's former CMO into a conspiracy involving Quantasy and Campbell, but this Court cannot exercise personal jurisdiction under Section 1965(b) when Plaintiffs fail to sufficiently allege a RICO claim.

Second, even if the RICO claim is sufficiently pled, the ends of justice do not require that this Court assert personal jurisdiction over Quantasy or Campbell because there are other jurisdictions in which Plaintiffs could bring suit against Defendants. Congress expressed a preference in 18 U.S.C. §1965 to bring suits where they are normally expected to be brought and "to avoid, where possible, haling defendants into far flung fora." *Peters Broad. Eng'g*, *Inc.*, 40 F.4th at 440 (citing *PT United*, 138 F.3d at 72). Congress intended the "ends of justice" language to provide a means for "plaintiffs to bring all members of a nationwide RICO conspiracy before the court in a single trial." *See Butcher's Union Local No. 498*, 788 F.2d at 539 (holding that court must have personal jurisdiction over at least one defendant and plaintiff must show there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators); *PT United*, 138 F.3d at 71-72 (jurisdiction under Section 1965(b) is not automatic but requires a showing that the "ends of justice so require."); *see also Kattula v. Jade*, 2007 U.S. Dist. LEXIS 42365 at *10 (W.D. Ky. 2007) (declining to find personal jurisdiction over other defendants based on nationwide contacts where court had personal jurisdiction over at least one defendant and noting that "courts have declined to exercise personal jurisdiction under the nationwide service of process available for RICO claims 'if there is a district where venue is proper as to every RICO defendant,' without resort to Section 1965(b)".) Plaintiffs have not shown that an alternate jurisdiction does not exist, and where other jurisdictions exist in which Plaintiffs could

bring suit, nationwide service of process and personal jurisdiction cannot be imposed under Section 1965(b).  *See, e.g. Enginetec Corp. v. Boutin*, 2008 U.S. Dist. LEXIS 137939 (N.D. Ohio 2008) (nationwide service under Section 1965(b) could not be imposed because there are other jurisdictions where plaintiffs could bring suit against defendants);  *E&M Props.*, 2008 U.S. Dist. LEXIS 33384 at *20-21 (while personal jurisdiction could be exercised over one of the civil RICO defendants, RICO's nationwide service of process was not available where the action could have been brought in other jurisdictions);  *800537 Ont. Inc. v. Auto Enters.*, 113 F. Supp. 2d 1116, 1128 (E.D. Mich. 2000) (where two defendants were subject to personal jurisdiction in New York and Florida and claims need not be heard in conjunction with claims against other group of defendants, plaintiffs failed to make *prima facie* showing that ends of justice required court to exercise personal jurisdiction over these defendants).

It undisputed that Quantasy and Campbell are residents of Los Angeles County, California and therefore subject to jurisdiction in California.  Campbell, although named as an individual defendant, has not had any contact in his personal capacity with Ohio in the last decade.  Silver solicited Quantasy to perform the work, virtually all of Quantasy's communications and negotiations with Plaintiffs were with Silver in California, Quantasy made all payments from California to Collateral Damage in Pasadena, California, the four agreements were negotiated and signed by Quantasy in California and provide for the application of California and New York law, and one agreement provides for jurisdiction in New York.  Silver is a resident of Los Angeles County, California, and therefore Eclipse Home Design is a citizen of California as well.  Collateral Damage is located in Los Angeles County, California and McDaniel has transacted business relative to this matter on behalf of Collateral Damage.  There is a more convenient available

alternate forum in California, and the "ends of justice" do not require that Campbell and Quantasy be hauled into court in Ohio under Section 1965(b).[18]

Section 1965(b) provides a statutory basis for personal jurisdiction, but it does not abrogate the constitutional limits of due process. The exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice as the "Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 474 (1985) (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Whether Quantasy and Campbell purposefully established "minimum contacts" in the forum state is the constitutional touchstone, not whether any of the other defendants did so. *International Shoe*, 326 U.S. at 316. In order for this court to assert personal jurisdiction over Quantasy and Campbell consistent with their due process rights, these two defendants must have, by their own actions, created a substantial connection with Ohio. *See also Shepard & Assocs. v. Lokring Tech., LLC,* 2022 U.S. Dist. LEXIS 19219, at *45 (N.D. Ohio 2022) (noting that the Sixth Circuit has not adopted the co-conspirator doctrine as a means to establish personal jurisdiction.) Plaintiffs do not show that the actions of Quantasy and Campbell themselves created the substantial connection with Ohio. It is inconsistent with their due process rights to hale them into court in Ohio based on the conduct of a co-defendant and this court should not assert personal jurisdiction over Quantasy and Campbell.

---

[18] Paige McDaniel was successfully served, after multiple attempts, on February 8, 2023. (ECF No. 16, Page ID 90). She has not yet answered or otherwise appeared in this action.

## IX.     Conclusion

Based on the foregoing, the Quantasy Defendants respectfully request the Court enter an order dismissing the entirety of the Amended Complaint, with prejudice, pursuant to the Federal Rule of Civil Procedure 12(b)(6) as to the Quantasy Defendants.

Dated: May 11, 2023                             Respectfully submitted,

                                                */s/ Matthew D. Ridings*
                                                Matthew D. Ridings, Trial Attorney
                                                (0079402)
                                                THOMPSON HINE LLP
                                                127 Public Square
                                                3900 Key Center
                                                Cleveland, Ohio 44114
                                                Telephone:  216.566.5561
                                                Facsimile:  216.566.5800
                                                Matt.Ridings@ThompsonHine.com

                                                Joan E. Meyer
                                                (Admitted *Pro Hac Vice*)
                                                THOMPSON HINE LLP
                                                1919 M Street, N.W.
                                                Suite 700
                                                Washington, D.C. 20036-3537
                                                Telephone:  202.263.4115
                                                Facsimile:  202.331.8330
                                                Joan.Meyer@ThompsonHine.com

                                                Jamar T. King (0091093)
                                                THOMPSON HINE LLP
                                                10050 Innovation Drive, Suite 400
                                                Miamisburg, OH 45342
                                                Telephone:  937.443.6852
                                                Facsimile:  937.443.6635
                                                Jamar.King@ThompsonHine.com

                                                Karim Sabbidine
                                                (Admitted *Pro Hac Vice*)
                                                THOMPSON HINE LLP
                                                335 Madison Avenue, 12th Floor
                                                New York, NY 10017
                                                Telephone:  212.908.3944
                                                Facsimile:  212.344.6101
                                                Karim.Sabbidine@ThompsonHine.com

Joshua H. Epstein
(Admitted *Pro Hac Vice*)
Eva M. Jimenez
(Admitted *Pro Hac Vice*)
DAVIS+GILBERT LLP
1675 Broadway
New York, NY 10019
Telephone:  212.468.4869
jepstein@dglaw.com
ejimenez@dglaw.com

*Attorneys for Specially Appearing Defendants*
*William Campbell and Quantasy &*
*Associates, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2023, a true and accurate copy of the foregoing was filed electronically. Notice of this filing has been sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

A copy was also sent by ordinary U.S. Mail, postage prepaid, on May 12, 2023 to the following:

Paige McDaniel
5576 Alexanders Lake Road
Stockbridge, GA 30281

/s/ Matthew D. Ridings
Matthew D. Ridings

4863-2709-5383.7