UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROOT, INC., *et al.*,

        Plaintiffs,

  v.

BRINSON CALEB SILVER, *et al.*,

        Defendants.

:
:
:

Case No. 2:23-cv-512
Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura

## ORDER APPOINTING RECEIVER

Root, Inc., Caret Holdings, Inc., and Root Insurance Agency, LLC (together, "Root") filed this action against, *inter alia*, Brinson Caleb "B.C." Silver, Collateral Damage, LLC, and Eclipse Home Design, LLC, asserting claims of racketeering, fraud, conversion, theft, breach of contract, breach of fiduciary duties, and civil conspiracy. (Am. Compl., ECF No. 20.) The matter is before the Court on Root's motion for appointment of a receiver. (ECF No. 74, 75, 92, 93.) The Court held in-person evidentiary hearings on May 9, 2023, and May 12, 2023. (ECF No. 85, 97.) At the May 12 hearing, the Court granted Root's motion and appointed Jerry E. Peer, Jr. of Peterson Conners LLP to serve as receiver. The ruling was memorialized in a short order docketed that day. (ECF No. 99.) This Order expands upon that ruling.

### I. BACKGROUND

Root's claims center on an alleged scheme, orchestrated by Silver, to divert funds from Root (his former employer) to entities under his control (Collateral Damage and Eclipse) through sham vendor contracts. (*See* Am. Compl., *generally*.)

The Amended Complaint alleges that Silver used the diverted funds in part to purchase three pieces of luxury real estate. (*Id.*, ¶¶ 86–91.)

When it came to light that Silver listed one of the properties for sale, Root filed a Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 21.) On February 16, 2023, the Court issued a Temporary Restraining Order ("TRO") enjoining Silver from (i) disposing of the properties without leave of Court; (ii) using, converting, selling, or otherwise disposing of any assets in their possession, custody, and control in amounts greater than $5,000; (iii) and incurring charges or cash advances on any credit card, debit card, or checking card, or incurring liens or encumbrances on real personal property or other assets. (ECF No. 30.) The TRO permitted Silver to "pay personal expenses for day-to-day living in an amount no greater than $5,000." (*Id.*) On February 27, 2023, the Court entered an Agreed Preliminary Injunction ("API") imposing, in relevant part, the following restrictions:

> 4. Silver shall not individually, nor through others (including but not limited to any entity Silver owns or controls whether in whole or part) use, convert, sell or otherwise dispose of any assets in his possession, custody, and control totaling more than $5,000 without leave of this Court;
>
> 5. Silver shall not individually, nor through others (including but not limited to any entity Silver owns or controls whether in whole or part), incur charges or cash advances on any credit card, debit card, or checking card or incur liens or encumbrances on real personal property or other assets, including intangible assets. Notwithstanding, Silver may pay personal expenses for day-to-day living in an amount no greater than $7,500 in total per month. Any amount greater than that shall require leave of this Court;

(ECF No. 42.)

2

On May 2, 2023, Root filed a motion alleging that Silver and Eclipse had been using and transferring assets vastly in excess of the limits set out in the API. (ECF No. 74.) Root sought a finding of civil contempt and appointment of a receiver to ensure compliance with the API. (*Id.*) After a duly noticed hearing (for which Silver failed to appear), the Court found Silver and Eclipse in contempt of court. (ECF No. 86.) The Court invited further briefing on the propriety of appointing a receiver, which Root provided—along with still more evidence of lavish spending on Silver's part. (ECF No. 72, 73.)

## II. ANALYSIS

"A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). *See also* Fed. R. Civ. P. 66. Nonetheless, "[a] receivership is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of clear necessity to protect plaintiff's interests in the property.'" *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (quoting 12 Fed. Prac. & Proc. Civ. § 2983 (3d ed.)). So, in considering a motion to appoint a receiver, the Sixth Circuit directs district courts to weigh:

> whether the property at issue is in "imminent danger of being lost, concealed, injured, diminished in value, or squandered," whether the defendant engaged in fraudulent conduct, "the inadequacy of the available legal remedies," the lack of less drastic equitable remedies, and the likelihood that the appointment will do more good than harm.

*Id.* (alterations omitted).

3

This Court made the following on-the-record findings at the May 12 hearing:

- The documentary evidence shows unrestrained use and transfer of assets by Silver and Eclipse while the API was in effect. Eclipse sent more than $40,000 in ACH payments to an unknown entity, NEWREZ-SHELLPOIN. (ECF No. 75-3.) And Silver spent lavishly while traveling the globe. For example, he spent $20,000 on plastic surgery and another $8,000 at a luxury resort on Bali (among many, many other extravagant expenditures); he transferred tens of thousands to his PayPal and Venmo accounts; and, on March 31, 2023, he closed his account at Blue Ridge Bank by withdrawing more than $130,000 in cash. (ECF Nos. 75, 93.) Accordingly, the property at issue is in imminent danger of being lost, concealed, or squandered.

- Silver is alleged to have engaged in fraudulent conduct.

- Available legal remedies are inadequate, and there are no less-drastic appropriate equitable remedies.

- Finally, the appointment of a receiver over the assets of Silver, Eclipse, and Collateral Damage will do more good than harm.

Accordingly, the motion to appoint a receiver was granted.

### III. TERMS OF RECEIVERSHIP

The terms of the receivership are set forth below:

1. Jerry E. Peer, Jr. (the "Receiver") of Peterson Conners LLP, whose business address is 545 Metro Place South, Suite 435, Dublin, Ohio 43017, is hereby appointed the federal equity receiver, custodian and liquidator for all personal property, monetary, and real property assets in the possession, custody, or control of Brinson Caleb "BC" Silver, Collateral Damage, LLC, and Eclipse Home Design, LLC (collectively, the "Receivership Defendants") effective upon the Receiver's posting of the bond as required below and taking the oath required by law. The Receiver is hereby authorized to take possession and control of all of the real and personal property of Receivership Defendants, including but not limited to, any and all cash

and cash deposits; receivables and accounts receivable; obligations or commitments owed by any person or entity including equipment, furniture, fixtures and deposit accounts held by third parties; the general intangibles; any real property (the "Real Property") including, but not limited to 13105 Biscayne Island Terrace, Miami, Florida 33181[1], 9125 North Bayshore Drive, Miami, Florida 33138, and 2543 Walnut Avenue, Venice, California 90291; any and all tax attributes; and all other assets of whatever kind or nature belonging to the Receivership Defendants and the Receiver shall have all authority and power of a receiver under 28 U.S.C. §§ 754, 959 and 1692, Rule 66 of the Federal Rules of Civil Procedure, this Court's inherent powers, and Ohio laws where applicable (the "Receivership Authorities"), and as ordered further by this Court. Hereinafter, all of the assets described in this paragraph shall be referred to as the "Receivership Property" or, simply, the "Property".

2. The Receiver shall take immediate possession, control, management, operation and charge of the Receivership Defendants and Receivership Property and maintain all such entities and property in a Receivership Estate (the "Receivership Estate"). This Court hereby vests the Receiver with authority and jurisdiction over the Receivership Estate and the Receivership Property to the maximum extent permitted by the Receivership Authorities, and hereby empowers and permits the Receiver to take any and all actions necessary and proper to carry

---

[1] The Court is aware that the property located on Biscayne Island Terrace is under contract for sale in an arm's-length transaction. (*See* ECF No. 63.) The sale set to close on or around May 19, 2023. This Order is in no way intended, nor shall

5

out the express provisions of this Order, including but not limited to the following powers and duties:

> a. The Receiver shall take immediate possession, control, management and charge of the Receivership Defendants' accounting books and records of whatever nature and wherever located, in the possession of the Receivership Defendants or any other person or entity, including all information regarding the assets, liabilities, equity, income, and expenses of the Receivership Defendants. The Receiver shall take immediate possession, control, management, and charge of all of the Receivership Defendants' financial statements, ledgers and journals, balance sheets, trial balances, statements of cash flows, income statements, statements of retained earnings, accounting journals, and books of original entry, including but not limited to (i) accounts receivable, rent rolls, and any other documentation which indicate the amounts owing from lessees and other debtors of the Receivership Defendants on accounts receivable and from whom such amounts are or were owing and when any amounts were collected and deposited; (ii) fixed asset ledgers, schedules, records, documentation and/or appraisals of the Receivership Defendants' equipment, motor vehicles, boats and their engines, accessories, furniture inventory, furnishings, and supplies; (iii) inventory listings or other detail; (iv) all information and documentation which relates or pertains to any checking, saving, banking, and money management accounts of any kind or nature belonging to the Receivership Defendants, or into which any proceeds of the collection or sale of any asset of the Property have been deposited; (v) all accounts payable documentation and information and all correspondence or written documents regarding negotiations with current accounts or proposed accounts; (vi) all information of whatever type or nature regarding the payroll and benefits of the employees of the Receivership Defendants, including wage or salary information, medical insurance information, child support payments or other employee deductions withheld or to be withheld, and all information regarding withholding taxes whether federal, state, or local, and any information regarding any and all of the employer matching obligations or the employer payroll tax obligations; (vii) all information and documentation of any asset transfers by the Receivership Defendants any time in the past;

---

it be construed to, interfere with the consummation of that transaction.

(viii) all information and documentation regarding the federal, state, and local tax liabilities and tax attributes of the Receivership Defendants, including any and all federal, state, and local tax returns filed or unfiled, and any documents generated during the planning of any construction project, including the Real Property, and the preparation and filing of tax returns for the Receivership Defendants; (ix) all contracts and leases pertaining to the Property and/or to which any Receivership Defendant is a party; (x) all information and documentation of any other financial transaction or interest in and any asset of any Receivership Defendant which may be necessary or pertinent to the Receiver's operation and management of the Receivership Defendants' assets; and (xi) any documentation that relates or pertains to the Receivership Defendants and is kept in the ordinary course of their business in connection with the record-keeping or accounting. The information described in this subparagraph shall hereinafter be referred to as the "Books and Records."

b. The Receiver shall take immediate possession, control, management, and charge of the Property, including all assets and property appertaining thereto consisting of all personal property, Real Property (including leasehold interests), all cash or cash equivalents including but not limited to rights, title and interest in and to all bank accounts, all accounts and notes receivable, all inventory of any type or nature, all furniture, fixtures, equipment, computers (hardware and software), and all general intangibles, including, but not limited to, all licenses and liquor licenses applied for, owned or utilized by the Receivership Defendants, rights in leases, rights to proceeds from any insurance or sales of equipment or other asset, all choses in action and causes of action, including avoidance actions for transfers of any of the assets of the Receivership Defendants for less than equivalent value against the transferees of those assets, and any other asset or interest owned by the Receivership Defendants or in which the Receivership Defendants asserts an interest which has any value which pertains to the Property, and the Books and Records and the Property are hereby placed *in custodia legis* and are subject to the exclusive jurisdiction of this Court. The Receiver shall not be charged with the responsibility to take possession of any real estate or other assets which had or have existing hazardous or toxic contamination nor shall the Receiver be required to take possession of any hazardous or toxic materials owned or used by the Receivership Defendants. Should the Receiver elect to take possession of, or exercise his dominion

7

and control over, any real estate, hazardous or toxic materials, pollutants or contaminants, he shall do so in his capacity as Receiver for the Property.

c. The Receiver shall have the authority to operate and manage the LLC Receivership Defendants and the Property as he deems prudent in his sole discretion throughout the litigation, subject to further order of this Court. The Receiver shall preserve and care for any and all of the Property and utilize any and all of the Property to preserve and maximize the value of the Property.

d. The Receiver shall secure the business premises, business equipment, data and documents; take control of all means of communication with investors, secured and unsecured lenders, landlords, vendors, agents and others doing business with the Receivership Defendants. The Receiver shall have the authority to take all reasonable and necessary steps to wind-down and liquidate the business operations.

e. The Receiver shall have the authority, responsibility, and duty to review the participation of the directors, officers, or managers of any entity whose stock shares or membership interest he holds and based upon his business judgment, to remove any director, officer or manager and nominate and elect any replacement director, officer, or manager. However, the Receiver shall not remove any officer or director without seeking and obtaining leave of Court. The Receiver is hereby authorized to take any action, execute any document, and do those things necessary to transfer a stock interest to himself, or accept admission as a member of any limited liability entity.

f. The Receiver shall, in his own business judgment, determine whether to file a plan for liquidation and distribution of the Property, and if the Receiver shall so determine, then, in conjunction with and in consultation with the Receivership Defendants' secured and general creditors, the Receiver shall submit such a plan to this Court for approval.

g. The Receiver is authorized to collect all profits, rents, receivables, and revenues of any nature whatsoever generated from the Property and/or the business operations of the Property and to pay all necessary expenses relating to said operations, including his fees and the fees of his attorneys, as he deems prudent in his sole discretion and consistent with the terms of

this Order, from funds in his possession, whether such funds are derived from the operation or the sale of the Property.

h. The Receiver shall have the authority without further order of this Court to maintain or purchase insurance from any agent or carrier, of any type reasonably necessary or desirable, on all the Property, subject to maintaining adequate coverage appropriately and naming appropriate loss payees as any properly perfected security interests provide within the corresponding security agreement.

i. The Receiver is authorized to establish or maintain one or more bank accounts in the Receiver's name for its operations as Receiver in this matter at any federally insured bank as reasonably needed to engage in business operations on behalf of the Property. The Receiver shall keep a true and accurate account of any and all receipts and disbursements which the Receiver shall receive or make as Receiver in the course of the operation of the Property.

j. The Receiver is hereby authorized to negotiate, enter into, and execute leases of any portion or part of the premises of the Real Property at rental rates and for terms of years consistent with those that the market will bear, which he in his business judgment concludes are in the best interest of the creditors of the Receivership Estate.

k. The Receiver is authorized to negotiate and effect an orderly sale, transfer, use, or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of the Receivership Defendants and, from the proceeds thereof, to pay the secured and unsecured indebtedness of the Property, including the Real Property. Payments to creditors by the Receiver shall include trade indebtedness which arises during the course of the Receiver's operation of the Property, which shall be paid first from the sale proceeds, together with the fees and expenses of the Receiver and his attorneys, accountants, and other professionals. The Receiver is authorized to conduct such a sale of the Property in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.

l. The Receiver is authorized to institute, prosecute, or intervene in any lawsuit or summary proceeding against any other person or entity to preserve and/or maximize the value of the Property or

      to obtain possession of any of the Property unlawfully in the possession of third parties.

  m. The Receiver is authorized but not required to defend actions against the Property or the Receivership Defendants and may incur expenses to defend such actions to the extent that he believes, in his sole discretion, it will protect and preserve the Property.

  n. The Receiver is authorized to perform pursuant to the terms of any existing contracts executed by any Receivership Defendant in connection with the Property to the extent that the Receiver determines, in his sole discretion, that such performance will preserve and maximize the value of the Property. The Receiver may reject contracts not deemed to be in the interest of creditors of the estate, and the holder of any contract so rejected shall be allowed a claim as an unsecured creditor of the Property, said claim to be calculated consistent with the law.

  o. The Receiver shall seek Court approval before employing any assistants, servants, agents, tax accountants, financial accountants, or other persons deemed necessary or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver by this Order and pursuant to the Receivership Authorities.

  p. The Receiver is authorized to repair the Property and its fixtures and appurtenances as needed. Such repairs shall be made at the time and in the way that the Receiver, in his sole discretion, deems reasonable and necessary in the circumstances. Such repairs and construction include the time and expense of relocating tenants or caring for tenants while their suites are under construction.

  q. Any person or entity, other than the Receiver, is barred from placing any Receivership Defendant in bankruptcy proceedings.

3.   Notwithstanding the foregoing, the Receiver and the Receivership Estate shall not be liable for the payment of taxes or assessments pre-dating the date of this Order. Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the

Receivership Estate based upon the non-payment of such taxes prior to the date of this Order and from attempting to collect taxes from the Receiver pre-dating the date of this Order.

    4.    No provision of this Order shall be deemed by any federal, state, or local governmental agency, or accrediting agency, as having triggered a substantive change of ownership or control requiring the approval of such agency. Further, the actions taken by the Receiver during the course of the receivership shall not be taken into account by any such agency in any future determination of whether the Receiver is qualified to hold the stock or membership interest of, or serve in any capacity with, an institution approved or regulated by that agency.

    5.    Pursuant to the doctrines of *in custodia legis* and *lis pendens*, and in order for the Receiver to effectively manage, protect and preserve the Receivership Property and for all creditors, claimants, bodies politic, parties in interest, and all sheriffs, marshals, and other officials, and their respective attorneys, servants, agents, and employees and all other firms, persons and corporations be, and hereby are, enjoined and stayed from commencing or continuing any action at law or proceeding in equity to enforce any claim or foreclose any lien against the Receivership Property or against the Receiver in any court, and that all such entities and individuals are further stayed from executing or issuing or causing execution or issuance out of any court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon the

11

Receivership property or any property owned by or in the possession of the Receiver, and from doing any and all things whatsoever to interfere with the Receiver in the discharge of his duties in this proceeding with the exclusive jurisdiction of this Court over the Receivership Property and the Receiver.

6. The Receivership Defendants and its agents and employees, and any other party in possession, shall turn over to the Receiver, as soon as possible or within three days from the date of this Order, any and all Books and Records.

7. The Receivership Defendants and their agents and employees, and any other party in possession, shall turn over to the Receiver, as soon as possible or within three days from the date of this Order, all sums in existence on the date hereof that are related or pertain to, or are derived from the Property, including but not limited to (a) all cash on hand; (b) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instruments); (c) all sums held in accounts in any financial institutions, including but not limited to, all sums of any kind relating to the use, enjoyment, possession, improvement, or occupancy of all or any portion of the Property; and (d) any other information requested by Receiver pertaining to any Receivership Defendant.

8. Except as directed by the Receiver, the Receivership Defendants, their affiliates, agents, officers, directors, shareholders, members, employees, representatives, or creditors, and all other persons or entities, are hereby prohibited from taking any act for or on behalf of any Receivership Defendant interfering in any way with the acts of the Receiver, and from in any way, manner, or means

wasting, disposing of, transferring, selling, assigning, pledging, canceling, concealing, interfering with, or hypothecating any of the Books and Records or the Property. Upon the request of the Receiver, the foregoing persons and entities shall cooperate and affirmatively assist the Receiver in making available to the Receiver or his agents, the Books and Records and the Property. Nothing in this paragraph shall be construed to require a waiver of any attorney-client privilege.

9. The Receiver and his agents, including his attorneys and any accountants or other professionals that are appointed by the Court, shall be entitled to reasonable compensation for services rendered and reimbursement for expenses incurred which are (a) related to the Receiver's duties, rights, and obligations under this Order or any future orders of the Court and applicable law; (b) related to the administration, management, protection, or liquidation of the Property; or (c) related to the defense or prosecution of any claim or suit brought by or against the Receiver or by the Receiver against any person or entities. Such compensation of the Receiver and his agents, his counsel, and his accountants shall be paid consistent with the Receivership Authorities and this Order, and awarded from the Receivership Estate. As and for the payment of the Receiver's fees and expenses and the fees and expenses of his attorneys, accountants and other professionals, the Receiver is hereby granted a lien upon all of the assets in the Receivership Estate, which lien shall be a charge upon all property of whatsoever kind or nature in the Receivership Estate and the lien shall extend to all proceeds of or arising from the assets or other property in the Receivership Estate, including all after-acquired

13

property which but for the date of the acquisition would have been an asset of the Receivership Estate. If the Receivership Estate does not have funds to pay the fees and expenses of the Receiver and his attorneys, accountants and other professionals, those fees will be assessed as costs of this case.

10. The Receiver shall be compensated at his normal hourly billing rate, which is the rate he charges in cases of like kind and complexity. At this time, the Receiver's billing rate is $150.00 per hour, plus reimbursement for all reasonable and necessary out of pocket costs and expenses.

11. The Receiver is hereby authorized to engage the services of Peterson Conners, LLP, Gregory S. Peterson, Istvan Gajary, and Jerry E. Peer, Jr. to serve as counsel to Receiver. The hourly rates of counsel shall not exceed $250 per hour unless otherwise authorized by this Court.

12. The Receiver and his attorneys, accountants, or other professionals hired by him may, at the Receiver's option, file with this Court monthly applications (or less frequent, if he deems appropriate), for payment of fees and expenses incurred in the conduct of this Receivership Estate, and each such application shall be served upon the parties to the case and all other interested parties who have requested that such applications be served upon them. The Receiver shall be authorized to pay the fees and expenses requested by the Receiver or his attorneys, accountants, or other professionals in any such application after ten days have expired after service has been effected, without further order of this Court. If any party or person files an objection to the fees and expenses of the Receiver, or of his

14

attorneys, accountants, or other professionals, the Court shall consider the objection in the ordinary course. Pending consideration of the objection, the Receiver shall be authorized to pay any portion of the fees and expenses not subject to the objection.

13. The Receiver shall have full and unrestricted access to all of the Property, and the Receivership Defendants and their officers, directors, shareholders, employees and agents, and any other party, are directed to take all steps necessary to give the Receiver access to the Real Property.

14. The Receiver may, from time to time, make payments to creditors on account of pre-receivership claims, especially secured creditors, according to their interests as they may appear. The Receiver, in his sole discretion, shall determine when or if it is appropriate to make payments to creditors, if any. All payments made prior to the conclusion of the Receivership shall be made after application to the Court and pursuant to Court Order.

15. The Receiver shall, under his authority to operate and manage the businesses of the Receivership Defendants, operate and manage such businesses in compliance with applicable statutes. Nothing in this Order shall be read or interpreted, however, to abrogate the Receiver's immunities from personal liability for conduct related to his receivership duties.

16. The bond of the Receiver is set at $100.00.

17. The Court retains jurisdiction with respect to any matters addressed in this Order, including without limitation any and all matters relating to or affecting the Receivership Estate, the Property, the Receiver ,and the scope of authority

granted the Receiver hereunder. The terms of this Order shall continue in full force and effect unless and until further order of this Court.

18. For purposes of clarity, the Agreed Preliminary Injunction remains in full force and effect except as expressly revised by this Order. By way of example, the Receiver shall permit Silver a monthly allowance of not more than $7,500 for day-to-day expenses.

19. In accordance with the oral motion made at the May 12 hearing and the Court's ruling thereon, Paragraph 3 of the Agreed Preliminary Injunction shall be modified to direct all net proceeds from the sale of the Properties as defined therein (or any other Real Property) shall be paid to an escrow account with Peterson Conners LLP under the direction and supervision of Receiver.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**