IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ROOT, INC., et al.** | |
| *Plaintiffs,* | Case No. 2:23-cv-00512 |
| v. | Judge Sarah D. Morrison |
| **BRINSON CALEB SILVER, et al.,** | Magistrate Judge Chelsea M. Vascura |
| *Defendants.* | |

**SILVER DEFENDANTS' MOTION TO MODIFY INJUNCTION AND RECEIVERSHIP ORDERS TO PERMIT PAYMENT OF ATTORNEY'S FEES**

**(ORAL ARGUMENT REQUESTED)**

Per the Court's May 26, 2023, Order, Defendants Brinson Caleb Silver, Eclipse Home Design, LLC, and Collateral Damage, LLC, (together, the "Silver Defendants") move this Court for an order permitting the Receiver to pay, or authorize the Silver Defendants to pay, their reasonable attorney's fees for the reasons described in the attached memorandum.

Counsel also requests oral argument on this motion. Given the complex dynamics of the attorney's fees issue in this case, counsel believes oral argument will assist the Court's decision-making process.

Respectfully submitted,

*/s/ Matthew L. Jalandoni*
Matthew L. Jalandoni (OH: 0087074)
(Trial Attorney)
W. Benjamin Reese (OH: 0096108)
**Flannery │ Georgalis, LLC**
175 S. Third Street, Suite 1060
Columbus, OH 43215
Jalandoni Tel/Fax: (380) 444-6027
Reese Tel/Fax: (216) 230-9041
mjalandoni@flannerygeorgalis.com
breese@flannerygeorgalis.com

*Counsel for Defendants, Brinson Caleb "BC" Silver, Eclipse Home Design, LLC, and Collateral Damage, LLC*

## **MEMORANDUM IN SUPPORT**

### INTRODUCTION

On May 12, 2023, this Court allowed prior counsel for Defendants Brinson Silver, Collateral Damage, LLC, and Eclipse Home Design, LLC (together, the "Silver Defendants") to withdraw from this case. (Order, ECF No. 96). The two corporate defendants—Collateral Damage and Eclipse Home Design—are prohibited by law from proceeding without counsel, and Mr. Silver, who is largely unfamiliar with the civil legal process, is currently representing himself. Counsel is thus essential to all the Silver Defendants in this complex, RICO-conspiracy case (especially given the likely ongoing parallel criminal investigation).

That said, engaging counsel requires a slight modification to this Court's existing preliminary injunction and receivership orders, which currently prevent the Silver Defendants from using or accessing nearly all their assets for any purpose. As the Court invited in its May 26, 2023, Order, the Silver Defendants move to modify these orders to permit the Receiver to pay— or authorize the Silver Defendants to pay—their monthly reasonable attorney's fees, even if those fees are more than the personal spending limits established in the preliminary injunction order.

### BACKGROUND

In February 2023, Plaintiffs Root, Inc., Caret Holdings, LLC, and Root Insurance Agency, LLC (together, "Root") filed this lawsuit against the Silver Defendants. (Compl., ECF No. 1.) The gist of Root's claims is that Mr. Silver, through his companies and other intermediaries, allegedly defrauded Root of approximately $10 million via several sham marketing arrangements. (*See generally,* Amended Compl., ECF No. 20.) Since then, Root has asked this Court to limit the Silver Defendants' ability to deplete, transfer, or encumber any of their assets in several ways. (*See generally,* Mtn. for TRO, ECF No. 21, Proposed Pretrial Order, ECF No. 41, Mtn. for Contempt,

3

ECF No. 74.) This Court has granted those requests through an Agreed Preliminary Injunction. (Agreed Prelim. Inj., ECF No. 42.)

First, the Court prohibited the Silver Defendants from selling, transferring, or mortgaging any of their real property without leave, including the California and Florida properties listed in Root's Amended Complaint. (*Id.* at PageID 449.) The Court further prohibited the Silver Defendants from (1) converting, selling, or otherwise disposing of any assets in Mr. Silver's custody worth more than $5,000 without leave of the Court; or (2) incurring charges or cash advances (via credit cards, etc.) or encumbering real property or other assets. (*Id.* at PageID 450.) Notwithstanding these prohibitions, the Court permitted Mr. Silver to spend up to $7,500 per month on day-to-day living expenses. (*Id.*) It also permitted Defendants Collateral Damage and Eclipse Home Design to incur up to $5,000 per month in credit card charges or other similar encumbrances. (*Id.* at PageID 451.)

On May 12, 2023, in response to Root's contempt motion, the Court also appointed a Receiver over the Silver Defendants' assets. (Order Appointing Receiver, ECF No. 101.) The Receiver was to take full custody and control of all the Silver Defendants' property and assets. (*Id.* at PageID 890) Nonetheless, the Court explained that the Agreed Preliminary Injunction remained in effect, directing the Receiver to permit Mr. Silver an allowance of $7,500 per month for day-to-day expenses. (*Id.* at PageID 902.)

In the meantime, the Silver Defendants' initial counsel moved to withdraw (Mot. to Withdraw, ECF No. 84), and this Court granted that motion (Order, EDF No. 96). The Court further ordered Collateral Damage and Eclipse Home Design to obtain counsel by June 12, 2023, citing binding authority permitting corporate defendants to appear and defend themselves only through counsel. (*Id.* at PageID 883.)

4

Unfortunately, the current restrictions on the Silver Defendants' assets and expenditures have complicated that process. Mr. Silver has retained undersigned counsel to assist him with a potential parallel criminal proceeding. But the Silver Defendants are entirely unable to meet their financial obligations to counsel in this complex civil matter or in that potential criminal matter without further modification to the Court's earlier orders.

As of today, counsel has conditionally agreed to represent the Silver Defendants in seeking those modifications and, if successful, in this matter—prompting this motion.[1]

## ARGUMENT

### A. Authorizing the receiver to pay the Silver Defendants' attorney's fees is appropriate.

This Court has discretion to modify an asset freeze or receivership order to permit payment of reasonable attorney's fees. *See SEC v. Abdallah*, No. 1:14-cv-1155, 2017 WL 11680996, at *3 (N.D. Ohio March 24, 2017); *see also, e.g. FTC v. Inc21.com*, 475 F. App'x 106, 110 (9th Cir. 2012) (affirming a district court's order permitting defendants "to withdraw reasonable sums from frozen assets for attorney's fees, even though available funds were insufficient to compensate injured consumers."). "Although a district court may [under some circumstances] completely bar the use of any frozen assets to pay attorney's fees of a defendant, the more common approach is to allow access to some portion of those assets to be used for specific needs of the defendant." *See SEC v. Beasley*, No. 2:22-cv-612, 2022 WL 3161829, at *3 (D. Nev. Aug. 5, 2022).

Thus, in *SEC v. Dowdell*, the district court permitted the use of frozen funds to pay a defendants' legal fees because the case was "a complex legal matter" and lawyers were "essential

---

[1] Counsel will be forced to withdraw from this matter if the Court does not grant this motion and modify its earlier orders in a way that permits the Silver Defendants to pay their reasonable attorney's fees on a timely basis.

5

to the presentation of issues related to it." 175 F. Supp. 2d 850, 856 (W.D. Va. 2001). Indeed, the court was concerned that it could not achieve a fair result were it to deny the defendants access to funds to pay counsel. *Id.* And in *SEC v. Duclaud Gonzales de Castilla*, the district court allowed defendant investors to withdraw funds from frozen assets to pay legal expenses in recognition of the substantial burden legal fees and expenses placed on them. 170 F. Supp. 2d 427, 430 (S.D.N.Y. 2001).

So too here. The Silver Defendants are faced with a lengthy complaint that alleges RICO, breach of fiduciary duty, and civil conspiracy claims, among others. The case centers on complex corporate relationships and financial transactions and carries with it potential criminal ramifications. Forcing the Silver Defendants to navigate these waters without counsel would be deeply unfair to them. It will also undoubtedly increase the burden on the Court and the other parties, as they will be forced to make accommodations for legally unsophisticated and unrepresented parties. Indeed, the Receiver's recent attempts to gather documents from the Silver Defendants and the other parties' communications regarding discovery with Mr. Silver illustrate the difficulties of forcing unrepresented defendants to navigate complex civil litigation.

It is true that a number of courts have refused to allow defendants to access frozen assets to pay legal bills, expressing concern about the use of "tainted" funds and preserving a pool of assets to compensate alleged victims. *See, e.g. Beasley,* 2022 WL 3161829 at *3–5; *Abdallah*, 2017 WL 11680996 at *3–5. But many of these cases differ in a fundamental way from this case: they are regulatory enforcement actions seeking equitable remedies.

When it comes to private civil actions that are (like this one) primarily seeking money damages, the Supreme Court has categorically rejected the idea that district courts may use their ordinary equitable powers to freeze a defendant's assets to preserve the pool of funds available to

6

pay any judgment before a judgment has been entered. *Grupo Mexicano de Desarollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318–33 (1999). Indeed, the Court explained that allowing private plaintiffs to freeze a defendant's assets simply to make it easier to collect if they get a judgment would be "a dramatic departure from prior practice," and disclaimed any "authority to craft" such a "nuclear weapon." *See id.* at 329–32.

By contrast, federal agencies like the SEC often have their own statutory authority to seek equitable relief, which may extend to early asset freezes. *See, e.g. SEC v. Lauer*, 445 F. Supp. 2d 1362, 1367 (S.D. Fla. 2006); *accord Grupo Mexicano,* 527 U.S. at 325 (relying on an internal revenue statute to distinguish an earlier case allowing the United States to seek to freeze a taxpayer's assets pre-judgment). Moreover, these agencies are often seeking not damages but disgorgement, an equitable remedy for which an asset freeze might be appropriate. *Lauer*, 445 F. Supp. 2d at 1367.

To be clear, the Silver Defendants are not challenging the injunction and receivership orders in this case. To the extent the Court has found that there is a real risk the Silver Defendants might improperly deplete assets, those orders may be appropriate. *Grupo Mexicano* recognized that fraudulent conveyance law was designed to prevent just that sort of activity. 527 U.S. at 322; *see also* OHIO REV. CODE § 1336.07(A)(3)(a) (permitting Ohio courts to enter injunctions prevent further fraudulent transfers of assets to avoid creditors). And that, after all, was the basis for Root's initial motion for injunctive relief, (Mtn. for TRO, ECF No. 21 at PageID 303-04), which was ultimately in line with what the Silver Defendants consented to in the Agreed Preliminary Injunction.

But paying for counsel is not a fraudulent conveyance or part of a scheme to fraudulently conceal assets from Root, and Root's primary claims sound in damages, not equity. So this Court

7

may not, under *Grupo Mexicano*, preclude the Silver Defendants from using their assets to pay for their defense. The Silver Defendants do not, however, object to the Receiver's payment and monitoring of their legal expenses.

Moreover, as this Court's earlier order explained, and unlike at least some of the cases refusing to unfreeze assets, neither Collateral Damage nor Eclipse Home Design can proceed without a lawyer because they are corporate entities. *See Rowland v. Cal. Men's Colony, Unit 11 Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through licensed counsel"); *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) ("[A] corporation cannot appear in federal court except through an attorney."). And, as the Court noted, this rule applies equally to limited liability companies like Eclipse Home Design and Collateral Damage. *U.S. S.E.C. v. Merklinger*, 489 F. App'x 937, 939–40 (6th Cir. 2012). Thus, refusing to permit the Silver Defendants to use their assets, including any earned apart from those alleged to have been fraudulently taken from the Plaintiffs, to hire counsel places them in a Catch-22. And makes it nearly impossible for them to defend themselves, respond to discovery requests, and assist the Receiver with identifying assets.

Beyond that, refusing to allow the Silver Defendants to use the frozen assets to pay their legal expenses related to any ongoing criminal investigation also raises substantial Fifth and Sixth Amendment concerns. Those concerns would be ameliorated by permitting the Receiver or the Silver Defendants to use their assets to pay counsel's reasonable attorney's fees.

For all these reasons, the Court should modify its earlier orders to permit the Receiver to either pay or authorize the Silver Defendants to pay their reasonable attorney's fees related to this matter and any potential parallel criminal investigation.

**B.     Counsel's proposed fees are reasonable.**

Of course, this Court has an obligation to ensure that the Silver Defendants' fees are reasonable. *Cf. Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 721–25 (6th Cir. 2016) (considering whether a fee award to a prevailing party was appropriate). But here, counsel's law firm has agreed to substantially discount its ordinary rates, charging the Silver Defendants $450 per hour for its partners' work (compared to the firm's standard rate of $585 per hour) and $325 per hour for work from the primary associate on the case (compared to $425). The firm has further agreed to offer reduced rates for other professionals who work on this matter. It has also agreed to waive any retainer, choosing instead to submit its monthly invoices to the Receiver or Court for payment, however the Court so directs. This fee arrangement is wholly reasonable under the circumstances.

Courts in the Sixth Circuit use the "community market rule" to calculate a reasonable billing rate. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). And courts in this district have long used the rates developed by the Rubin Committee in 1983, with a 4% per year adjustment for inflation, as a benchmark for reasonable local rates. *See, e.g. West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 657 F. Supp. 2d 914, 932 (S.D. Ohio 2009); *see also Johnston v. Int'l. Collection Bureau, Inc.*, No. 1:14-cv-659, 2015 WL 2086800, at * 1 (S.D. Ohio May 5, 2015). The table below shows both the original Rubin rates and the 2023-adjusted Rubin rates:

|  | **1983 Rubin Hourly Rates** | **2023-Adjusted Hourly Rates** |
|---|---|---|
| Paralegal | $37.91 | $182.01 |
| Attorney (0-2 years) | $61.77 | $296.56 |
| Attorney (2-4 years) | $71.62 | $343.85 |
| Attorney (4-5 years) | $82.81 | $397.57 |
| Attorney (6-10 years) | $96.39 | $462.77 |
| Attorney (11-20 years) | $113.43 | $544.58 |
| Attorney (21+ years) | $128.34 | $616.16 |

9

*See West*, 657 F. Supp. 2d at 932 n.4. Counsel's rates are in line with these benchmarks.

For example, the lead partner in this case has practiced law for 13 years; his Rubin rate is therefore $544.58, well above the $450 counsel proposes to charge the Silver Defendants. Similarly, the senior associate who will be assigned to the matter has practiced for 6 years, putting his Rubin rate at $462.77, substantially above the $325 counsel intends to charge.

Counsel's proposed rates in this matter are thus in line with rates commonly approved in the Southern District of Ohio, even bearing in mind the Sixth Circuit's admonition that "reasonable fees" are "different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in the region," *Ne. Ohio Coal*, 831 F.3d at 716, and "should not exceed what is necessary to encourage competent lawyers within the relevant community to undertake legal representation," *Hadix*, 65 F.3d at 535–36. The Court should therefore grant the Silver Defendants' motion.

Beyond that, undersigned counsel are not strangers to the case, having been retained to provide advice on its potential criminal ramifications for several months. They are also experienced white-collar criminal defense and complex civil litigators, familiar with the contours of RICO claims as well as defending allegations like those in the Amended Complaint, especially given the complexity of what is likely an ongoing parallel criminal investigation. Thus, permitting the Silver Defendants to proceed with this engagement is likely to be less expensive than forcing them to hire separate counsel who might be less familiar with both the case and all these separate areas of law.

## CONCLUSION

Undersigned counsel understands the delicate nature and difficult issues placed before the Court. The Silver Defendants are requesting to pay for their defense from funds the Court has both

frozen and placed into receivership. The Court, Receiver, and Plaintiff all seek to preserve said funds and prevent their further dissipation by the Silver Defendants. However, both fairness and judicial economy support permitting the Silver Defendants to use the assets subject to this Court's receivership and preliminary injunction orders to pay their reasonable attorney's fees. Indeed, neither Collateral Damage nor Eclipse Home Design can proceed otherwise and failure to secure counsel will cause this litigation further delay. The Court should therefore grant the Silver Defendants' motion and authorize the Receiver to either pay or permit the Silver Defendants to pay their reasonable attorney's fees related to this case and any parallel criminal investigation.

Respectfully submitted,

*/s/ Matthew L. Jalandoni*
Matthew L. Jalandoni (OH: 0087074)
(Trial Attorney)
W. Benjamin Reese (OH: 0096108)
**Flannery | Georgalis, LLC**
175 S. Third Street, Suite 1060
Columbus, OH 43215
Jalandoni Tel/Fax: (380) 444-6027
Reese Tel/Fax: (216) 230-9041
mjalandoni@flannerygeorgalis.com
breese@flannerygeorgalis.com

*Counsel for Defendants, Brinson Caleb "BC" Silver, Eclipse Home Design, LLC, and Collateral Damage, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *Matthew L. Jalandoni*
Matthew L. Jalandoni

*Counsel for Defendants, Brinson Caleb "BC" Silver, Eclipse Home Design, LLC, and Collateral Damage, LLC*
