**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ROOT, INC., *et al.*, | : | Case No. 2:23-cv-00512-SDM-CMV |
| | : | |
| Plaintiffs, | : | Judge Sarah D. Morrison |
| | : | Magistrate Judge Chelsey M. Vascura |
| v. | : | |
| | : | |
| BRINSON CALEB SILVER, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM IN OPPOSITION TO MOTION TO MODIFY INJUNCTION TO PERMIT PAYMENT OF ATTORNEY'S FEES**

I. **INTRODUCTION**

Defendants Silver, Eclipse, and Collateral Damage (the "Silver Defendants"), seek funds to retain counsel to defend the Silver Defendants in this civil action and any parallel criminal proceedings. (ECF #115.) The motion does not specify an amount but rather seeks a blank check. Oddly, the motion seeks an order permitting the Receiver to pay their legal expenses **or, alternatively**, permission to pay the legal expenses themselves. As to the former, the Silver Defendants are essentially asking the Court to bless the use of unquestionably tainted funds stolen from Root, but recovered by the Receiver from the sale of a luxury home in Miami ("MIA 1"), to put forth a defense in this civil case *and* any unidentified criminal proceedings. As to the latter, the Silver Defendants provide no information about what other funds they have (aside from the funds controlled by the Receiver), nor do they suggest any such funds are untainted.

Furthermore, the latter flies in the face of the Silver Defendants' repeated representations to Root, the Receiver, and this Court that they have "nothing." If true, where exactly would the Silver Defendants get any untainted funds to pay if authorized to do so by this Court? And why

haven't those untainted assets – banking and non-banking alike – been disclosed to the Receiver and Root as ordered by the Court? Perhaps this is why Silver refuses to tell the Court, the Receiver or Root where the $130,448.19 went that was disbursed to him by Blue Ridge Bank on March 31, 2023. Is that the source of the funds the Silver Defendants would use to fund a defense if permitted by the Court? If so, those funds are tainted. If not, where are the other funds and what is their source of origin?[1]

The bottom line is this. As a matter of law the Silver Defendants are not entitled – Constitutionally or otherwise – to a lawyer to conduct a civil defense. And if the Silver Defendants are truly paupers, they may seek a public defender to address their criminal issues because, as a matter of law, they cannot use the very funds they stole to mount a criminal defense relating to that theft. Root is the victim. To now force Root to finance the Silver Defendants' defense in any proceeding only serves to further harm Root. This is especially true given that any defense will undoubtedly involve further obfuscation. The Silver Defendants' motion should be denied.

**II.    LAW AND ARGUMENT**

   **A. The Court Should Not Order Payment From Assets Recovered By The Receiver To Defend Civil And/Or Criminal Claims Arising From The Very Acts That Necessitated This Case And A Receiver In The First Place.**

Generally, there is no right to counsel in a civil case. *Turner v. Rogers*, 564 U.S. 431 (2011); *see also United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir. 1986) (citations omitted). And a defendant must demonstrate that any funds used to defend a criminal matter are untainted, meaning they are not funds received from the underlying criminal act. *SEC v. Abdallah*, 2017 U.S.

---

[1] Silver's willingness to engage in a game of asset cat and mouse is best demonstrated by the fact that the Receiver just discovered yet another luxury home owned by Eclipse. *See* Motion to Reappoint Receiver (ECF #119). This is directly contrary to Silver's prior representations concerning assets. Silver should be required to provide a Financial Affidavit like a CJA-23.

Dist. LEXIS 236952 (N.D. Oh. 2017); *see also Sec v. Beasley*, No. 2:22-cv-612, 2022 U.S. Dist. LEXIS 140362, at *10 (D. Nev. Aug. 5, 2022). In instances involving a freeze of assets, including assets controlled by a receiver, the Court should consider whether the requested funds are tainted. *See Beasley*, No. 2:22-cv-612, 2022 U.S. Dist. LEXIS 140362, at *10 (D. Nev. Aug. 5, 2022) (interpreted in the context of an action by the SEC). Indeed, to "unfreeze assets in any civil action, including one brought by the SEC, 'the defendant must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violations is established.'" *SEC v. Santillo*, No. 18-cv-5491, 2018 U.S. Dist. LEXIS 116290, at *13 (S.D.N.Y. July 11, 2018) (citing *SEC v. Stein*, No. 7-cv-3125, 2009 U.S. Dist. LEXIS 134285, at *1) (S.D.N.Y. April 30, 2009).

It is undisputed that the funds currently held by the Receiver are tainted. Indeed, the only funds recovered and held by the Receiver thus far relate to the recent sale of one of the homes owned by Eclipse located in Miami ("MIA 1"). The funds used to purchase that home came from Root paying Quantasy, Quantasy "paying" Collateral Damage, and Collateral Damage transferring the ill-gotten funds to Eclipse – the bank records already filed with this Court establish that beyond dispute. To now require Root to hand over any of the recovered funds from the sale of MIA 1 to finance the Silver Defendants' civil or criminal defense is inappropriate in every sense. *See SEC v. Quinn*, 997 F. 287, 289 (7th Cir. 1993) ("just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of a crime").

The cases relied upon by the Silver Defendants do not support their position, indeed they support Root's position. In *SEC v. Dowdell*, 175 F. Supp. 2d 850 (W.D. Va. 2001), the court granted very limited access to seized assets. Specifically, the court allowed fees necessary to

achieve "a fair result" at the hearing on a preliminary injunction. *Id*. at 856. But the court required counsel to provide "reasonable estimates of the fees necessary to take [defendants] through the hearing on preliminary injunction." Here, after a fair hearing, the Court issued a temporary restraining order in favor of Root. Subsequent thereto, the Court entered an agreed preliminary injunction. Both orders occurred while the Silver Defendants were represented by unquestionably competent counsel. But the Silver Defendants' motion seeks a far broader remedy – the fees necessary for a defense of the civil action and any parallel criminal proceeding with virtually no limits. *Dowell* does not support any such finding. Indeed, what precisely will the Silver Defendants' "defense" be in this civil action? This is all a big mistake? The funds held by the Receiver do not belong to Root? Or will the Silver Defendants take the 5th Amendment as they have previously suggested?

In *SEC v. Abdallah*, 2017 U.S. Dist. LEXIS 236952 , *9 (N.D. Oh. 2017), Judge Solomon denied defendant's request for attorney's fees to defend a civil action and held that on balance the "equities weigh against releasing funds so that Defendants may pay their attorney's fees in the instant enforcement action or related civil matters." *Id*. Specifically the court held that the requesting defendants failed to establish that the request was in the interest of the harmed investors. *Id*. The court stated that it had "a duty to ensure that funds are available to compensate the victims in this case." *Id*. (cite omitted). The court recognized that this was especially important given that the amount of the fraud far outweighed the amount in the receivership estates. *Id*. The *Abdallah* court also rejected Defendants' request as it related to fees for a criminal defense. The court held that under the Sixth Amendment "a defendant has no right to access the proceeds of his or her alleged fraud, even when those funds are necessary to obtain counsel of choice." *Id*. at *11. Rather, the court held that only funds untainted by the perpetrated fraud could be used in the

defendants' criminal defense. *Id*. at 11-2; *see also Sec v. Beasley*, No. 2:22-cv-612, 2022 U.S. Dist. LEXIS 140362, at *10 (D. Nev. Aug. 5, 2022) (funds must not be tainted). Here there is no showing that paying the civil fees for the Silver Defendants is in Root's interest, indeed, it is the very opposite. And as to the criminal proceeding, the Silver Defendants have not demonstrated (and cannot demonstrate) that the funds held by the Receiver are untainted or that the Silver Defendants have any other source of untainted funds.

*Grupo Mexicano De Desarrolo v. Alliance Bond Fund*, 527 U.S. 308 (1999) is equally inapplicable. There the plaintiffs were purchasers of unsecured notes from Grupo. *Id.* at 310. Grupo suffered significant losses which imperiled its ability to repay the notes. *Id*. at 311. Plaintiffs sought and received a temporary restraining order and preliminary injunction preventing Grupo from dissipating its assets. *Id*. at 313. The Supreme Court reversed, holding that a creditor must obtain a judgment prior to seeking equitable relief through a creditor's bill. *Id.* at 319. Specifically the Court held "the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondent's contract claims for money damages." *Id*. at 333. Here Root is not a "creditor" through voluntary investments or loans. Rather Root seeks to recover funds stolen from it by the Silver Defendants and their co-conspirators. In short, this involves fraud not a conscious investment decision or an agreed upon note.

B. **The Fact That Eclipse And Collateral Damage Are Corporate Entities Does Not Change The Result**.

Unquestionably, the law holds that a corporate entity must appear by counsel. But here that principle collides with two other important points. First, there is no right to counsel in a civil action. Second, and more importantly, tainted funds cannot be used to finance any defense, whether civil or criminal. *See* Section A, *supra*.

Again, as to the latter, the Silver Defendants argue: "[r]efusing to permit the Silver Defendants to use their assets, including any earned apart from those alleged to have been fraudulently taken from the Plaintiffs, to hire counsel places them in a Catch-22." *See* Motion at 8. They also suggest that doing so impairs the Silver Defendants' ability "to assist the Receiver with identifying assets." *Id.* Noticeably absent is any evidence that the Silver Defendants have assets unrelated to the fraud they perpetrated on Root. Indeed, having any such asset would be contrary to their repeated representations to this Court. And any suggestion that the Silver Defendants are committed to helping find the assets they stole is preposterous (did Silver forget about the 4th house?). The bottom line is this: if the Silver Defendants have any assets from untainted funds, they must prove it to this Court. And if they don't then they are on their own to clean up the mess they created.

### C. **If The Court Is Inclined To Permit The Silver Defendants To Pay Civil Counsel, The Silver Defendants Should Be Ordered To File A Supplemental Motion With Evidentiary Support.**

Finally, if the Court is inclined to permit the Silver Defendants to pay civil counsel for representation in this matter, the Court should order the Silver Defendants to file a supplemental motion, setting forth at least three things. First, the Silver Defendants must establish that the allowances in the Preliminary Injunction are insufficient to retain counsel. Under the Preliminary Injunction, Silver may pay personal expenses for day-to-day living in an amount no greater than $7,500 in total per month. Similarly, both Collateral Damage and Eclipse are permitted to spend no more than $5,000 per month. Yet, the Silver Defendants have failed to come forward with any evidence that they have reached that monthly limit. Nor have they put forth evidence that they need more than $5,000 to retain counsel. **Indeed, before this Court even considers any such request, at a minimum Silver should be required to provide a CJA-23 Financial Affidavit**.

Second, in the event the Silver Defendants are able to prove that they need funds in excess of the allowances set forth in the Preliminary Injunction, the Silver Defendants should provide a proposed budget, subject to review and approval by the Receiver and this Court. The Silver Defendants should not be granted a "blank check" to pay civil counsel, nor should any spending go unchecked.

Third, there is a substantial risk that the Silver Defendants will use funds for their civil counsel to pay for Silver's criminal defense – a cost that the Silver Defendants should not incur when Silver has access to a public defender. The Silver Defendants should therefore propose a method by which the Court can ensure that any amount of money the Silver Defendants are permitted to pay for civil legal fees is not used to fund Silver's criminal defense. By way of example only, the Receiver could review the invoices from the Silver Defendants' counsel prior to payment to ensure that any amounts paid are related to the civil matter.

## III. CONCLUSION

This Court should make quick work of the Silver Defendants' request – it should be denied.

Respectfully submitted,

*/s/ William D. Kloss, Jr.*
William D. Kloss, Jr. (0040854), Trial Attorney
Elizabeth S. Alexander (0096401)
Grace E. Saalman (0101603)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone (614) 464-6360
Fax (614) 719-4807
wdklossjr@vorys.com
esalexander@vorys.com
gesaalman@vorys.com

Matthew L. Kutcher (IL Bar No. 6275320*)*
Cooley LLP *Admitted Pro Hac Vice*
110 N. Wacker Drive Suite 4200
Chicago, IL 60606
Phone (312) 881-6500
Fax (312) 881 6598
mkutcher@cooley.com

Kristine A. Forderer (CA Bar No. 278754)
Cooley LLP *Admitted Pro Hac Vice*
3 Embarcadero Center
San Francisco, CA 94111
Phone (415) 693-2128
kforderer@cooley.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 15, 2023, a true and accurate copy of the foregoing was filed electronically.  Notice of this filing has been sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  A copy was also sent by ordinary U.S. Mail, postage prepaid, to the following:

Paige McDaniel
5576 Alexanders Lake Road
Stockbridge, GA 30281

Brinson Caleb Silver
2543 Walnut Avenue
Venice Beach, CA 90291

                                            */s/ William D. Kloss, Jr*
                                            William D. Kloss, Jr.

                                            *Counsel for Plaintiffs*