UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROOT, INC., et al., | : | |
| | : | |
| *Plaintiff*, | : | Case No. 2:23-cv-512 |
| | : | Judge Sarah D. Morrison |
| vs. | : | Magistrate Judge Elizabeth A. |
| | : | Preston Deavers |
| BRINSON CALEB SILVER, et al., | : | |
| | : | |
| *Defendants*. | : | |

**MOTION OF RECEIVER, JERRY E. PEER, JR., TO CONFIRM
THE PUBLIC SALE OF CERTAIN REAL PROPERTY OF DEFENDANT,
ECLIPSE HOME DESIGN, LLC, FREE AND CLEAR OF ALL INTERESTS, LIENS,
CLAIMS AND ENCUMBRANCES AND TO DISTRIBUTE PROCEEDS OF SALE**

Now comes the Court appointed receiver herein, Jerry E. Peer, Jr., ("Receiver"), by and through his undersigned counsel, and hereby moves this Court for an Order confirming the public sale of certain real property of Eclipse Home Design, LLC ("Defendant"), pursuant to the terms and conditions of the *Real Estate Purchase Agreement*, attached hereto as "**Exhibit A**" (the "Purchase Agreement"), free and clear of any and all interests, liens, claims and encumbrances, as well as any right of redemption, with the interests, liens, claims and encumbrances to transfer to the proceeds of sale, and to approve the Receiver's proposed distribution of proceeds of sale.

A Memorandum in Support of this Motion is attached hereto.

                Respectfully submitted,

                **PETERSON CONNERS LLP**

                /s/ Istvan Gajary
                Gregory S. Peterson (0061915)
                Jerry E. Peer, Jr. (0075128)
                Istvan Gajary (0089084)
                545 Metro Place South, Suite 435
                Dublin, Ohio 43017

1

Telephone: (614) 365-7000
Facsimile: (614) 220-0197
E-mail: gpeterson@petersonconners.com
jpeer@petersonconners.com
igajary@petersonconners.com
*Counsel for Receiver, Jerry E. Peer, Jr.*

**MEMORANDUM IN SUPPORT**

**I.     STATEMENT OF THE FACTS**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 754, 959 and 1692, Rule 66 of the Federal Rules of Civil Procedure, this Court's inherent powers, and Ohio laws where applicable.

2. In accordance with the requirements of this Court's Order, filed May 12, 2023 [Doc. # 99], Order Appointing Receiver, filed May 17, 2023 [Doc. # 101], and Order Amending Order Appointing Receiver, filed June 7, 2023 [Doc. # 120] (hereinafter collectively "Receiver Order"), Jerry E. Peer, Jr. ("Receiver"), was appointed as Receiver of all monetary and real property assets of Mr. Brinson Caleb Silver, Collateral Damage, LLC and Eclipse Home Design, LLC (hereinafter collectively "Defendants").

3. Pursuant to the Receiver Order,

> The Receiver is authorized to negotiate and effect an orderly sale, transfer, use, or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of the Receivership Defendants and, from the proceeds thereof, to pay the secured and unsecured indebtedness of the Property, including the Real Property. Payments to creditors by the Receiver shall include trade indebtedness which arises during the course of the Receiver's operation of the Property, which shall be paid first from the sale proceeds, together with the fees and expenses of the Receiver and his attorneys, accountants, and other professionals. The Receiver is authorized to conduct such a sale of the Property in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.…

See Receiver Order, ¶ 2(k).

Further, paragraphs 12(v) and (w) authorized the Receiver to retain a broker to market or sell the Receivership Property and to employ such person or entities as may be necessary to accomplish the Receiver's duties.

4. Pursuant to this Court's Notation *Order Granting Receiver's Motion to Employ Gryphon Asset Advisors, LLC as Auctioneer*, filed journalized on September 8, 2023 ("Sale Order"), Receiver engaged Gryphon Asset Advisors, LLC ("Auctioneer"), pursuant to the terms and conditions of the Exclusive Listing Agreement for Real Estate Auction ("Auction Agreement") approved by the Sale Order, to conduct a public auction of the real estate identified in the Real Estate Purchase Agreement, attached hereto as "**Exhibit A**" (the "Purchase Agreement"). The Sale Order was timely served on all parties to this action.

5. From September 21, 2023 through October 18, 2023, the Receiver and Auctioneer offered the Real Estate for public sale by and through Auctioneer, through an online auction ("Public Auction"). The Public Auction was well-attended and produced substantial bidding activity. There were forty-six (46) registered bidders and five hundred fourteen (514) bids placed.

6. Receiver, through Auctioneer, advertised the Real Estate for sale for approximately four (4) weeks through various forms of media. Marketing efforts included professional photography and videography. The Real Estate was digitally marketed with top tier status on listing sites as well as social media platforms. Further, an email campaign was used to reach over 35,000+/- individual email accounts. Finally, Auctioneer utilized industry standard marketing practices such as signage, social media, outgoing and responsive phone calls, as well as site visits. Seventy-two (72) interested parties attended the two (2) open house events. Auctioneer's efforts generated forty-six (46) qualified bidders. Bidders were offered an opportunity to review

3

Court documents evidencing the Receiver's authority to offer the asset, terms of sale and a draft purchase agreement in advance of registration and bidding.

7. Bidding began at $750,000 and bid increments were set at $100. Bidding opened on September 28, 2023 and ran until October 18, 2023, originally scheduled to close bidding at 6:00 pm PDT. Over bidding, as allowed by the terms of sale, continued until there were no additional bids after 6:13 pm. Bidding progressed slowly up to October 17, 2023 where it stalled out at approximately $870,000. By noon of October 18, bids had advanced to $978,000. As the day progressed bids advanced to $1,200,300 at approximately 4:00 pm. Just prior to 6:00 pm. additional bids were made and thereafter continued until 6:13 pm. at which time $1,360,300 was determined to be the winning bid. During the course of the auction, Receiver received three (3) written offers from interested parties, which ranged from $1,200,000 to $1,201,000.

8. As a result of Receiver's and Auctioneer's best efforts marketing the Real Estate for the Public Sale to potentially interested purchasers, the highest offer/bid received at the conclusion of the Auction was in the amount of One Million Three Hundred Sixty Thousand Three Hundred and 00/100 Dollars ($1,360,300.00) for the Real Estate.

9. By this Motion, Receiver seeks this Court's confirmation of the highest bid at Public Auction and authority to close the sale of the Real Estate, pursuant to the terms and conditions of the Purchase Agreement, free and clear of any and all interests, liens, claims, and encumbrances, as well as any right of redemption, with the interests, liens, claims, and encumbrances attaching to the net proceeds of sale, in accordance with the prior Sale Order, which shall be disbursed to the secured creditor(s) holding valid and existing liens, in order of their respective priorities. Apart from the Treasurer of San Diego County, California, to whom the real estate taxes will be paid at closing, the only secured creditor is Shellpoint Mortgage Services who is the servicer to the entity that holds the first and best mortgage against the Real Estate.

**II.     THE PUBLIC AUCTION**

10.   Through the efforts of Receiver and Auctioneer, Wagdy Wahba and Angey Wahba (collectively "Buyers") have been identified as the high bidder for the Real Estate. As a result of the Public Auction, Buyers executed the attached Purchase Agreement, being contingent upon the approval of Receiver, by and through confirmation by this Court.

11.   As set forth in the Purchase Agreement, the purchase price is One Million, Three Hundred Sixty Thousand, Three Hundred and 00/100 Dollars ($1,360,300.00) plus ten percent buyer's premium (collectively the "Purchase Price"), which includes all of the Real Estate approved to be auctioned under the Sale Order. Based on the circumstances and condition of the Real Estate and previous valuation(s), Receiver believes this sale to be reasonable and consistent with current fair market values and, therefore, recommends its confirmation by this Court.

12.   For the reasons stated above, Receiver, in his business judgment, has determined this offer to be in the best interest of the receivership estate.

13.   The Receiver requests that any order confirming the sale of the Real Estate include findings of the Court that the purchase of the property is commercially reasonable and that the offer of Buyers is fair and reasonable and represents the highest and best offer under the circumstances.

**III.    REQUEST FOR CONFIRMATION**

14.   Pursuant to pursuant to 28 U.S.C. §§ 754, 959 and 1692, Rule 66 of the Federal Rules of Civil Procedure and ¶ 2(k) of the Receiver Order, the Receiver is authorized to apply to this Court for authority to market and sell the assets of Defendant, which was obtained by Receiver, pursuant to the Sale Order.

15.   Receiver hereby requests that the Purchase Agreement and all terms contained therein be approved and the Public Auction of the Real Estate be confirmed, thereby granting

Receiver authority to sell the Real Estate to Buyers free and clear of all interests, liens, claims, and encumbrances, as well as any right of redemption, with the interests, liens, claims, and encumbrances attaching to the net proceeds of sale, which shall be disbursed to secured creditors holding valid and existing liens, in order of their respective priorities.

**IV.　DISTRIBUTION OF SALE PROCEEDS**

16.　After receipt of all credits provided for in the Purchase Agreement and Auction Agreement, proceeds of the sale paid to Receiver at closing shall be distributed at closing and/or by Receiver as follows:

> 16.01　First, pay all closing costs attributable to the Receiver as Seller, including but not limited to all commissions, fees, and expenses owed to Auctioneer pursuant to the terms of the Auction Agreement, and amounts, if any, pursuant to the Purchase Agreement;
>
> 16.02　Second, to Shellpoint Mortgage Servicing in full satisfaction of the Commercial Promissory Note, which is secured by the Mortgage held against the Real Estate;
>
> 16.03　Third, any funds remaining in the possession of Receiver shall be held by Receiver pending further order of this Court, against which any remaining liens claims and encumbrances against the Real Estate shall attach to said funds in order of their respective priorities.

WHEREFORE, the Receiver respectfully requests that the Court enter an order: (i) confirming the Auction and approving the sale of the Real Estate to Buyer free and clear of any and all interests, liens, claims, and encumbrances, as well as any right of redemption, with the interests, liens, claims, and encumbrances attaching to the net proceeds of sale; (ii) granting the Receiver authority to distribute the sale proceeds as stated in Paragraph 16 of this Motion; and (iii) granting such other and further relief as the Court deems appropriate pursuant to applicable law or in equity.

Respectfully submitted,

**PETERSON CONNERS LLP**

 /s/  Istvan Gajary
Gregory S. Peterson (0061915)
Jerry E. Peer, Jr. (0075128)
Istvan Gajary (0089084)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
Telephone: (614) 365-7000
Facsimile: (614) 220-0197
E-mail:  gpeterson@petersonconners.com
 jpeer@petersonconners.com
 igajary@petersonconners.com
*Counsel for Receiver, Jerry E. Peer, Jr.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of the foregoing was filed electronically on this 1st day of November, 2023 with the Clerk of Court using the CM/ECF system. Service will be made through the Court's CM/ECF system on all parties and attorneys so registered, and all parties may access this filing through the Court's system.

      A copy was also sent by regular U.S.P.S. mail and by electronic mail to the following:

Collateral Damage, LLC
101 N. Brand Blvd., 11th Floor
Glendale, CA 91203

Eclipse Home Design, LLC
651 N. Broad Street, Suite 201
Middletown, De 19709

Paige McDaniel
5576 Alexanders Lake Road
Stockbridge, GA 30281

Brinson Caleb Silver
2543 Walnut Ave.
Venice CA 90291

      /s/  Istvan Gajary
      Istvan Gajary (0089084)

**Exhibit A**

# REAL ESTATE PURCHASE AGREEMENT

1.  **PROPERTY DESCRIPTION**: the undersigned Buyer offers to purchase from Jerry E. Peer, Jr., Receiver of all monetary and real property assets of Mr. Brinson Caleb Silver, Collateral Damage, LLC and Eclipse Home Design, LLC, (hereafter collectively "Seller"), through Gryphon Asset Advisors, LLC d/b/a Gryphon Realty d/b/a GryphonUSA.com, an Ohio limited liability company and Richard F. Kruse, Auctioneer ("Auction Firm") the following described real property including, without limitation, all improvements, fixtures, appurtenant rights, privileges, and easements located at 19803 Vista Del Otero, Ramona, California 92065; Parcel No. 276-160-03-00.

2.  **PURCHASE PRICE AND PAYMENT TERMS**: Buyer agrees to buy, and the Seller agrees to sell for the purchase price (the "Purchase Price") calculated as follows:

High Bid of $1,360,300 plus
10% Buyer's Premium of $136,030.00 equals
the Purchase Price of $1,496,330.00.

The Purchase Price shall be paid, less the Deposit (defined below) in immediately available funds at the closing of the purchase of the Premises (the "Closing"), as defined in paragraph 12 hereof.

3. **CONTINGENCIES**: The sale of the Premises is contingent upon approval of the sale and the Purchase Price by the Seller ("Approval"). No other contingencies are in effect.

4.  **FIXTURES EQUIPMENT AND FURNITURE**: The consideration shall include all fixtures, equipment, and furniture located in/on the property, including but not limited to: built-in appliances; heating, ventilating, air conditioning (HVAC) and humidifying equipment and their control apparatus; stationary tubs; pumps; water softening equipment; roof antennae; attached wall-to-wall carpeting and attached floor coverings, curtain rods and window coverings including draperies and curtains; attached mirrors; light, bathroom and lavatory fixtures; storm and screen doors and windows, awnings, blinds and window air conditioners, whether now in or on the premises or in storage; garage door openers and controls, attached fireplace equipment; security systems and controls; smoke alarms; satellite TV reception system and components; all exterior plants and trees; and the following: all indoor and outdoor furniture located on the property.

5.  **DAMAGE OR DESTRUCTION OF PREMISES**: Risk of physical loss to the Premises and improvements shall be borne by Seller until Closing, provided that if any property covered by this Agreement shall be substantially damaged or destroyed before this transaction is closed, Buyer may (a) proceed with the transaction and be entitled to all insurance money, if any, payable to Seller under all policies covering the property, or (b) rescind the Agreement and thereby release all parties from liability hereunder by giving written notice to Seller and Auction Firm within ten (10) days after Buyer has written notice of such damage or destruction. Failure by Buyer to so notify Seller and Auction Firm shall constitute an election to proceed with the transaction.

Bidder Initials 

6. **CONDITION OF PREMISES:** Seller agrees that upon delivery of Deed, the Premises shall be in the same condition as they are on the date of this Agreement, reasonable wear and tear excepted.

7. **NO WARRANTIES:** Buyer acknowledges that the Premises are being sold in "as is, where is" condition without any representation or warranty whatsoever. Seller does not warrant or make any representation, express or implied, as to the merchantability, quantity, quality, condition, suitability or fitness of the Premises for any purpose whatsoever, including, without limitation, its compliance with applicable building codes and ordinances, zoning laws, and environmental law, including, without limitation, the Clean Air Act, the Comprehensive Response Compensation and Liability Act (CERCLA), the Americans with Disabilities Act, and any other federal, state or local statutes, codes or ordinances.

8. **EVIDENCE OF TITLE**: Seller shall furnish and Buyer shall pay for an owner's title insurance commitment and policy in the amount of the purchase price. The title evidence shall be certified to within thirty (30) days prior to Closing with endorsement not before 8:00 a.m. on the business day prior to the date of Closing, all in accordance with the standards of the __N/A_____, and shall show Seller marketable title free and clear of all liens and encumbrances except: (a) those created by or assumed by Buyer; (b) those specifically set forth in this Agreement; (c) zoning ordinances; (d) legal highway and *(e)* covenants, restrictions, conditions and easements of record that do not unreasonably interfere with present lawful use. Buyer shall pay any additional costs incurred in connection with mortgagee title insurance issued for the protection of Buyer's lender. If Buyer desires a survey, Buyer shall pay the cost thereof.

9. **TAXES AND ASSESSMENTS**: At Closing, Seller shall pay or credit on purchase price all delinquent taxes, including penalty and interest, all assessments that are a lien on the date of this Agreement and all agricultural use tax recoupments for years prior to the year of Closing. At Closing, Seller shall also pay or credit on the Purchase Price all other unpaid real estate taxes that are a lien for years prior to Closing and a portion of such taxes and agricultural use tax recoupments for year of the Closing, prorated through date of the Closing and based on a 365-day year and, if undetermined, on most recent available tax rate and valuation, giving effect to applicable exemptions, recently voted millage, change in valuation, etc., whether or not certified. Real estate taxes and assessments are subject to retroactive change by governmental authority. The real estate taxes for the Premises for the current tax year may change as a result of the transfer or as a result of a change in the tax rate.

10. **ENVIRONMENTAL DISCLAIMER BY SELLER**: Buyer acknowledges that Seller and/or Auction Firm have made no independent investigation to determine whether hazardous materials exist in, on or about the Premises. Buyer and Seller understand that any such determination requires the expertise of a specialist in hazardous materials, the retaining of which is the responsibility of Buyer and not that of the Seller or Auction Firm.

11. **DEPOSIT**: Upon the execution of this Agreement, Buyer shall deposit three percent (3%) of the total Purchase Price (the "Deposit") with a title company to be determined by Seller which shall be returned to Buyer, upon Buyer's request, if this Agreement shall not be approved by the Seller. Upon Approval, Title shall deposit the Deposit in its trust account to be disbursed as follows: (a) the Deposit shall be applied on Purchase Price or returned to Buyer at Closing; (b) if Seller fails or refuses to perform, the Deposit shall be returned to Buyer; (c) if Buyer fails or refuses to perform, the Deposit shall be divided equally between Auction Firm and Seller with no further actions or releases required by the Buyer.

Bidder Initials 

12. **CLOSING**: This Agreement shall be performed, and this transaction closed not later than Thirty (30) calendar days following Approval. Time is of the essence in consummating this transaction. Because time is of the essence, if Buyer fails to close as agreed, Seller, at Seller's sole discretion may elect to terminate this Agreement or extend the closing date. If Seller elects to extend the closing date, Buyer shall be assessed a penalty of $300.00 per day, to be paid to the Seller in addition to the agreed-upon purchase price, for each day that this transaction does not close following the agreed-upon closing date. Buyer is entitled to possession at Closing. At the time Seller delivers possession, the Premises will be in the same condition as the date of acceptance of this Agreement, except as provided herein in paragraph 4 entitled Damage or Destruction of Premises, normal wear and tear excepted. Any personal property not included in this Agreement shall be abandoned to the Buyer at Closing. At Closing, Seller shall pay applicable County transfer taxes and deed preparation and shall convey to Buyer marketable title (as described herein paragraph 6) to the Premises in fee simple by a Receiver/Fiduciary Deed in transferable and recordable form. All other closing costs will be borne by the Buyer. Closing shall occur through the title agent selected by Seller who shall also hold the Deposit.

13. **ASSIGNABILITY**: This Agreement may not be assigned.

14. **MISCELLANEOUS**: This Agreement constitutes the entire agreement and no oral or implied agreement exists. Any amendments to this Agreement shall be in writing, signed by Buyer(s) and Seller(s) and copies provided to them. This Agreement shall be binding upon the parties, their heirs, administrators, executors, successors and assigns. Time is of the essence of all provisions of this Agreement. All provisions of this Agreement shall survive the Closing. In compliance with fair housing laws, no party shall in any manner discriminate against any Buyer or Buyers because of race, color, religion, sex, familial status, handicap or national origin. Paragraph captions are for identification only and are not a part of this Agreement.

13. **COMMISSIONS**: The parties hereto agree that the Auction Firm was the sole procuring cause for this Agreement.

14. **SELLER BREACH**: If Seller breaches Seller's obligations under this Agreement, Seller shall pay Auction Firm any and all amounts due to Auction Firm under this Agreement and the Listing Agreement executed by and between Seller and Auction Firm.

15. **APPLICATION OF PROCEEDS**: Auction Firm may apply any proceeds from this transaction against any outstanding amounts due and owing to Auction Firm from Seller.

16. **INDEMNIFICATION**: Buyer and Seller hereby agree, jointly and severally, to indemnify and hold Auction Firm and harmless from any current or future claim regarding the auction or Premises, including, without being limited to, fitness, use, damage, safety, or injuries to persons or property.

17. **GOVERNING LAW; JURISDICTION; VENUE:** This Agreement will be governed by and construed in accordance with the laws of the State in which the Property is located, including its statutes of limitations, but without regard to its rules governing conflict of laws. All claims, disputes, and other matters between the parties will be brought in the United States District Court for the Southern District of Ohio, Southern Division, which court will have exclusive jurisdiction, and will be the exclusive venue, for any and all such claims, disputes, and other matters between the parties.

Bidder Initials 

18. **SIGNATURES; COUNTERPARTS.** This Agreement may be executed manually, electronically, digitally, or by any other means intended to represent the signature of a party. This Agreement may be executed in one or more counterparts, each of which will constitute an original, and all of which, taken together, will constitute one and the same instrument.

**ACKNOWLEDGEMENTS**

**FOR BUYER**

Wagdy Wahba / ANGEY WAHBA
Buyer Signature

10/19/2023
10/19/2023
Date

Wagdy Wahba        ANGEY WAHBA
Buyer Name Printed

3628 Torrey View Ct
Buyer Address

619-209-9134
Buyer Phone

willie.mfhinvestment@gmail
Buyer Email

San Diego, CA 92130
Buyer City/State/Zip

**FOR SELLER**

_____
Sellers Signature

_____
Date

_____
Seller Name Printed

_____
Sellers Signature

_____
Date

_____
Seller Name Printed

Bidder Initials WW  AW