## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ROOT, INC., et al., | : | |
| | : | |
| *Plaintiffs*, | : | Case No. 2:23-cv-512 |
| | : | Judge Sarah D. Morrison |
| vs. | : | Magistrate Judge Elizabeth A. |
| | : | Preston Deavers |
| BRINSON CALEB SILVER, et al., | : | |
| | : | |
| *Defendants.* | : | |

### MOTION OF RECEIVER, JERRY E. PEER, JR., TO EMPLOY SERHANT AND MARCO TINE AS REAL ESTATE BROKER

Now comes the Court appointed receiver herein, Jerry E. Peer, Jr., ("Receiver"), by and through his undersigned counsel, and hereby moves this Court for an Order permitting Receiver to engage Serhant and Marco Tiné ("Broker"), collectively, as its real estate Broker for the real estate located at 9125 North Bayshore Drive, Miami, Florida 33138 ("Property") and owned by Eclipse Home Design, LLC and approve the *Exclusive Right of Sale Listing Agreement* ("Listing Agreement"), attached hereto as "**Exhibit A**" and authorizing Broker to advertise and market the Property for sale.

A Memorandum in Support of this Motion is attached hereto.

Respectfully submitted,

**PETERSON CONNERS LLP**

 /s/  Istvan Gajary
Gregory S. Peterson (0061915)
Jerry E. Peer, Jr. (0075128)
Istvan Gajary (0089084)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
Telephone: (614) 365-7000
Facsimile: (614) 220-0197
E-mail:  gpeterson@petersonconners.com
            jpeer@petersonconners.com

1

igajary@petersonconners.com
*Counsel for Receiver, Jerry E. Peer, Jr.*

## MEMORANDUM IN SUPPORT

**I.     INTRODUCTION**

1.     In accordance with the requirements of this Court's *Order,* filed May 12, 2023 [Doc. # 99], *Order Appointing Receiver*, filed May 17, 2023 [Doc. # 101], and *Order Amending Order Appointing Receiver*, filed June 7, 2023 [Doc. # 120] (hereinafter collectively "Receiver Order"), Jerry E. Peer, Jr. ("Receiver"), was appointed as Receiver of all monetary and real property assets of Mr. Brinson Caleb Silver, Collateral Damage, LLC and Eclipse Home Design, LLC (hereinafter collectively "Defendants").    Since his appointment, Receiver has taken possession and control of the real estate of Defendant located at 9125 North Bayshore Drive, Miami, Florida 33138 ("Property").  Pursuant to the Receiver's Order, Receiver has further been engaged for the purpose of negotiating and effecting an orderly sale of the Property in or outside the ordinary course of business.  Receiver Order at p. 9, ¶ 2(k).  Since taking possession of the Property and conducting some preliminary determinations of the value of the Property, Receiver has determined that it is in the best interests of the receivership estate, and its respective creditors, to employ a broker for purposes of preparing, marketing and offering the Property for sale.

**II.     LAW AND ARGUMENT**

2.     Pursuant to the Receiver Order,

> The Receiver is authorized to negotiate and effect an orderly sale, transfer, use, or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of the Receivership Defendants and, from the proceeds thereof, to pay the secured and unsecured indebtedness of the Property, including the Real Property. Payments to creditors by the Receiver shall include trade indebtedness which arises during the course of the Receiver's operation of the Property, which shall be paid first from the sale proceeds, together with the fees and expenses of the Receiver and his attorneys, accountants, and other professionals. The Receiver is authorized to conduct such a sale of the Property in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.…

See Receiver Order, ¶ 2(k).

"A judge who finds it necessary to appoint a Receiver should see that the entity, and therefore assets, are liquidated as economically and speedily as possibly unless its continuance is demonstrated to be beneficial to the creditors. *Jones v. Proctorville* (1961 C.A. 6, Ohio) 290 F. 2d 49.

      3.     Due to the unique nature of the Property, it is the Receiver's request at this time that the Property be sold at private sale free and clear of all liens, claims, interests, and encumbrances with said liens, claims, interests, and encumbrances attaching to the net proceeds of sale, which shall be disbursed to secured creditors holding valid and existing liens, in order of their respective priorities. Under Ohio law,

> [u]nder the control of the court that appointed the receiver as provided in section 2735.01 of the Revised Code, the receiver may do any of the following: … Sell and make transfers of real or personal property.

R.C. § 2735.04 (B)(5). Additionally, under Florida law,

> Among other powers: [t]he receiver: [m]ay dispose of all or any part of the assets of the corporation wherever located, at public or private sale, if authorized by the court.

Fla.Stat. § 607.1432(3)(a)(1). Furthermore, under federal law,

> The appointing court may authorize a receiver to . . . sell . . . such real and personal property as the court shall direct.

28 U.S.C. § 3103(b)(1)(B).

Thus, this Court can allow and order that the Property be transferred to a buyer free and clear of all liens, claims and encumbrances but with the liens attaching to the proceeds of the sale in order of their respective priorities. R.C. § 2754.04(D)(3).

4. Given the nature of the Property involved, Receiver determined that Serhant and Marco Tiné, collectively ("Broker") is the best qualified to market and sell the Property. More specifically, Broker is a full-service real estate firm and experienced in the disposition of residential properties of this type and under the same or similar condition (under construction/renovation). As a result of Broker's experience, Broker has access to potential buyers and a clear focus on current market trends and conditions making Broker duly qualified to market and sell the Property. Accordingly, Receiver has determined that employing Broker presents the best opportunity to maximize the highest and best value of the Property on behalf of Defendant's receivership estate and is hereby seeking the Court's approval to employ and retain Broker to sell the Property and to enter into the *Exclusive Right of Sale Listing Agreement* as to the Property ("Listing Agreement"), a copy of which is attached hereto as "**Exhibit A**.".

5. Pursuant to the proposed Listing Agreement, Broker shall be paid a six percent (6.00%) commission from the gross sales price upon the closing for the sale of the Property or any part thereof, and in accordance with the terms of the Listing Agreement a processing fee of $395.00. It has been determined by Receiver and Broker that the proposed listing amounts shall initially be as indicated in the Listing Agreement, which may be modified by agreement of the parties or order of this Court. As a result of Broker's established business, highly regarded reputation and significant experience, Broker has access to potential buyers with a clear focus on current market trends and conditions, making Broker duly qualified to market the Property. Accordingly, Receiver has determined that the employment of Broker presents the best opportunity to maximize the highest sand best value of the Property and is hereby seeking the Court's approval

to employ and retain Broker to market the Property for sale, free and clear of any and all interest, liens, claims and encumbrances.

      6.      Broker's State of Florida's brokerage license is in good standing, a conflict check has been conducted, insuring no conflicts presently exist with its representation of Receiver in this matter, and Broker has all insurance coverage as required by the State of Florida. Pursuant to the Listing Agreement, Broker has affirmatively stated that it will avoid any conflict of interest in connection with the marketing and sale of the Property; that gross proceeds of any sale or other transaction, which come into its hands will be turned over to Receiver or placed in its separate trust account, for the benefit of Receiver, and that it will not, under any circumstances, directly or indirectly purchase, acquire, or accept any interest in any property related to the receivership estate.

      7.      Receiver hereby further requests authority from this Court to enter into a real estate purchase contract for the sale of the Property, subject to this Court's approval. Upon executing a real estate purchase contract, Receiver will seek authority from this Court and notice all parties in interest thereto to accept and close any offer as to the Property and to convey fee simple title to the Property, free and clear of any and all interests, liens, claims and encumbrances provided any such offer, in the discretion of Receiver, is commercially reasonable and represents the highest and best offer under the particular circumstances.

      8.      At this time, Receiver does not seek authority to make a distribution of proceeds from the sale of the Property. Once entering into a contract for the sale of the Property, Receiver will submit a motion to approve the contract and the terms and conditions outlined therein. Unless otherwise ordered by this Court, Receiver anticipates upon approval of a contract by this Court, Receiver will close the transaction free and clear of all liens, claims, and encumbrances, other than the lien of the treasurer of the county in which the real property is located for real estate taxes and assessments, holding all proceeds of sale pending approval of any proposed distributions. It is

Receiver's recommendation that all liens, claims and encumbrances in and to the Property will attach to any proceeds realized from the sale, except for Broker's compensation and other administrative fees and expenses, in accordance with their respective lien validity and priority.

## III. CONCLUSION

Based upon the foregoing, Receiver hereby moves the Court for an Order (i) approving the engagement of Broker for the marketing and sale of the Property on such terms and conditions as outlined in the Listing Agreement; (ii) permitting Receiver to enter into the Listing Agreement; and (iii) authorizing Receiver, in his discretion, to execute a real estate purchase agreement for the Property or part thereof, subject to this Court's approval.

Respectfully submitted,

**PETERSON CONNERS LLP**

 /s/  Istvan Gajary
Gregory S. Peterson (0061915)
Jerry E. Peer, Jr. (0075128)
Istvan Gajary (0089084)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
Telephone: (614) 365-7000
Facsimile: (614) 220-0197
E-mail:  gpeterson@petersonconners.com
             jpeer@petersonconners.com
             igajary@petersonconners.com
*Counsel for Receiver, Jerry E. Peer, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was filed electronically on this 1st day of November, 2023 with the Clerk of Court using the CM/ECF system. Service will be made through the Court's CM/ECF system on all parties and attorneys so registered, and all parties may access this filing through the Court's system.

A copy was also sent by regular U.S.P.S. mail and by electronic mail to the following:

Collateral Damage, LLC
101 N. Brand Blvd., 11th Floor
Glendale, CA 91203

Eclipse Home Design, LLC
651 N. Broad Street, Suite 201
Middletown, De 19709

Paige McDaniel
5576 Alexanders Lake Road
Stockbridge, GA 30281

Brinson Caleb Silver
2543 Walnut Avenue
Venice CA 90291

    /s/ Istvan Gajary
Istvan Gajary (0089084)



**Exhibit A**

**Exclusive Right of Sale Listing Agreement**

1  This Exclusive Right of Sale Listing Agreement ("Agreement") is between

2* ECLIPSE HOME DESIGN LLC  ("**Seller**")

3* and Serhant  ("**Broker**")

4  **1. Authority to Sell Property:** **Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5  property (collectively "Property") described below, at the price and terms described below, beginning
6* 09/29/2023 and terminating at 11:59 p.m. on 07/31/2024 ("Termination Date"). Upon
7  full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8  automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9  that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10  color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11  law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12  **2. Description of Property:**
13*   (a) **Street Address:** 9125 North Bayshore Drive, Miami, FL 33138
14
15*   Legal Description: WATERSEDGE PB 9-141 LOT C LESS W25FT & LESS S12.5FT LOT SIZE 50.000 X 167 OR 15973-3580 15991-2804
16*   0693 1 COC 24849-1532 04 2006 1    ☐ See Attachment
17*   (b) **Personal Property, including appliances:**
18*   ☐ See Attachment
19   (c) **Occupancy:**
20*   Property ☐ is ☑ is not currently occupied by a tenant. If occupied, the lease term expires _____

21  **3. Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22*   (a) **Price:** $5,500,000
23*   (b) **Financing Terms:** ☑ Cash ☑ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24*     ☐ **Seller** Financing: **Seller** will hold a purchase money mortgage in the amount of $ _____
25*     with the following terms: _____
26**    ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus
27      an assumption fee of $_____. The mortgage is for a term of _____ years beginning in
28*     _____, at an interest rate of _____% ☐ fixed ☐ variable (describe) _____.
29*     Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller:** **(1)** You may
30      remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31      lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
32      escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33      (2) Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34      authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws
35      or whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You
36      are advised to consult with a legal or mortgage professional to make this determination.
37    (c) **Seller Expenses:** **Seller** will pay mortgage discount or other closing costs not to exceed _____% of the
38      purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39  **4. Broker Obligations:** **Broker** agrees to make diligent and continued efforts to sell the Property in accordance
40      with this Agreement until a sales contract is pending on the Property.

41  **5. Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42      because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43      obligated to enter the Property into the MLS within one (1) business day of marketing the Property to the public
44      (see Paragraph 6(a)) or as necessary to comply with local MLS rule(s). This listing will be published accordingly in
45      the MLS unless **Seller** directs **Broker** otherwise in writing. (See paragraph 6(b)(i)). **Seller** authorizes **Broker** to
46      report to the MLS this listing information and price, terms, and financing information on any resulting sale for use
47      by authorized Board / Association members and MLS participants and subscribers unless **Seller** directs **Broker**
48      otherwise in writing.

Seller ☐ ☐ and Broker/Sales Associate ☐ ☐ acknowledge receipt of a copy of this page, which is Page 1 of 4.
ERS-15nr Rev 5/20                                                                                          © 2020 Florida Association of Realtors®

49  **6. Broker Authority: Seller** authorizes **Broker** to:
50     **(a)** Market the Property to the Public (unless limited in Paragraph 6(b)(i) below):
51        **(i)** Public marketing includes, but is not limited to, flyers, yard signs, digital marketing on public facing
52        websites, brokerage website displays (i.e. IDX or VOW), email blasts, multi-brokerage listing sharing
53        networks and applications available to the general public.
54        **(ii) Public marketing also includes marketing the Property to real estate agents outside Broker's**
55        **office.**
56        **(iii)** Place appropriate transaction signs on the Property, except if Paragraph 6(b)(i) is checked below.
57        **(iv)** Use **Seller's** name in connection with marketing or advertising the Property.
58*       ☐ Display the Property on the Internet except the street address.
59     **(b)** Not Publicly Market to the Public/Seller Opt-Out:
60*       **(i.)** ☐ **Seller** does not authorize **Broker** to display the Property on the MLS.
61        **(ii.) Seller** understands and acknowledges that if **Seller** checks option 6(b)(i), a For Sale sign will not be
62        placed upon the Property and
63        **(iii.) Seller** understands and acknowledges that if **Seller** checks option 6(b)(i), **Broker** will be limited to
64        marketing the Property only to agents within **Broker's** office.
65        _____|_____ **Initials of Seller**
66     **(c)** Obtain information relating to the present mortgage(s) on the Property.
67     **(d)** Provide objective comparative market analysis information to potential buyers.
68*    **(e)** (**Check if applicable**) ☐ Use a lock box system to show and access the Property. A lock box does not
69        ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock
70        box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor
71        Board / Association from all liability and responsibility in connection with any damage or loss that occurs.
72*       ☐ Withhold verbal offers. ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.
73     **(f) Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These
74        websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or
75        reviews and comments about a property may be displayed in conjunction with a property on some VOWs.
76        Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews
77        about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or
78        comments and reviews about this Property.
79*       ☑ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such
80        estimate) to be displayed in immediate conjunction with the listing of this Property.
81*       ☑ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or
82        display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

83  **7. Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
84     **(a)** Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to
85        **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
86     **(b)** Recognize **Broker** may be subject to additional MLS obligations and potential penalties for failure to comply
87        with them.
88     **(c)** Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during
89        reasonable times.
90     **(d)** Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
91     **(e)** Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature,
92        including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's**
93        negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the
94        existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker
95        who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This
96        clause will survive **Broker's** performance and the transfer of title.
97     **(f)** Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
98     **(g)** Make all legally required disclosures, including all facts that materially affect the Property's value and are not
99        readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such
100       material facts (local government building code violations, unobservable defects, etc.) other than the following:
101* _____
102       **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
103    **(h)** Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting
104       requirements, and other specialized advice.

8. **Compensation:** **Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing, and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller**. **Seller** will pay **Broker** as follows (plus applicable sales tax):

   (a) 6 % of the total purchase price plus $395 Procesing feee OR $_____, no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's** fee being earned.

   (b) _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this subparagraph.

   (c) _____ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a contract granting an exclusive right to lease the Property.

   (d) **Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to cancel an executed sales contract. (3) If, within 90 days after Termination Date ("Protection Period"), **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom **Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date. However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another broker.

   (e) **Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive _____ % (50% if left blank) of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to exceed the Paragraph 8(a) fee.

9. **Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of ☑ 3 % of the purchase price or $_____ to a single agent for the buyer; ☑ 3 % of the purchase price or $_____ to a transaction broker for the buyer; and ☐ _____ % of the purchase price or $_____ to a broker who has no brokerage relationship with the buyer.
   ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

10. **Brokerage Relationship:**

    **NO BROKERAGE RELATIONSHIP NOTICE**

**FLORIDA LAW REQUIRES THAT REAL ESTATE LICENSEES WHO HAVE NO BROKERAGE RELATIONSHIP WITH A POTENTIAL SELLER OR BUYER DISCLOSE THEIR DUTIES TO SELLERS AND BUYERS.**

As a real estate licensee who has no brokerage relationship with you, _____ and its associates owe to you the following duties:

1. Dealing honestly and fairly;
2. Disclosing all known facts that materially affect the value of residential real property which are not readily observable to the buyer;
3. Accounting for all funds entrusted to the licensee.

Signature _____ Date _____

Signature _____ Date _____

11. **Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct expenses incurred in marketing the Property, and pay a cancellation fee of $_____ plus applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph 8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property during the time period from the date of conditional termination to Termination Date and Protection Period, if applicable.

157  **12. Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other
158  matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be
159  settled by first attempting mediation under the rules of the American Arbitration Association or other mediator
160  agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover
161  reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:
162* **Arbitration:** By initialing in the space provided, **Seller** _____ _____ Sales Associate _____, and **Broker** _____
163  agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the
164  Property is located in accordance with the rules of the American Arbitration Association or other arbitrator agreed
165  upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this Agreement
166  or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will equally split
167  the arbitrator's fees and administrative fees of arbitration.

168  **13. Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
169  administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
170  Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
171  will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and will
172  be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals. The
173  term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories of
174  potential or actual transferees.

175* **14. Additional Terms:** The listing price of $5.5 million is based on property renovation . However, the listing price may be
176  reduced to $3.9 million prior to the commencement of property renovation.

186* **Seller's Signature:** _____ Date: _____
187* Home Telephone: _____ Work Telephone: _____ Facsimile: _____
188* Address: _____
189* Email Address: _____
190* **Seller's Signature:** _____ Date: _____
191* Home Telephone: _____ Work Telephone: _____ Facsimile: _____
192* Address: _____
193* Email Address: _____
194* **Authorized Sales Associate or Broker:** _____ Date: _____
195* Brokerage Firm Name: SERHANT                                    Telephone: 7867978463
196* Address: 1688 Meridian Avenue, Suite 700, Miami Beach, FL 33139

197* Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery.

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR®.is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller ☐ ☐ and Broker/Sales Associate ☐ ☐ acknowledge receipt of a copy of this page, which is Page 4 of 4.
ERS-15nr Rev 5/20                                                              © 2020 Florida Association of Realtors®