**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROOT, INC.**, *et al.*, | ) | CASE NO.: 2:23-CV-00512-SDM-EPD |
| | ) | |
| **Plaintiffs,** | ) | JUDGE SARAH D. MORRISON |
| | ) | MAGISTRATE JUDGE DEAVERS |
| v. | ) | |
| | ) | **MOTION TO QUASH SUBPOENAS** |
| **BRINSON CALEB SILVER**, *et al.*, | ) | **FOR FINANCIAL RECORDS AND TO** |
| | ) | **STAY DISCOVERY AS TO THE** |
| **Defendants.** | ) | **QUANTASY DEFENDANTS** |
| | ) | |

Pursuant to Fed. R. Civ. P. 45(d)(3), Specially Appearing Defendants Quantasy, LLC, Quantasy & Associates LLC, and William Campbell (collectively, the "Quantasy Defendants") move the Court to quash the subpoenas issued by Plaintiff Root, Inc. on November 2, 2023 to City National Bank, Mesh Payments, Inc., Morgan Stanley & Co., LLC, PayPal Holdings, Inc., Early Waning Services, LLC, and JP Morgan Chase Bank, N.A., as well as the subpoena served on November 13, 2023 to Morgan Stanley Smith Barney LLC.

The information sought under the subpoenas has no bearing on the claims and defenses asserted in this action. The subpoenas seek financial records of the Quantasy Defendants and non-parties, including Mr. Campbell's family members, that are not relevant to the action. Despite a thorough examination of Defendant Brinson C. Silver's banking records and financial transactions by a court-appointed receiver, the previous issuance of over a dozen subpoenas by Root (including to the Quantasy Defendants' banks), and the Quantasy Defendants' production of 9240 pages of documents, there is no evidence whatsoever that Mr. Campbell or the Quantasy Defendants received any money from Root other than for services rendered. Moreover, there is no evidence whatsoever that Mr. Campbell received so much as a nickel in money from Mr. Silver, Collateral Damage, LLC, Eclipse Home Design, LLC, or any other associate of Mr. Silver. Yet, Root

continues to harass the Quantasy Defendants – and Mr. Silver's family members – by the issuance of subpoenas seeking highly personal financial information, including banking records, PayPal records, and Venmo transfers, all before this Court has decided the Quantasy Defendants' motion to dismiss, including whether this Court has personal jurisdiction over Mr. Campbell, a California citizen with no connection to Ohio. The subpoenas should be quashed, and this Court should stay all discovery relating to the Quantasy Defendants until such time as it has ruled on the motion to dismiss. A memorandum in support of this motion is attached hereto.

Respectfully submitted,

/s/ Matthew D. Ridings
Matthew D. Ridings, Trial Attorney
(0079402)
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, Ohio 44114
Telephone: 216.566.5561
Facsimile: 216.566.5800
Matt.Ridings@ThompsonHine.com

Joan E. Meyer
(Admitted *Pro Hac Vice*)
THOMPSON HINE LLP
1919 M Street, N.W.
Suite 700
Washington, D.C. 20036-3537
Telephone: 202.263.4115
Facsimile: 202.331.8330
Joan.Meyer@ThompsonHine.com

Jamar T. King (0091093)
THOMPSON HINE LLP
10050 Innovation Drive, Suite 400
Miamisburg, OH 45342
Telephone: 937.443.6852
Facsimile: 937.443.6635
Jamar.King@ThompsonHine.com

Karim Sabbidine
(Admitted *Pro Hac Vice*)
THOMPSON HINE LLP
335 Madison Avenue
12th Floor
New York, NY  10017
Telephone:  212.908.3944
Facsimile:  212.344.6101
Karim.Sabbidine@ThompsonHine.com

Joshua H. Epstein
(Admitted *Pro Hac Vice*)
Eva M. Jimenez
(Admitted *Pro Hac Vice*)
DAVIS+GILBERT LLP
1675 Broadway
New York, NY  10019
Telephone:  212.468.4869
jepstein@dglaw.com
ejimenez@dglaw.com

*Attorneys for Specially Appearing Defendants*
*William Campbell, Quantasy, LLC, and*
*Quantasy & Associates LLC*

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROOT, INC.**, *et al.*, | ) | CASE NO.: 2:23-CV-00512-SDM-EPD |
| | ) | |
| **Plaintiffs,** | ) | JUDGE SARAH D. MORRISON |
| | ) | MAGISTRATE JUDGE DEAVERS |
| v. | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| **BRINSON CALEB SILVER**, *et al.*, | ) | **MOTION TO QUASH SUBPOENAS** |
| | ) | **FOR FINANCIAL RECORDS AND TO** |
| **Defendants.** | ) | **STAY DISCOVERY AS TO THE** |
| | ) | **QUANTASY DEFENDANTS** |
| | ) | |

## I.      INTRODUCTION

Plaintiff Root, Inc. ("Root"), despite having conducted exhaustive and detailed discovery of Specially Appearing Defendants Quantasy, LLC, Quantasy & Associates LLC, and William Campbell (collectively, the "Quantasy Defendants") and Defendant Brinson C. Silver, has found no evidence that any of the Quantasy Defendants received any allegedly ill-gotten money from Mr. Silver or any of the other defendants.  In furtherance of its efforts, Root has issued subpoenas, received interrogatory responses and document discovery, and has requested this Court to appoint a receiver to examine and take possession of Mr. Silver's assets.  The Court granted Root's request to appoint a receiver, which has carefully examined Mr. Silver's financial records, along with those of Defendants Collateral Damage, LLC ("Collateral Damage") and Eclipse Home Design, LLC ("Eclipse").  A Receiver (as defined below) has filed four separate reports with this Court, and none of the reports have suggested that any of the Quantasy Defendants received money from Mr. Silver, Collateral Damage, or Eclipse.  Root has served subpoenas seeking banking information from Quantasy, LLC and Quantasy & Associates LLC.  They have discovered no evidence of the receipt of money from Mr. Silver, Collateral Damage, or Eclipse.  The Quantasy Defendants have produced thousands of pages of records in connection with Root's discovery requests, where Root

1

yet again came up dry in its efforts to connect Mr. Silver's financial wrongdoing to the Quantasy Defendants.

Instead of acknowledging that its allegations are wrong, Root has doubled down, now issuing subpoenas[1] for Mr. Campbell's personal financial records, along with those of his wife, Christine Campbell, and father, the Reverend William Monroe Campbell. Some of the subpoenas are to the same banks to which subpoenas have previously been issued, but none of the financial documents sought from the subpoenaed non-parties are relevant to the undeniably narrow issue actually in dispute in this case. The subpoenas should be quashed.

## II.    FACTS

On February 2, 2023, Root commenced this action by filing the original complaint. (Doc. 1.) The complaint was subsequently twice amended. (Docs. 20 and 173.)

The parties have conducted extensive discovery in this case, and, pursuant to Orders filed May 12, May 17 and June 7, 2023 (Docs. 99, 101 and 120), this Court appointed Jerry E. Peer, Jr. of Peterson Conners LLP (the "Receiver") as "[F]ederal equity receiver, custodian and liquidator for all personal property, monetary, and real property assets in the possession, custody, or control of Brinson Caleb 'BC' Silver, Collateral Damage, LLC, and Eclipse Home Design, LLC (collectively, the 'Receivership Defendants')." (Doc. 101.) Since his appointment, the Receiver has: (i) taken control of all of Silver's bank, brokerage and electronic payment accounts, (ii) reviewed account statements and other records of all such accounts, and (iii) filed four reports with the Court regarding Mr. Silver's financial records. The Receiver has reported to the Court that he

---

[1] Root issued a discovery request to Mr. Campbell for these records, to which Mr. Campbell objected. The parties met and conferred, and Mr. Campbell maintained his objection. Rather than going to the Court to resolve the dispute as to whether these records were relevant, Root issued subpoenas to Mr. Campbell's – and his family member's – banks and financial account managers.

is satisfied that Mr. Silver has cooperated in connection with his examination of Mr. Silver's finances. (Doc. 158, PageID 1353; Doc. 155, PageID 1328.)

The Receiver's reports have carefully detailed Mr. Silver's expenditures and financial transfers, and its efforts have "revealed various transfers of cash and or sales of assets by [the Receivership] Defendants." (Doc. 142, PageID 1182). The Receiver discovered that Mr. Silver has purchased at least four luxury homes, "vehicles, watercraft, and other high value personal property *believed to be in Mr. Silver's possession or under his control*." *Id.* The Receiver identified an "amphibious airplane docking system" purchased by Mr. Silver in April 2022. (*Id.* at PageID 1184). The Receiver identified a wave runner purchased by Mr. Silver. (*Id.*) It found payments that Mr. Silver made to motorcycle dealers, jewelry stores, luxury retailers, and women. (*Id.* at 1184-85). The Receiver found and recovered a Range Rover and a Mercedes (Doc. 175, PageID 1525), but nowhere has the Receiver found *any* evidence of *any* payment or transfer made to Quantasy, Will Campbell, Christine Campbell, or the Reverend Campbell.

On February 17, 2023, Root served third-party document subpoenas on JPMorgan Chase Bank, N.A. ("Chase"), City National Bank ("City National"), and Bank of America, N.A. ("Bank of America"), seeking, *inter alia*, "[a]ll Account records (including monthly statements) and documents evidencing all transactions within the Account(s) from January 1, 2020 to present" for any account listed under the name of and/or affiliated with "Quantasy & Associates, LLC or any person or entity acting on its behalf" (the "February 2023 Subpoenas"). A copy of Root's Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated February 17, 2023, and issued to JPMorgan Chase Bank, N.A., City National Bank, and Bank of America, N.A., are annexed hereto as **Exhibit A**. Based on information and

belief, Chase, City National, and Bank of America complied with the February 2023 Subpoenas and produced all documents responsive thereto.

On the same day, February 17, 2023, Root served requests for production of documents, interrogatories, and requests for admission on Campbell and Quantasy. Among the documents requested were "all documents related to payments and invoices from Collateral Damage to Quantasy," and "produce any bank records from January 1, 2021, to the present that reflect any payment to Quantasy by, or by Quantasy to, Collateral Damage, Eclipse, and/or Silver." Quantasy produced documents responsive to this request. Similarly, Root's interrogatories requested that Quantasy identify all funds received from Mr. Silver or Collateral Damage, and it responded that it has never received money from either Mr. Silver or Collateral Damage. In response to Root's discovery requests, the Quantasy Defendants produced over 9,000 pages of documents.

None of the documents from the Receiver identified any money flowing from the Receivership Defendants to any of the Quantasy Defendants. None of the documents received from Root's February subpoenas to Chase, City National, or Bank of America uncovered any evidence of any transfer of money from Silver to Campbell or Quantasy. None of the documents produced by the Quantasy Defendants evidenced any such transfer of money.

Undeterred, on November 2, 2023, Root served third-party document subpoenas on City National, Mesh Payments, Inc., Morgan Stanley & Co., LLC, PayPal Holdings, Inc. Early Warning Services, LLC, and Chase, seeking, *inter alia*, "[a]ll Account records (including monthly statements) and documents evidencing all transactions within the Account(s) from January 1, 2020 to present" for any account owned by, among others, William "Will" M. Campbell III, Christina A. Campbell, and Quantasy, LLC. Root served a nearly identical subpoena on Morgan Stanley Smith Barney LLC on November 13, 2023 (collectively, the "November 2023 Subpoenas"). A

copy of Root's Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated November 2 and 13, 2023, and issued to City National Bank, Mesh Payments, Inc., Morgan Stanley & Co., LLC, PayPal Holdings, Inc. Early Warning Services, LLC, JPMorgan Chase Bank, N.A., and Morgan Stanley Smith Barney LLC are annexed hereto as **Exhibit B**.

On November 13, 2023, counsel for the Quantasy Defendants sent an email to counsel for Root explaining that the November 2023 Subpoenas sought information that is unnecessary in light of the February 2023 Subpoenas, not relevant, and harassing. A copy of the November 13, 2023 email chain between the parties' respective counsel is annexed hereto as **Exhibit C**. Counsel for the Quantasy Defendants inquired as to whether there could be a further discussion on the November 2023 Subpoenas in light of their inappropriate nature. *Id.* Root refused to withdraw the November 2023 Subpoenas.

## III.   ARGUMENT[2]

"A subpoena to a third party under [Federal Rule of Civil Procedure] 45 is subject to the same discovery limitations as those set out in Rule 26." *Mid Am. Solutions LLC v. Vantiv, Inc.*, No. 1:16-mc-2, 2016 U.S. Dist. LEXIS 53106, at *13 (S.D. Ohio April 20, 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 U.S. Dist. LEXIS 189832, at *3 (E.D. Mich. Nov. 26, 2013)). The discovery requested through subpoenas must be "relevant to [a] party's claim or defense and proportional to the needs of the case, considering, [among other things], the importance of the issues at stake in the action, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

---

[2] Pursuant to Loc. R. 37.1, the Quantasy Defendants exhausted all extrajudicial means of resolving this dispute, but the parties have been unable to reach a resolution.

likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). "Demonstrating relevance is the burden of the party seeking discovery." *American Elec. Power Co. v. United States,* 191 F.R.D. 132, 136 (S.D. Ohio 1999).

A party has standing to move to quash a subpoena to a non-party when "the party claims some personal right or privilege with regard to the documents sought." *Mann v. University of Cincinnati*, Nos. 95-3195; 95-3292, 1997 U.S. App. LEXIS 12482, at *14 (6th Cir. May 27, 1997) (citing Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995)). "Such rights or privileges have been recognized with respect to personal bank records, information in a personnel file, corporate bank records, or Indian tribal records." *Waite v. Davis*, No. 1:11-cv-0581, 2013 U.S. Dist. LEXIS 5253, at *15 (S.D. Ohio Jan. 14, 2013). For example, a subpoena seeking "tax records, financial transactions, and other commercially sensitive documents," such as those issued by Root, "suffices to give Defendants standing to move the subpoena." *PCA-Corrections, LLC v. Akron Healthcare LLC*, No. 1:20-cv-428, 2021 U.S. Dist. LEXIS 96737, at *4 (S.D. Ohio May 21, 2021); *see e.g., Hunter v. Shield*, No. 2:18-cv-1097, 2020 U.S. Dist. LEXIS 206525, at *37 (S.D. Ohio Nov. 4, 2020) (holding that defendant had standing to challenge subpoena seeking his "personal and business tax records"); *Nat'l Benefit Programs, Inc. v. Express Scripts, Inc.*, No. 2:11-mc-14, 2011 U.S. Dist. LEXIS 72560, at *8 (S.D. Ohio July 5, 2011) (holding that plaintiff had standing to challenge a non-party subpoena seeking "information that is sensitive and private in character, involving both familial and private financial matters").

"In evaluating a motion to quash a subpoena, the district court may consider 'whether (i) the subpoena was issued primarily for the purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case.'" *Recycled Paper Greetings, Inc. v. Davis*,

No. 1:08-MC-13, 2008 U.S. Dist. LEXIS 10649 at *7 (N.D. Ohio Feb. 13, 2008) (quoting *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003)). Subpoenas should not be enforced if they seek "'documents [that] are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.'" *Mid Am. Solutions*, 2016 U.S. Dist. LEXIS 53106 at *14-15 (quoting *Recycled Paper Greetings*, 2008 U.S. Dist. LEXIS 10649 at *3).

As set forth below, the November 2023 Subpoenas should be quashed because: (i) Root has other means to obtain the same evidence (and has already obtained all evidence relevant to the issue of any potential payment by Defendant Brinson Silver ("Silver") to the Quantasy Defendants via those means); (ii) the November 2023 Subpoenas amount to nothing more than harassment and intimidation of Campbell and his family; and (iii) the information sought by the November 2023 Subpoenas is neither relevant to Root's claims nor remotely proportional to the needs of this case.

### A. Root Has Already Obtained All Information Necessary to Determine Whether Silver Made Illegal Payments to The Quantasy Defendants in Furtherance of His Fraudulent Scheme, and thus the November 2023 Subpoenas Amount to a Fishing Expedition.

"[D]istrict courts have discretion to limit the scope of discovery [when] the information sought is overly broad…." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)). In determining the proper scope of discovery, a district court balances a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg.*, 326 Fed. Appx. 900, 907 (6th Cir. 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

Under Rule 45, parties may command a non-party to produce documents. Fed. R. Civ. P. 45(a)(1)(D). However, Rule 45 provides that the Court "may, on motion, quash or modify the subpoena if it requires…disclosing a trade secret or…confidential…commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i) (emphasis added). Here, the Court should quash the November 2023

Subpoenas because they seek commercially sensitive information of Quantasy, LLC, the personal financial information of Mr. Campbell, and the personal financial information of Mr. Campbell's father and wife, which has absolutely no bearing on any claim or defense in this case.

Root, for the better part of a year, has been tracking the money stolen by Mr. Silver. Quantasy cooperated in Root's pre-filing investigation, sitting for interviews and providing hundreds of pages of documents to Root. In response, Root filed suit against it and sought a temporary restraining order, which this Court denied. Root sought a Receiver to trace and take possession of the Receivership Defendants' assets. Quantasy did not oppose the appointment. The Receiver conducted its work and has traced the whereabouts of millions of dollars in assets from Mr. Silver – not a single penny of which point to Mr. Campbell or Quantasy. Quantasy cooperated in discovery and provided bank records to Root. Root previously sent subpoenas to many of the same banks it now seeks to subpoena, and these banks presumably complied with the subpoenas. There is no evidence and no documents to support that Quantasy or Mr. Campbell has received money from Mr. Silver. Now, Root seeks to subpoena personal financial information from Mr. Silver's wife and his father, a pastor. Respectfully, enough is enough.

Root has already identified what money went to the Quantasy Defendants and Collateral Damage. It is not in dispute and the money trail is clear. On February 17, 2023, Root served third-party document subpoenas on Chase, City National, and Bank of America, seeking "[a]ll Account records (including monthly statements) and documents evidencing all transactions within the Account(s) from January 1, 2020 to present" for any account listed under the name of and/or affiliated with "Quantasy & Associates, LLC or any person or entity acting on its behalf." *See* Ex. A. The February 2023 Subpoenas required the recipient banks to respond on or before March 3,

2023.[3] *Id.* As a result, Root has already obtained, reviewed, and analyzed all of the Quantasy Defendants' bank account statements. There is no indication that any of the bank statements showed <u>any</u> payments from Silver to the Quantasy Defendants, and Root has not filed any documents suggesting that there is any financial link between Silver and the Quantasy Defendants.

In addition to Root's own efforts, the Receiver has, pursuant to this Court's orders, taken control of all of Silver's financial affairs, including accounts previously maintained by Silver with:

- Bank of America;
- Blue Ridge Bank;
- Wells Fargo Bank;
- UBS Financial Services;
- Venmo;
- Zelle;
- PayPal; and
- CashApp.

*See* Docs. 142, 155, 170, and 175 (Receiver's Initial, Second, Third, and Fourth Interim Reports, Receivership Plans and Applications for Fees and Expenses).

In doing so, the Receiver has obtained, and examined, all payment transactions that Silver initiated via the above-referenced accounts and has filed reports with this Court detailing its efforts to track money flowing in and out of Mr. Silver's banking records. *Id.* Root has had access to all of this information which is publicly filed on this Court's docket. The Receiver has never suggested to this Court that any money has gone to Mr. Campbell, his wife, or Mr. Campbell's father, a pastor in the Los Angeles area. Indeed, the money Silver absconded with went to the purchase of luxury items for Silver's *own* personal benefit. Silver bought luxury homes, a yacht, gold watches, a private plane, a Mercedes, and a Range Rover. No money went to Mr. Campbell,

---

[3] Importantly, two of the recipients of the February 2023 Subpoenas – Chase and City National – were also served with the November 2023 Subpoenas that are the subject of this Motion.

and Mr. Campbell bought nothing of the sort. What is painfully clear is that *Silver* executed a scheme for *Silver's* benefit, and Mr. Campbell was nothing more than a victim.

Root has already had a full opportunity to examine the records that would show any relevant potential payment from Silver to any of the Quantasy Defendants – both: (i) "incoming" payments (to Quantasy, any of its affiliates and/or "any person or entity acting on its behalf"); and (ii) "outgoing" payments (from any of Silver's many bank, brokerage and electronic payment accounts). It needs no further opportunity, particularly where this newest subpoena is a great invasion of the privacy of Mr. Campbell and those related to him. This is particularly so given that the scope of the claims at issue here has not been decided. The Quantasy Defendants' motion to dismiss remains pending, and they believe these claims should be dismissed in their entirety.

## B. The November 2023 Subpoenas were Issued to Harass and Intimidate Mr. Campbell.

Because it is clear that the Quantasy Defendants have not received any money from Silver, the November 2023 Subpoenas serve no legitimate purpose. The continued aggressive attempts to obtain detailed financial information from every entity and family member connected to Mr. Campbell is inappropriate. Silver's assets have almost entirely been traced and, to the extent possible, recovered by the Receiver. No more needs be done.

The November 2023 Subpoenas seek bank, brokerage, and electronic payment account information for: (i) Mr. Campbell's wife Christine Campbell; (ii) Mr. Campbell in his personal capacity; (iii) Quantasy, LLC and Quantasy & Associates LLC; and (iv) various other entities with no involvement in this action (some of which bear the "Quantasy" name and many of which are inactive and/or defunct). Each category of information sought by the November 2023 Subpoenas is addressed below.

1.      Christine Campbell.

Despite the fact that the Receiver has thoroughly examined all of Silver's bank, brokerage, and electronic payment accounts, Root nevertheless seeks to force the production of all such accounts maintained by Mr. Campbell's wife. It has done so even though Christine Campbell is not a party and is not referenced in a single pleading. It is wholly inappropriate to involve Mr. Campbell's wife – and her private financial affairs – in this matter without a whit of evidence that she had ever even heard of Silver or Root, let alone participated in Silver's scheme. The subpoena with respect to her is illegitimate and should be quashed.

2.      William Campbell.

Mr. Campbell's personal finances have no relevance to any of Root's claims. By letter dated October 18, 2023, Root suggested that Mr. Campbell's personal accounts are somehow relevant because he bought a "substantial piece of real estate" in 2022. A copy of the letter is annexed hereto as **Exhibit D**. Mr. Campbell's purchase of a home is irrelevant.

Mr. Campbell has two young children with his wife, and they purchased a home in 2022 to better accommodate their family's needs. There is no evidence to suggest that any of the down payment for the home came from Silver or the other Receivership Defendants, or that any portion of the down payment is in any way tainted. Root has – recklessly – leveled serious allegations against Mr. Campbell personally, including that he participated in a RICO enterprise. A subpoena to Mr. Campbell's mortgage holder that suggests (without evidence) that he is involved in a racketeering scheme could cause serious consequences to Mr. Campbell and his family, including a revocation of the mortgage. *See Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) *aff'd* 113 F.3d 1229 (2d Cir. 1997) ("Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants . . . courts should strike to flush out frivolous RICO allegations at an early stage of the litigation."). This is

11

not idle speculation. The stigmatizing effect has already occurred in this case; after Chase received Root's February 2023 Subpoena, it closed Quantasy, LLC's bank account, which had been moved to Chase's more prestigious (financially advantageous) Chase Commercial Bank only months prior. Mr. Campbell had maintained a business account at Chase for more than 12 years before the account was terminated in the wake of Root's subpoena. The November 2023 Subpoenas served on City National and Morgan Stanley may likely have the same effect, and, at the very least, this Court should rule on the Quantasy Defendant's motion to dismiss (including Mr. Campbell's motion to dismiss for lack of personal jurisdiction) prior to permitting Root to issue such subpoenas.

The overbroad and harassing nature of the November 2023 Subpoenas is underscored by the fact that they seek account information associated with the email pastorwmnroec@aol.com, which is an email address belonging to Mr. Campbell's father, William Monroe Campbell, the Senior Pastor at Mount Gilead Missionary Baptist Church in Los Angeles.[4] Without an order quashing the November 2023 Subpoenas, Root may obtain the Reverend W.M. Campbell's bank, brokerage, and electronic payment account information, which has no relevance to its claims. Root has no right to do so under the Federal Rules or otherwise.

### 3. Quantasy & Associates LLC and Quantasy, LLC

As discussed above, in February 2023, Root subpoenaed (and presumably obtained) bank account records for defendants Quantasy & Associates LLC and Quantasy, LLC from Chase, City National and Bank of America. The November 2023 Subpoenas seek the same information – again

---

[4] Cora Jackson-Fossett, *Mount Gilead M.B. Church Marks 66th Year*, Los Angeles Sentinel, https://lasentinel.net/mount-gilead-m-b-church-marks-66th-year.html (last accessed Nov. 11, 2023). Courts may take judicial notice of information publicly available on an Internet website. *See City of Monroe Emples. Ret. Sys. v. Bridgestone Corp.*, 387 F.3d 468, 472, n.1 (6th Cir. 2004) (taking judicial notice of information not in reasonable dispute from trade organization website).

– from Chase and City National. As a result, with respect to Quantasy & Associates LLC nor Quantasy, LLC, the November 2023 Subpoenas are superfluous, unnecessary, and raise the specter of causing significant and irreparable harm to Mr. Campbell and the Quantasy Defendants.

      4.      <u>Quantasy Inc., Quantasy + Associates, Muse Communications, Quantasy Forum Holdings, LLC, Quantasy Foundation, Inc., and SoLow Music Entertainment LLC</u>

With the exception of Quantasy Foundation, Inc. (a non-profit established to support internships and philanthropic giving), these entities are either defunct, inactive, or non-existent. None of them are related to Root's claims in this action. However, forcing the November 2023 Subpoena recipients to search for account information relating to numerous entities with no connection to this case may also harm the Quantasy Defendants and put their banking relationships at risk, as discussed above.

**C.    <u>This Court Should Stay Discovery as to the Quantasy Defendants.</u>**

The parties have undergone substantial discovery in this case to this point, and additional discovery as to the Quantasy Defendants is not currently warranted, particularly in light of their pending motion to dismiss. Root continues to harass Quantasy, its principal, and his family, and even if this Court were to quash these subpoenas, and because the scope of the validity of the claims remains contested by the parties, Quantasy believes it likely that future Court intervention will be necessary. Accordingly, Quantasy respectfully requests that this Court stay any discovery related to the Quantasy Defendants until such time as the Court rules on their motion to dismiss. *See Wilson v. ThyssenKrupp Elevator Corp.*, Case No. 20-cv-2138, 2022 U.S. Dist. LEXIS 9137, at *4 (S.D. Ohio, Jan. 19, 2022).

Although a stay of discovery is rarely granted pending a motion to dismiss, this case presents "special circumstances" from which a stay should be granted. Among the "special circumstances identified by the courts are whether a jurisdictional defense is raised, whether the

claims are likely to be dismissed, and the balancing of hardships for allowing discovery to continue. *Id.* Here, the Quantasy Defendants have filed a motion to dismiss based on lack of jurisdiction. Mr. Campbell's personal jurisdiction motion is particularly strong, considering that Mr. Campbell is a California citizen whose interactions with Mr. Silver occurred in California, and has only been to Ohio twice in his lifetime, neither of which were related to Root or this matter. There is no basis for the Southern District of Ohio to assert jurisdiction over Mr. Campbell.

Moreover, the crux of Root's complaint against the Quantasy Defendants is a RICO claim. "Plaintiffs 'wielding RICO almost always miss the mark.'" *Entretelas Americanas S.A. v. Soler*, Case No. 19-cv-03658, 2020 U.S. Dist. LEXIS 20692, at *10 (S.D.N.Y. Feb. 3, 2020) (quoting *Flexborrow LLC v. TD Auto Finance LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017). Indeed, "*almost* always miss the mark" may be an overstatement of the likelihood of success of a civil RICO claim. One court conducted a survey of 145 civil RICO cases filed in the Southern District of New York from 2004 to 2007, and it found that *all* of the cases that were resolved on the merits resulted in a judgment against the plaintiff. *Id.* Put more colorfully, a plaintiff's likelihood of success on a RICO claim is "stunningly awful." *Gross v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009).

It is no different here. This Court has already denied Root a temporary restraining order against the Quantasy Defendants, suggesting little likelihood of success. Root withdrew its motion for a preliminary judgment against Quantasy. Its RICO claim is subject to a motion to dismiss, and the courts inherently "approach[] civil RICO claims with a skeptical eye." *Entretelas Americanas*, 2020 U.S. Dist. LEXIS 20692, at *10-*11. Even on paper, Root's claims do not hold water. But it has now had the opportunity to conduct ample discovery, and the Receiver has gone through Mr. Silver's financials with a fine-toothed comb. There is still nothing to support Root's

14

claims. Root's RICO claim – if not the entire case – is almost certain to be dismissed, and discovery against Quantasy should be accordingly stayed. *Wilson*, 2022 U.S. Dist. LEXIS 9137, at *4.

In addition to these special circumstances, the Court also must weigh the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship worked by a denial of discovery. *Id.* at *5. Here, Root has already obtained a significant amount of discovery from the Quantasy Defendants, and it could continue to engage in discovery related to Silver. The hardship to Root is therefore minimal, but the burden to the Quantasy Defendants of continued discovery is significant, especially where Root has sought third party discovery from those companies with which Quantasy has a business and personal relationship. As other courts have explained, plaintiffs assert RICO claims for

> [t]actical and economic reasons . . . . The terrorizing aspect of a RICO charge conjures dreadful images of . . . colorful mobsters and violent thugs. . . . For plaintiffs seeking to score a tactical edge or deal the heaviest possible vengeful blow to the defendant's personal reputation, shocking RICO accusations may serve to strengthen their hand or induce sooner capitulation.

*Gross*, 628 F. Supp. 2d at 480. There is no reason, particularly at this juncture of the litigation, to proceed with discovery. As one court explained, doing so "generate[s] substantial costs rather than net gains to the public. Among other ways, the negative yield from this reality stems inherently from the gravity of RICO accusations." *Id.* at 481. Continued discovery generates substantial costs to the parties and the court, which "accrue in the form of time and other resources courts devote to adjudicating significant numbers of meritless RICO claims that, as the numbers bear out, should never have been seriously litigated in the first place." *Id.* at 481.

IV. **CONCLUSION**

For the foregoing reasons, the Quantasy Defendants respectfully request an Order quashing the November 2023 Subpoenas and staying any further discovery as to the Quantasy Defendants.

The subpoenas seek irrelevant information on matters that have nothing to do with the parties' claims and defenses. They are duplicative and, therefore, unnecessarily burdensome in that they seek information that has already been made available to Root through the Receiver and the produced financial documents in response to prior subpoenas.

Respectfully submitted,

/s/ Matthew D. Ridings
Matthew D. Ridings, Trial Attorney
(0079402)
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, Ohio 44114
Telephone: 216.566.5561
Facsimile: 216.566.5800
Matt.Ridings@ThompsonHine.com

Joan E. Meyer
(Admitted *Pro Hac Vice*)
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, D.C. 20036-3537
Telephone: 202.263.4115
Facsimile: 202.331.8330
Joan.Meyer@ThompsonHine.com

Jamar T. King (0091093)
THOMPSON HINE LLP
10050 Innovation Drive, Suite 400
Miamisburg, OH 45342
Telephone: 937.443.6852
Facsimile: 937.443.6635
Jamar.King@ThompsonHine.com

Karim Sabbidine
(Admitted *Pro Hac Vice*)
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, NY 10017
Telephone: 212.908.3944
Facsimile: 212.344.6101
Karim.Sabbidine@ThompsonHine.com

16

Joshua H. Epstein
(Admitted *Pro Hac Vice*)
Eva M. Jimenez
(Admitted *Pro Hac Vice*)
DAVIS+GILBERT LLP
1675 Broadway
New York, NY 10019
Telephone: 212.468.4869
jepstein@dglaw.com
ejimenez@dglaw.com

*Attorneys for Specially Appearing Defendants*
*William Campbell, Quantasy, LLC, and*
*Quantasy & Associates LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2023, a true and accurate copy of the foregoing was filed electronically. Notice of this filing has been sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

A copy was also sent by ordinary U.S. Mail, postage prepaid, on November 15, 2023 to the following non-represented parties:

Paige McDaniel
5576 Alexanders Lake Road
Stockbridge, GA 30281

Brinson Caleb Silver
Butler County Jail
Attn: Brinson Caleb Silver, Inmate No. 303850
705 Hanover Street
Hamilton, Ohio 45011

Collateral Damage, LLC
101 N. Brand Blvd.
11th Floor
Glendale, California 31203

Eclipse Home Design, LLC
651 N. Broad Street
Suite 201
Middletown, Delaware 19709

/s/ Matthew D. Ridings
Matthew D. Ridings

18