IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROOT, INC., *et al.*, | Case No. 2:23-cv-00512-SDM-CMV |
| Plaintiffs, | Judge Sarah D. Morrison |
| v. | Magistrate Judge Elizabeth A. Preston Deavers |
| BRINSON CALEB SILVER, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO LIFT INJUNCTION FILED BY NON-PARTY MIAMI 555 LLC**

## I.  INTRODUCTION

Non-party Miami 555 LLC ("Miami 555") moves this Court to lift the stay of foreclosure proceedings ("State Foreclosure Action") for property located at 9125 North Bay Shore Drive, Miami, Florida 33138 (the "Property") owned by Defendant Eclipse Home Design, LLC ("Eclipse").  Miami 555's motion fails for two reasons.  First, the Anti-Injunction Act does not bar the stay because two exceptions apply: (1) the stay is necessary in aid of this Court's jurisdiction; and (2) Congress expressly authorized the stay.  Second, Miami 555 will not be able to proceed with foreclosure because the Property will be criminally forfeited to the United States before a foreclosure sale.  This Court should deny Miami 555's motion and leave the State Foreclosure Action stay in effect.

## II.  BACKGROUND

On February 2, 2023, Root Inc., Caret Holdings, Inc., and Root Insurance Agency, LLC (collectively, "Root") filed suit against Brinson Caleb "BC" Silver ("Silver"), Eclipse Home Design, LLC ("Eclipse"), and other defendants (collectively "Defendants"), asserting claims for

1

racketeering, fraud, conversion, theft, breach of contract, breach of fiduciary duties, and civil conspiracy (the "Original Complaint"). On February 14, 2023, Root filed an amended complaint (the "Amended Complaint") asserting the same claims. As part of the Original Complaint and the Amended Complaint, Root requested this Court enjoin Silver and Eclipse from "using, converting, transferring, or disposing of any of their assets, including . . . 9125 North Bayshore Drive, Miami Florida[.]" (Compl., ECF No. 1, at p. 40 and Amended Compl., ECF No. 20, at p. 45.)

Shortly after, the Court granted Root's motion for temporary restraining order and prohibited Silver and Eclipse from transferring, selling, mortgaging or otherwise encumbering the Property. (Feb. 16, 2023 Temporary Restraining Order, ECF No. 30.) When the temporary restraining order expired, the Court issued an Agreed Preliminary Injunction, ordering that Eclipse and Silver "shall not directly, nor through others, transfer, sell, mortgage or otherwise encumber in any fashion . . . 9125 North Bayshore Drive, Miami, Florida 33138[.]" (Feb. 27, 2023 Agreed Preliminary Injunction, ECF No. 42.)

On May 12, 2023, the Court approved *lis pendens* notice to third parties regarding the Property, finding "[t]here is a fair nexus between the legal or equitable ownership of the Properties and the Agreed Preliminary Injunction." (Order, ECF No. 98.) That same day, this Court appointed a receiver ("Receiver") to manage and control Silver and Eclipse's assets, including the Property. (May 17, 2023 Order Appointing Receiver, ECF No. 101.) To preserve the Property, the Court enjoined creditors from commencing or continuing foreclosure proceedings:

> [i]n order for the Receiver to effectively manage, protect and preserve the Receivership Property and for all creditors…hereby are, enjoined and stayed from commencing or continuing any action at law or proceeding in equity to enforce any claim or foreclosure any lien against the Receivership property or against the

> Receiver in any court…and from doing any and all things whatsoever to interfere with the Receiver in the discharge of his duties in this proceeding with the exclusive jurisdiction of this Court over the Receivership Property and the Receiver.

(*Id.* at ¶ 5.)[1]

On September 5, 2023, the Receiver moved the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida to stay the State Foreclosure Action. The Florida state court granted the Receiver's motion and stayed its case. Now, Miami 555 seeks this Court's permission to lift the stay despite the Florida state court's ruling denying the same request.

As a practical matter, Miami 555's request poses serious concerns because it claims that the Property's value is $2,919,176, which is below the alleged loan amount.[2] As a court appointed third-party, the Receiver is in the best position to secure the Property's full value, not a mortgage holder interested in recouping its mortgage balance. And as set forth in the Receiver's contemporaneously filed opposition to Miami 555's motion, there is significant equity in the Property. Indeed, if permitted to move forward with the State Foreclosure Action, Miami 555 can credit bid and potentially obtain the Property well below market value. And if it does, Miami 555 will surely flip the Property realizing a profit that should otherwise inure to

---

[1] "The purposes of receiverships are varied, but the purpose of imposing a stay of litigation is clear. A receiver must be given a chance to do the important job of marshaling and untangling a [debtor's] assets without being forced into court by every investor or claimant." *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005). It is generally recognized "that the district court has broad powers and wide discretion to determine . . . relief in an equity receivership." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982) quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 609 (9th Cir. 1978).

[2] It is concerning that the alleged mortgage balance climbed to $2.92 million, when it started at $2.25 million. Especially given that Miami 555 is not a mainstream lender. In fact, Miami 555, a Delaware limited liability company, became licensed to do business in Florida on March 10, 2023, a mere 12 days prior to acquiring the note they now seek to foreclose upon.

Root's benefit. On this basis alone, Miami 555's motion should be denied. Furthermore, as set forth below, Miami 555's arguments fail as a matter of law.

## III. LAW AND ARGUMENT

### A. The Court's Injunction Falls Within Two Exceptions to the Anti-Injunction Act.

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. However, there are three exceptions "embedded within the statute's text, [which] permit injunctions against state court proceedings (1) where Congress expressly authorizes, (2) where necessary in aid of the court's jurisdiction, and (3) where necessary to protect or effectuate the court's judgments." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004). Here, the Court's injunction falls within the first two exceptions.

#### a. This Court's Injunction Is Necessary to Aid This Court's Jurisdiction Over the Property.

Under the second exception to the Anti-Injunction Act, the court that first exercises jurisdiction over a property has exclusive jurisdiction. Therefore, the second exception to the Anti-Injunction Act applies where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does. *Martingale LLC*, 361 F.3d at 302. The United State Supreme has held:

> We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, *to give effect to its jurisdiction*, the court must control the property.

*Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939) (emphasis added). "Where the assertion of jurisdiction by the two courts is nearly simultaneous, it becomes important, as in the present case, to determine the precise time when the jurisdiction attaches." *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 196 (1935). Where the two cases have "substantially the same purpose and the jurisdiction of the courts is concurrent," the court "whose jurisdiction and process are first invoked by the filing of the bill is treated as in constructive possession of the property, and as authorized to proceed with the cause." *Id.* This Court obtained jurisdiction first and as such, remains the only court with exclusive jurisdiction.

This Court first obtained jurisdiction over the Property on February 2, 2023 when the Original Complaint was filed. The Original Complaint (and the Amended Complaint filed on February 14, 2023) requested this Court enjoin Defendants from "using, converting, transferring, or disposing of any of their assets, including . . . 9125 North Bayshore Drive, Miami Florida[.]" (Compl., ECF No. 1, p. 40; Amended Compl., ECF No. 20, at p. 45.) This Court again asserted its jurisdiction on February 16, 2023 by granting a Temporary Restraining Order which prohibited Defendants from transferring, selling, mortgaging, or otherwise encumbering the Property. (Temporary Restraining Order, ECF No. 30.). *See Penn Gen. Cas. Co.*, 294 U.S. at 197 ("…and since the bill was filed in the district court before the application of the Attorney General to the state court, the jurisdiction of the district court first attached; it has asserted this jurisdiction by its injunction order."). The Court subsequently issued a Preliminary Injunction on February 27, 2023. (Agreed Preliminary Injunction, ECF No. 42.) And again on May 12, 2023, this Court found, "[t]here is a fair nexus between the legal or equitable ownership of the Properties and the Agreed Preliminary Injunction. *Lis Pendens* notice to third-parties is warranted here." (Order, ECF No. 98.) This timeline reveals that not only did this Court first

5

obtain jurisdiction, but it has continuously reaffirmed its jurisdiction over the Property throughout the case.

Miami 555 argues that because the State Foreclosure Action, which was filed on April 11, 2023, pre-dates the May 17, 2023 Receiver Order, the State Foreclosure Action cannot be enjoined. However, the date of the Receiver Order is not controlling. Rather the Court took jurisdiction over the Property through the Original Complaint or, at the very least, the temporary Restraining Order (February 16, 2023) or the Preliminary Injunction (February 27, 2023). And because this Court obtained jurisdiction over the Property *before* Miami 555 filed the State Foreclosure Action on April 11, 2023, the second exception to the Anti-Injunction Act applies and Miami 555's argument fails.

### b. Root's RICO Claim Expressly Authorizes the Injunction.

The "expressly authorized" exception to the Anti-Injunction Act contains two prongs, both of which are satisfied here. An injunction is "expressly authorized" if: (1) there is a "specific and uniquely federal right or remedy, enforceable in a federal court of equity," and (2) that federal right or remedy "could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 237 (1972). The "federal law need not contain an express reference to [the Anti-Injunction Act]." *Id*. Nor must the federal law "expressly authorize an injunction of a state court proceeding in order to qualify as an exception." *Id.* In *Mitchum*, the Supreme Court analyzed a Section 1983 claim, holding, "Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Id.* at 239.

Just like Section 1983, the federal RICO statute, 18 U.S.C. § 1962, has opened the federal courts to citizens. Under 18 U.S.C. § 1962, citizens can access the federal courts subject matter jurisdiction notwithstanding any same or similar state counterpart. That is precisely what Root has done here. Thus, the first prong of *Mitchum* is satisfied.

The second prong is satisfied if the specific and uniquely federal right or remedy could be frustrated if the federal court were not empowered to enjoin a state court proceeding. In *Mitchum*, the Court cited to Section 1983's legislative history, which indicated that Congress feared state officers might be antipathetic to those seeking to vindicate their rights, that state instrumentalities could not protect those rights, and that those failings might extend to the state courts as grounds for holding that Section 1983 might be frustrated if a federal court could not enjoin a state proceeding. *Id.* at 242.

For purposes of the "expressly authorized" exception, 18 U.S.C. § 1962 is akin to Section 1983.[3] 18 U.S.C. § 1962 was enacted in order to combat organized crime and other corruption, much of which was far reaching and incapable of being combatted absent strengthening the legal tools available. *See* Section 1, Pub. L. No. 91-452 (RICO). The legislative history of the federal RICO statute reveals Congress's fears of the wide-spread impact of organized crime and a state court's inability to offer adequate relief.

In fact, the wide-spread impact of organized crime and a state court's inability to offer adequate relief is on display here. If Miami 555's request is granted, the foreclosure will disrupt the federal court proceedings and the process of making Root whole. Such an undesirable result

---

[3] As opposed to federal anti-trust law, or the Clayton Act, which was at issue in *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977). The Court in *Vendo Co.* highlighted that the Clayton Act is not frustrated by a federal court being barred from enjoining state court actions. Whereas, in *Mitchum*, the Court found Section 1983 could be.

is exactly what was contemplated when Congress passed 18 U.S.C. § 1962. As such, 18 U.S.C. § 1962 is an authorized exception to the Anti-Injunction Act and Miami 555's request to lift the stay should be denied.[4]

### B. Lifting The Stay Will Result In a Foreclosure Sale That Violates Federal Law.

On November 15, 2023, Silver agreed to plead guilty to one count of wire fraud and one count of criminal contempt of court. Under the plea agreement, which will be finalized and accepted by the Court on the date of Silver's sentencing, the Property will be criminally forfeited to the United States. (Exhibit A.) Criminal forfeitures are governed by 21 U.S.C. § 853.

Section 853(k) bars any party claiming an interest in property subject to forfeiture from "commencing an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section." Section 853(k) is subject to section 853(n), which "provides the exclusive means by which third parties can establish an interest in forfeited property." *United States v. Phillips*, 185 F.3d 183, 188 (4th Cir. 1999).

While the State Foreclosure Action was filed prior to Silver's plea agreement, the State Foreclosure Action's foreclosure sale will likely not occur prior to the criminal forfeiture. And if title in the Property vests to the United States prior to the foreclosure sale, the foreclosure action would constitute "an action at law or equity against the United States" and would be statutorily barred under section 853(k). *Id.*; *see also United States v. Security Marine Credit*

---

[4] Root brings to the Court's attention that there is an unpublished Eastern District of New York opinion, the court held that because a federal civil RICO claim can also be brought in state court, it does not meet the expressly-authorized exception. *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, E.D.N.Y. No. 21-CV-5523, 2022 U.S. Dist. LEXIS 91241, *39-40 (May 19, 2022). But such reasoning defies *Mitchum*, because Section 1983 claims can also be brought in state court. Furthermore, the *State Farm* decision is not binding on this Court.

*Corp.*, 767 F.Supp. 260, 263 (S.D. Fla. 1991) (holding section 853(k) bars an *in rem* civil foreclosure action once forfeiture proceedings have commenced because it would create "duplicitous and obfuscating litigation over property subjected to criminal forfeiture."). Thus, Miami 555's only option to exercise an interest in the Property once it is criminally forfeited to the government is by way of section 853. *See United States v. Younglove*, No. 21-60338, 2023 U.S. Dist. LEXIS 139676 (S.D. Fla. July 10, 2023) ("The proceedings outlined in 21 U.S.C. § 853 are designed to convey clear title to the Government while providing a means for those with valid interests to be recognized.").

Because the Property is subject to criminal forfeiture, Miami 555's attempt to quickly dispense of the Property prior to criminal forfeiture is not only contrary to the administration of justice, but also to federal law. Miami 555's request should be denied.

**IV.     CONCLUSION**

For the foregoing reasons, Root respectfully requests this Court deny Miami 555's motion.

DATED: December 1, 2023

    Respectfully submitted,

    */s/ Elizabeth S. Alexander*
    William D. Kloss, Jr. (0040854), Trial Attorney
    Elizabeth S. Alexander (0096401)
    Grace E. Saalman (0101603)
    VORYS, SATER, SEYMOUR AND PEASE LLP
    52 East Gay Street, P.O. Box 1008
    Columbus, Ohio 43216-1008
    Phone: (614) 464-6360
    Fax: (614) 719-4807
    wdklossjr@vorys.com
    esalexander@vorys.com
    gesaalman@vorys.com

    Matthew L. Kutcher (IL Bar No. 6275320*)*
    COOLEY LLP *Admitted Pro Hac Vice*
    110 N. Wacker Drive Suite 4200
    Chicago, IL 60606
    Phone (312)-881-6500
    Fax (312)-881 6598
    mkutcher@cooley.com

    Kristine A. Forderer (CA Bar No. 278754)
    COOLEY LLP *Admitted Pro Hac Vice*
    3 Embarcadero Center
    San Francisco, CA 94111
    Phone (415) 693-2128
    kforderer@cooley.com

    *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of the foregoing was served on this 1 December 2023, via CM/ECF upon all counsel of record for Quantasy & Associates, LLC, Quantasy, LLC and William Campbell, and via regular mail upon Paige McDaniel, Brinson Caleb Silver, Collateral Damage, LLC, and Eclipse Home Design, LLC as set forth below:

**Paige McDaniel**
5576 Alexanders Lake Rd.
Stockbridge, GA 30281

**Brinson Caleb Silver**
Butler County Jail
Attn. Brinson Caleb Silver
Inmate # 303850
705 Hanover Street
Hamilton, OH 45011

**Collateral Damage, LLC**
c/o Butler County Jail
Attn. Brinson Caleb Silver
Inmate # 303850
705 Hanover Street
Hamilton, OH 45011

**Eclipse Home Design, LLC**
Registered Agent: United States Corporation Agents, Inc.
651 N. Broad Street, Suite 201
Middletown, DE 19709

                                                          */s/ Elizabeth S. Alexander*
                                                          Elizabeth S. Alexander (0096401)

                                                          *Attorney for Plaintiffs*

47001632