

**EXHIBIT A**



FILED
RICHARD W. NAGEL
CLERK OF COURT
2023 NOV 16 PM 4:31
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:23-CR-201 |
| v. | JUDGE SARGUS |
| BRINSON CALEB SILVER | **PLEA AGREEMENT** |

The United States Attorney's Office for the Southern District of Ohio (USAO) and the Defendant, **BRINSON CALEB SILVER**, individually and through counsel, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, agree as follows:

1. **Offenses of Conviction**: The Defendant agrees to waive indictment and plead guilty to Count 1 of the Superseding Information in this case, which charges him with Wire Fraud, in violation of 18 U.S.C. § 1343; and to Count 2 of the Superseding Information, which charges him with Contempt of Court, in violation of 18 U.S.C. § 401(3); and will not withdraw or attempt to withdraw his pleas. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

2. **Elements of the Offenses**: The elements of the offenses to which the Defendant has agreed to plead guilty are as follows:

   **Count 1, Wire Fraud**

   a) The Defendant knowingly participated in, devised, or intended to devise a scheme to defraud in order to deprive another of money or property;

   b) The scheme included a material misrepresentation or concealment of a material fact;

   c) The Defendant had the intent to defraud; and

   d) The Defendant used wire communications in interstate commerce in furtherance of the scheme.

   **Count 2, Contempt of Court**

   a) There was a clear and definite order of the Court;

   b) The Defendant knew of the order; and

   c) The Defendant willfully disobeyed the order.

3. **Venue**: The Defendant agrees that the offenses occurred, in whole or in part, in the Southern District of Ohio on or around the dates alleged in the Superseding Information.

4. **Penalties**: The statutory penalties are as follows:

   a) Count 1: Not more than 20 years of imprisonment; a term of supervised release of not more than 3 years; a fine not to exceed $250,000 or an alternative fine that is not more than the greater of twice the gross gain or twice the gross loss.

   b) Count 2: Up to life imprisonment; a term of supervised release of not more than 5 years; a fine not to exceed $250,000.

   c) Restitution;

   d) Forfeiture; and

   e) A mandatory special assessment of $200 pursuant to 18 U.S.C. § 3013.

5. **Waiver of Rights**: The Defendant understands that he has the following rights:

   a) To be indicted by a grand jury;

   b) To plead not guilty;

   c) To have a trial by jury;

   d) To be assisted by counsel during such trial;

   e) To confront and cross-examine adverse witnesses;

   f) To testify, if so desired, and to present evidence and compel the attendance of witnesses;

   g) To not be compelled to testify or present evidence, and to not have these decisions held against the Defendant; and

   h) To be presumed innocent throughout trial and until a jury finds proof of guilt beyond a reasonable doubt.

   The Defendant further understands that if the Court accepts the Defendant's plea pursuant to this Plea Agreement, there will be no trial and the Defendant waives these rights.

6. **Use of Statements**: The Defendant waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, and § 1B1.8(a) of the United States Sentencing Guidelines Manual. Any statements made by the Defendant in the course of plea discussions, in any proceeding under Rule 11 of the Federal Rules of Criminal Procedure, and to any law enforcement authorities will be admissible against the Defendant without limitation in any civil or criminal proceeding.

7. **Applicability of Advisory Sentencing Guidelines**: The Defendant understands that in determining a sentence, the Court has an obligation to calculate the applicable sentencing guideline range and to consider that range, possible departures under the United States Sentencing Guidelines ("U.S.S.G."), and other sentencing factors under 18 U.S.C. § 3553(a).

8. **Factual and Agreed Sentence Stipulation**: The parties agree to the Statement of Facts set forth in Attachment A, and incorporate it here by reference. The parties also agree that the following sentence ("Agreed Sentencing Disposition") is the appropriate disposition in this case:

   Agreed Sentencing Disposition:

   a) A term of incarceration of between 24 and 51 months, inclusive.

   b) Restitution, as outlined in Paragraph 9(a), below.

   c) Forfeiture, as outlined in Paragraph 9(b), below.

   d) A $200 mandatory special assessment.

   e) The Court maintains discretion to determine all other aspects of the sentence.

   For purposes of calculating the guidelines, the USAO does not oppose a 2-level reduction in offense level pursuant to U.S.S.G. § 3E1.1 based upon the Defendant's acceptance of responsibility, provided that the Defendant's conduct continues to demonstrate compliance with the terms of § 3E1.1. The Defendant may be entitled to an additional 1-level decrease pursuant to U.S.S.G. § 3E1.1(b) in recognition of the Defendant's timely notification of his intention to plead guilty.

9. **Additional Obligations of the Defendant**:

   a) Restitution

   - Pursuant to 18 U.S.C. § 3663A and § 3663(a)(3), the Defendant agrees to pay restitution in an amount of $10,205,794.86. The Defendant acknowledges that the Court shall determine a monthly payment schedule. Such payments will be completed within the period of his supervised release. In the event the Defendant is unable to pay completely the total amount of restitution owed prior to termination of the supervised release period, he agrees to make regular monthly payments toward such liability.

   - In furtherance of this agreement:

     a. If so requested by the USAO, the Defendant will promptly submit a completed financial statement to the USAO. The Defendant will acknowledge that such financial statement and disclosures will be complete, accurate, and truthful;

3

  b. The Defendant expressly authorizes the USAO and any agency designated by the USAO to obtain a credit report on the Defendant;

  c. If requested by the USAO, the Defendant will promptly execute authorizations to permit the USAO or its designated agency to obtain financial and tax records of the Defendant.

b) **Forfeiture**: The Defendant agrees, in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), to voluntarily surrender for immediate forfeiture to the United States all of his right, title, and interest in all property constituting or derived from proceeds traceable to the violation of 18 U.S.C. § 1343 (Wire Fraud) alleged in Count 1 of the Superseding Information to which he has agreed to plead guilty, including a sum of money equal to $10,205,794.86 in United States Currency in the form of a forfeiture money judgment. The Defendant agrees that the forfeiture money judgment represents the minimum amount of proceeds that were derived from his involvement in the wire fraud to which he has agreed to plead guilty. He also agrees that the forfeiture of property identified for forfeiture in this case may be accomplished through administrative or judicial proceedings at the United States' sole discretion and agrees to the entry any orders necessary to complete the forfeiture and disposal of the subject property.

If requested, the Defendant agrees to provide all of his financial information to the United States and/or the United States Probation Office. The Defendant acknowledges that if the United States determines that he has spent, transferred, dissipated, or otherwise made the directly traceable property unavailable to the United States for forfeiture, the United States may, in accordance with 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), seek forfeiture of any other property belonging to him up to the value of the forfeitable property.

c) The Defendant understands that forfeiture will be part of the sentence imposed upon him in this case and waives any failure by the Court to advise him of this, as required by Federal Rule of Criminal Procedure 11(b)(1)(J), during the change-of-plea hearing. The Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, announcement of the forfeiture in his presence at sentencing, and incorporation of the forfeiture in the judgment. The Defendant also waives all constitutional and statutory challenges (including direct appeal, collateral attack, or any other means) to forfeiture pursued in accordance with this Plea Agreement. The Defendant further acknowledges that if property is forfeited in this case, it may not be used to satisfy, or off-set, any non-forfeiture penalties ordered against him by the Court, including fines or restitution obligations, unless the United States determines that it is appropriate to seek restoration of the forfeited property in accordance with federal policies and procedures.

10. **Obligations of the USAO**: The USAO will not further prosecute the Defendant for conduct prior to the date of this Plea Agreement that was part of the same course of criminal conduct described in the Superseding Information and that was known by the USAO at the time of

the execution of this Plea Agreement. This agreement does not bind any other local, state, or federal prosecutions.

11. **Waiver of Appeal**: In exchange for the concessions made by the USAO in this Plea Agreement, the Defendant waives the right to appeal the conviction and sentence imposed, except if the sentence imposed exceeds the statutory maximum. The Defendant also waives the right to attack his conviction or sentence collaterally, such as by way of a motion brought under 28 U.S.C. § 2255, or to seek a reduction of sentence under 18 U.S.C. § 3582(c)(1)(B) or (c)(2). However, this waiver shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or prosecutorial misconduct.

12. **Freedom of Information Act**: The Defendant waives all rights under the Freedom of Information Act relating to his investigation and prosecution and agrees not to file any request for documents. The Defendant also waives all rights he may have under the Privacy Act of 1974, which prohibits the disclosure of records contained in a system of records without his written request or consent.

13. **Acceptance of Plea Agreement**: The Defendant understands that the Court may accept this Plea Agreement, reject it, or defer a decision until the Court has reviewed the presentence investigation report. If the Court accepts this Plea Agreement, it will be bound by the Agreed Sentencing Disposition, which will be included in the judgment of conviction. If the Court rejects this Plea Agreement, the Defendant will have an opportunity to withdraw his guilty plea. If the Court rejects this Plea Agreement, and if the Defendant's guilty plea is not withdrawn, the Court may dispose of this case less favorably toward the Defendant than this Plea Agreement contemplates, including by imposing up to the maximum statutory penalties.

14. **Violation of Plea Agreement**: The Defendant agrees to abide by the terms of this agreement, including all of the conditions listed in U.S.S.G. § 3E1.1. The Defendant understands that in the event he violates this agreement, the USAO will be relieved of all of its obligations under this agreement and may institute any charges or sentencing recommendations that would otherwise be prohibited by this agreement, and the Defendant will not be relieved of any of his obligations under the Plea Agreement. Further, the Defendant understands and agrees that if the Defendant violates this agreement or it is voided for any reason, the Defendant waives all defenses based upon the statute of limitations and the Speedy Trial Act as to any charges that are part of the same course of criminal conduct described in the Superseding Information.

15. **Defendant's Acknowledgment**: The Defendant has read and understands this Plea Agreement; the Defendant accepts this Plea Agreement knowingly and voluntarily and not as a result of any force, threats, or promises, other than the promises in this Plea Agreement. The Defendant has conferred with counsel regarding this Plea Agreement and the facts and circumstances of the case, including the applicable law and potential defenses, and the Defendant is fully satisfied with the representation, advice, and other assistance of counsel in this case.

16. **Entire Agreement.** This agreement, along with any attachment(s), is the complete agreement between the parties. It supersedes all other promises, representations, understandings, and agreements between the parties.

KENNETH L. PARKER
UNITED STATES ATTORNEY

11/16/2023
Date

PETER K. GLENN-APPLEGATE (0088708)
DAVID J. TWOMBLY (0092558)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email: peter.glenn-applegate@usdoj.gov
Email: david.twombly@usdoj.gov

I have read this agreement and carefully reviewed every part of it with my attorneys. I understand it, I voluntarily agree to it, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorneys.

11/15/23
Date

BRINSON CALEB SILVER
Defendant

I am the Defendant's attorney. I have carefully reviewed every part of this agreement with the Defendant, who advises me that he understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this agreement is an informed and voluntary one.

11/15/23
Date

PHILLIP A. TEMPLETON (0059741)
Attorney for the Defendant

6

## ATTACHMENT A:

## STATEMENT OF FACTS

*The United States and Defendant* **BRINSON CALEB SILVER** *stipulate and agree that if this case proceeded to trial, the United States would prove the facts set forth below beyond a reasonable doubt. They further stipulate and agree that these are not all of the facts that the United States would prove if this case had proceeded to trial.*

Defendant Brinson Caleb Silver stipulates and agrees that if this case proceeded to trial, the United States would prove each allegation in the Superseding Information beyond a reasonable doubt. Each allegation in each count of the Superseding Information is incorporated to this Statement of Facts by reference and admitted by Mr. Silver.

From at least November 2021 through at least June 20, 2023, Mr. Silver engaged in a scheme to defraud Root, Inc. ("Root"). Root was the parent company of Caret Holdings, Inc. From November 2021 through November 2022, Mr. Silver was the Chief Marketing Officer at Root. In that role, he had the authority to enter into contracts on behalf of Root for marketing services. As relevant here, Mr. Silver entered into contracts with four vendors, which this Statement of Facts will refer to as VENDOR A, VENDOR B, VENDOR C, and VENDOR D (collectively, "the VENDORS").

Mr. Silver owned and controlled Collateral Damage, LLC ("Collateral Damage"), Eclipse Home Design, LLC ("Eclipse"), and Grind 24. He also controlled bank accounts in the name of those businesses.

After Mr. Silver entered into contracts on behalf of Root with the VENDORS, he directed the VENDORS to send a portion of what the VENDORS received from Root to bank accounts in the name of his businesses and in his control. These payments to Silver totaled $10,205,794.86. The following chart shows the total amount that Caret Holdings, Inc., paid each VENDOR, and the total amount that each VENDOR paid businesses in Mr. Silver's control:

| VENDOR | Total amount paid by Caret Holdings, Inc., to VENDOR | Total amount paid by VENDOR to businesses in Mr. Silver's control |
|---|---|---|
| VENDOR A | $15,884,445 | $9,484,445 |
| VENDOR B | $3,585,937.92 | $502,999.86 |
| VENDOR C | $503,000 | $139,650 |
| VENDOR D | $218,950 | $78,700 |

Mr. Silver used the funds he received from the VENDORS to purchase multiple pieces of high-dollar real estate, a $164,740.64 Mercedes-Benz G550, a $1.4 million Azimut 55 yacht, luxury watches, and an ICON A5 amphibious plane, among other items. These expenditures were for his personal benefit and had no business purpose related to his employment with Root.

As to Count One of the Superseding Information, on or about April 26, 2022, Mr. Silver caused an ACH transfer in the amount of $7,350,000 from a Caret Holdings, Inc., bank account to a bank account of VENDOR A. This wire transmission in interstate commerce was in furtherance of the scheme to defraud.

The fact that the VENDORS were paying businesses in Mr. Silver's control was a material fact to Root, and Mr. Silver concealed this material fact. In short, Mr. Silver embezzled Root's funds. Mr. Silver also made several material misrepresentations, including misrepresentations to Root regarding the purpose of the payments to the VENDORS.

Mr. Silver repeatedly used another person's means of identification without lawful authority when he repeatedly sent emails pretending to be another person. PERSON A worked for Collateral Damage from November 25, 2019, through February 16, 2020, and had an email address with a Collateral Damage domain. PERSON A did not work for Collateral Damage during the time Mr. Silver worked for Root and perpetrated his fraud scheme. As part of the fraud scheme, Mr. Silver sent emails from PERSON A's old Collateral Damage account and using her name, including an email to VENDOR A with a Form W-9, and emails to VENDOR A with invoices for VENDOR A to pay Collateral Damage. These emails were in furtherance of the fraud scheme.

As a result of his fraud scheme, on February 2, 2023, Root sued Mr. Silver, Collateral Damage, Eclipse, and other defendants in the U.S. District Court for the Southern District of Ohio. The civil case was assigned to Judge Sarah D. Morrison and Magistrate Judge Chelsey M. Vascura. The civil complaint alleged that Mr. Silver was a former employee of Root and that Mr. Silver had defrauded Root of more than $9 million.

On February 14, 2023, Root moved for a temporary restraining order and a preliminary injunction to preserve assets while the case remained pending. The Court granted the motion and entered a TRO, which provided, in part:

- "Silver . . . shall not individually, nor through others, use, convert, sell or otherwise dispose of any assets in their possession, custody, and control in amounts greater than $ 5,000."

- "Silver . . . shall not individually, nor through others, incur charges or cash advances on any credit card, debit card, or checking card or incur liens or encumbrances on real personal property or other assets, including intangible assets. Notwithstanding, Silver . . . may pay personal expenses for day-to-day living in an amount no greater than $ 5,000."

- "Collateral Damage and Eclipse shall not directly, nor through others, use, convert, sell or otherwise dispose of any assets in their possession, custody, and control in amounts greater than $ 5,000."

- "Collateral Damage and Eclipse shall not directly, nor through others incur charges or cash advances on any credit card, debit card, or checking card, or incur liens or encumbrances on real property, personal property or other assets, in an amount greater than $ 5,000."

8

On February 27, 2023, Root filed a proposed agreed preliminary injunction, which was granted the same day. It restricted the financial activities of Mr. Silver, Collateral Damage, and Eclipse in much the same way that the TRO did.

On May 2, 2023, Root filed a Motion for Contempt, alleging that Mr. Silver had violated the Court's preliminary injunction order by engaging in financial activity prohibited by the order.

On May 3, 2023, the Court entered an order requiring Mr. Silver and Eclipse to appear at a hearing on May 9, 2023, at 2:00 PM to show cause why they should not be held in contempt for violating the preliminary injunction. The letter specified that, "Mr. Silver is advised that if he fails to appear in-person at this show cause hearing, the Court will issue a warrant for his arrest."

On May 9, 2023, counsel for Mr. Silver filed a motion to continue the show-cause hearing, asserting that Mr. Silver "was unable to secure transportation to Columbus for the hearing on May 9 because he is travelling from the United Arab Emirates." The Court denied the motion, noting that "there is no evidence of . . . why Mr. Silver was unable to be in Ohio by 2:00 p.m. today, despite knowing of the hearing since May 3, 2023," and "if Mr. Silver was unable to appear for the hearing, why notice to the Court was not provided more than that 24 hours before the scheduled hearing."

The same day, the Court held the scheduled show-cause hearing. Counsel for Mr. Silver appeared, but Mr. Silver himself failed to appear. The Court set another hearing for May 12, 2023. The Court also entered an Omnibus Order that memorialized the rulings the Court had made during the hearing. Among other matters, the Omnibus Order articulated the following:

- The Court found that Root had established by clear and convincing evidence that Mr. Silver and Eclipse had violated the terms of the preliminary injunction and found that Mr. Silver and Eclipse were in contempt of court.

- The Court ordered Mr. Silver "to disclose to Root all of his bank accounts and non-banked assets within fourteen days of the date of this Order," *i.e.*, by May 23, 2023.

- The Court ordered the parties to appear in person for a hearing on May 12, 2023, at 3:00 PM.

On the same day, the Court issued a bench warrant based on Mr. Silver's failure to appear at the May 9 hearing.

On May 12, 2023, the Court held the scheduled hearing, and Mr. Silver appeared. Following the hearing, the Court entered an order to appoint a receiver over the assets of Mr. Silver, Collateral Damage, and Eclipse.

On May 17, 2023, the Court entered an Order Appointing Receiver. The order summarized the Court's findings in the May 12 hearing, including that "Eclipse sent more than $40,000 in ACH payments to an unknown entity, NEWREZ-SHELLPOIN," that "Silver spent lavishly while traveling the globe," including "$20,000 on plastic surgery and another $8,000 at a luxury resort on Bali (among many, many other extravagant expenditures)," and that "the property at issue is in imminent danger of being lost, concealed, or squandered." The order also set forth the terms of the

9

receivership. It ordered Mr. Silver, Collateral Damage, and Eclipse to turn over to the Receiver "as soon as possible or within three days from the date of this Order, any and all Books and Records" and any information requested by the Receiver.

From February 16, 2023, through March 24, 2023, Mr. Silver incurred the following expenditures, among others:

- $88,415.82  From and through PayPal to individuals
- $24,874.41  Indonesian businesses and withdrawals made in Indonesia
- $21,937.59  Southwest Plastic Surgery
- $10,000.00  Brennan, Manna & Diamond
- $ 7,672.01  Blackbaud Tuition Management
- $ 5,000.00  Western Union

On May 25, 2023, Mr. Silver sent an email to the Receiver, with attachments, containing certain information regarding the assets of Mr. Silver, Collateral Damage, and Eclipse. Neither the email nor the attachments disclosed that Mr. Silver, Collateral Damage, or Eclipse owned or controlled real property in Ramona, California.

On May 26, 2023, the Court entered an order that, in part, granted Mr. Silver an extension of time to disclose his assets. The order directed Mr. Silver "to disclose to Root all of his bank accounts and non-banked assets" on or before June 2, 2023.

On May 30, 2023, Mr. Silver sent an email to the Receiver, with attachments, containing additional information regarding the assets of Mr. Silver, Collateral Damage, and Eclipse. Neither the email nor the attachments disclosed that Mr. Silver, Collateral Damage, or Eclipse owned or controlled real property in Ramona, California.

On June 5, 2023, Root filed a notice to the Court that Mr. Silver had not disclosed "to Root all of his bank accounts and non-banked assets" on or before June 2, 2023.

On June 6, 2023, the Receiver filed a Motion for Reappointment of Receiver. The Motion asserted that the Receiver had discovered real property in Ramona, California, that was titled in Eclipse's name. According to the motion, the property had "not previously been disclosed or known to the Court."

On July 29, 2022, Eclipse purchased real property in Ramona, California for approximately $1,850,000.00. As of June 13, 2023, Eclipse remained the listed owner of the property.

The FBI has also obtained recordings of two phone calls between Mr. Silver and individuals who work for a company that advertises itself as a "boutique consulting firm advising legal offshore tax planning, international relocation, second citizenship, and global citizenship." In the recordings, Mr. Silver told employees of the company that he wanted citizenship with a

country which would not extradite him to the United States, and also wanted a foreign bank account that the United States could not freeze.

In taking these acts, Mr. Silver willfully disobeyed clear and definite orders of the court, despite knowing of the orders.

I have read the Statement of Facts and have carefully reviewed it with my attorney. I acknowledge that it is true and correct.

11/15/23
Date

BRINSON CALEB SILVER
Defendant

I am the Defendant's attorney. I have carefully reviewed the Statement of Facts with the Defendant.

11/15/23
Date

PHILLIP A. TEMPLETON (0059741)
Attorney for the Defendant

11