IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROOT, INC., *et al.*, | Case No. 2:23-cv-512 |
| Plaintiffs, | Judge Sarah D. Morrison |
| v. | Magistrate Judge Elizabeth Preston Deavers |
| BRINSON CALEB SILVER, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO QUANTASY DEFENDANTS' MOTION TO QUASH SUBPOENAS FOR FINANCIAL RECORDS AND TO STAY DISCOVERY AS TO THE QUANTASY DEFENDANTS**

**I.    INTRODUCTION**

The Quantasy Defendants[1] participated in a brazen kickback scheme to defraud Root of millions. Root – through its former Chief Marketing Officer, BC Silver – paid Quantasy, LLC $15.9 million for marketing services. Quantasy, LLC transferred more than half of Root's money to Silver's company, Collateral Damage, LLC, and ultimately kept over $3.5 million. Root received little to no marketing services in exchange. This scheme raises two questions:

- First, what happened to the millions transferred to Collateral Damage, LLC?

- Second, what happened to the millions retained by the Quantasy, LLC?

As a result of Root's investigation and the diligent work of the Receiver, Root now has an answer to the first question. Root's money funded Silver's opulent lifestyle which included purchases of jewelry, watercraft, airplanes and luxury real estate.

Root now seeks to answer the second question. Root has a partial answer because it

---

[1] The Quantasy Defendants include, Quantasy & Associates, LLC, Quantasy, LLC and William Campbell.

1

appears as if the Quantasy Defendants' engaged in numerous suspicious transfers of large amounts of funds during the same time period. By way of example, early discovery revealed that, after receiving Root's money, Quantasy, LLC, which is controlled William Campbell, transferred substantial amounts of money to Campbell and his wife. Not long thereafter, the Campbells purchased a $3.6 million home. In the course of discovery, Root requested bank records from the Quantasy Defendants to complete the picture of the Quantasy Defendants' finances – they refused.

Thus, Root issued subpoenas on November 2 and 13, 2023, (the "Subpoenas") to financial institutions seeking information about Defendants Quantasy, LLC, Quantasy & Associates, LLC (together, "Quantasy Entities"), and William and Christine Campbell.[2] The Quantasy Defendants have moved to quash the Subpoenas and to stay discovery altogether. The motion is without merit. The Subpoenas seek non-privileged information that is highly relevant to Root's claims for RICO, fraud, conversion, and breach of contract. To the extent the Quantasy Defendants are concerned about the sensitive nature of banking records, the Court entered the Parties' Stipulated Protective Order to adequately protect that confidential information. Finally, it is well established that a stay of discovery is unwarranted simply because there is a pending motion to dismiss. Root is entitled to continue discovery for a fair and efficient resolution of the case. The Quantasy Defendants' motion should be denied.

## II.     BACKGROUND

### A. Despite Providing Little to No Marketing Services to Root, Quantasy, LLC Accepts $15.9 Million from Root, Initially Retaining $6.4 Million and Sending $9.4 Million to Collateral Damage, LLC.

---

[2] Root does not seek financial information concerning Campbell's father, William Monroe Campbell. Root will clarify such with the Subpoena recipients.

Silver and Campbell caused Quantasy, LLC and Root to enter into a series of contracts under which Root paid the Quantasy, LLC for marketing services and products. (Second Am. Compl., ECF No. 165, Exs. 3, 19, Scope of Work Agreements.) In total, Quantasy, LLC received $15.9 million from Root between February 2022 and April 2022. (*Id.* ¶ 138, Exs. 3, 19.) Quantasy, LLC sent $9.4 million of that to one of Silver's entities, Collateral Damage, LLC ("Collateral Damage"), and retained $6.4 million for purported marketing services. (*Id.*, Exs. 14, 18, 30, 32, Collateral Damage Invoices to Quantasy, LLC & Ex. 41, Collateral Damage Scope of Work Change Request.) To date, Root has not received the marketing services provided in the contracts. (*Id.* ¶¶ 56, 85.) Upon Root's demand, Quantasy, LLC refunded Root $2.85 million. (*Id.* ¶ 138.) However, Quantasy, LLC still retains more than $3.5 million of Root's money despite providing little to no substantive marketing services to Root.

### B. With an Enormous Influx of Revenue from Root, the Quantasy Defendants Make Suspicious Transfers, the Full Extent of Which Is Unknown.

Quantasy, LLC did not spend Root's money on marketing services but instead transferred it to the Campbell's personal accounts or unknown accounts:

- On April 4, 2022, Silver caused Root to pay Quantasy, LLC $7.35 million. (Second Am. Compl. ¶ 59.) Four days later, on April 8, 2022, Campbell transferred $115,000 from the Quantasy, LLC account to an account Root subpoenaed and believes is Campbell's personal account. (Ex. A.)

- On April 14, 2022, Silver caused Root to pay Quantasy, LLC an additional $7.35 million. Shortly after, in June 2022, Campbell made two $300,000 wire transfers from Quantasy, LLC to account numbers Root cannot identify. (Ex. B and C.)

- On July 11, 2022, shortly before purchasing a new home, Campbell sent $710,000 from Quantasy, LLC's City National Bank account to a Chase account Root cannot identify. (Ex. C and D). Then, Campbell sent $2.5 million from Quantasy, LLC's Chase account to an account held by him and his wife. (Ex. E.)

- When Root demanded a refund from the Quantasy Entities in August 2022, the $1.2 million refund was issued from Campbell and his wife's personal account to Quantasy, LLC's account and then to Root. (Ex. C, F, and G.)

3

In sum, there is no question that Quantasy Defendants moved Root's money between themselves and also to unknown accounts. There is no question that Campbell and his wife also commingled their personal funds with the money Quantasy, LLC received from Root. But neither the full extent of, nor reason for the transfers is known absent additional information. And that is precisely why Root needs additional discovery.

### C. Root Files Suit Against the Quantasy Defendants, Asserting Claims Ranging from Racketeering to Breach of Contract.

Root asserts claims against the Quantasy Defendants for racketeering, fraud, conversion, theft, breach of contract, breach of fiduciary duties, and civil conspiracy. (Second Am. Compl.) On May 11, 2023, the Quantasy Defendants filed a motion to dismiss. (Mot. Dismiss Compl., ECF No. 94.) In defense, the Quantasy Defendants have asserted, among other things: they did not know Silver was defrauding Root; they did know about, and/or did not send money to, co-Defendants Paige McDaniel, Collateral Damage, or Eclipse Home and Design, LLC ("Eclipse"); they did not conspire with co-defendants to buy houses to launder the money stolen from Root; they did not improperly pocket Root's money but instead used it for marketing services for Root's benefit; and Root cannot show that Campbell has control over the Quantasy Entities or commingles his personal finances with the Quantasy Entities' accounts sufficient to pierce the corporate veil. (*See generally id.*) The Quantasy Defendants' bank records are squarely relevant due to the claims and defenses asserted in this case.

### D. Root Provides the Quantasy Defendants with Fulsome Discovery.

Root has fully participated in discovery. Quantasy & Associates, LLC and Campbell served Root with interrogatories, requests for production, and requests for admission on February

17, 2023. Root responded to written discovery on May 22, 2023. Root produced 7,996 documents on May 19, 2023.

### E. Root Seeks Discovery from the Quantasy & Associates, LLC and Campbell, But Quantasy & Associates, LLC and Campbell Refuse to Provide Banking Information or Account Records.

Root served its first discovery requests on Quantasy & Associates, LLC and Campbell on February 17, 2023. (Root's Disc. Reqs. to Quantasy & Associates, LLC, Ex. H; Root's Disc. Reqs. to Campbell, Ex. I.) Root requested from Campbell any bank records or documents that reflect any payment to or from Campbell from the Quantasy Entities, Collateral Damage, Eclipse, and/or Silver. (Root's Disc. Reqs. to Campbell, Req. Produc. Nos. 7, 8.) Root requested from Quantasy & Associates, LLC "any bank records from January 1, 2021, to the present that reflect any payment to you by, or by you to, Campbell that relate to Root." (Root's Disc. Reqs. to Quantasy & Associates, LLC, Req. Produc. No. 16.) Quantasy & Associates, LLC refused to produce documents related to money exchanged between it and Campbell. (Quantasy & Associates, LLC's Resps. and Objs. to Root's Req. Produc. No. 16, Ex. J; Campbell's Resps. and Objs. to Root's Req. Produc. No. 7, Ex. K.)

### F. Root Serves Additional Discovery Requests and Is Forced to Issue the Subpoenas, But the Quantasy Defendants Move to Quash the Subpoenas and Stay Discovery.

Root filed a Second Amended Complaint on August 11, 2023, adding Quantasy, LLC as a defendant. On November 2, 2023, Root issued subpoenas to several banks and financial institutions seeking account records from January 1, 2020 to present for the Quantasy Defendants, affiliated business entities, and Campbell's wife. In addition, on November 20, 2023, Root served discovery on Quantasy, LLC. At this point in time, Root has not received discovery answers from Quantasy, LLC.

On November 15, 2023, the Quantasy Defendants filed a motion to quash the Subpoenas and to stay discovery. (Mot. Quash, ECF No. 185.) Root submits that the Quantasy Defendants' sudden effort to halt discovery is motivated by one thing – Root is finally untangling the Quantasy Defendants' ball of yarn and is honing in on their misuse of Root's funds.

### III. LAW AND ARGUMENT

**A. The Quantasy Defendants' Motion to Quash the Subpoenas Should Be Denied.**

Pursuant to Federal Rule of Civil Procedure 45, a court may "quash or modify a subpoena" that "fails to allow a reasonable time to comply," "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).[3] "The party seeking to quash a subpoena bears the ultimate burden of proof." *Hendricks*, 275 F.R.D. at 253 (citing *White Mule Co. v. ATC Leasing Co. LLC*, 2008 U.S. Dist. LEXIS 51344, at *4 (N.D. Ohio June 25, 2008)). That burden is heavy, and not met by conclusory assertions of an interest or privilege. *Schaumleffel v. Muskingum Univ.*, No. 2:17-cv-463, 2019 U.S. Dist. LEXIS 117210, at *4-5 (S.D. Ohio July 15, 2019). The Quantasy Defendants do not meet their heavy burden to show that Root's Subpoenas improperly seek privileged or otherwise protected information.

**1. The Information Sought Is Relevant, Non-privileged, and Critical to Root's Claims.**

Federal Rule of Civil Procedure 26(b)(1) dictates the scope of discovery in a civil suit. It permits parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

---

[3] A party generally lacks standing to quash a subpoena issued to a nonparty. *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 n.1 (S.D. Ohio 2011). There is a limited exception if the party "claims some personal right or privilege with regard to the documents sought." *Mann v. Univ. of Cincinnati*, 1997 U.S. App. LEXIS 12482, 1997 WL 280188, at *4 (6th Cir. May 27, 1997) (per curiam).

The scope is guided by "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Where personal financial information is sought to prove a case in chief or an element thereof, the information is relevant and generally discoverable. *Grayiel v. Aio Holdings*, No. 3:15-CV-00821, 2017 U.S. Dist. LEXIS 233617, at *7 (W.D. Ky. May 2, 2017) (citing *Alvarez v. Wallace*, 107 F.R.D. 658, 661 (W.D. Tex. 1985)). As set forth below, the financial information that Root seeks is non-privileged and relevant to Root's claims in at least four ways.[4]

### a. RICO/Fraud

The financial documents sought are relevant to Root's RICO and fraud claims against the Quantasy Defendants.[5] Courts regularly permit discovery of the defendants' financial information in RICO and fraud cases because such information is necessary to proving the claims. *See, e.g.*, *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2019 U.S. Dist. LEXIS 177798, at *6 (N.D. Ala. Feb. 12, 2019) (citations omitted) (denying motion for protective order and motion to quash subpoena; plaintiffs demonstrated relevancy of financial documents sought

---

[4] The Quantasy Defendants do not claim that the information is privileged.

[5] Root's Subpoenas may reveal additional information or even parties who are critical to the case. *See Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-cv-01479-KOB-HNJ, 2019 U.S. Dist. LEXIS 177798, at *17 (N.D. Ala. Feb. 12, 2019) (denying motion to quash subpoenas to non-party banks in RICO case because the records were likely to show additional entities that should have been part of the case). In *Roche Diagnostics Corp.*, the court noted that one of the defendants was discovered through records obtained by subpoenas and "the records proved sufficient to demonstrating the entity's role in supporting the enterprise." *Id.* From similar subpoenas to co-defendant Silver's banks, Root has discovered Silver's luxury real estate purchases, additional related shell companies, and Silver's attempt to flee the country and change his citizenship. The same discovery regarding Campbell is proper and necessary to meet the ends of justice.

from non-party bank in fraud and RICO case); *Wicker v. Prabhu Paramatma*, No. 2:19-CV-21-RWS, 2020 U.S. Dist. LEXIS 266127, at *11 (N.D. Ga. Mar. 16, 2020) (denying motion to quash subpoena in RICO/fraud case for "production of all documents regarding each and every bank account in the name of [defendant]" because, "this is a financial fraud case, and Plaintiff is interested in more than, and entitled to discovery beyond, Plaintiff's initial transfer of funds to [defendant]."); *Grayiel*, 2017 U.S. Dist. LEXIS 233617, at *14 (W.D. Ky. May 2, 2017) (granting motion to compel defendant to produce personal financial records in RICO case to show defendant was in receipt of assets or proceeds traceable to the co-defendant's companies or otherwise received by co-defendant's companies); *State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C.*, 375 F. Supp. 2d 141, 156-57 (E.D.N.Y.2005) (personal financial records are discoverable where claims of common law fraud and RICO have been made); *Constitution Bank v. Levine*, 151 F.R.D. 278 (E.D. Pa. 1993) (finding that financial records are relevant where claims of fraudulent conveyance of assets are alleged).

To succeed in its RICO claim for money laundering, Root will prove that Campbell and the Quantasy Entities (all of which Campbell controls) "used" Root's money, which was "proceeds of unlawful activity," to "disguise the nature, location, source, ownership or control of the proceeds." 18 U.S.C. 1956(a)(1)(B)(i); *United States v. Moss*, 9 F.3d 543, 551 (6th Cir. 1993). Likewise, for its fraudulent misrepresentation claim, Root will prove that the Quantasy Defendants represented that they would perform marketing services in exchange for payment but instead pocketed the money. (Second Am. Compl. ¶¶ 56, 85.)

Here, there is reason to believe that Campbell withdrew Root's money from the Quantasy Entities' bank accounts and used that money to disguise its nature, location, source, ownership and control. By way of example only:

8

(1) Quantasy, LLC received $15.9 million from Root between February and April 2022 (Second Am. Compl. Exs. 4, 8, 16, 20, 21, 29);

(2) On July 11, 2022, Campbell and his wife withdrew $2.5 million from a Quantasy, LLC account (Ex. E);

(3) Campbell and his wife purchased a $3.6 million dollar home in July 2022 (Ex. L and M);

(4) Christine Campbell personally withdrew funds from Quantasy, LLC accounts in 2022 (Ex. N);

(5) The $1.2 million refund to Root was issued from Campbell and his wife's personal account to Quantasy, LLC's account and then to Root (Ex. C, F, and G).

There may be additional evidence of such conduct in the Quantasy Defendants' bank records. Moreover, Root also needs access to the Quantasy Defendants' bank records to prove that Quantasy Defendants failed to spend the $3.6 million on marketing services for Root; this is especially true given that a cornerstone of the Quantasy Defendants' defense is that they used Root's money for the marketing campaign bargained for by Root.

### b. Conversion

The financial documents are relevant and necessary to prove Root's conversion claims. Conversion is the wrongful exercise of dominion over property in exclusion of the right of the owner. *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 351 N.E.2d 454 (1976), *rev'd on other grounds*, 433 U.S. 562 (1977). In its motion to dismiss, the Quantasy Defendants argue that the funds are not sufficiently identifiable because Root cannot trace them. (Mot. Dismiss at 37-39.) The Quantasy Defendants' financial records are necessary to trace Root's money. *See Barestone, LLC v. Bair (In re Bair)*, Nos. 18-12585, 18-1062, 2020 Bankr. LEXIS 3649, at *25 (Bankr. S.D. Ohio Dec. 31, 2020) (denying motion for judgment on the pleadings on plaintiff's conversion claim because the money could be identifiable from account

records and other evidence); *Paws Up Ranch, LLC v. Green*, No. 2:12-cv-01547, 2013 U.S. Dist. LEXIS 167174 (D. Nev. Nov. 22, 2013) (disclosure of personal financial records was appropriate where allegations of fraud, racketeering, conversion and unjust enrichment had been made). Like in *Barestone* and *Paws Up Ranch*, Root should be granted access to the Quantasy Defendants' bank records to demonstrate the Quantasy Defendants' conversion of those funds. How else would Root be able to trace the money?

    c. **Breach of Contract**

The financial documents sought are also relevant to Root's breach of contract claims. One of the elements of a breach of contract claim is that the defendant did not perform the services under the contract. *Nichols v. State Farm Mut. Auto. Ins. Co.*, No. 2:22-cv-16, 2022 U.S. Dist. LEXIS 186623, at *6 (S.D. Ohio Oct. 11, 2022) (citing *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018)). Here, Root asserts that Quantasy, LLC failed to provide the services set forth in SOW #1 and SOW #2 and never intended to provide such services. (Second Am. Compl. ¶¶159-63.) The Quantasy Entities claim they spent Root's money on legitimate marketing costs for Root. However, Root received little to no work from Quantasy Entities, despite Root's $15 million in payments for purported marketing services. (*Id.* ¶¶ 56, 85.) The Quantasy Entities' bank accounts will confirm whether they indeed spent Root's funds on marketing services for Root's benefit.

    d. **Piercing the Corporate Veil**

Root is also seeking to pierce the corporate veil to hold Campbell personally liable for the actions of the Quantasy Entities. To do so, Root will show that Campbell had "control over the corporation . . . [that] was so complete that the corporation ha[d] no separate mind, will or existence of its own. *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, LTD.*, 476

F. Supp. 2d 809, 827 (S.D. Ohio 2007). Evidence of commingling funds between the defendant's personal and business bank accounts is sufficient "control" to pierce the corporate veil. *Howard Indus. v. BADW Grp., LLC*, No. 20-5596, 2021 U.S. App. LEXIS 6102, at *9 (6th Cir. Mar. 2, 2021) (affirming piercing the corporate veil, in part, because of the defendant's "commingling of his personal and business assets"); *Walters v. Gill Indus.*, No. 5:21-069, 2022 U.S. Dist. LEXIS 4842, at *17 (E.D. Ky. Jan. 10, 2022) (allowing plaintiff to pierce the corporate veil because "the corporate defendants' funds were commingled" and the entities "shared common officers and did not have meetings or any other formalities that would distinguish one entity from another . . . ."). Root's Subpoenas seek the financial information required to pierce the corporate veil and hold Campbell personally liable for his entities' actions.

**2. Root Has No Other Means of Obtaining the Same Evidence.**

Root has no other way to obtain this information.[6] Root attempted to discover this banking information directly from Quantasy Defendants, but the Quantasy Defendants refused to produce such information or claimed they did not have information as to where the money went. Because the Quantasy Defendants have refused to provide it, Root was forced to subpoena third parties.

In its motion, the Quantasy Defendants claim that Root already has all the information necessary to determine whether Silver made illegal payments to the Quantasy Defendants. (Mot. Quash at 7.) The Quantasy Defendants confuse the issues. Root did not issue the Subpoenas solely to learn of Silver's payments to the Quantasy Defendants. **Root seeks fulsome**

---

[6] Root is waiting to receive the discovery responses from Quantasy, LLC prior to filing a motion to compel. Quantasy & Associates, LLC and Campbell's discovery responses are deficient and the parties have exhausted all extra-judicial means to resolve the issues. Root suspects Quantasy, LLC's discovery responses will be equally deficient. But in fairness, that remains to be seen. If Root is correct and the deficiencies persist, it will file an omnibus motion to compel against the Quantasy Defendants.

11

**information as to what the Quantasy Defendants did with almost $16 million of Root's money**. The Subpoenas will reveal how the Quantasy Defendants used Root's money for Root's marketing and/or whether they laundered it.

### 3. The Subpoenas Were Not Issued for Purposes of Harassment.

The Subpoenas were not issued for the purpose of harassment because, as explained above, "the documents sought are directly related to the claims." *Foreman Elec. Servs. v. Haliron Power, LLC*, No. 4:19-cv-04157, 2021 U.S. Dist. LEXIS 239689, at *7 (W.D. Ark. Dec. 15, 2021) (denying motion to quash subpoena for personal financial records). Root seeks financial records to account for the near $16 million that was pilfered by the Quantasy Defendants and others, and to obtain evidence necessary to supports its claims against the Quantasy Defendants.

Once the Court granted the Parties' request for expedited discovery, Root served several subpoenas at the inception of this case. Some of those February 17, 2023, subpoenas sought Quantasy & Associates, LLC and Campbell's banking records. The Quantasy Defendants did not object at the time and Root received some records in response. Several of the recently issued Subpoenas are simply follow-up requests for a broader range of time. Further, some of the Subpoenas are seeking confirmation that the banks responded with information for both Quantasy, LLC and Quantasy & Associates, LLC, a confusion perpetuated by the Quantasy Defendants throughout this case.

In its motion, the Quantasy Defendants argue that it is not necessary to subpoena Campbell's wife's accounts. (Mot. Quash at 10.) However, Root is entitled to discover both Campbell and Christine Campbell's relevant financial information. In *State Farm Mutual Auto. Ins. Co. v. Physiomatrix*, a court permitted discovery of bank accounts held jointly with spouses

who were not parties based on the plaintiff's "valid explanations for the relevance of the subpoenaed banking records, including that the documents will help establish ownership . . . the structure of the enterprise . . . will measure the scope of the fraud . . . will show motive for the alleged conspiracy, and will help prove damages . . . ." No. 12-cv-11500, 2013 U.S. Dist. LEXIS 189646, at *3 (E.D. Mich. Aug. 13, 2013). The same is true here.

> **4. The Stipulated Protective Order Sufficiently Protects the Sensitive Nature of the Information Sought.**

Any concerns that sensitive or privileged information will be released is mitigated by the parties' Stipulated Protective Order. *Schaumleffel v. Muskingum Univ.*, No. 2:17-cv-463, 2019 U.S. Dist. LEXIS 117210, at *14 (S.D. Ohio July 15, 2019) (denying motion to quash subpoena for personal education information because the parties had stipulated in their protective order not to disclose or release sensitive information); *Zakutney v. Moore*, No. 5:21-CV-00018, 2022 U.S. Dist. LEXIS 221, at *8 (W.D. Ky. Jan. 3, 2022) (denying motion to quash subpoena for financial records and agreeing that an agreed protective order would appease confidentiality concerns while permitting proper discovery); *Wicker*, 2020 U.S. Dist. LEXIS 266127, at *11 (denying motion to quash subpoena for personal bank information, in part, because the parties agree to instate reasonable measures against disclosure). Here the Stipulated Protective Order dictates that confidential personal information, such as financial records, will be designated as confidential and only the Court and parties to the case will be permitted to view such information. (Stipulated Protective Order, ECF No. 69.)

> **A. The Quantasy Defendants' Motion to Stay Discovery Should Be Denied.**

After engaging in discovery for eight months – and receiving the benefit of written discovery and document productions from Root – the Quantasy Defendants belatedly move the

Court to stay discovery only as to the Quantasy Defendants. As set forth more fully below, the Quantasy Defendants' motion to stay discovery should be denied.

Stays of discovery are disfavored as they impede efficient case management and may increase litigation costs. *Gerling & Assocs. v. Odulair, LLC*, No. 2:16-cv-1000, 2017 U.S. Dist. LEXIS 180532, at *2 (S.D. Ohio Mar. 29, 2017). Courts "tread carefully in granting a stay of proceedings since a party has a right to a determination of its rights and liabilities without undue delay." *Wilson v. ThyssenKrupp Elevator Corp.*, No. 2:20-cv-2138, 2022 U.S. Dist. LEXIS 9137 (S.D. Ohio Jan. 19, 2022). In these cases, "[t]he movant bears the burden of showing both a need for delay and that 'neither the other party nor the public will suffer harm from entry of the order.'" *Meros v. Dimon*, No. 2:18-cv-00510, 2018 U.S. Dist. LEXIS 162569, at *3 (S.D. Ohio Sept. 24, 2018) (quoting *Ohio Envtl. Council v. United States Dist. Court, S. Dist., etc.*, 565 F.2d 393, 396 (6th Cir. 1977). Accordingly, courts generally only grant motions to stay discovery in two circumstances: where (1) "the motion raises an issue such as immunity from suit, which would be substantially vitiated absent a stay"; or (2) "it is patent that the case lacks merit and will almost certainly be dismissed." *Ohio Bell Tel. Co., Inc., v. Global Naps Ohio, Inc.*, No. 2:06-cv-0549, 2008 U.S. Dist. LEXIS 21288, at *4 (S.D. Ohio Mar. 4, 2008). It is undisputed that neither of the exceptions are present in this case.

Instead, the Quantasy Defendants argue that discovery should be stayed because: (1) the Quantasy Defendants moved to dismiss on jurisdictional grounds; and (2) RICO claims are purportedly "difficult" to prove. Both arguments are without merit.

First, the Quantasy Defendants assert that the court lacks personal jurisdiction over them, as argued in their pending motion to dismiss filed May 11, 2023. In the Southern District of Ohio, "[i]t is well established that 'the pendency of a dispositive motion does not itself justify a

stay of discovery.'" *Gerling & Assocs. v. Odulair, LLC*, No. 2:16-cv-1000, 2017 U.S. Dist. LEXIS 180532, at *1-2 (S.D. Ohio Mar. 29, 2017) (internal citation omitted). The exception to grant a stay is a high bar and the virtual certainty of dismissal required to warrant a stay exists only where a narrow legal issue is presented, such as the running of the statute of limitations. *Wilson v. ThyssenKrupp Elevator Corp.*, No. 2:20-cv-2138, 2022 U.S. Dist. LEXIS 9137, at *6 (S.D. Ohio Jan. 19, 2022). Where such exceptional clear and discrete issues are absent, "it is not patently apparent whether said [dispositive] motion will be granted or denied." *Baker v. Swift Pork Co.*, No. 3:15-cv-663, 2015 U.S. Dist. LEXIS 152235, at *3 (W.D. Ky. Nov. 10, 2015). Here, the issue of personal jurisdiction in this case is not "virtually certain" or "patently apparent." As described in detail in Root's response to the motion to dismiss, the Quantasy Defendants are subject to personal jurisdiction in Ohio because they engaged in business in Ohio with an Ohio company and sent money to and received money from Ohio residents, Root and Silver. (Pls.' Resp. to Mot. Dismiss at 15-26, ECF No. 135.)

Second, the Quantasy Defendants also point to the difficulty in proving RICO cases as a reason to stay discovery. (Mot. Quash at 14.) However, the Quantasy Defendants have failed to point the Court to any authority that a stay of discovery is appropriate in RICO cases. (*Id.*) Moreover, Root asserts eight claims against the Quantasy Defendants, ranging from fraud to breach of contract. (*See generally* Second Am. Compl.) Root's RICO claim is one of many claims it asserts against the Quantasy Defendants. (*Id.*) Therefore, a stay of discovery is not warranted on these grounds.

Finally, Quantasy & Associates, LLC and Campbell have actively engaged in discovery for eight months. They sought discovery from Root and received written responses and a fulsome document production. The Quantasy Defendants cannot now claim they want a stay of

discovery only after receiving fulsome discovery from Root in an effort to prevent Root from tracing the funds. This is especially true given that much of the focus of the current discovery is related to recently named defendant, Quantasy, LLC.

## IV. CONCLUSION

For the foregoing reasons, Root respectfully requests the Court deny the Quantasy Defendants' Motion to Quash Root's Subpoenas and to Stay Discovery.

DATED: December 6, 2023

    Respectfully submitted,

    */s/ William D. Kloss, Jr.*
    William D. Kloss, Jr. (0040854), Trial Attorney
    Elizabeth S. Alexander (0096401)
    Grace E. Saalman (0101603)
    VORYS, SATER, SEYMOUR AND PEASE LLP
    52 East Gay Street, P.O. Box 1008
    Columbus, Ohio 43216-1008
    Phone: (614) 464-6360
    Fax: (614) 719-4807
    wdklossjr@vorys.com
    esalexander@vorys.com
    gesaalman@vorys.com

    Matthew L. Kutcher (IL Bar No. 6275320*)*
    COOLEY LLP *Admitted Pro Hac Vice*
    110 N. Wacker Drive Suite 4200
    Chicago, IL 60606
    Phone (312)-881-6500
    Fax (312)-881 6598
    mkutcher@cooley.com

    Kristine A. Forderer (CA Bar No. 278754)
    COOLEY LLP *Admitted Pro Hac Vice*
    3 Embarcadero Center
    San Francisco, CA 94111
    Phone (415) 693-2128
    kforderer@cooley.com

    *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served December 6, 2023, via CM/ECF upon all counsel of record for Quantasy & Associates, LLC, Quantasy, LLC and William Campbell, and via regular mail upon Paige McDaniel, Brinson Caleb Silver, Collateral Damage, LLC, and Eclipse Home Design, LLC as set forth below:

**Paige McDaniel**
5576 Alexanders Lake Rd.
Stockbridge, GA 30281

**Brinson Caleb Silver**
Butler County Jail
Attn. Brinson Caleb Silver
Inmate # 303850
705 Hanover Street
Hamilton, OH 45011

**Collateral Damage, LLC**
c/o Butler County Jail
Attn. Brinson Caleb Silver
Inmate # 303850
705 Hanover Street
Hamilton, OH 45011

**Eclipse Home Design, LLC**
Registered Agent: United States Corporation Agents, Inc.
651 N. Broad Street, Suite 201
Middletown, DE 19709

*/s/ William D. Kloss, Jr.*
William D. Kloss, Jr. (0040854)

*Attorney for Plaintiffs*