**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION**

| | |
|---|---|
| **ROOT, INC.,** *et al.* | |
| *Plaintiffs,* | Case No. 2:23-cv-00512 |
| v. | Judge Sarah D. Morrison |
| **BRINSON CALEB SILVER,** *et al.*, | Magistrate Judge Elizabeth Preston Deavers |
| *Defendants.* | |

_____

**REPLY IN FURTHER SUPPORT OF
MIAMI 555'S MOTION TO LIFT LITIGATION INJUNCTION**

Non-party, Miami 555 LLC, ("Movant"), respectfully files its reply in further support of its Motion to Lift the Litigation Injunction [DE 191] (the "Motion"), and in support states:

As detailed in the Motion, the Movant is the plaintiff in a mortgage foreclosure action now pending in Florida state court. The Movant is in possession of a senior mortgage that is currently in default.[1] The loan made to Eclipse Home Design on June 24, 2022, in the amount of $2,275,000.00, is accruing at a per annum interest rate of 18%. For the reasons outlined in the Motion, the Court should lift the litigation injunction and allow the foreclosure action in Florida state court to proceed.

Both the Plaintiffs and the Receiver filed an opposition to the Movant's motion to lift the stay. [DE 195] and [DE 196]. This Reply is intended to respond to both responses.

---

[1] The Plaintiffs attempt to weaponize the Movant's non-mainstream status with insinuations about the timing of its licensing and note acquisition. [DE 195 at fn 2]. In fact, the Movant is a private lender who used private funds to purchase a loan, and whose funds are now in jeopardy.

**The Anti-Injunction Acts bars a stay in this action.**

The Movant previously detailed how none of the exceptions to the Anti-Injunction Act apply in this case. Neither the Plaintiffs' nor the Receiver's responses change the analysis. First and foremost, there is absolutely no support for the proposition that the Anti-Injunction Act itself does not apply in this case. The Receiver relies on *S.E.C. v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980), and states that blanket orders can be entered that prohibit non-parties from "commencing or continuing suit" even to the point of being unable to enforce a previously entered state judgment. [DE 196 at 8-9]. This reliance is misplaced, as the *Wencke* expressly found that the Anti-Injunction Act "does not apply to injunctions issued at the request of the United States or administrative agencies enforcing applicable federal law." *Id*. Here, there is no federal agency enforcing federal law, rather it is a private civil action. All of the other cases cited by the Receiver involve stays entered prior to the state court's acquisition of jurisdiction, and are inapplicable in this case. [DE 196 at 8-9].

Similarly, Plaintiffs contrive an argument that since Section 1983 civil rights lawsuits are "expressly authorized" by Congress and therefore an exception to the Anti-Injunction Act, the same is true of a civil RICO claim. [DE 195 at 6-7]. This completely misses the mark. Section 1983, as discussed in detail by the Supreme Court in the case cited by Plaintiffs, *Mitchum v. Foster*, 407 U.S. 225 (1972) "was enacted for the express purpose of 'enforc(ing) the Provisions of the Fourteenth Amendment." *Id. at* 238. "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law." This has nothing in common with a Civil RICO claim, which can also be brought under state law. In fact, the Plaintiffs correctly acknowledge that there is non-binding authority that has specifically found that RICO does not

meet the "expressly authorized by Congress" exception in an Anti-Injunction Act analysis. [DE 195 at fn 4]. The Plaintiffs are grasping at straws in an attempt to argue an exception to the Anti-Injunction Act, when it is clear none applies.

As for the contention made by both the Plaintiffs and the Receiver that this Court acquired jurisdiction over the Property when the complaint was first filed, this is simply incorrect. Even the *Wencke* court - the case cited by the Receiver as supportive authority on a different argument- noted:

> The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action. **The district court took control over the properties in question when it imposed the receivership and appointed Gould as receiver to manage those properties**.

*S.E.C. v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).

The filing of the complaint or the Court's Temporary Restraining Order which "prohibited Defendants from transferring, selling, mortgaging, or otherwise encumbering the Property" simply cannot establish the date this Court acquired rem or quasi-in rem jurisdiction. [DE 30]. Prohibiting <u>Defendants</u> from taking an action regarding a property is not asserting jurisdiction over the <u>Property</u>, and it is telling that Plaintiffs' only citation is to a 1935 Supreme Court case that pre-dates modern Anti-Injunction Act jurisprudence. *See generally* Andrea R. Lucas, *Balancing Comity with the Protection of Preclusion: The Scope of the Relitigation Exception to the Anti-Injunction Act*, 97 Va. L. Rev. 1475, 1481 (2011) ("In the wake of the controversial *Toucey* decision, Congress revised the Anti-Injunction Act in 1948 to include three categories of exceptions to the injunction bar: federal courts may issue injunctions against state court proceedings "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."). Perhaps even more telling is Plaintiffs'

glossing over of the fact that the lis pendens in this case was not entered until May 12, 2023, (which is after the date the State Court was filed) and pretending it didn't mark the day this Court attempted to take control of the Property, but instead "reaffirmed" jurisdiction." [DE 195 at 5-6].

In short, since the State Action was pending at the time of the litigation order in this case, the State Action obtained jurisdiction over the Property first and cannot be enjoined by this Court. The movant relies upon the slew of authority for this argument already cited in the motion to lift the stay.

### The Stay should be lifted on the merits.

Regrettably, the Receiver makes unfounded personal attacks against the Movant in its Response by accusing it and its representative of making statements to this Court that are "both false and misleading and contradicted by previous sworn statements" specifically as to the amount of the debt versus the value of the Property. But this is not true.

First, based on the referenced sworn statement and adding for interest, the Receiver calculates that the total amount of the debt is approximately $2.8 million. [DE 196 at 3-4]. This is supposed to prove the falsehood of the Movant's contention that the debt exceeds the value of the Property, which is $2.9 million as appraised by the city of Miami. However, perhaps deliberately excluded from the Receiver's direct quotation of the Movant's motion is the very important part of the statement: "which is well short of the total amount owed under the loan **for principle, default interest accrual, taxes, insurance, transaction costs, attorney's fees, and expenses**." [DE 191 at 2]. By not including the above portion of the statement and only accounting for a per diem interest increase, the Receiver pretends that the only additional debt that could possibly have been incurred during that time is interest, when that is not the case as reflected on the face of the Loan Documents.

The Receiver's attempt to establish that the Property is worth more than as assessed by the city of Miami is folly. Obviously, the opinions offered in the affidavit of a non-expert realtor has no evidentiary value, as it inadmissible opinion testimony from a lay witness. *See* Fed. R. Evid. 701. Even if the Court were to disregard the city of Miami's appraisal (which is factually the amount used for determination of property taxes), there is no basis to conclude that the Property is worth more than the outstanding debt owed to the Movant. The Loan used to purchase the Property was executed on June 24, 2022, and was for the amount of $2,275,000. The Receiver argues that a year and a half later the Property value jumped up over a million dollars while also continually noting that the Property is in need of repairs and renovations. [DE 196 at 2]; [DE 196 at 4-5]. This number simply isn't justified.

In any event, it is worth noting that both the Plaintiffs and the Receiver express dismay over the amount of interest and fees that the Loan Documents call for. [DE 195 at fn 2] and [DE 196 at 5]. But neither dispute that the debt is legitimate or owed to the movant. Contrary to their implications, the debt contractually owed to Movant is not usurious under the governing laws of the contracts. Moreover, it is because of the high interest and ever mounting fees and expenses that it is in the best interest of the Receivership Estate that the stay be lifted, to stop the hemorrhaging. By permitting the Movant to foreclose on the Property, the amount of the debt stops growing exponentially. Not allowing the Movant to do so ensures there will be no excess proceeds and will result in a detriment to the Receiver.

Additionally, both the Plaintiffs and the Receiver aver that the Movant is trying to obtain a windfall by getting a judgment amount that is significantly less than the Property's value, send the Property to a "distressed sheriff's sale," make a credit bid on the property, and then flip the Property for a profit. First and foremost, such a chain of events is merely speculative conjecture,

and there is no basis to assert that the Movant intends to make a credit bid and flip the property. Second, a "distressed sheriff's sale" is not something that even exists under Florida law,[2] so the hypothesis is actually impossible. What actually happens is the Property is placed up for public auction and investors have the opportunity to make bids. There is no distressed sale, and no reason to assume that the Property will sell less than for its value at auction -particularly with South Florida real estate market. If it truly is worth more than the judgment, there is likely to be a surplus, which the Receivership Estate would be entitled to. *See* Fla. Stat. § 45.032.

Neither the Plaintiffs nor the Receiver addressed the Movant's well-supported position that not lifting the stay would not preserve the status quo. Instead, the Plaintiffs attempt to shift focus to an unknown date in the future where the Property would be forfeited to the U.S. government as if such an event affects the authority of this Court at this juncture or whether a stay should be granted. [DE 195 at 8-9]. Also, the Movant filed its state foreclosure case well in advance of the plea agreement, and the accusation that the Movant is attempting to "quickly dispense of the Property prior to criminal forfeiture . . . contrary to the administration of justice" and federal law [DE 195 at 8] is wholly unfounded. Interestingly, however, the argument is irreconcilable with the Plaintiffs position that this Court obtained jurisdiction when the complaint was first filed, essentially saying that it cannot lift the stay now because the U.S. government will have jurisdiction over the property at some point in the future. This is a red herring and does not change the fact that the status quo as it is now must be preserved by this Court.

For the foregoing reasons, the non-party Movant, Miami 555 LLC, respectfully requests that the Court grant its Motion.

---

[2] Performance of a google search of the words "distressed sheriff's sale" and "Florida" literally pulls up one solitary result, which is the very quote from the response filed in this case by the Receiver.

Respectfully submitted,

By: */s/ James R. Leickly*
James R. Leickly (0038309)
Trial Attorney
400 South Fifth Street, Suite 200
Columbus, Ohio 43215
Telephone No. (614) 329-0133
James@Leicklylaw.com


By: */s/ Alexis Fields*
ALEXIS FIELDS
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone No. (954) 525-4100
Florida Bar Number: 95953
Fields@kolawyers.com
*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, a true and accurate copy of the foregoing was filed electronically. Notice of this filing has been sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

A copy was also sent by ordinary U.S. Mail, postage prepaid, to the following:

Paige McDaniel
5576 Alexanders Lake Road
Stockbridge, GA 30281

By: */s/ Alexis Fields*
　　ALEXIS FIELDS