## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **ROOT, INC.** *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | Judge Sarah D. Morrison |
| | ) | |
| *v.* | ) | Magistrate Judge Elizabeth Preston Deavers |
| | ) | |
| Brinson Caleb "BC" **SILVER**, *et al.* | ) | Case No. 2:23-cv-00512 |
| | ) | |
| *Defendants.* | ) | |

**RECEIVER'S FIFTH INTERIM REPORT, RECEIVERSHIP PLAN
AND APPLICATION FOR FEES AND EXPENSES OF RECEIVER AND
COUNSEL TO RECEIVER COVERING THE PERIOD
OCTOBER 1, 2023 THROUGH NOVEMBER 30, 2023**

In accordance with the requirements of this Court's *Order,* filed May 12, 2023 (ECF 99), *Order Appointing Receiver*, filed May 17, 2023 (ECF 101), and *Order Amending Order Appointing Receiver*, filed June 7, 2023 (ECF 120) (hereinafter collectively "Receiver Order"), Jerry E. Peer, Jr. ("Receiver"), has taken possession and/or control of all monetary and real property assets of Mr. Brinson Caleb Silver, Collateral Damage, LLC and Eclipse Home Design, LLC (hereinafter collectively "Defendants") known to Receiver, unless otherwise indicated herein.  Pursuant to the Receiver Order and 28 U.S.C. §§ 754, 959 and 1692, Rule 66 of the Federal Rules of Civil Procedure, Receiver has completed this Fifth Interim Report and Receivership Plan and accompanying schedules ("Fifth Report"), which covers the period from October 1, 2023 through and including November 30, 2023 (the "Fifth Interim Period").

### I.      INTRODUCTION

By way of the Receiver Order, Receiver was appointed to assume complete control and oversight of all monetary and real property assets of Defendants. Since the filing of the Fourth Report, Receiver has continued his efforts to identify and take possession of all monetary and real property assets of Defendants.  At this time, Receiver is unaware of any assets of Defendants that

are not in Receiver's possession or under his control, with the exception of a bank account located in Jakarta, Indonesia, and another at Evolve Bank and Trust, which are addressed further below. During the Fifth Period, Receiver and his counsel have focused primarily on developing a comprehensive liquidation plan for the assets in Receiver's possession or under his control and executing on that plan.

### A. 19803 Vista Del Otero, Ramona, California 92065 ("Ramona").

Receiver engaged Gryphon Realty for the public sale of the Ramona California home, which concluded on October 18, 2023 with a high bid of $1,360,300. Subsequent thereto, Receiver submitted to this Court a motion to confirm the public sale of the Ramona property (ECF 177), and this Court has granted Receiver's motion (ECF 188). This sale closed on December 11, 2023 and the net proceeds of sale, in the amount of $77,578.95, were deposited with Receiver. A copy of the Settlement Statement is attached hereto as "**Exhibit A**."

### B. 9125 North Bayshore Dr., Miami Shores, Florida 33138 ("Bayshore").

Receiver has several updates as to the Florida property located at 9125 North Bayshore Dr., Miami Shores, Florida 33138. As mentioned below, Miami 555, LLC, the current mortgage holder for the Bayshore property, filed a foreclosure action in Florida State court. Receiver engaged Florida local counsel to represent Receiver and successfully secured a stay of the foreclosure action due to this Court's Order Appointing Receiver. Notwithstanding the foregoing, during the Fifth Period, Miami 555 filed its Motion to Lift the Litigation Stay in hopes of moving forward with the foreclosure of the property. Receiver and Plaintiff have opposed Miami 555's motion for the reasons stated therein.

As this Court is aware, Receiver negotiated and filed his Motion to Employ Serhant and Marco Tiné, who specializes in properties the same or similar to the Bayshore property (ECF 178), which was granted by this Court (ECF 189). Receiver plans to advertise the Bayshore property

for sale while at the same time proceeding with renovations at the property. Receiver has obtained a quote from KabCo Kitchens for the restoration of the Bayshore property. In the coming weeks, Receiver anticipates filing a motion to recommend performing the work necessary for the renovation at the Bayshore property. It is currently estimated that the Bayshore property may sell between $3,900,000 and $5,500,000, depending on the progress of renovations at the time of contract.

### C. 2543 Walnut Ave., Venice, California 90291 ("Walnut").

This property, located in Venice, California, is expected to be offered for sale by and through an auction listing with terms similar to the Ramona, California sale. In the coming weeks, Receiver will be filing a motion to engage an auctioneer for the sale of Walnut. Receiver believes that equity remains in the Walnut property and anticipates that the eventual sale of Walnut will yield additional monies for the receivership estate.

### D. 8331 Bleriot Ave., Los Angeles, California 90045 ("Bleriot").

Receiver has been in communication with the owner of 8331 Bleriot, Los Angeles, California, which was previously leased by Mr. Silver. Located therein is the personal property of Mr. Silver. Receiver and his counsel have inspected the property and do not currently believe the personal property to be of significant value as confirmed by several professionals who have reviewed the personal property items. As such, Receiver has determined that such items have no value and that it is in the best interest of the estate to abandon the same. To this end, Receiver has filed a motion to abandon certain personal property at Bleriot.

### E. 2018 Range Rover and 2017 Mercedes GLE350.

As mentioned in the Fourth Report, Receiver has taken possession of a 2019 Range Rover owned and driven by Mr. Silver. Further investigation has revealed that the title to this Range Rover is encumbered by a loan through Ally bank, the delinquent payoff amount of which exceeds

the value of the vehicle. As such, Receiver has determined to abandon it back to the bank. Receiver has filed a motion to abandon the Range Rover and will coordinate with the lender for its orderly disposition.

Additionally, Receiver has also taken possession of the 2018 Mercedes GLE350, which is owned by Mr. Silver and was driven by Ms. Laurie Mannette. Receiver has researched the value of the Mercedes and engaged in negotiations with prospective buyers. In light of its present condition and based upon its year, make, model, and miles, Receiver has determined the Mercedes to be worth approximately $16,000 - $18,000. Receiver has received an offer to purchase the vehicle for $14,200.00. A motion to sell the Mercedes at a private sale free and clear of any and all interests, liens, claims, and encumbrances has been filed for this Court's consideration.

### F. Other Assets.

On September 15, 2023, this Court approved Receiver's motion to sell a certain plane dock owned by Defendant. This transaction is now complete, and the proceeds from this sale have been deposited into the receivership estate account.

As mentioned above, at this time, the only known asset not currently in the possession or control of Receiver is the bank account located in Jakarta, Indonesia and another at Evolve Bank and Trust. Mr. Silver has represented that the funds in these accounts have been exhausted, however, Receiver believes there may be significant funds deposited into these accounts and has requested that Defendants provide the information necessary to take control of the balance of that account, or to confirm that these accounts have indeed been exhausted. In addition, Receiver has recently taken possession of Mr. Silver's laptop computer and mobile phone. Receiver has engaged an IT professional to create an image of each device and review the information to assist with the collection of assets and/or information useful to Receiver.

### II.    RECEIVERSHIP PLAN

This Fifth Report will set forth (1) Receiver's intentions moving forward with regard to both identifying and taking control of assets as well as liquidating assets of value; (2) a statement of assets in Receiver's possession or under his control; (3) anticipated transactional costs to be incurred; (4) anticipated duration of the administration of this estate; (5) engagement of professionals to carry out Receiver's responsibilities; (6) estimated date by which an appraisal and sale by Receiver can occur and whether it will be public and/or private sales of the real property; and (7) any litigation or administrative proceedings that are underway or anticipated.

1.    Receiver's Goal/Expectations For Administration.

During the Fifth Interim Period, Receiver and his counsel have devoted efforts to formulating a liquidation plan for the assets in Receiver's possession or under his control.  As mentioned above, Receiver has sold the sale of the Ramona California property and expects to be listing the Walnut property within the next 30 days.  As for the Bayshore property, Receiver has determined that listing the property for immediate sale, along with moving forward with renovations is in the best interest of the estate.  In the coming weeks, Receiver anticipates filing a motion recommending performing the work necessary for the renovation at the Bayshore property and engaging a local realtor for the listing of this property.

2.    Statement of Assets.

At this time, Receiver has not identified any new assets of the estate that have not been previously reported to this Court and the parties.  As of November 30, 2023, Receiver currently has $380,036.82 on deposit.  A copy of Receiver's account register reflecting that amount (minus an uncleared check), as well as the October 2023 and November 2023 Huntington National Bank statements are attached hereto as "**Exhibit B.**"

3.    Anticipated Transactional Costs and Administrative Expenses.

It is difficult for Receiver to project the anticipated transactional and administrative costs

of this estate. While certain expenses are customary and expected, such as administrative fees, utilities, insurance, and other related operating expenses, costs are highly variable and may fluctuate greatly. Receiver expects to incur certain fees, commissions, and expenses associated with the liquidation of the assets and further administration of the estate. The anticipated costs will also depend greatly on success in taking control of the real estate and liquidating the assets in a cost-efficient manner. Receiver further requests an allowance of $2,500 per month for related ongoing administrative expenses.

4.       Duration of this Receivership.

Based upon this plan and Receiver's initial research, it is estimated that the duration of this receivership estate is six (6) months or longer. This estimated duration is largely dependent upon the success of Receiver to identify and take possession of additional assets, negotiating a proposed sale of the respective assets, and the approval of any such sale by this Court.

5.       Engagement of Professionals.

Receiver has engaged in negotiations with property managers in both Florida and California to assist with securing and maintaining the respective properties until sold. In addition, subject to this Court's approval, Receiver has engaged legal counsel in each state to address pending litigation as well as bringing actions for eviction, if necessary. Lastly, Receiver has and expects to engage appraisers, real estate brokers and/or auctioneers to assist with selling the properties. Any such engagement(s) will be subject to this Court's prior approval.

6.       Estimated Date of Appraisal and Sale.

In an effort to reduce costs and for the time being, Receiver is presently relying on valuation information previously provided by Plaintiff and value estimates provided by real estate brokers and managers. Should Receiver determine at a later date that an appraisal or other valuation is necessary for the properties, Receiver will immediately obtain such appraisal and

provide same to the Court and parties. Receiver is not including valuation information in this Fifth Interim Report in an effort not to publicly disclose same to any potentially interested buyers. Receiver will provide all information in its possession to the Court or any party upon request.

Notwithstanding the above, due to the nature of Defendants' business, it is difficult for Receiver to estimate at this time how long it may take to receive an offer for the real estate and any other assets not sold at public sale.

    7.    Litigation and Administrative Proceedings.

Receiver reports that at this time he is only aware of a pending foreclosure action filed in Dade County, Florida against the Bayshore Drive property. That case has now been stayed. Receiver has also learned of the eviction action discussed above and has contacted counsel for the Plaintiff to come to an agreement that provides the Plaintiff with the possession of the property while also securing the personal property located therein. Should any additional proceedings be initiated or discovered, Receiver will immediately file a Suggestion of Stay, pursuant to the terms of this Court's Receiver Order.

## III.    CLAIMS

Receiver has identified various creditors/claimants of Defendants. Receiver has provided notice of the receivership to all known creditors/claimants of Defendants for which Receiver has valid addresses. As claims are received, a creditor matrix will be provided with subsequent interim reports, identifying the claimant and amount of each claim. Receiver notes for the Court no independent analysis or review of the validity or allowance of such claims will be undertaken by Receiver until assets of the receivership estates are sold, at which time any claims will be reviewed and a recommendation as to the treatment of those claims will be submitted by Receiver.

## IV.    FEES AND EXPENSES

    1.    Receiver Fees and Expenses.

As required by the Receiver Order, Receiver is making application to the Court for interim allowance of compensation and reimbursement of out-of-pocket expenses. Please note that while Mr. Jerry E. Peer, Jr. was appointed as Receiver, due to the volume of work necessary, both Mr. Gregory S. Peterson and Mr. Istvan Gajary have performed certain services and billed that time at the Receiver rate of $150 per hour rather than the counsel rate of $250 per hour to assist with controlling the costs of administration. A detailed summary of activity for Receiver is attached hereto as "**Exhibit C**". Receiver requests allowance and payment of interim compensation and expenses in the amount of $8,775.00 to compensate Receiver for the hours expended and expenses incurred during the Fifth Interim Period.

2. Peterson Conners LLP Fees and Expenses.

Pursuant to the Receiver Order, Receiver employed the services of Mr. Peer, Mr. Peterson, and Mr. Gajary of Peterson Conners LLP (collectively "PetersonConners") as its legal counsel. Receiver requests interim allowance and payment of compensation to PetersonConners in the amount of $41,962.50 for services rendered to Receiver and $120.64 for expenses incurred during the Fifth Interim Period. Attached hereto as "**Exhibit D**" is the itemization setting forth the breakdown of time expended and costs advanced by PetersonConners during the Fifth Interim Period.

3. Dickinson Wright PLLC Fees and Expenses.

Pursuant to the Receiver Order, Receiver employed the services of Dickinson Wright PLLC ("Dickinson") as its legal counsel in relation to the litigation pending in Florida. Receiver requests interim allowance and payment of compensation to PetersonConners in the amount of $15,140.50 for services rendered to Receiver. Attached hereto as "**Exhibit E**" is the itemization setting forth the breakdown of time expended and costs advanced by Dickinson during its engagement by Receiver.

## V.        CONCLUSION

Receiver respectfully submits this Fifth Report and further respectfully requests that this

Fifth Report and Receiver's Fifth Interim Application for Allowance and Payment of Fees and

Reimbursement of Expenses be approved.

Respectfully submitted,

**PETERSON CONNERS LLP**


 /s/  Istvan Gajary
GREGORY S. PETERSON (0061915)
JERRY E. PEER, JR. (0075128)
ISTVAN GAJARY (0089084)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
Telephone: (614) 365-7000
Facsimile: (614) 220-0197
E-mail:  gpeterson@petersonconners.com
         jpeer@petersonconners.com
         igajary@petersonconners.com
*Counsel for Receiver, Jerry E. Peer, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed electronically on this 13th day of December, 2023 with the Clerk of Court using the CM/ECF system. Service will be made through the Court's CM/ECF system on all parties and attorneys so registered, and all parties may access this filing through the Court's system.

A copy was also sent by regular U.S.P.S. mail to the following:

BRINSON CALEB SILVER
BUTLER COUNTY JAIL
Inmate No. 303850
705 Hanover Street
Hamilton, Ohio 45011

COLLATERAL DAMAGE, LLC
c/o BRINSON CALEB SILVER
BUTLER COUNTY JAIL
Inmate No. 303850
705 Hanover Street
Hamilton, Ohio 45011

ECLIPSE HOME DESIGN, LLC
c/o BRINSON CALEB SILVER
BUTLER COUNTY JAIL
Inmate No. 303850
705 Hanover Street
Hamilton, Ohio 45011

Paige McDaniel
5576 Alexanders Lake Rd.
Stockbridge, Georgia 30281

 /s/ Istvan Gajary
ISTVAN GAJARY  (0089084)



**coastal first escrow**

1217 Camino Del Mar
Del Mar, CA 92014

Phone: (858) 481-5128
Fax: (858) 430-5822

Prepared by: Rosa Vargas

### SELLER'S FINAL SETTLEMENT STATEMENT

| | | |
|---|---|---|
| **PROPERTY:** | 19803 Vista Del Otero<br>Ramona, CA 92065 | **DATE:** December 12, 2023 |
| **SELLER:** | | **CLOSING DATE:** December 11, 2023<br>**ESCROW NO.:** 022124-RV |
| | Eclipse Home Design, LLC | |

| | DEBITS | CREDITS |
|---|---|---|
| **CONSIDERATION** | | |
| Total Consideration | | 1,496,330.00 |
| **PAYOFF CHARGES - NewRez** | | |
| **[Total Payoff $1,268,583.98]** | | |
| Principal Balance | 1,110,000.00 | |
| Interest on Principal Balance | 82,243.90 | |
| Interest on Principal Balance | | 516.98 |
| Recording Fee | 184.00 | |
| Fees | 6,808.99 | |
| Prepayment Penalty | 55,500.00 | |
| Funds owed by Borrower | 14,403.40 | |
| Funds owed to Borrower | | 39.33 |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $9,192.62/semi-annually from 12/11/2023 to 01/01/2024 | | 1,021.40 |
| Highland Hills Estates Association, Inc. at $1,000.00/annually from 12/11/2023 to 07/01/2024 | | 555.56 |
| **COMMISSION CHARGES** | | |
| Coastal Premier Properties | 54,412.00 | |
| Gryphon USA | 81,618.00 | |
| **H.O.A./MANAGEMENT** | | |
| 2023 Annual Contribution to Highland Hills Estates Association, Inc. | 1,000.00 | |
| **TITLE/TAXES/RECORDING CHARGES - Chicago Title** | | |
| Recording Certified Court Order | 41.00 | |
| Transfer Tax - County to San Diego County | 1,646.15 | |
| 1st Half Property Tax 2023-24 to San Diego County Tax Collector | 10,111.88 | |
| **ESCROW CHARGES - Coastal First Escrow** | | |
| Title - Escrow Fee | 2,870.00 | |
| Title - FTB Processing Fee | 45.00 | |
| **Net Proceeds** | 77,578.95 | |
| **TOTAL** | $ 1,498,463.27 | $ 1,498,463.27 |

### SAVE THIS STATEMENT FOR INCOME TAX PURPOSES

**Exhibit A**

# Huntington National Bank

**Peterson Conners LLP**
ATTORNEYS AND
COUNSELORS AT LAW

| Type | Date | Description of transaction | Cleared Y/N | Debit (-) | Credit (+) | Balance |
|------|------|---------------------------|-------------|-----------|------------|---------|
| wire | 5/23/23 | 13105 Biscayne closing proceeds | Y | | $570,811.34 | $570,811.34 |
| | 5/31/23 | Interest | Y | | $0.93 | $570,812.27 |
| fee | 6/15/23 | Incoming Wire Fee | Y | $18.00 | | $570,794.27 |
| fee | 6/15/23 | monthly fee, *waived* | Y | $40.00 | $40.00 | $570,794.27 |
| | 6/30/23 | Interest | Y | | $14.08 | $570,808.35 |
| 1001 | 7/11/23 | Peterson Conners LLP | Y | $77,574.02 | | $493,234.33 |
| 1002 | 7/20/23 | Kristin Hess, AC reimb. | Y | $2,788.00 | | $490,446.33 |
| dep | 7/24/23 | Shellpoint funds | Y | | $16,513.89 | $506,960.22 |
| 1003 | 7/27/23 | Calif. Auto. Ins. Co., 2543 Walnut Ave prem. | Y | $1,260.15 | | $505,700.07 |
| | 7/31/23 | Interest | Y | | $13.28 | $505,713.35 |
| 1004 | 8/3/23 | *void check* | – | $0.00 | $0.00 | $505,713.35 |
| 1005 | 8/3/23 | Daniel's Landscaping, 19803 Vista Del Otero | Y | $2,250.00 | | $503,463.35 |
| 1006 | 8/15/23 | Peterson Conners LLP | Y | $67,427.31 | | $436,036.04 |
| dep | 8/29/23 | Wave Runner sale proceeds | Y | | $10,000.00 | $446,036.04 |
| | 8/31/23 | interest | Y | | $11.95 | $446,047.99 |
| wire | 9/20/23 | Gryphon USA, Ltd. Ramona marketing advance | Y | $12,126.00 | | $433,921.99 |
| | 9/29/23 | interest | Y | | $10.89 | $433,932.88 |
| 1007 | 10/3/23 | Peterson Conners LLP | Y | $28,731.22 | | $405,201.66 |
| 1008 | 10/3/23 | Hunt Ortman Palffy Nieves Inv. 102103 | Y | $901.87 | | $404,299.79 |
| 1009 | 10/3/23 | Dickinson Wright PLLC Inv. 1846072 | Y | $17,419.31 | | $386,880.48 |
| fees | 10/16/23 | wire and service fees *partially waived* | Y | $90.00 | $40.00 | $386,830.48 |
| 1010 | 10/17/2023 | Daniel's Landscaping, 19803 Vista Del Otero | Y | $1,175.00 | | $385,655.48 |
| dep | 10/27/23 | ICON Aircraft, plane dock sale | Y | | $13,000.00 | $398,655.48 |
| 1011 | 10/31/23 | Peterson Conners LLP | Y | $14,915.61 | | $383,739.87 |
| | 10/31/23 | interest | Y | | $10.01 | $383,749.88 |
| 1012 | 11/2/23 | Liquidation Partners, 19803 Vista Del Otero | Y | $1,700.00 | | $382,049.88 |
| 1013 | 11/14/23 | Jimmy's Pool Service, Inv 16, 2543 Walnut | Y | $500.00 | | $381,549.88 |
| 1014 | 11/14/23 | Daniel's Landscaping, 19803 Vista Del Otero | Y | $1,200.00 | | $380,349.88 |
| 1015 | 11/16/23 | CBG, Inv. 2430 1 of 2 | Y | $322.48 | | $380,027.40 |
| 1016 | 11/27/23 | CBG, Inv. 2430 2 of 2 | | $361.48 | | $379,665.92 |
| | 11/30/23 | interest | Y | | $9.42 | $379,675.34 |

**Exhibit B**

**THE HUNTINGTON NATIONAL BANK**
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558



PETERSON CONNERS LLP
545 METRO PL S
DUBLIN OH 43017-5316

*Have a Question or Concern?*

Stop by your nearest
Huntington office or
contact us at:

1-800-480-2001

www.huntington.com/
businessresources

---

## *Huntington Unlimited Plus Checking*                    *Account: -------4754*

| | |
|---|---|
| **Statement Activity From:** | |
| **10/01/23 to 10/31/23** | |
| | |
| Days in Statement Period 31 | |
| | |
| Average Ledger Balance* 392,862.50 | |
| Average Collected Balance* 392,862.50 | |
| * The above balances correspond to the | |
| service charge cycle for this account. | |

| | |
|---|---|
| **Beginning Balance** | **$433,932.88** |
| **Credits (+)** | **13,010.01** |
| Electronic Deposits | 13,000.00 |
| Interest Earned | 10.01 |
| **Debits (-)** | **61,968.01** |
| Regular Checks Paid | 61,968.01 |
| **Total Service Charges (-)** | **50.00** |
| **Ending Balance** | **$384,924.88** |

*Average Percentage Yield Earned this period 0.029%*

---

## *Other Credits (+)*                                           *Account:-------4754*

| Date | Amount | Description |
|---|---|---|
| 10/27 | 13,000.00 | ICON Aircraft EDI PYMNTS 014661 |
| 10/31 | 10.01 | INTEREST PAYMENT |

---

## *Checks (-)*                                                   *Account:-------4754*

| Date | Amount | Check # | Date | Amount | Check # |
|---|---|---|---|---|---|
| 10/03 | 28,731.22 | 1007 | 10/05 | 17,419.31 | 1009 |
| 10/11 | 901.87 | 1008 | 10/31 | 14,915.61 | 1011* |

(*) Indicates the prior sequentially numbered check(s) may have 1) been voided by you 2) not yet been presented 3) appeared on a previous
statement or 4) been included in a list of checks.

---

## *Service Charge Detail*                                       *Account:-------4754*

| Date | Service Charge (-) | Waives and Discounts (+) | Description |
|---|---|---|---|
| 10/16 | 50.00 | | WIRE TRANSFER FEES (OUTGOING) |
| 10/16 | 40.00 | | MONTHLY SERVICE FEE |
| 10/16 | | 40.00 | TOTAL RELATIONSHIP SERVICE FEE WAIVE |

---

Investments are offered through the Huntington Investment Company, Registered Investment Advisor, member FINRA/SIPC, a wholly-owned
subsidiary of Huntington Bancshares Inc.

The Huntington National Bank is Member FDIC. 🖐®, Huntington ® and 24-Hour Grace ® are federally registered service marks of Huntington
Bancshares Incorporated. The 24-Hour Grace® system and method is patented: US Pat. No. 8,364,581, 8,781,955, 10,475,118, and others
pending. ©2023 Huntington Bancshares Incorporated.



## *Service Charge Summary*           *Account:-------4754*

| | |
|---|---|
| **Previous Month Service Charges (-)** | **$90.00** |
| Credits - Previous Month Charges (+) | 40.00 |
| **Net Service Charges** | **$50.00** |
| **Total Service Charges (-)** | **$50.00** |

## *Balance Activity*           *Account:-------4754*

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 09/30 | 433,932.88 | 10/11 | 386,880.48 | 10/31 | 384,924.88 |
| 10/03 | 405,201.66 | 10/16 | 386,830.48 | | |
| 10/05 | 387,782.35 | 10/27 | 399,830.48 | | |

---

**In the Event of Errors or Questions Concerning Electronic Fund Transfers** (electronic deposits, withdrawals, transfers, payments, or purchases), please call either 1-614-480-2001 or call toll free 1-800-480-2001, or write to The Huntington National Bank Research - EA4W61, P.O. Box 1558, Columbus, Ohio 43216 as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic fund transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name, your business's name (if appropriate) and the Huntington account number (if any).
2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error. We will investigate your complaint or question and will correct any error promptly.

**Verification of Electronic Deposits** If you authorized someone to make regular electronic fund transfers of money to your account at least once every sixty days, you can find out whether or not the deposit has been received by us, call either 1-614-480-2001 or call toll free 1-800-480-2001.

**Balancing Your Statement** - For your convenience, a balancing page is available on our web site https://www.huntington.com/pdf/balancing.pdf and also available on Huntington Business Online.



**IMPORTANT INFORMATION ABOUT YOUR TREASURY MANAGEMENT SERVICES AGREEMENT**

If you have Treasury Management Services through Business Online, (e.g., Account Reconcilement, Automated Clearing House ("ACH"), Automated Sweep, Business Security Suite, Cash Deposit and Fulfillment, Controlled Disbursement, eBill Present & Pay, Electronic Deposit, Information Reporting, Integrated Payables, Lockbox Services, Wire Transfer, Zero Balance Accounting, etc.) please know that unless otherwise agreed upon, changes have been made to the Treasury Management Services Agreement. A complete copy of your updated and restated agreement effective January 1, 2024 can be viewed at www.huntington.com/TMServiceAgreement.

Changes to the Treasury Management Services Agreement (the "Agreement") are as follows:

1. Page 1: The following paragraph has been added just above the last paragraph, "In order to limit risk exposures for you and us, we may institute or modify exposure limit parameters from time to time without notice, unless required by law. Examples of limiting exposures include setting limits based on frequency or dollar amount (increase or decrease) limits for particular transactions or payment rails, modifying dual authorization requirements, etc."

2. PART I. GENERAL TERMS AND CONDITIONS.

   In Section 1, the third sentence is restated (additional/modified language italicized) as, "Our Business Deposit *Account Agreement* and deposit account disclosures (i.e., Funds Availability Schedule) governing your Accounts (**"Account Rules"**) shall continue to apply. In the event of any direct conflict between this Agreement and the Account Rules, the terms of this Agreement shall govern, but only to the extent reasonably necessary to resolve the conflict."

   In Section 5, all uses of "Master User" have been changed to "Administrator".

   A new Section 6 has been added and the remaining sections have been renumbered. The new Section 6 states, "**Section 6. User Administration and Alerts.** You acknowledge and agree that you are responsible for managing Authorized Users including but not limited to adding, deleting or updating Master and Authorized Users (each a **"User"**), User profiles, unlocking passwords, determining appropriate service permissions, settings, and which accounts should be accessible to specific services and/or functions for each User."

   You may elect to receive notifications from us (**"Alerts"**) for applicable services via email or other Communication Method offered by us. Since Alerts will be sent over the internet, you may not receive Alerts in a timely manner due to internet traffic. You are responsible for ensuring Users are entitled for appropriate Alerts; removing Alerts from Users as appropriate; and ensuring appropriate Alerts are established for Users as part of administrative or User changes."

   In the renumbered Section 9, the second paragraph is restated (additional/modified language italicized) as, "You also agree to reimburse us for any and all fees, penalties, fines, costs or the like assessed against us by the National Automated Clearing House Association ("Nacha") for any violation of the ACH Rules, *Electronic Check Clearing House Organization ("ECCHO") rules, or any other payment system rules* or by any Governmental Authority with jurisdiction over us, that is incurred by us due to actions we take under this Agreement as instructed by you."

   In the renumbered Section 10, the third sentence of the first paragraph is restated (additional/modified language italicized) as "We shall not be responsible for your acts or omissions, those of your vendor (as defined in Section *23* of this Part), agent or employee, any other party providing services to you, or any other person or entity, including, without limitation, Fed Wire, SWIFT, Telex, any automated clearing house, or any other financial institution."

   In the renumbered Section 10, the fifth sentence of the first paragraph is restated (additional/modified language italicized) as, "We shall not be responsible for any charges imposed by any Vendor or other third party not retained by us as our Processor (as defined in Section *24* of this part)."

   In the renumbered Section 11, the paragraph is restated (additional/modified language italicized) as, "Section 11. Disclaimer of Warranties. EXCEPT AS PROVIDED IN ANY APPLICABLE SERVICE DESCRIPTION, WE MAKE NO REPRESENTATIONS, WARRANTIES, EXPRESS OR IMPLIED, IN LAW OR IN FACT, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR



A PARTICULAR PURPOSE WITH RESPECT TO THE SERVICES OR *ANY SOFTWARE OR* EQUIPMENT USED IN CONNECTION WITH THE SERVICES TO BE PROVIDED BY US. NO DESCRIPTIONS OR SPECIFICATIONS, WHETHER OR NOT INCORPORATED INTO THIS AGREEMENT, NO PROVISION OF MARKETING OR SALES MATERIALS AND NO STATEMENT MADE BY ANY SALES REPRESENTATIVE IN CONNECTION WITH THE SERVICES SHALL CONSTITUTE REPRESENTATIONS AND WARRANTIES OF ANY KIND."

In the renumbered Section 13, the second sentence is restated (additional/modified language italicized) as, "In addition, we may terminate this Agreement, or suspend or terminate any Service *or portion of such Service,* immediately without notice (or immediately with notice if legally required), in the event (i) of fraud, suspected fraud, suspected illegal or suspicious activity, safety and soundness considerations, bankruptcy, receivership, merger, business necessity, regulatory compliance, administrative order, judicial order, or breach of this Agreement; (ii) in our good faith opinion your financial condition has become impaired or deteriorated; *(iii) any actual or reasonably perceived breach of any Applicable law (as defined in Part XVII), including the ACH Rules (or any other payment rules), (iv)* your non-use of the Service(s) for a period of six (6) months or more; *(v) your failure to respond to our request for information we reasonably require to provide the Service(s)* ; or *(vi)* your default on any agreement or instrument between you and us or our Affiliate, or from you in our favor or our Affiliate's favor, but we will use commercially reasonable efforts to provide notice after termination if permitted by Applicable Law."

In the renumbered Section 19, the last sentence of the second paragraph is restated (additional/modified language italicized) as, "Notwithstanding any terms in this Part to the contrary, any addition, deletion or change *(including Administrator(s))* to any Services requested by you must be submitted in a form acceptable to us, and no such requested addition, deletion or change will become operative or effective until we confirm to you that such addition, deletion or change has been implemented, which we agree to do within a reasonable period of time.

3. PART III: AUTOMATED CLEARING HOUSE ORIGINATION SERVICES.

In Section 4, the first paragraph beginning with the third sentence is restated (additional/modified language italicized) as, "You agree that any Entries or Payment Orders originated by you or your TPSP will be solely for your own account and not for the benefit of a third party, unless you are a *Third-Party* sender. You agree to be obligated and liable for any Payment Order submitted by you or by a TPSP on your behalf. The types of funds transfers that you wish to originate will be documented in our Implementation Documentation and must have our approval before you may use the ACH Services. If you are a *Third-Party* Sender, you agree to enter into a Third-Party Processing Agreement with us, in addition to this Agreement. Please note that we do not provide or support ACH Services to a *Third-Party* Sender which has an agreement with another *Third-Party* Sender to act on behalf of an Originator but does not have a direct agreement with us (a "nested *Third-Party* Sender")."

In Section 4(a)(f) the third sentence is restated (additional/modified language italicized) and a new fourth sentence is added as follows, "In the case of an On-Us *debit* Entry, we will debit, *if funds are available,* the account of the Receiver in the amount thereof on the effective date contained in the related Payment Order provided that the effective date is a Business Day. *In the case of an On-Us credit Entry, we will credit, as appropriate, the account of the Receiver in the amount thereof on the effective date (or up to two days in advance), contained in the related Payment Order provided that the effective date is a Business Day."*

In Section 4(a) there are new subsections (h), (i), and (j) as follows:

"(h) Additional Warranties for Origination of WEB Entries. If you are permitted to make WEB Entries, and you obtain authorization from a Receiver over the internet or a mobile device, you represent and warrant that: (a) you utilize a commercially reasonable fraudulent detection system to screen each WEB Entry; (b) employ commercially reasonable methods of authentication to verify the identity of the Receiver; (c) take commercially reasonable steps to verify that routing numbers are valid; and (d) conduct annual audits to ensure that the financial information you obtain from consumers is protected by security practices and procedures that include, at a minimum, adequate levels of: (i) physical security to protect against theft, tampering, or damage, (ii) personnel and access controls to protect against unauthorized access and use, and (iii) network security to ensure secure capture, storage, and distribution.

(i) TEL Entries. If you are permitted to make TEL Entries, you must make an audio recording of the consumer's oral authorization and/or provide the Receiver with written notice confirming the oral authorization prior to the Settlement Date of the Entry. At our request, you must provide a copy of the written notice or duplicate audio



recording of the oral authorization for our use or for the use of the RDFI requesting the information. The authorization must be readily identifiable as an authorization and its terms must be clear and readily understandable. The authorization must contain the following minimum information: (i) the date on or after which the ACH debit to the Receiver's account will occur; (ii) the amount of the entry; (iii) the Receiver's name; (iv) a telephone number for Receiver inquiries that is answered during normal business hours; (v) the date of the Receiver's oral authorization; (vi) language that clearly states whether the authorization obtained from the Receiver is for a single entry, recurring entries, or one or more subsequent entries initiated under the terms of a standing authorization and (vii) language that instructs the Receiver how to revoke the authorization directly with the Originator.

(j) ARC, BOC, POP and RCK Entries. If you are permitted to make ARC, BOC, POP, and RCK entries, authorization consists of: (i) notice from you to the Receiver, before receipt of Receiver's source document or the item, that your receipt of the source document (for ARC, BOC, AND POP entries) or item (for RCK entries) constitutes authorization of the ACH debit entry in accordance with the terms of the source document or item; and (ii) your receipt of the source document or item."

In Section 10 the second to last sentence is restated (additional/modified language italicized) as, "You agree to promptly reflect such changes in your own records *and* pay the applicable fee we charge for such repair."

## 4. PART IV: AUTOMATED SWEEP SERVICES

All uses of "FDIC Insured" have been deleted.

## 5. PART VI: CASH DEPOSIT AND FULFILLMENT SERVICES

Section 1.B. is restated (additional/modified language italicized) as, "Orders. We may provide an Order to anyone who purports to be an agent of the Vendor or you. *Funds in the amount of your Order must be available in your Account prior to the Order being prepared.* Your Account will be debited for the amount of the Order on the day the Order is packed for release to the Vendor. Orders placed for delivery on Saturday, Sunday, or Monday are debited from your Account on the previous Business Day. You must place Orders by the time designated by us from time to time to receive next Business Day delivery. If you do not meet that deadline, we may not process the Order until the following Business Day. Where you contract directly with a Vendor, we are not liable for any loss or delay in delivery of Orders and are not a guarantor of any delivery day or time. We may refuse to process an Order for any reason at any time; including, but not limited to, insufficient funds in your Account.'

The second sentence of Section 3 is restated (additional/modified language italicized) and a new fourth and fifth sentences are added as, "After expiration of the Initial Service Term, your obligation for SafeCash Manager services shall renew automatically each year (**"Successive Service Term"**) until you or we terminate it. You agree to provide at least thirty (30) days prior notice of your intent to terminate the Initial Service Term. If you choose to terminate after the Initial Service Term without providing thirty (30) days advance notice, you are obligated to pay the amount of any fixed monthly fees of the remaining Successive Service Term."

## 6. PART VIII: EBILL PRESENT & PAY

In Section 10 all uses of "Master User" have been changed to "Administrator".

## 7. PART IX: ELECTRONIC DEPOSIT SERVICES

The first two sentences of Section 1.D. is restated (additional/modified language italicized) as "**RDC Scanner.** *Upon your request, we* will provide one scanner (including the manufacturer's warranty) for each location. *If* a scanner breaks down or otherwise becomes obsolete or unusable, you will be responsible for the cost of a replacement scanner."

The last sentence of Section 1.D. is restated (additional/modified language italicized) as, "Failure to comply with this *Section* shall be a material breach of this Agreement."

## 8. PART XIII: INTEGRATED PAYABLES SERVICES



The Integrated Payables Service has been modified to allow use of the Service without Commercial Credit Card resulting in substantive changes to this Part. This Part is restated (additional/modified language italicized) as follows:

"Section 1. Description of Services. Our Integrated Payables Services (the "Service") *disburses your payments via one or more selected payment methods and* aggregates your treasury management payables types *into one user interface.* Your Commercial Card Account Agreement and this Agreement govern the use of this Service. *If you elect to use the Service without Commercial Credit Card, this Agreement and its applicable Parts (general Treasury Management Services including Automated Clearing House ("ACH") Origination, Business Security Suite and Real Time Payment ("RTP") Services) and this Part XII govern the use of the Integrated Payables Services.*

Section 2. Our Obligations. Upon your direction to make a payment, we will initiate payment to your payee via *check*, ACH, or RTP.

*We shall process the ACH and RTP payments in accordance with this Agreement. When we print and mail checks to payees, we will use the data supplied by Company. Checks will be printed on typical commercial check stock in the commercial check layout and will be mailed in standard #10 business envelopes. Huntington will be responsible for the print quality of the checks. Huntington will not be responsible for the integrity or accuracy of the data received from you in order to generate the checks. If Huntington determines that any address provided is invalid or not in the proper format, the payment data will be returned for address verification and correction. If the quality of the output renders the checks to be non-negotiable, our sole obligation is to (i) reprint and/or re-mail the checks at no additional cost to you; or, (ii) reimburse you for any documented out of pocket costs associated with the error. We are not responsible for and shall not replace damaged mailings if such damage occurs after receipt of the mailings by the USPS or its consolidators.*

*All payees may be compared against the Office of Foreign Asset Control's (OFAC) Specially Designated Nationals ("SDN") list or any other list compiled by OFAC or any United States government authority (taken together as "Government Regulators"). Huntington may stop payment on any check printed in which a payee is a match or a potential match to a person or entity named in the SDN list or any other list compiled by government regulators. We will notify you in the event Huntington stops payment on a check. All mailings will be sent by First Class mail, when applicable, at a discount postal rate. We may unilaterally modify the fees charged hereunder at any time to account for postage rate increases as announced by the United States Postal service.*

Section 3. Your Obligations. *You shall transmit payment instructions and data using our Web Portal. The form and format of the data shall conform to those technical specifications used by us to perform the Services and provided to Company. We shall have final approval on the form and format of all materials to be produced hereunder to assure conformity and compatibility with our software and equipment.*

In order to process check payments, a test payment file, digital signature, and additional information must be completed and received by us at least 30 days prior to the requested production date in order to perform programming and set up.

*Business Security Suite and its check positive pay Service shall be used in conjunction with check issuance. A "checks issued" file will be uploaded to the Web Portal. You will be responsible for reviewing and dispositioning any exceptions identified by the check positive pay service.*

9. PART XIII: LOCKBOX SERVICES

A new paragraph has been added to the end of Section 1 as follows, "*If you elect to set up your lockbox to receive, process and scan checks and enclosures at your location ("Remote Lockbox"), you are responsible for obtaining, installing, maintaining and operating a scanner that meets our requirements.*"

10. PART XVII: GLOSSARY OF TERMS

"Master User" has been replaced with "Administrator" and the definition is restated (additional/modified language italicized) as, "*means the master user that you have designated in accordance with our Security Procedures for controlling access to the Services.*"

All uses of "Master User" have been changed to "Administrator".

**THE HUNTINGTON NATIONAL BANK**
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558



PETERSON CONNERS LLP
545 METRO PL S
DUBLIN OH 43017-5316

*Have a Question or Concern?*

Stop by your nearest
Huntington office or
contact us at:

1-800-480-2001

www.huntington.com/
businessresources

---

*Huntington Unlimited Plus Checking*       *Account: -------4754*

| | | | |
|---|---|---|---|
| **Statement Activity From:** | | Beginning Balance | **$384,924.88** |
| **11/01/23 to 11/30/23** | | Credits (+) | **9.42** |
| | | Interest Earned | 9.42 |
| Days in Statement Period | 30 | Debits (-) | **4,897.48** |
| | | Regular Checks Paid | 4,897.48 |
| Average Ledger Balance* | 381,979.05 | Total Service Charges (-) | **0.00** |
| Average Collected Balance* | 381,979.05 | Ending Balance | **$380,036.82** |
| * The above balances correspond to the service charge cycle for this account. | | | |

*Average Percentage Yield Earned this period 0.030%*

## *Other Credits* (+)       *Account:-------4754*

| Date | Amount | Description |
|---|---|---|
| 11/30 | 9.42 | INTEREST PAYMENT |

## *Checks* (-)       *Account:-------4754*

| Date | Amount | Check # | Date | Amount | Check # |
|---|---|---|---|---|---|
| 11/01 | 1,175.00 | 1010 | 11/28 | 1,200.00 | 1014 |
| 11/07 | 1,700.00 | 1012* | 11/21 | 322.48 | 1015 |
| 11/20 | 500.00 | 1013 | | | |

(*) Indicates the prior sequentially numbered check(s) may have 1) been voided by you 2) not yet been presented 3) appeared on a previous statement or 4) been included in a list of checks.

## *Service Charge Summary*       *Account:-------4754*

| | |
|---|---|
| **Previous Month Service Charges (-)** | **$0.00** |
| **Total Service Charges (-)** | **$0.00** |

---

Investments are offered through the Huntington Investment Company, Registered Investment Advisor, member FINRA/SIPC, a wholly-owned subsidiary of Huntington Bancshares Inc.

The Huntington National Bank is Member FDIC. ꟿ ®, Huntington ® and 24-Hour Grace ® are federally registered service marks of Huntington Bancshares Incorporated. The 24-Hour Grace ® system and method is patented: US Pat. No. 8,364,581, 8,781,955, 10,475,118, and others pending. ©2023 Huntington Bancshares Incorporated.



## *Balance Activity*

*Account:-------4754*

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 10/31 | 384,924.88 | 11/20 | 381,549.88 | 11/30 | 380,036.82 |
| 11/01 | 383,749.88 | 11/21 | 381,227.40 | | |
| 11/07 | 382,049.88 | 11/28 | 380,027.40 | | |

**In the Event of Errors or Questions Concerning Electronic Fund Transfers** (electronic deposits, withdrawals, transfers, payments, or purchases), please call either 1-614-480-2001 or call toll free 1-800-480-2001, or write to The Huntington National Bank Research - EA4W61, P.O. Box 1558, Columbus, Ohio 43216 as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic fund transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

  1. Tell us your name, your business's name (if appropriate) and the Huntington account number (if any).

  2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.

  3. Tell us the dollar amount of the suspected error. We will investigate your complaint or question and will correct any error promptly.

**Verification of Electronic Deposits** If you authorized someone to make regular electronic fund transfers of money to your account at least once every sixty days, you can find out whether or not the deposit has been received by us, call either 1-614-480-2001 or call toll free 1-800-480-2001.

**Balancing Your Statement** - For your convenience, a balancing page is available on our web site https://www.huntington.com/pdf/balancing.pdf and also available on Huntington Business Online.



**IMPORTANT INFORMATION ABOUT YOUR TREASURY MANAGEMENT SERVICES AGREEMENT**

If you have Treasury Management Services through Business Online, (e.g., Account Reconcilement, Automated Clearing House ("ACH"), Automated Sweep, Business Security Suite, Cash Deposit and Fulfillment, Controlled Disbursement, eBill Present & Pay, Electronic Deposit, Information Reporting, Integrated Payables, Lockbox Services, Wire Transfer, Zero Balance Accounting, etc.) please know that unless otherwise agreed upon, changes have been made to the Treasury Management Services Agreement. A complete copy of your updated and restated agreement effective January 1, 2024 can be viewed at www.huntington.com/TMServiceAgreement.

Changes to the Treasury Management Services Agreement (the "Agreement") are as follows:

1. Page 1: The following paragraph has been added just above the last paragraph, "In order to limit risk exposures for you and us, we may institute or modify exposure limit parameters from time to time without notice, unless required by law. Examples of limiting exposures include setting limits based on frequency or dollar amount (increase or decrease) limits for particular transactions or payment rails, modifying dual authorization requirements, etc."

2. PART I. GENERAL TERMS AND CONDITIONS.

   In Section 1, the third sentence is restated (additional/modified language italicized) as, "Our Business Deposit *Account Agreement* and deposit account disclosures (i.e., Funds Availability Schedule) governing your Accounts (**"Account Rules"**) shall continue to apply. In the event of any direct conflict between this Agreement and the Account Rules, the terms of this Agreement shall govern, but only to the extent reasonably necessary to resolve the conflict."

   In Section 5, all uses of "Master User" have been changed to "Administrator".

   A new Section 6 has been added and the remaining sections have been renumbered. The new Section 6 states, "**Section 6. User Administration and Alerts.** You acknowledge and agree that you are responsible for managing Authorized Users including but not limited to adding, deleting or updating Master and Authorized Users (each a **"User"**), User profiles, unlocking passwords, determining appropriate service permissions, settings, and which accounts should be accessible to specific services and/or functions for each User."

   You may elect to receive notifications from us (**"Alerts"**) for applicable services via email or other Communication Method offered by us. Since Alerts will be sent over the internet, you may not receive Alerts in a timely manner due to internet traffic. You are responsible for ensuring Users are entitled for appropriate Alerts; removing Alerts from Users as appropriate; and ensuring appropriate Alerts are established for Users as part of administrative or User changes."

   In the renumbered Section 9, the second paragraph is restated (additional/modified language italicized) as, "You also agree to reimburse us for any and all fees, penalties, fines, costs or the like assessed against us by the National Automated Clearing House Association ("Nacha") for any violation of the ACH Rules, *Electronic Check Clearing House Organization ("ECCHO") rules, or any other payment system rules* or by any Governmental Authority with jurisdiction over us, that is incurred by us due to actions we take under this Agreement as instructed by you."

   In the renumbered Section 10, the third sentence of the first paragraph is restated (additional/modified language italicized) as "We shall not be responsible for your acts or omissions, those of your vendor (as defined in Section *23* of this Part), agent or employee, any other party providing services to you, or any other person or entity, including, without limitation, Fed Wire, SWIFT, Telex, any automated clearing house, or any other financial institution."

   In the renumbered Section 10, the fifth sentence of the first paragraph is restated (additional/modified language italicized) as, "We shall not be responsible for any charges imposed by any Vendor or other third party not retained by us as our Processor (as defined in Section *24* of this part)."

   In the renumbered Section 11, the paragraph is restated (additional/modified language italicized) as, "Section 11. Disclaimer of Warranties. EXCEPT AS PROVIDED IN ANY APPLICABLE SERVICE DESCRIPTION, WE MAKE NO REPRESENTATIONS, WARRANTIES, EXPRESS OR IMPLIED, IN LAW OR IN FACT, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR



A PARTICULAR PURPOSE WITH RESPECT TO THE SERVICES OR *ANY SOFTWARE OR* EQUIPMENT USED IN CONNECTION WITH THE SERVICES TO BE PROVIDED BY US. NO DESCRIPTIONS OR SPECIFICATIONS, WHETHER OR NOT INCORPORATED INTO THIS AGREEMENT, NO PROVISION OF MARKETING OR SALES MATERIALS AND NO STATEMENT MADE BY ANY SALES REPRESENTATIVE IN CONNECTION WITH THE SERVICES SHALL CONSTITUTE REPRESENTATIONS AND WARRANTIES OF ANY KIND."

In the renumbered Section 13, the second sentence is restated (additional/modified language italicized) as, "In addition, we may terminate this Agreement, or suspend or terminate any Service *or portion of such Service,* immediately without notice (or immediately with notice if legally required), in the event (i) of fraud, suspected fraud, suspected illegal or suspicious activity, safety and soundness considerations, bankruptcy, receivership, merger, business necessity, regulatory compliance, administrative order, judicial order, or breach of this Agreement; (ii) in our good faith opinion your financial condition has become impaired or deteriorated; *(iii) any actual or reasonably perceived breach of any Applicable law (as defined in Part XVII), including the ACH Rules (or any other payment rules), (iv)* your non-use of the Service(s) for a period of six (6) months or more; *(v) your failure to respond to our request for information we reasonably require to provide the Service(s)* ; or *(vi)* your default on any agreement or instrument between you and us or our Affiliate, or from you in our favor or our Affiliate's favor, but we will use commercially reasonable efforts to provide notice after termination if permitted by Applicable Law."

In the renumbered Section 19, the last sentence of the second paragraph is restated (additional/modified language italicized) as, "Notwithstanding any terms in this Part to the contrary, any addition, deletion or change *(including Administrator(s))* to any Services requested by you must be submitted in a form acceptable to us, and no such requested addition, deletion or change will become operative or effective until we confirm to you that such addition, deletion or change has been implemented, which we agree to do within a reasonable period of time.

3. PART III: AUTOMATED CLEARING HOUSE ORIGINATION SERVICES.

In Section 4, the first paragraph beginning with the third sentence is restated (additional/modified language italicized) as, "You agree that any Entries or Payment Orders originated by you or your TPSP will be solely for your own account and not for the benefit of a third party, unless you are a *Third-Party* sender. You agree to be obligated and liable for any Payment Order submitted by you or by a TPSP on your behalf. The types of funds transfers that you wish to originate will be documented in our Implementation Documentation and must have our approval before you may use the ACH Services. If you are a *Third-Party* Sender, you agree to enter into a Third-Party Processing Agreement with us, in addition to this Agreement. Please note that we do not provide or support ACH Services to a *Third-Party* Sender which has an agreement with another *Third-Party* Sender to act on behalf of an Originator but does not have a direct agreement with us (a "nested *Third-Party* Sender")."

In Section 4(a)(f) the third sentence is restated (additional/modified language italicized) and a new fourth sentence is added as follows, "In the case of an On-Us *debit* Entry, we will debit, *if funds are available,* the account of the Receiver in the amount thereof on the effective date contained in the related Payment Order provided that the effective date is a Business Day. *In the case of an On-Us credit Entry, we will credit, as appropriate, the account of the Receiver in the amount thereof on the effective date (or up to two days in advance), contained in the related Payment Order provided that the effective date is a Business Day."*

In Section 4(a) there are new subsections (h), (i), and (j) as follows:

"(h) Additional Warranties for Origination of WEB Entries. If you are permitted to make WEB Entries, and you obtain authorization from a Receiver over the internet or a mobile device, you represent and warrant that: (a) you utilize a commercially reasonable fraudulent detection system to screen each WEB Entry; (b) employ commercially reasonable methods of authentication to verify the identity of the Receiver; (c) take commercially reasonable steps to verify that routing numbers are valid; and (d) conduct annual audits to ensure that the financial information you obtain from consumers is protected by security practices and procedures that include, at a minimum, adequate levels of: (i) physical security to protect against theft, tampering, or damage, (ii) personnel and access controls to protect against unauthorized access and use, and (iii) network security to ensure secure capture, storage, and distribution.

(i) TEL Entries. If you are permitted to make TEL Entries, you must make an audio recording of the consumer's oral authorization and/or provide the Receiver with written notice confirming the oral authorization prior to the Settlement Date of the Entry. At our request, you must provide a copy of the written notice or duplicate audio



recording of the oral authorization for our use or for the use of the RDFI requesting the information. The authorization must be readily identifiable as an authorization and its terms must be clear and readily understandable. The authorization must contain the following minimum information: (i) the date on or after which the ACH debit to the Receiver's account will occur; (ii) the amount of the entry; (iii) the Receiver's name; (iv) a telephone number for Receiver inquiries that is answered during normal business hours; (v) the date of the Receiver's oral authorization; (vi) language that clearly states whether the authorization obtained from the Receiver is for a single entry, recurring entries, or one or more subsequent entries initiated under the terms of a standing authorization and (vii) language that instructs the Receiver how to revoke the authorization directly with the Originator.

(j) ARC, BOC, POP and RCK Entries. If you are permitted to make ARC, BOC, POP, and RCK entries, authorization consists of: (i) notice from you to the Receiver, before receipt of Receiver's source document or the item, that your receipt of the source document (for ARC, BOC, AND POP entries) or item (for RCK entries) constitutes authorization of the ACH debit entry in accordance with the terms of the source document or item; and (ii) your receipt of the source document or item."

In Section 10 the second to last sentence is restated (additional/modified language italicized) as, "You agree to promptly reflect such changes in your own records *and* pay the applicable fee we charge for such repair."

## 4. PART IV: AUTOMATED SWEEP SERVICES

All uses of "FDIC Insured" have been deleted.

## 5. PART VI: CASH DEPOSIT AND FULFILLMENT SERVICES

Section 1.B. is restated (additional/modified language italicized) as, "Orders. We may provide an Order to anyone who purports to be an agent of the Vendor or you. *Funds in the amount of your Order must be available in your Account prior to the Order being prepared.* Your Account will be debited for the amount of the Order on the day the Order is packed for release to the Vendor. Orders placed for delivery on Saturday, Sunday, or Monday are debited from your Account on the previous Business Day. You must place Orders by the time designated by us from time to time to receive next Business Day delivery. If you do not meet that deadline, we may not process the Order until the following Business Day. Where you contract directly with a Vendor, we are not liable for any loss or delay in delivery of Orders and are not a guarantor of any delivery day or time. We may refuse to process an Order for any reason at any time; including, but not limited to, insufficient funds in your Account.'

The second sentence of Section 3 is restated (additional/modified language italicized) and a new fourth and fifth sentences are added as, "After expiration of the Initial Service Term, your obligation for SafeCash Manager services shall renew automatically each year (**"Successive Service Term"**) until you or we terminate it. You agree to provide at least thirty (30) days prior notice of your intent to terminate the Initial Service Term. If you choose to terminate after the Initial Service Term without providing thirty (30) days advance notice, you are obligated to pay the amount of any fixed monthly fees of the remaining Successive Service Term."

## 6. PART VIII: EBILL PRESENT & PAY

In Section 10 all uses of "Master User" have been changed to "Administrator".

## 7. PART IX: ELECTRONIC DEPOSIT SERVICES

The first two sentences of Section 1.D. is restated (additional/modified language italicized) as "**RDC Scanner.** *Upon your request, we* will provide one scanner (including the manufacturer's warranty) for each location. *If* a scanner breaks down or otherwise becomes obsolete or unusable, you will be responsible for the cost of a replacement scanner."

The last sentence of Section 1.D. is restated (additional/modified language italicized) as, "Failure to comply with this *Section* shall be a material breach of this Agreement."

## 8. PART XIII: INTEGRATED PAYABLES SERVICES



The Integrated Payables Service has been modified to allow use of the Service without Commercial Credit Card resulting in substantive changes to this Part. This Part is restated (additional/modified language italicized) as follows:

"Section 1. Description of Services. Our Integrated Payables Services (the "Service") *disburses your payments via one or more selected payment methods and* aggregates your treasury management payables types *into one user interface.* Your Commercial Card Account Agreement and this Agreement govern the use of this Service. *If you elect to use the Service without Commercial Credit Card, this Agreement and its applicable Parts (general Treasury Management Services including Automated Clearing House ("ACH") Origination, Business Security Suite and Real Time Payment ("RTP") Services) and this Part XII govern the use of the Integrated Payables Services.*

Section 2. Our Obligations. Upon your direction to make a payment, we will initiate payment to your payee via *check*, ACH, or RTP.

*We shall process the ACH and RTP payments in accordance with this Agreement. When we print and mail checks to payees, we will use the data supplied by Company. Checks will be printed on typical commercial check stock in the commercial check layout and will be mailed in standard #10 business envelopes. Huntington will be responsible for the print quality of the checks. Huntington will not be responsible for the integrity or accuracy of the data received from you in order to generate the checks. If Huntington determines that any address provided is invalid or not in the proper format, the payment data will be returned for address verification and correction. If the quality of the output renders the checks to be non-negotiable, our sole obligation is to (i) reprint and/or re-mail the checks at no additional cost to you; or, (ii) reimburse you for any documented out of pocket costs associated with the error. We are not responsible for and shall not replace damaged mailings if such damage occurs after receipt of the mailings by the USPS or its consolidators.*

*All payees may be compared against the Office of Foreign Asset Control's (OFAC) Specially Designated Nationals ("SDN") list or any other list compiled by OFAC or any United States government authority (taken together as "Government Regulators"). Huntington may stop payment on any check printed in which a payee is a match or a potential match to a person or entity named in the SDN list or any other list compiled by government regulators. We will notify you in the event Huntington stops payment on a check. All mailings will be sent by First Class mail, when applicable, at a discount postal rate. We may unilaterally modify the fees charged hereunder at any time to account for postage rate increases as announced by the United States Postal service.*

Section 3. Your Obligations. *You shall transmit payment instructions and data using our Web Portal. The form and format of the data shall conform to those technical specifications used by us to perform the Services and provided to Company. We shall have final approval on the form and format of all materials to be produced hereunder to assure conformity and compatibility with our software and equipment.*

In order to process check payments, a test payment file, digital signature, and additional information must be completed and received by us at least 30 days prior to the requested production date in order to perform programming and set up.

*Business Security Suite and its check positive pay Service shall be used in conjunction with check issuance. A "checks issued" file will be uploaded to the Web Portal. You will be responsible for reviewing and dispositioning any exceptions identified by the check positive pay service.*

9. PART XIII: LOCKBOX SERVICES

A new paragraph has been added to the end of Section 1 as follows, "*If you elect to set up your lockbox to receive, process and scan checks and enclosures at your location ("Remote Lockbox"), you are responsible for obtaining, installing, maintaining and operating a scanner that meets our requirements.*"

10. PART XVII: GLOSSARY OF TERMS

"Master User" has been replaced with "Administrator" and the definition is restated (additional/modified language italicized) as, *"means the master user that you have designated in accordance with our Security Procedures for controlling access to the Services."*

All uses of "Master User" have been changed to "Administrator".

# Peterson Conners LLP

**INVOICE**

Invoice # 7524
Date: 12/13/2023

545 Metro Place South, Suite 435
Dublin, OH 43017
United States
(614) 365-7000

United States Southern District

### Receiver / Root, et al. v. Silver, et al., 2:23cv512

| Date | Notes | Timekeeper | Quantity | Rate | Total |
|------|-------|-----------|----------|------|-------|
| 10/02/2023 | Attention to status of auction. Phone call with R Kruse re: auction and Walnut property. Making arrangements for keys and titles. Attention to several emails re: above. Attention to obtaining value of personal property. | Jerry E. Peer, Jr. | 2.20 | $150.00 | $330.00 |
| 10/03/2023 | Phone call with J Epling re: phones and computer. | Jerry E. Peer, Jr. | 0.20 | $150.00 | $30.00 |
| 10/03/2023 | Phone call with M Tine re: sale of Bayshore property and listing agreement. Phone call with I Gajary re: sale of Walnut property. Phone call with R Kruse re: auction of properties. | Jerry E. Peer, Jr. | 1.10 | $150.00 | $165.00 |
| 10/04/2023 | Attention to numerous texts and emails on varoius receivership items. | Istvan Gajary | 2.00 | $150.00 | $300.00 |
| 10/05/2023 | Attention to email from I Ramirez re: various matters. Attention to insurance for property. | Jerry E. Peer, Jr. | 0.20 | $150.00 | $30.00 |
| 10/05/2023 | Preparing for and participating in zoom call with California realtors. Attention to best means of sale for Walnut. | Jerry E. Peer, Jr. | 1.80 | $150.00 | $270.00 |
| 10/06/2023 | Attention to emails re: Binder, personal property and other matters. | Jerry E. Peer, Jr. | 0.30 | $150.00 | $45.00 |
| 10/09/2023 | Attention to obtaining value of personal property at Bleriot and Ramona properties. | Jerry E. Peer, Jr. | 1.40 | $150.00 | $210.00 |
| 10/09/2023 | Numerous telephone calls with Tyler, GSP, and others about Mercedes, Ramona property, and Walnut property; review numerous emails from David Haft on behalf of J. Binder; review file for information on person property items at Ramona. | Istvan Gajary | 2.70 | $150.00 | $405.00 |
| 10/09/2023 | Attention to several emails re: personal property, | Jerry E. Peer, Jr. | 1.80 | $150.00 | $270.00 |

<span style="color:red">**Exhibit C**</span>

| | | | | | |
|---|---|---|---|---|---|
| | and Ramona property. | | | | |
| 10/10/2023 | Attention to finding appraiser for Ramona furniture. | Jerry E. Peer, Jr. | 0.80 | $150.00 | $120.00 |
| 10/10/2023 | Attention to several emails re: Binder claim. | Jerry E. Peer, Jr. | 0.80 | $150.00 | $120.00 |
| 10/11/2023 | Attention to multiple emails re: California homes, vehicles, and personal property. Phone call with R. Kruse re: same. | Jerry E. Peer, Jr. | 0.70 | $150.00 | $105.00 |
| 10/11/2023 | Attention to emails from G Peterson re: indictment, Ramona furniture and Happy Jewelers transactions. Phone call with T Hagerla re: sale of property and related matters. | Jerry E. Peer, Jr. | 1.50 | $150.00 | $225.00 |
| 10/11/2023 | Zoom meeting with Tyler, Isaac, and JEP to discuss details related to sale of Walnut Property; search for possible foreclosure action at Walnut Property; attention to numerous emails and texts related to sale of vehicles; review file for meeting with Silver and related issues. | Istvan Gajary | 4.70 | $150.00 | $705.00 |
| 10/13/2023 | Phone call with plaintiffs counsel re: status of case. | Jerry E. Peer, Jr. | 0.80 | $150.00 | $120.00 |
| 10/16/2023 | Attention to emails from Ramona and Venice properties. | Jerry E. Peer, Jr. | 0.30 | $150.00 | $45.00 |
| 10/17/2023 | Attention to emails re: fire inspection and Hagerla expenses, and other matters. | Jerry E. Peer, Jr. | 0.70 | $150.00 | $105.00 |
| 10/18/2023 | Review of offer to purchase Ramona Property. Attention to bids. Reviewing and revising final purchase agreement. Phone calls with R Kruse re: auction. Attention to emails from T Hagerla re: offers, rejection, and fire marshal inspection. Review of inspection. Attention to email from Bidder's counsel. | Jerry E. Peer, Jr. | 2.80 | $150.00 | $420.00 |
| 10/19/2023 | Attention to email from T Hagerla re: purchase agreement. | Jerry E. Peer, Jr. | 0.40 | $150.00 | $60.00 |
| 10/20/2023 | Phone call with counsel and broker re: auction results. Review of auction numbers from R Kruse. Attention to emails from I Gajary and B Kloss. Review of comps provided by T Hagerla. | Jerry E. Peer, Jr. | 2.40 | $150.00 | $360.00 |
| 10/20/2023 | Attention to emails re: purchase agreement, appraisal, Ramona contract, J Barr,. | Jerry E. Peer, Jr. | 0.70 | $150.00 | $105.00 |
| 10/23/2023 | Attention to emails re: personal property, vehicles, Ramona property | Jerry E. Peer, Jr. | 1.40 | $150.00 | $210.00 |
| 10/24/2023 | Review of photographs and video of Bleriot personal property. Emails and texts with T Hagerla re: same. Research re: value of personal property. Email to A Sorokurs re: motion to | Jerry E. Peer, Jr. | 1.20 | $150.00 | $180.00 |

| | | | | | |
|---|---|---|---|---|---|
| | abandon. | | | | |
| 10/24/2023 | Review of payoff quotes from NewRez | Jerry E. Peer, Jr. | 0.30 | $150.00 | $45.00 |
| 10/25/2023 | Attention to multiple emails re: documents and information needed for Ramona closing. Obtaining and providing same. Review of claims and prior emails from D Haft re: J Binder claim. Attention to emails from T Haglera re: electric bike and other matters. Phone call re: same. | Jerry E. Peer, Jr. | 2.40 | $150.00 | $360.00 |
| 10/25/2023 | Phone call with R Kruse re: sale of Ramona and Venice properties. | Jerry E. Peer, Jr. | 0.40 | $150.00 | $60.00 |
| 10/26/2023 | Attention to emails/texts from T Hagerla re: Venice property and maintenance needs. Phone call re: same. Attention to emails from R Vargas re: payoff and other needs. Attention to emails from M Witford. Review of disclosures. | Jerry E. Peer, Jr. | 1.10 | $150.00 | $165.00 |
| 10/27/2023 | Researching value of vehicles. | Jerry E. Peer, Jr. | 1.00 | $150.00 | $150.00 |
| 10/28/2023 | Review of Ramona appraisal and prior emails re: value. | Jerry E. Peer, Jr. | 0.80 | $150.00 | $120.00 |
| 10/30/2023 | Attention to emails re: M Tine, Ramona appraisal and other matters. | Jerry E. Peer, Jr. | 1.20 | $150.00 | $180.00 |
| 10/31/2023 | Attention to emails re: meeting with US Attorney's office. Attention to emails re: motions to be filed. Review of Ramona appraisal. Attention to calculation of expected damages. | Jerry E. Peer, Jr. | 1.20 | $150.00 | $180.00 |
| 11/02/2023 | Attention to next steps for sale of Walnut property. Review of emails from R Kruse and T Hagerla re: property maintenance and security. Review of Ramona landscaping invoice. | Jerry E. Peer, Jr. | 1.40 | $150.00 | $210.00 |
| 11/08/2023 | Attention to emails from Bleriot owner. Attention to emails from T Hagerla re: Walnut property condition. Attention to securing the Walnut property and preparing it for sale. Attention to emails from J Secrest and Bayshore mortgagee re: settlement. | Jerry E. Peer, Jr. | 1.50 | $150.00 | $225.00 |
| 11/08/2023 | Phone call with R Kruse re: sale of properties. | Jerry E. Peer, Jr. | 0.60 | $150.00 | $90.00 |
| 11/09/2023 | Attention to emails re Ramona closing. Review of DW invoice. | Jerry E. Peer, Jr. | 0.50 | $150.00 | $75.00 |
| 11/10/2023 | Attention to messages from Bayshore mortgagee. Review of docket. Following up on status of Walnut move out. | Jerry E. Peer, Jr. | 0.60 | $150.00 | $90.00 |
| 11/10/2023 | Attention to several emails re: Bayshore property, Ramona landscaping, | Jerry E. Peer, Jr. | 1.40 | $150.00 | $210.00 |
| 11/13/2023 | Attention to several emails/texts from Bayshore | Jerry E. Peer, Jr. | 0.30 | $150.00 | $45.00 |

| | Mortgagee. | | | | |
|---|---|---|---|---|---|
| 11/14/2023 | Attention to emails from Bayhsore Mortgagee. Attention to emails from J Secrest re: same. Attention to emails/texts re: computer and phone records. | Jerry E. Peer, Jr. | 0.30 | $150.00 | $45.00 |
| 11/14/2023 | Phone call with counsel re: plan going forward. Review of fourth report. Outlining fifth report. Attention to motion to sell walnut. Review of estimate from Kabco Kitchens and expected net proceeds from sale of Ramona. | Jerry E. Peer, Jr. | 1.90 | $150.00 | $285.00 |
| 11/15/2023 | Attention to emails re: loans on properties. | Jerry E. Peer, Jr. | 0.60 | $150.00 | $90.00 |
| 11/15/2023 | Phone call with M Tine re: listing of Bayshore. | Jerry E. Peer, Jr. | 0.50 | $150.00 | $75.00 |
| 11/20/2023 | Attention to emails from R Kruse and M Whitford re: purchase agreement and solar. Review of claims and other records re: solar. Email to counsel and T Hagerla re: same. Review of purchase agreement. | Jerry E. Peer, Jr. | 1.40 | $150.00 | $210.00 |
| 11/21/2023 | Attention to email from M Whitford re: disclosures. | Jerry E. Peer, Jr. | 0.30 | $150.00 | $45.00 |
| 11/26/2023 | Attention to emails re: solar. Review of file re: same. Phone call with T Hagerla re: same. | Jerry E. Peer, Jr. | 1.40 | $150.00 | $210.00 |
| 11/27/2023 | Attention to emails re: motion to lift injunction. Review of revised disclosures. | Jerry E. Peer, Jr. | 0.70 | $150.00 | $105.00 |
| 11/28/2023 | Attention to several emails re: closing. | Jerry E. Peer, Jr. | 0.30 | $150.00 | $45.00 |
| 11/28/2023 | Attention to emails re: closing package. | Jerry E. Peer, Jr. | 0.50 | $150.00 | $75.00 |
| 11/29/2023 | Phone call with realtor and closing agent re: closing of Ramona. | Jerry E. Peer, Jr. | 0.60 | $150.00 | $90.00 |
| 11/29/2023 | Attention to emails motion to lift injunction. | Jerry E. Peer, Jr. | 0.80 | $150.00 | $120.00 |
| 11/30/2023 | Attention to email from R Vargas re: closing package revisions. Review of closing package. Attention to emails and documents re: foreclosure of Ramona. Phone calls re: Ramona foreclosure. | Jerry E. Peer, Jr. | 1.60 | $150.00 | $240.00 |

| | | |
|---|---|---|
| | **Subtotal** | **$8,775.00** |
| | **Total** | **$8,775.00** |

# Statement of Account

| Outstanding Balance | | New Charges | | Amount in Trust | | Payments Received | | **Total Amount Outstanding** |
|---|---|---|---|---|---|---|---|---|
| ( $0.00 | + | $8,775.00 | ) - ( | $0.00 | + | $0.00 | ) = | **$8,775.00** |

Please make all amounts payable to: Peterson Conners LLP

Payment is due upon receipt.
Payments more than 30 days overdue incur 1.5% per month interest charges.

Please notify us if your contact information has changed.

Our Tax ID: 20-8129097

# Peterson Conners LLP

**INVOICE**

Invoice # 7523
Date: 12/13/2023

545 Metro Place South, Suite 435
Dublin, OH 43017
United States
(614) 365-7000

United States Southern District

## Attorney / Root, et al. v. Silver, et al., 2:23cv512

### Services

| Date | Notes | Timekeeper | Quantity | Rate | Total |
|---|---|---|---|---|---|
| 10/02/2023 | Emails with Ms. Mandy Chung of ICON Aircraft. Reconcile September 2023 bank statement. | Catherine J. Schwartz | 0.30 | $125.00 | $37.50 |
| 10/02/2023 | Review of drafts of Order granting stay related to Bayshore property. | Jerry E. Peer, Jr. | 0.30 | $250.00 | $75.00 |
| 10/02/2023 | Review and begin prep for motion to renovate Bayshore property. | Istvan Gajary | 2.60 | $250.00 | $650.00 |
| 10/03/2023 | Attorney emails and attention to file. | Catherine J. Schwartz | 0.40 | $125.00 | $50.00 |
| 10/03/2023 | Review subpoena responses from various financial institutions. | Istvan Gajary | 2.40 | $250.00 | $600.00 |
| 10/05/2023 | Searching for foreclosure case against Walnut property. Drafting Motion to Employ M Tine. | Jerry E. Peer, Jr. | 1.40 | $250.00 | $350.00 |
| 10/05/2023 | Zoom meeting with Tyler, Isaac, and JEP to discuss listing of Walnut property and coordination of pickup of Mercedes status of Ramona property auction; attention to numerous related texts and emails; package and delivery of Range Rover to Tyler; research foreclosure action recently filed on Walnut property; attention to emails with Florida counsel regarding stay order and placing forclosure case on inactive status. | Istvan Gajary | 5.70 | $250.00 | $1,425.00 |
| 10/06/2023 | Reviewing case file and package | Istvan Gajary | 4.70 | $250.00 | $1,175.00 |

**Exhibit D**

| | | | | | |
|---|---|---|---|---|---|
| | numerous items for delivery; attention to emails from attorney David Haft on behalf of J. Binder about personal property items at Ramona property; review recent Fidelity subpoena response statements; prepare subpoena to Ally Bank. | | | | |
| 10/06/2023 | Attention to letter from D Haft re: Ramona furniture. Review of federal statutes re: receipt of stolen funds/assets. | Jerry E. Peer, Jr. | 0.80 | $250.00 | $200.00 |
| 10/06/2023 | Following up with Dr. Sorokurs and T Hagerla re: personal property. | Jerry E. Peer, Jr. | 0.40 | $250.00 | $100.00 |
| 10/06/2023 | Emails with Atty. Gajary; identify Michigan statutory agent for both Ally Bank and Ally Financial Inc. and assist with a Subpoena and Schedule A; attention to emails with Atty. David Haft about his client's claim to furniture at Vista Del Otero. | Catherine J. Schwartz | 1.20 | $125.00 | $150.00 |
| 10/06/2023 | Update from co-counsel regarding Zoom meeting; Walnut property, automobiles, Ramona. Attention to activity in Florida case regarding stay order and inactive status of foreclosure action. | Gregory Peterson | 1.10 | $250.00 | $275.00 |
| 10/09/2023 | Attention to letter from D Haft re: furniture. Review of relevant statute and previous correspondence from Haft. Review of Silver's and Binder's financial records. Email to G Peterson and I Gajary re: same. | Jerry E. Peer, Jr. | 2.40 | $250.00 | $600.00 |
| 10/09/2023 | Finalize transmission of materials to Atty. Grace Saalman at Vorys; finalize Subpoena and serve the same upon counsel and parties by email. | Catherine J. Schwartz | 0.50 | $125.00 | $62.50 |
| 10/09/2023 | Address issues with Binder counsel D. Haft are rediculous allegations regarding the purchase of the furniture located at Ramona property. Review timeline regarding Binder payments and "loans" including to Scott Binder. | Gregory Peterson | 1.70 | $250.00 | $425.00 |
| 10/10/2023 | Attention to emails from D Haft re: furniture. | Jerry E. Peer, Jr. | 0.50 | $250.00 | $125.00 |
| 10/10/2023 | Review of file, including emails and the Huntington Bank account online, for a current status of payment from ICON and update records accordingly; attention to correspondence with Atty. Haft regarding claims. | Catherine J. Schwartz | 0.40 | $125.00 | $50.00 |
| 10/10/2023 | Review of arguments and supporting documents provided by counsel for J. | Istvan Gajary | 3.50 | $250.00 | $875.00 |

| | | | | | |
|---|---|---|---|---|---|
| | Binder; attention to emails and texts with GSP and JEP and prepare response to same; telephone call with Tyler about Walnut property. | | | | |
| 10/10/2023 | Attention to draft response to D Haft. Review of prior correspondence and records provided by J Binder. | Jerry E. Peer, Jr. | 1.60 | $250.00 | $400.00 |
| 10/11/2023 | Review of file in relation to recovery of assets. Attention to emails re: Happy Jewelers transactions. | Jerry E. Peer, Jr. | 2.00 | $250.00 | $500.00 |
| 10/13/2023 | Telephone call with various individuals to discuss status of receivership and next steps; review file and forward docs; prepare fourth interim report. | Istvan Gajary | 3.60 | $250.00 | $900.00 |
| 10/13/2023 | Attention to motion for summary judgment and alleged debt on Bayshore property. | Jerry E. Peer, Jr. | 0.90 | $250.00 | $225.00 |
| 10/16/2023 | Reviewing and revising Listing Agreement for Venice. | Jerry E. Peer, Jr. | 0.60 | $250.00 | $150.00 |
| 10/16/2023 | Attention to landscaping for Vista Del Otero, emails, and account documents in preparation for fourth interim report. | Catherine J. Schwartz | 0.50 | $125.00 | $62.50 |
| 10/16/2023 | Locate and forward docs to realtor at Ramona property. | Istvan Gajary | 0.20 | $250.00 | $50.00 |
| 10/17/2023 | Review file and prepare draft of Fourth Interim Report for review by JEP, GSP, and KS; attention to numerous other emails. | Istvan Gajary | 2.00 | $250.00 | $500.00 |
| 10/17/2023 | Review of 4th interim report. | Jerry E. Peer, Jr. | 0.80 | $250.00 | $200.00 |
| 10/17/2023 | Review of Venice listing agreement and revising same. Attention to status of foreclosure of Venice property. Search for liens against Venice property. Review of claim documents from mortgagee. | Jerry E. Peer, Jr. | 1.80 | $250.00 | $450.00 |
| 10/18/2023 | File and online banking review; follow-up with ICON seeking payment; assist with preparation of the September 2023 Fourth Interim report and fee application; multiple emails with legal team. | Catherine J. Schwartz | 1.10 | $125.00 | $137.50 |
| 10/18/2023 | Attention to details and updates on auction of Ramona property. | Istvan Gajary | 0.50 | $250.00 | $125.00 |
| 10/19/2023 | Attention to numerous details related to the auction at Ramona property; revise Fourth Interim Report. | Istvan Gajary | 1.50 | $250.00 | $375.00 |
| 10/20/2023 | Call with co-counsel followed by telephone | Gregory Peterson | 0.80 | $250.00 | $200.00 |

| | | | | | |
|---|---|---|---|---|---|
| | call with co-counsel and real estate agent regarding results of auction of Ramona property. | | | | |
| 10/20/2023 | Help to finalize the fourth interim report and fee application; process return receipt from subpoena; update counsel on ICON payment status. | Catherine J. Schwartz | 0.60 | $125.00 | $75.00 |
| 10/20/2023 | Revise, finish, and file Fourth Interim Report; attention to numerous related emails; attention to numerous emails about auction listing sale and related marking data; attention to emails in effort to obtain current payoff for Ramona property and Walnut property; telephoen call with GSP and JEP to discuss same. | Istvan Gajary | 3.50 | $250.00 | $875.00 |
| 10/21/2023 | Review of 4th interim report. | Jerry E. Peer, Jr. | 0.70 | $250.00 | $175.00 |
| 10/23/2023 | Locate documents requested by JEP and GSP; attention to numerous emails about auction at Ramona property; follow up on copying of Silver laptop and phones. | Istvan Gajary | 2.40 | $250.00 | $600.00 |
| 10/24/2023 | Drafting motion to abandon personal property. Drafting motion to employ M. Tine. | Jerry E. Peer, Jr. | 2.60 | $250.00 | $650.00 |
| 10/24/2023 | Attention to emails; review Range Rover payoff quote and Ally subpoena response documents; assist with finalization of the motion to abandon personal contents in the Bleriot Property. | Catherine J. Schwartz | 0.60 | $125.00 | $75.00 |
| 10/24/2023 | Review and revise motion to abandon personal property at Bleriot and motion to employ broker for Bayshore property; obtain and review payoff for loans at Ramona property and Walnut property; obtain and review Range Rover loan documentation from Ally; attention to numerous emails related to same. | Istvan Gajary | 4.50 | $250.00 | $1,125.00 |
| 10/25/2023 | Revising motion to abandon personal property and motion to employ M Tine. Drafting Motion to Confirm Sale of Ramona. | Jerry E. Peer, Jr. | 2.20 | $250.00 | $550.00 |
| 10/25/2023 | Intake of returned Subpoena, undeliverable to PT Bank in Jakarta; research suspected reason for non-delivery and update receiver and counsel. | Catherine J. Schwartz | 0.40 | $125.00 | $50.00 |
| 10/25/2023 | Attention to numerous emails with GSP and GEP related to various receivership items. | Istvan Gajary | 0.50 | $250.00 | $125.00 |

Invoice # 7523 - 12/13/2023

| Date | Description | Name | Hours | Rate | Amount |
|------|-------------|------|-------|------|--------|
| 10/26/2023 | Review Compass Business Group engagement letter and emails with J. Peer re same. Assist with preparations of motion to confirm sale and motion to employ broker. | Catherine J. Schwartz | 0.80 | $125.00 | $100.00 |
| 10/26/2023 | Review of docket and order to sell. Drafting motion to confirm sale. Attention to emails re: requirements for closing. Revising motion to employ M Tine. Email to co-counsel re: same. | Jerry E. Peer, Jr. | 2.60 | $250.00 | $650.00 |
| 10/26/2023 | Attention to numerous emails with Tyler and others regarding payoffs for Ramona property and Walnut property; attention to other receivership items. | Istvan Gajary | 1.20 | $250.00 | $300.00 |
| 10/27/2023 | Revising motion to sell Walnut property. Attention to emails re: closing of Ramona. | Jerry E. Peer, Jr. | 0.50 | $250.00 | $125.00 |
| 10/30/2023 | Record completed transfer of funds from ICON Aircraft, emails about pending motions and assistance with the same. | Catherine J. Schwartz | 0.30 | $125.00 | $37.50 |
| 10/30/2023 | Drafting/revising motion to sell Walnut. Revising motions to confirm Ramona and abandon personal property. Drafting motion to sell electric bike. | Jerry E. Peer, Jr. | 1.10 | $250.00 | $275.00 |
| 10/30/2023 | Continued review and drafting of various motions; attention to numerous emails; review appraisal for Ramona property; review mortgage provisions. | Istvan Gajary | 3.10 | $250.00 | $775.00 |
| 10/30/2023 | Attention to emails re: motion to confirm. | Jerry E. Peer, Jr. | 0.40 | $250.00 | $100.00 |
| 10/31/2023 | Meeting with AUSA and defense counsel for B. Silver. | Gregory Peterson | 1.70 | $250.00 | $425.00 |
| 10/31/2023 | Prepare and revise motion to confirm sale of Ramona property and motion to employ real estate broker at Bayshore property; visit to AUSA offices for meeting with counsel for Silver and AUSA to discuss case. | Istvan Gajary | 4.70 | $250.00 | $1,175.00 |
| 10/31/2023 | Review of Venice auction agreement and budget. | Jerry E. Peer, Jr. | 0.80 | $250.00 | $200.00 |
| 11/01/2023 | Revise, finish, and file motion to confirm sale of Ramona property and motion to employ real estate broker for Bayshore property; attention to numerous related emails. | Istvan Gajary | 1.40 | $250.00 | $350.00 |
| 11/02/2023 | Reconcile the Huntington National Bank account and update the checking register accordingly. Share these records with | Catherine J. Schwartz | 0.50 | $125.00 | $62.50 |

| | | | | | |
|---|---|---|---|---|---|
| | receiver and counsel. Process payment for Liquidation Partners invoice regarding inspection and appraisal of items at 19803 Vista Del Otero. | | | | |
| 11/02/2023 | Review of Ramona Mortgage. Research California law re: prepayment penalties. | Jerry E. Peer, Jr. | 1.90 | $250.00 | $475.00 |
| 11/02/2023 | Obtain and review note for Bayshore property to determine enforceabilty of prepayment penalty; attention to numerous emails related to same. | Istvan Gajary | 0.90 | $250.00 | $225.00 |
| 11/02/2023 | Review of Bayshore mortgage and note. Research re: prepayment penalty in Florida. | Jerry E. Peer, Jr. | 1.50 | $250.00 | $375.00 |
| 11/06/2023 | Review of California disclosures. Phone calls with realtor/auctioneer re: same. | Jerry E. Peer, Jr. | 1.60 | $250.00 | $400.00 |
| 11/07/2023 | Review of appellate brief related to Bayshore property. | Jerry E. Peer, Jr. | 2.60 | $250.00 | $650.00 |
| 11/08/2023 | Attention to multiple emails; review email exchanges with Newrez Servicing regarding payoff quotes and loan origination documents, prepare a subpoena to Shellpoint seeking loan origination documents for Vista Del Otero and Walnut Avenue. | Catherine J. Schwartz | 0.50 | $125.00 | $62.50 |
| 11/08/2023 | Researching prepayment penalty laws of Florida and California. | Jerry E. Peer, Jr. | 1.10 | $250.00 | $275.00 |
| 11/08/2023 | Attention to numerous emails related to offer from lender at Bayshore to negotiate the foreclosuer stay and purchase of the Bayshore property. | Istvan Gajary | 1.70 | $250.00 | $425.00 |
| 11/09/2023 | Review of motions for default judgment. Attention to multiple emails/texts from Bayshore mortgagee. | Jerry E. Peer, Jr. | 0.50 | $250.00 | $125.00 |
| 11/13/2023 | Drafting orders to confirm motion to sell and employ broker. | Jerry E. Peer, Jr. | 1.40 | $250.00 | $350.00 |
| 11/13/2023 | Prepare and deliver proposed order granting motion to employ broker and propsed order granting motion to confirm public sale of Ramona property. | Istvan Gajary | 2.00 | $250.00 | $500.00 |
| 11/14/2023 | Drafting order to confirm sale and employ Serhant | Jerry E. Peer, Jr. | 1.90 | $250.00 | $475.00 |
| 11/14/2023 | Assist with orders to confirm sale and employ Serhant. File review. Process payment for landscaping and pool services to California properties. Emails with team, | Catherine J. Schwartz | 1.20 | $125.00 | $150.00 |

| | | | | | |
|---|---|---|---|---|---|
| | realtor. | | | | |
| 11/14/2023 | Travel to Compass IT to consult with technician regarding imaging of two iphones and laptop. Retrieve original devices. Telephone conversation with FBI regarding document request and device production. Call with staff attorney regarding same issues. Conference call with IG and JP regarding all of the above issues and contacting Plaintiff regarding global update on case status. | Gregory Peterson | 5.40 | $250.00 | $1,350.00 |
| 11/14/2023 | Telephone call with GSP and JEP to discuss numerous receivership isssues; telephone call with Tyler about Ramona invoices. | Istvan Gajary | 1.10 | $250.00 | $275.00 |
| 11/15/2023 | Second review of Sivers iphone specifically looking for contact with co-defendant William Campbell. | Gregory Peterson | 2.10 | $250.00 | $525.00 |
| 11/15/2023 | Coordinate with Court staff about electronic filing of proposed orders; file same on ECF; attention to emails with lender for Ramona property about closing; follow up with Root counsel about data access issues. | Istvan Gajary | 1.60 | $250.00 | $400.00 |
| 11/16/2023 | Attention to Compass Business Group communications. Emails with attorneys regarding the same. Meet with Atty. Peterson to discuss this and the items for M. Daly to pickup tomorrow. | Catherine J. Schwartz | 0.60 | $125.00 | $75.00 |
| 11/16/2023 | Attention to court entries. | Jerry E. Peer, Jr. | 0.20 | $250.00 | $50.00 |
| 11/17/2023 | Meeting with FBI Agent Matt Daly here in our office to transfer custody of one laptop with cord, one iPhone with charging cable, and another iPhone; execute a receipt for the same. Attention to notification for Jocelyn Binder's contact information, forward to attorneys. Further emails with Compass Business Group. | Catherine J. Schwartz | 1.60 | $125.00 | $200.00 |
| 11/17/2023 | Follow up on numerous receiverhsip items; review emails and docket filings; sort and organize client file. | Istvan Gajary | 3.40 | $250.00 | $850.00 |
| 11/17/2023 | Attention to order confirming sale and order to employ M Tine. | Jerry E. Peer, Jr. | 0.50 | $250.00 | $125.00 |
| 11/17/2023 | Drafting motion to sell Venice at public sale. Review of auction agreement. | Jerry E. Peer, Jr. | 2.40 | $250.00 | $600.00 |
| 11/20/2023 | Attention to motion to lift stay and exhibits. Research re: same. | Jerry E. Peer, Jr. | 2.60 | $250.00 | $650.00 |

Invoice # 7523 - 12/13/2023

| 11/20/2023 | Attention to closing package from R Vargas. | Jerry E. Peer, Jr. | 1.30 | $250.00 | $325.00 |
|---|---|---|---|---|---|
| 11/20/2023 | Attention to numerous details in preparation for closing at Ramona property. | Istvan Gajary | 1.40 | $250.00 | $350.00 |
| 11/21/2023 | Attention to numerous details related to securing and listing of Walnut property for sale. | Istvan Gajary | 3.00 | $250.00 | $750.00 |
| 11/21/2023 | Attention to several emails re: Bayshore property and mortgagee motion. | Jerry E. Peer, Jr. | 1.50 | $250.00 | $375.00 |
| 11/22/2023 | Review of motion to lift litigation. Research in opposition. | Jerry E. Peer, Jr. | 2.90 | $250.00 | $725.00 |
| 11/23/2023 | Review motion to lift stay of foreclosure litigation in state court. | Gregory Peterson | 2.00 | $250.00 | $500.00 |
| 11/24/2023 | Review of revised disclosures. | Jerry E. Peer, Jr. | 0.40 | $250.00 | $100.00 |
| 11/27/2023 | Emails with Jake Epling of Compass Business Group; file review. | Catherine J. Schwartz | 0.40 | $125.00 | $50.00 |
| 11/27/2023 | Travel to Compass to retrieve hardrives. | Gregory Peterson | 1.00 | $250.00 | $250.00 |
| 11/27/2023 | Review of motion for leave from stay. Research in support of memo in opposition. | Jerry E. Peer, Jr. | 3.40 | $250.00 | $850.00 |
| 11/27/2023 | Initial review of Miami 555's motion to lift litigation stay at Bayshore property; review related research. | Istvan Gajary | 2.60 | $250.00 | $650.00 |
| 11/28/2023 | Conference with Attorney Peterson and B. Spring of Compass Business Group and follow-up emails. | Catherine J. Schwartz | 1.10 | $125.00 | $137.50 |
| 11/28/2023 | Begin drafting of memo in opposition to Miami 555's motion to lift litigation stay; update emails with lender about status of closing at Ramona; pay electric at Bayshore property. | Istvan Gajary | 4.20 | $250.00 | $1,050.00 |
| 11/28/2023 | Review of plea agreement. | Jerry E. Peer, Jr. | 0.30 | $250.00 | $75.00 |
| 11/29/2023 | Draft cover letter to accompany hard drive with copy of iphones and laptop. | Gregory Peterson | 1.30 | $250.00 | $325.00 |
| 11/29/2023 | Attention to many emails, including those regarding the hard drive delivered to the Vorys firm today, and 19803 Vista Del Otero. | Catherine J. Schwartz | 0.50 | $125.00 | $62.50 |
| 11/29/2023 | Research in opposition to motion to lift stay. Email to I Gajary re: same. Review of 555 motion for summary judgment and | Jerry E. Peer, Jr. | 6.90 | $250.00 | $1,725.00 |

| | | | | | |
|---|---|---|---|---|---|
| | supporting affidavit. Phone call with M Tine re: value of property. Phone call with B Kloss re: motion to lift stay. Review of listing agreement and comps from Marco TIne. | | | | |
| 11/29/2023 | Continued research and drafting of memo contra, motin to lift litigation stay; incorporate notes and details from JEP; telephone call with others to discuss same; numerous emails in effort to coordinate with realtor Marco Tine to secure supporting affidavit; review closing docs for Ramonoa; attention to emails with AUSA related to Silver's plea agreement. | Istvan Gajary | 4.50 | $250.00 | $1,125.00 |
| 11/30/2023 | Searching San Diego County Court records re: Ramona property. Email to T Hagerla re: foreclosure. Review of closing package. Attention to emails and documents re: foreclosure of Ramona. Phone calls re: Ramona foreclosure. | Jerry E. Peer, Jr. | 2.30 | $250.00 | $575.00 |
| 11/30/2023 | Multiple emails with Ms. Shelley Norvell at Vorys firm. Discussions with attorneys. | Catherine J. Schwartz | 0.40 | $125.00 | $50.00 |
| 11/30/2023 | Discussion with JP regarding Shellpoint attempting to foreclose on Romana. Subsequent meeting with Ish regarding same and review of email strings and notices. | Gregory Peterson | 1.20 | $250.00 | $300.00 |
| 11/30/2023 | Research in support of memo contra motion to lift injunction. | Jerry E. Peer, Jr. | 2.80 | $250.00 | $700.00 |
| 11/30/2023 | Research, review, and continued drafting of memo in opposition to motion to lift litigation stay; prepare and deliver Marco Tine affidavit to JEP and GSP for review; attention to numerous related emails; review details related to foreclosure sale of Ramona property. | Istvan Gajary | 3.80 | $250.00 | $950.00 |

**Services Subtotal**      **$41,962.50**

## Expenses

| Date | Notes | Quantity | Rate | Total |
|---|---|---|---|---|
| 10/05/2023 | FedEx 2day delivery of Range Rover keys | 1.00 | $26.75 | $26.75 |
| 10/06/2023 | Purchase of certified mail, return receipt postage for delivery to Ally | 1.00 | $9.49 | $9.49 |
| 10/09/2023 | Purchase of priority mail postage for thumb drive shipment to Vorys, Sater, Seymour and Pease LLP | 1.00 | $9.65 | $9.65 |

| | | | | |
|---|---|---|---|---|
| 10/11/2023 | Payment of lacourt.org fees for civil name search: "Eclipse home" | 1.00 | $4.75 | $4.75 |
| 11/28/2023 | Florida Power and Light utility payment, Bayshore Drive. | 1.00 | $70.00 | $70.00 |

|  |  |
|---|---|
| **Expenses Subtotal** | **$120.64** |
| **Subtotal** | **$42,083.14** |
| **Total** | **$42,083.14** |

## Statement of Account

| Outstanding Balance | New Charges | Amount in Trust | Payments Received | Total Amount Outstanding |
|---|---|---|---|---|
| ( $0.00 | + $42,083.14 ) - ( | $0.00 | + $0.00 ) = | **$42,083.14** |

Please make all amounts payable to: Peterson Conners LLP

Payment is due upon receipt.
Payments more than 30 days overdue incur 1.5% per month interest charges.

Please notify us if your contact information has changed.

Our Tax ID: 20-8129097



In Account With

**DICKINSON**W**RIGHT**PLLC

1800 BROAD STREET, SUITE B400
COLUMBUS, OH 43215
TELEPHONE: (614) 744-2570
http://www.dickinsonwright.com
FEDERAL I.D. #38-1364333

INVOICE DATE: DECEMBER 5, 2023
INVOICE NO.: 1870710

JERRY E PEER JR.
TWO MIRANOVA PLACE, SUITE 330
COLUMBUS, OH 43215

ATTN: Jerry E. Peer, Jr.

CLIENT/MATTER NO.: 106102-00001

RE: COUNSEL FOR RECEIVER - ROOT, INC., ET AL. V. SILVER ET AL.

*PRIVILEGED AND CONFIDENTIAL*

FOR PROFESSIONAL SERVICES THROUGH NOVEMBER 30, 2023 _USD_

TOTAL FEES CURRENT INVOICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 4,778.50

**TOTAL CURRENT INVOICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 4,778.50**

OUTSTANDING INVOICES ON THE MATTER BILLED ON THIS CURRENT INVOICE AS OF DECEMBER 5, 2023

| INVOICE | DATE | BILLED VALUE | PAYMENTS | OUTSTANDING |
|---------|----------|--------------|----------|-------------|
| 1852826 | 10/09/23 | 9,458.00 | (0.00) | 9,458.00 |
| 1862856 | 11/08/23 | 904.00 | (0.00) | 904.00 |

TOTAL OUTSTANDING FROM PRIOR INVOICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 10,362.00

**TOTAL AMOUNT DUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 15,140.50**

| Remittance Instructions | | | |
|---|---|---|---|
| ***Terms: Due and Payable Upon Receipt*** | | | |
| *Mail To:* | *Pay Online:* | *Wire Instructions:* | *ACH Instructions:* |
| *Dickinson Wright PLLC*<br>*2600 W. Big Beaver*<br>*Suite 300*<br>*Troy, MI 48084* | *Credit Card and ACH/eCheck Payments*<br><br>*We accept Visa®, Mastercard®, American Express® and Discover®*<br><br>*https://www.dickinson-wright.com/invoice-payment* | *JP Morgan Chase Bank N.A.*<br>*28660 Northwestern Highway*<br>*Southfield, MI 48034*<br>*ABA Number: 021 000 021*<br>*Swift Code: CHASUS33 (International)*<br>*Account# 38852* | *JP Morgan Chase Bank N.A.*<br>*28660 Northwestern Highway*<br>*Southfield, MI 48034*<br>*ABA Number: 072 000 326*<br>*Account# 38852* |
| **(Please reference your client/invoice numbers when paying electronically)** | | | |

**Exhibit E**



IN ACCOUNT WITH

150 E. BROAD STREET, SUITE 8400
COLUMBUS, OH 43215
TELEPHONE: (614) 744-2570
http://www.dickinsonwright.com
FEDERAL I.D. #38-1364333

COUNSEL FOR RECEIVER - ROOT, INC., ET AL. V. SILVER ET AL.
CLIENT/MATTER NO.:106102-00001

INVOICE DATE: DECEMBER 5, 2023
INVOICE NO.: 1870710
PAGE 2

### CURRENT INVOICE DETAIL

| DATE | INITIALS | SERVICES | HOURS | VALUE |
|------|----------|----------|-------|-------|
| 11/07/23 | JRS | Receipt and review of Petition and draft client update. | 0.4 | 226.00 |
| 11/08/23 | HV | Review and analyze the Miami 555 Appelllate Brief. | 0.8 | 424.00 |
| 11/08/23 | HV | Review various correspondence from counsel for Miami 555 as well as his client directly to the Receiver and another counsel also communicating direclty with the Receiver regarding their efforts to take a deed in lieu of foreclosure. | 0.4 | 212.00 |
| 11/08/23 | JRS | Exchange of emails with client and opposing counsel regarding status and settlement offer. | 0.3 | 169.50 |
| 11/10/23 | JRS | Multiple email exchanges regarding offers to settle. | 0.2 | 113.00 |
| 11/13/23 | JRS | Receipt and review of multiple emails from opposing counsel regarding settlement. | 0.2 | 113.00 |
| 11/14/23 | HV | Review and analyze the MIami 555 Petition for Extraordinary Writ Relief in order to better understand the arguments and issues presented. | 0.8 | 424.00 |
| 11/14/23 | JRS | Exchange emails with opposing counsel regarding status and settlement. | 0.2 | 113.00 |
| 11/16/23 | JRS | Review case law for response to Writ. | 0.8 | 452.00 |
| 11/20/23 | JRS | Draft Motion to Extend Time. | 0.8 | 452.00 |
| 11/20/23 | JRS | Review research regarding petition for writ. | 1.6 | 904.00 |
| 11/20/23 | JRS | Exchange of emails with client regarding status. | 0.2 | 113.00 |
| 11/20/23 | JRS | Review Miami 555's Motion for Relief. | 0.3 | 169.50 |
| 11/21/23 | HV | Review and analyze correspondence from the counsel and lender for Miami 555 and responses from the Receiver and his counsel. | 0.3 | 159.00 |
| 11/22/23 | JRS | Revise and finalize motion to extend time. | 0.4 | 226.00 |
| 11/25/23 | JRS | Draft response to Petition. | 0.9 | 508.50 |

| | TOTAL FEES | 8.6 | $ | 4,778.50 |
|--|------------|-----|---|----------|
| | TOTAL CURRENT INVOICE | | $ | 4,778.50 |

In Account With



150 E. Broad Street, Suite 2400
Columbus, OH 43215
Telephone: (614) 744-2570
http://www.dickinsonwright.com
FEDERAL I.D. #38-1364333

COUNSEL FOR RECEIVER - ROOT, INC., ET AL. V. SILVER ET AL.        INVOICE DATE:  DECEMBER 5, 2023
CLIENT/MATTER NO.:106102-00001                                   INVOICE NO.:  1870710
                                                                 PAGE 3

| TIMEKEEPER SUMMARY | | | | |
|---|---|---|---|---|
| TIMEKEEPER | TITLE | RATE | HOURS | VALUE |
| JONATHAN R. SECREST | MEMBER | 565.00 | 6.30 | 3,559.50 |
| H. STEVEN VOGEL | MEMBER | 530.00 | 2.30 | 1,219.00 |
| TOTAL FEES CURRENT INVOICE | | | 8.60 | $ 4,778.50 |