**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROOT, INC.** *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | Judge Sarah D. Morrison |
| | ) | |
| *v.* | ) | Magistrate Judge Elizabeth Preston Deavers |
| | ) | |
| Brinson Caleb "BC" **SILVER**, *et al.* | ) | Case No. 2:23-cv-00512 |
| | ) | |
| *Defendants.* | ) | |

**MOTION OF RECEIVER, JERRY E. PEER, JR., TO EMPLOY GRYPHON ASSET
ADVISORS, LLC AS AUCTIONEER AND  TO
OFFER CERTAIN REAL PROPERTY FOR PUBLIC SALE**

Now comes the Court appointed receiver herein, Jerry E. Peer, Jr., ("Receiver"), by and

through his undersigned counsel, and hereby moves this Court for an Order permitting Receiver

to engage an auctioneer for the public sale of the real estate located at 2543 Walnut Avenue, in

the City of Venice, County of Los Angeles, State of California; Parcel No. 4236-031-023

("Property") and owned by Eclipse Home Design, LLC; approving the *Exclusive Listing

Contract for Real Estate Auction* ("Auction Agreement"), attached hereto as "**Exhibit A**" and

authorizing Gryphon Asset Advisors, LLC d/b/a Gryphon Realty to conduct a public sale of the

Property as outlined in the Auction Agreement.

A Memorandum in Support of this Motion is attached hereto.

Respectfully submitted,

PETERSON CONNERS LLP

 /s/ Istvan Gajary
GREGORY S. PETERSON (0061915)
JERRY E. PEER, JR. (0075128)
ISTVAN GAJARY (0089084)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
Telephone: 614.365.7000

Facsimile: 614.220.0197
E-mail:gpeterson@petersonconners.com
        jpeer@petersonconners.com
        igajary@petersonconners.com
*Counsel for Receiver, Jerry E. Peer, Jr.*

**MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

In accordance with the requirements of this Court's Order, filed May 12, 2023 [Doc. # 99], Order Appointing Receiver, filed May 17, 2023 [Doc. # 101], and Order Amending Order Appointing Receiver, filed June 7, 2023 [Doc. # 120] (hereinafter collectively "Receiver Order"), Jerry E. Peer, Jr. ("Receiver"), was appointed as Receiver of all monetary and real property assets of Mr. Brinson Caleb Silver, Collateral Damage, LLC and Eclipse Home Design, LLC (hereinafter collectively "Defendants").    Since his appointment, Receiver has taken possession and control of the real estate of Defendant located at 2543 Walnut Avenue, in the City of Venice, County of Los Angeles, State of California; Parcel No. 4236-031-023 ("Property").  Additionally, pursuant to the Receiver's Order, Receiver has been engaged for the purpose of negotiating and effecting an orderly sale of the Property in or outside the ordinary course of business.  Receiver Order at p. 9, ¶ 2(k).  Since taking possession of the Property and conducting some preliminary determinations of the value of the Property, Receiver has determined that it is in the best interests of the receivership estate, and its respective creditors, to employ an auctioneer for purposes of preparing, advertising and offering the Property for sale at public auction.

## II.    LAW AND ARGUMENT

Pursuant to the Receiver Order,

> The Receiver is authorized to negotiate and effect an orderly sale, transfer, use, or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of the Receivership Defendants and, from the proceeds thereof, to pay the secured and unsecured indebtedness of the Property, including the Real Property. Payments to creditors by the Receiver shall include trade indebtedness which arises during the course of the Receiver's operation of the Property, which shall be paid first from the sale proceeds, together with the fees and expenses of the Receiver and his attorneys, accountants, and other professionals. The Receiver is authorized to conduct such a sale of the Property in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale . . .

See Receiver Order, ¶ 2(k).  "A judge who finds it necessary to appoint a Receiver should see that the entity, and therefore assets, are liquidated as economically and speedily as possibly unless its continuance is demonstrated to be beneficial to the creditors. *Jones v. Proctorville*, (1961 C.A. 6, Ohio) 290 F. 2d 49.

It is the Receiver's request that the Property be sold at public sale free and clear of all liens, claims, interests, and encumbrances with said liens, claims, interests, and encumbrances attaching to the net proceeds of sale, which shall be disbursed to secured creditors holding valid and existing liens, in order of their respective priorities.  Under federal law,

> [T]he appointing court may authorize a receiver—to administer, collect, improve, lease, repair or sell pursuant to section 3007 such real and personal property as the court shall direct.

28 U.S.C § 3103(b)(1)(B)

Additionally, federal law authorizes receivers appointed by a federal court to sell mortgaged property free and clear of liens.  28 U.S.C.A. §§ 2001 to 2004.  The federal statutes are vague with respect to the procedures for marketing and selling the property, "thereby allowing for flexibility and creativity." *Kay Kress, Federal Receiverships* (2005 ABA Business Law Section Meeting).  Furthermore, federal courts have concluded that "the power of sale is within the scope of a receiver's 'complete control' over receivership assets . . ., a conclusion firmly rooted in the

common law of equity receiverships." *Securities Exch. Comm 'n v. American Capital Investments*, Inc., 98 F.3d 1133, 1144 (9th Cir. 1996). The federal statute specifically authorizes receivers appointed by a federal court to conduct a private sale after notice to all interested parties and a hearing. 28 U.S.C. § 2001 (b). Further, federal courts have concluded that there is no right of post-sale redemption from judicial sales conducted under 28 U.S.C.A. § 2001(b), notwithstanding any state statutory redemption rights the mortgagor might otherwise claim. *See, e.g.*, *United States v. Heasley*, 283 F.2d 422 (8th Cir. 1960).

Thus, this Court can allow and order that the Property be transferred to a buyer free and clear of all liens, claims and encumbrances but with the liens attaching to the proceeds of the sale in order of their respective priorities. 28 U.S.C.A. §§ 2001 to 2004.

In light of the fact that it is the duty of the Receiver to act for the benefit of all creditors, Receiver requests that the Property be sold at public sale. Receiver believes that a public sale of the Property at this time is in the best interests of the receivership estate. Receiver believes and represents that a public sale is likely to bring a commercially reasonable offer for the Property. Receiver believes that a public sale at this time will bring a commercially reasonable return to the receivership estate and further avoid additional administrative expenses that would otherwise be incurred to preserve the Property. Receiver asserts that a public sale is the most efficient and economical means to dispose of the Property.

Receiver further believes having Gryphon Realty ("Auctioneer")[1] conduct the auction affords the receivership estate the best opportunity to maximize the highest and best value of the Property. Auctioneer is a licensed auctioneer and a recognized leader in the business of real estate liquidation auction dispositions. As a result of Auctioneer's established business, highly regarded

---

[1] Notice is hereby provided that Mr. Peer has represented and continues to represent Gryphon U.S.A., Ltd., an affiliated company to Gryphon Realty.

reputation and significant experience, Auctioneer has access to potential buyers and a clear focus on current market trends and conditions making Auctioneer duly qualified to market and sell the Property at public sale. Accordingly, Receiver has determined that the employment of Auctioneer, as auctioneer, presents the best opportunity to maximize the highest and best value of the Property and is hereby seeking the Court's approval to (i) employ and retain Auctioneer as auctioneer to sell, at public auction, the Property free and clear of any and all interest, liens, claims and encumbrances; and (ii) authorize Auctioneer to conduct a public sale of the Property, as further outlined herein and more specifically set forth in the Exclusive Listing Contract for Real Estate Auction ("Auction Agreement"), attached hereto as "**Exhibit A**."

Auctioneer's duties will include, without limitation, site preparation for the sale of the Property and meeting with prospective purchasers prior to the date of the public auction. Auctioneer will use its best efforts in promoting and conducting the online auction. Auctioneer will advertise the Property through website based materials, e-mail based solicitations as well as direct phone solicitations to known potential buyers. It is the intention of Auctioneer and Receiver to offer the Property for public auction within forty-five (45) days of the approval of this Motion and delivery of all required information and marketing funds.

Auctioneer's State of Ohio's brokerage license is in good standing, a conflict check has been conducted, ensuring no conflicts presently exist with its representation of Receiver in this matter, and Auctioneer has all insurance coverage as required by the State of Ohio. Pursuant to the Auction Agreement, Auctioneer has affirmatively stated that it will avoid any conflict of interest in connection with the marketing and sale of the Property; that gross proceeds of any sale or other transaction, which come into its hands will be turned over to Receiver or placed in its separate trust account, for the benefit of Receiver, and that it will not, under any circumstances,

directly or indirectly purchase, acquire, or accept any interest in any property related to the receivership estate.

Auctioneer will be compensated consistent with Section 8 of the Auction Agreement and reimbursed up to $12,592.55 in marketing and production expenses. A copy of Auctioneer's Budget is attached hereto as "**Exhibit B**." Charging a Buyer's Premium will assist in reducing the costs to the receivership estate. The foregoing shall represent Auctioneer's compensation for its services in conducting this public sale. Receiver seeks approval from this Court, pursuant to its agreement with Auctioneer, to permit Auctioneer to collect, prior to any distribution to Receiver, his compensation as outlined above.

At this time, Receiver does not seek authority to make a distribution of proceeds from the sale of the Property. Following the end of the public auction, Receiver will submit a motion to confirm the highest offer. Unless otherwise ordered by this Court, Receiver anticipates upon confirmation of the public sale, Receiver will close the transaction free and clear of all liens, claims, and encumbrances, other than the lien of the treasurer of the county in which the real property is located for real estate taxes and assessments, holding all proceeds of sale pending approval of any proposed distributions. It is Receiver's recommendation that the all liens, claims and encumbrances in and to the Property will attach to any proceeds realized from the sale, except for Auctioneer's compensation and other administrative fees and expenses, in accordance with their respective lien validity and priority.

## III. CONCLUSION

Based upon the foregoing, Receiver requests that the Court enter an Order approving (i) the engagement of Auctioneer as its auctioneer for the sale of the Property free and clear of any and all interests, liens, claims and encumbrances on the terms and conditions as outlined herein;

and (ii) authorizing Auctioneer to conduct a public sale of the Property as outlined herein and the Auction Agreement.

Respectfully submitted,

PETERSON CONNERS LLP

 /s/ Istvan Gajary
GREGORY S. PETERSON (0061915)
JERRY E. PEER, JR. (0075128)
ISTVAN GAJARY (0089084)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
Telephone: 614.365.7000
Facsimile: 614.220.0197
E-mail: gpeterson@petersonconners.com
        jpeer@petersonconners.com
        igajary@petersonconners.com

*Counsel for Receiver, Jerry E. Peer, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed electronically on this 9th day of January, 2024 with the Clerk of Court using the CM/ECF system. Service will be made through the Court's CM/ECF system on all parties and attorneys so registered, and all parties may access this filing through the Court's system.

A copy was also sent by regular U.S.P.S. mail to the following:

BRINSON CALEB SILVER
BUTLER COUNTY JAIL
Inmate No. 303850
705 Hanover Street
Hamilton, Ohio 45011

COLLATERAL DAMAGE, LLC
c/o BRINSON CALEB SILVER
BUTLER COUNTY JAIL
Inmate No. 303850
705 Hanover Street
Hamilton, Ohio 45011

ECLIPSE HOME DESIGN, LLC
c/o BRINSON CALEB SILVER
BUTLER COUNTY JAIL
Inmate No. 303850
705 Hanover Street
Hamilton, Ohio 45011

PAIGE MCDANIEL
5576 Alexanders Lake Rd.
Stockbridge, Georgia 30281

 /s/ Istvan Gajary
GREGORY S. PETERSON (0061915)
JERRY E. PEER, JR. (0075128)
ISTVAN GAJARY (0089084)

<u>**EXCUSIVE LISTING CONTRACT FOR**</u>
<u>**REAL ESTATE AUCTION**</u>

In consideration of the mutual promises and undertakings of the parties, this Exclusive Listing Contract for Online Only Real Estate Auction (hereafter "Contract") is entered into this 2nd day of January, 2024 between Gryphon Asset Advisors, LLC d/b/a Gryphon Realty, d/b/a GryphonUSA.com, an Ohio limited liability company and Richard F. Kruse, Auctioneer and Tyler Hagerla, Realtor and Coastal Premiere Properties, Brokerage (hereafter "Auction Firm") and Jerry E. Peer, Jr., Receiver of all monetary and real property assets of Mr. Brinson Caleb Silver, Collateral Damage, LLC and Eclipse Home Design, LLC, (hereafter collectively "Seller") pursuant to a certain *Order Appointing Receiver*, filed May 17, 2023 in the United States District Court for the Southern District of Ohio, Eastern Division; Judge Morrison presiding ("Court"), who have agreed as follows:

1.      **Exclusive Right to Sell**.  Seller grants Auction Firm the exclusive right to sell the following real property with all improvements, fixtures and contents thereon or therein, in "as is" condition (the "Property") located at: **2543 Walnut Ave Venice, CA 90291; Parcel No. 4236-031-023**.  The term of this Agreement shall begin on the date of execution hereof by Auction Firm and Seller and shall continue for a period of ninety (90) days or seven (7) days following the date of the Auction, whichever occurs first, unless otherwise extended or terminated in accordance with the terms of this Agreement. Upon full execution of a contract for sale and purchase or exchange of real estate in connection with the Property, all rights and obligations of this Agreement shall automatically extend through the date of the actual closing (the "Closing Date") of such contract. The exclusive right granted herein shall include, without limitation, the exclusive right to list and sell the Property by online auction ("Auction"), private sale, exchange or otherwise, on terms and conditions herein stated.

2.      **Place/Time of Auction**.  Auction shall be conducted ONLINE ONLY (the "Online Auction") unless otherwise provided for herein, with the final bidding date not later than forty-five (45) days following the date on which the Seller delivers to Auction Firm all of the necessary property information and marketing funds required by Auction Firm (the "Final Bidding Date"), unless otherwise agreed to in writing by Seller and Auction Firm.

3.      **Auction Type**.  Seller agrees to accept the highest bid received at the Online Auction (hereafter "Selling Price") and to confirm the sale by entering into a binding written contract with the buyer ("Buyer") within two business days of the Final Bidding Date pursuant to the requirements of acceptance as outlined below.

Seller acknowledges that the Online Auction will be conducted in accordance with the terms and conditions posted on Auction Firm's website.  Seller agrees and certifies, based on the auction types described herein, the Property will be advertised and sold **<u>With Reserve and subject to Seller approval and subsequent Court confirmation.</u>**

If the Property is sold **With Reserve**, the Seller reserves the right to establish a minimum bid (the "Reserve Price"), and the right to reject or accept any or all bids, or withdraw the

<span style="color:red">**Exhibit A**</span>

Property from the Online Auction at any time prior to the time at which a buyer submits a bid for the Property equal to or exceeding the Reserve Price. The Reserve Price will not be published. In setting the Reserve Price, the Seller certifies that such Reserve Price is sufficient to satisfy any and all liens and encumbrances on the Property, and the closing costs associated with the sale of the Property. The Seller agrees to accept the highest bid received which is equal to or greater than the undisclosed Reserve Price. The Seller may reduce or remove the Reserve Price at any time by providing written instruction to the Auction Firm.

The undisclosed Reserve price shall be: **With Reserve & Subject to Seller Confirmation – No Defined Minimum**. Initial HERE_____

If the Property is sold **Absolute & Without Reserve**, the Seller acknowledges that the Property shall be sold to the highest bidder regardless of price, without reserve, a requirement of any minimum bid or without competing bids. Seller certifies that the Seller has a bona fide intent to transfer ownership of the Property to the highest bidder regardless of the amount of the highest bid and without reliance on any contract that a particular bid or bid level be attained in order to transfer the Property. Once the auction has been opened for bids, the Property cannot be withdrawn from auction. Seller certifies that the Seller or anyone acting on the Seller's behalf will not bid or otherwise participate in the bidding process.

4.    **Timing and End of Auction**. The Online Auction will be a timed event and all bidding will close at a specified time. At Auction Firm's discretion, Auction Firm may close bidding early or extend the Online Auction. The Online Auction may have an auto-extend feature. If the Online Auction features auto-extend, any bid placed within a specified time of the end of the Online Auction, Auction Firm may extend bidding for an additional amount of time specified by Auction Firm. Auction Firm may increase or decrease such extended time during the Online Auction until bidding is closed. In the event Seller requests an extension to the Final Bidding Date, such request may be rejected by Auction Firm at their sole discretion should Auction Firm believe, for any reason, that an additional bidding period will not benefit the Property.

5.    **Technical Provider and Technology Issues**. In the sole discretion of Auction Firm, Auction Firm may use a third party to provider technical services to facilitate the Online Auction. In the event that there are issues related to any technology utilized during the Online Auction, Auction Firm may extend bidding, continue the bidding, or close the bidding. In no event shall Auction Firm be held responsible or liable for a missed bid, any failure of technology to function properly for any reason during the Online Auction, or for the actions of any third party service provider engaged by Auction Firm to provide services for the Online Auction.

6.    **Auction Firm's Obligations**. The provisions of this Contract apply only to Auction Firm's representation of Seller with regards to the Property in this transaction and, in conjunction with this Contract. Auction Firm will use its best efforts in promoting and conducting the Online Auction, however it is acknowledged that Auction Firm has made no warranties or guarantees as to the financial outcome or price to be obtained as a result

of the Online Auction or Auction Firm's marketing efforts. Auction Firm will not be held financially responsible for returned checks or unpaid debts and will not disburse any funds related to the Online Auction until all checks related thereto have cleared the respective bank(s) upon which they are drawn.

7. **Sellers Obligations**. Seller shall (a) fully cooperate and use Seller's best efforts to bring about a sale of the Property; and (b) provide Auction Firm with any reasonably requested information to assist in the marketing or sale of the Property. Seller shall refer any and all inquiries regarding the Property to Auction Firm. Seller shall convey the Property by transferable and recordable general warranty deed, with release of dower, if any, or fiduciary deed, as appropriate, subject to any easements and restrictions of record not adversely affecting marketability of title. Title to the Property shall be transferred free and clear of any and all liens, attachments, illegal tenancies and encumbrances. Seller warrants that the Property is free and clear of all liens, attachments, illegal tenancies and encumbrances, except as follows (none if nothing inserted):

_____

_____

_____

Additionally, Seller agrees to have a preliminary title search completed, at Sellers cost, and in advance of commencement of marketing, by a qualified and reputable national title company acceptable to Seller and Auction Firm.

8. **Compensation & Buyers Premium**. Seller authorizes and acknowledges that Auction Firm will charge and retain a fee from Buyer (the "Buyer's Premium") equal to ten percent (10%) of the sale price established in the Online Auction (the "High Bid Price"), with a minimum Buyer Premium of Two Thousand Five Hundred Dollars ($2,500.00) if the Property is sold at auction.

In the event Seller enters into any agreement to transfer any interest in the Property outside of the Online Auction but during the term of this Contract, a commission fee of ten percent (10%) of the total value of any sale or lease agreement, with a minimum of Two Thousand Five Hundred Dollars ($2,500.00) shall be paid to Auction Firm. A commission fee shall apply if any of the following occur: (a) the Property is sold, leased or exchanged by anyone; (b) Auction Firm or any cooperating real estate brokerage produces a buyer ready, willing and able to purchase the Property on the terms and conditions set forth herein; or (c) Seller enters into a lease/purchase or any other agreement upon other terms and conditions acceptable to Seller. For purposes of this Contract, a transfer of the Property shall include any sale, lease or exchange of the Property or the ownership entity of the Property, lease of the Property with an option to purchase, or lease having a term (including renewals). The purchase price shall include all debts assumed or to which the Property is sold subject to, all option fees, and the sum of all lease payments over the term of the lease, including all renewals.

From any commission and/or Buyers Premium, Auction Firm will share two percent (2%) of the High Bid Price at auction with any cooperating broker that follows Auction Firm's

registration guidelines and whose registered buyer is the successful bidder and purchaser of the Property.

At closing a fee of Three Hundred Ninety Five Dollars ($395.00) shall be paid by Seller to Gryphon USA for processing and administration.

9. **Buyer Default**. In the event of a Buyer default in connection with the Property following an Auction conducted hereunder, Seller agrees to accept any alternative sale procured by Auction Firm so long as the principle terms and conditions of such alternative sale are no less favorable than the terms and conditions of the original sale in connection with which the Buyer default occurred and the purchase price meets or exceeds the Reserve Price (in the context of a listing for sale with reserve, if applicable). In the event of default by Buyer, Seller and Auction Firm shall jointly divide and retain any gross forfeited deposit equally (each retaining 50% of such deposit).

10. **Expense Advance/Marketing Investment/Title Search Fee**. All advertising will be at the sole expense of Seller but shall be ordered and placed at the reasonable discretion of Auction Firm. Marketing expenses for this auction shall be **Twelve Thousand, Five Hundred, Ninety Two U.S. Dollars and Fifty-Five Cents** (**$12,592.55**).

___**XX**_____ Within two (2) business days of the full execution of this Contract, Seller shall remit payment of the agreed upon amounts to be applied to marketing efforts. Ad design and placement will not commence until marketing investment is received by Auction Firm or the parties providing the marketing services and/or materials. Should any marketing investment check/credit card charge be returned/declined/stopped for any reason, marketing efforts will cease immediately, and Seller shall be responsible for payment of all such fees and/or interest associated.

OR

_____ Auction Firm shall advance funds related to marketing the Property and be reimbursed at Closing. In the event the Property does not sell for any reason, Seller agrees to immediately reimburse Auction Firm the amounts identified above.

AND

Auction Firm reserves the right to modify the size, placement location and marketing medium, as reasonably needed, to positively promote the auction.

As outlined in Paragraph 7, Seller Obligations, at execution of this Agreement, Seller shall remit to Gryphon a Title Search Fee of Three Hundred Fifty Dollars ($350.00) for each residential parcel or Eight Hundred Dollars ($800.00) per commercial parcel. In the event the property does not sell before, during or after the auction prior to the Termination Date, Seller shall be entitled to receive a copy of the Title Search for future use.

11.   **Production Fee**.  In consideration of Auction Firm's efforts to organize and advertise the sale at Auction Firm's cost, if the Property is not sold at or before the Final Bidding Date, or Termination Date for any reason whatsoever, Seller agrees to pay Auction Firm a Production Fee of _*N/A*_____ Thousand Dollars ($__,000.00).  Further, Seller agrees to authorize Auction Firm to charge their credit or debit card for the amount of the Production Fee in the event such fee is not otherwise paid within 2 business days following the Termination Date.

12.   **Withdrawal.**  A withdrawal of the Property from the Online Auction, following execution of this Contract, and prior to the Termination Date, shall be deemed a termination of the Contract and Seller shall be responsible for payment of all fees and/or commissions due hereunder as if the property sold at the market value as reflected by the county auditor of the county in which the Property is located.  In the event the Property is re-listed for Online Auction at a later date, additional Marketing Fees as outlined in Paragraph 7 herein shall apply.

13.   **Protection Period**.  This Contract will terminate (the "Termination Date") at midnight seven (7) days following the Final Bidding Date.  If a real estate purchase contract, lease/purchase or any other agreement contemplating the transfer of the Property, including renewals, is entered into before the Termination Date, but the closing of the sale or other transfer of the Property does not take place until after the original term or any extension of the Contract, Seller's obligation to pay any commission shall be extended to coincide with the closing or transfer date.  In addition, such commission shall be paid if the Property is sold or exchanged within ninety (90) days after the Termination Date of this Contract or any extension thereof to a party, individually or through their agent/broker, for which it can be documented to have been contacted via our marketing in any manner, contacted the listing team during the marketing period, visited the property during the marketing period, attended an open house during the marketing period or registered to bid at the auction. In such an event, our commission will be payable with the Production Fee refunded to the Seller.

14.   **Seller's Representations**.  Seller represents that no other real estate broker or agent represents Seller.  If Seller is not a natural person, the person executing this Contract on behalf of Seller represents that they have authority to do so and shall be personally responsible and guarantees all obligations of Seller under this Contract. Seller further warrants and represents to Auction Firm that Seller has full power, right and authority to enter into this Agreement and convey title to the Property and in the manner and at the time prescribed herein will convey such title by Warranty Deed to the Buyer(s). Seller further represents one of the following conditions have been met:

(i)      To the best of Seller's knowledge and following reasonable investigation, except for current tax obligations or restrictions of record of the Seller, there are no liens or encumbrances on the Property in favor of any other person, or

(ii)     Every holder of a lien or encumbrance, by execution of this Agreement or other written contract provided to the Auction Firm, agrees to the auction without regard to the amount of the highest bid or to the identity of the highest bidder, or

(iii)    A financially sound person, firm, trust, or estate, by execution of this Agreement provides to the Auction Firm a guarantee of the complete discharge and satisfaction of all liens and encumbrances, as applicable, immediately after the auction or at the closing without regard to the amount of the highest bid or to the identity of the highest bidder.

15.    **Signs**. Seller Authorizes Auction Firm to show the Property to all interested parties and to advertise the availability of the Property, including the placement of Auction Firm's signs on the Property and the removal of all other signs relating to the sale of the Property.

16.    **Rights to Content and Works**. Seller hereby grants unto Auction Firm the irrevocable, fully sublicensable and assignable, right and license, with respect to any and all data and information relating to the Property supplied by or prepared on behalf of Seller and/or Auction Firm, including, without limitation, textual descriptions, virtual tours, photographs, video and audio recordings, other images and likenesses of the Property (collectively, the "Content"), to digitize, catalog, stream, distribute, exhibit, broadcast, perform, publish, post, reproduce, display, adapt, modify, edit, communicate, translate, compress, transmit, integrate, create derivative works from, exploit, and otherwise use such Content, and to incorporate such Content into listings, web postings, audiovisual works and such other works as Auction Firm or third parties on behalf of Auction Firm may create within Auction Firm's sole discretion (collectively "Works," which Works shall be owned solely and exclusively by Auction Firm), throughout the world in any and all forms and media and by whatever means whether now known or hereafter devised or created. This license shall survive the termination of this Agreement for any reason whatsoever. Seller represents and warrants to Auction Firm that, to the best of its knowledge, such license granted to Auction Firm with respect to the Content does not conflict with, violate or infringe upon the rights, including copyright or any other intellectual property rights, of any person or entity.

17.    **Indemnification**. Seller agrees to indemnify and hold harmless Auction Firm and its agents, employees, subcontractors and independent contractors, from any claims, actions, causes of action, demands, rights, damages, losses, or costs that may result or occur due to: (a) any lien or encumbrance on the Property or due to any warranty or representation made by seller which adversely affects the Property; (b) Seller's failure to disclose any and all relevant, material, or other facts on the Property; or (c) Buyer's failure to perform.

18.    **Fair Housing & Blockbusting Statement**. It is illegal, pursuant to the Ohio Fair Housing Law, Division (H) of Section 4112.02 of the Revised Code and the Federal Fair Housing Law, 42 U.S.C.A. 3601, as amended, to refuse to sell, transfer, assign, rent, lease, sublease or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status as defined in Section

4112.01 of the Revised Code, ancestry, military status as defined in that section, disability as defined in that section, or national origin or to so discriminate in advertising the sale or rental of housing, in the financing of housing, or in the provision of real estate auctioneer services. It is also illegal, for profit, to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry into the neighborhood of a person or persons belonging to one of the protected classes.

19. **No Warranties and Limitation of Liability**. Auction Firm makes no representations or warranties with respect to any technical aspects of the Online Auction, including, but not limited to, the performance of any computer hardware or software, any other technology utilized during the Online Auction, or the services of any third party engaged by Auction Firm to provide technical services during the Online Auction. In no event shall Auction Firm be held responsible or liable for any delay or failure of technology during the Online Auction.

20. **Governing Law.** This Contract and its interpretation shall be governed by the laws of the State of Ohio. Any suit relating to this Contract shall be brought in the United States District Court for the Southern District of Ohio, Eastern Division and consolidated with Case No. 2:23-cv-512. In any litigation or other legal proceeding which may arise between any of the parties hereto, the prevailing party shall be entitled to recover its costs and expenses, including court costs and expenses incurred on appeal, and reasonable attorneys' fees incurred in any dispute through initial litigation and appeal of decision and final judgment in addition to any other relief to which such party may be entitled.

21. **Notices**. All notices relating to this Contract shall be in writing and shall be considered given when hand delivered or deposited with the United States Postal Service, postage prepaid, via certified mail return receipt requested and addressed to the parties at the address indicated herein or such other addresses as they may, by notice, specify.

22. **Severability**. The headings in this Contract are for convenience only and are not a part of the agreement of the parties, nor shall they be used to interpret this Contract. If any part of this Contract is unenforceable, the remainder of this Contract shall continue to be valid and enforceable.

23. **Binding Contract**. This Contract is subject to Court approval. This Contract is a legal and binding contract upon all parties hereto including their heirs, legal representatives, successors and assigns. This Contract contains all agreements between the parties and Auction Firm and makes no other express or implied representations or warranties. No amendment or alteration in the terms hereof shall be valid or binding unless made in writing and signed by the parties hereto. Time is of the essence of all provisions of this Contract.

24. **Force Majeure**. If either party is delayed or prevented from the performance of any act required under the Agreement by reason of any act of God, act of nature, fire, act of government or state, acts of war or terrorism, civil commotion, insurrection, embargo, prevention from or hindrance in obtaining raw material, energy or other supplies, labor

stoppages or disputes of whatever nature, or any other reason beyond the control of the party, including, but not limited to any epidemic or outbreak of pandemic disease (a "Force Majeure Event"), performance of such act shall be excused for the period of such event provided that if such interference lasts for any period in excess of forty-five (45) days either party may, by written notice to the other, terminate this Agreement. In the event that this Agreement is terminated for a Force Majeure Event, Seller agrees to reimburse Auction Firm for all expenses incurred by in preparation for the Auction.

25.     **Survival**. The representations, warranties, covenants, and agreements of the parties contained in the Agreement and in all other documents delivered in connection with this Agreement shall survive settlement.

26.     **Waiver**. No waiver of any breach of any condition herein shall constitute a waiver of any subsequent breach.

27.     **Disclosures**. Seller acknowledges receipt of Auction Firm's Consumer Guide to Agency Relationships, Property Disclosure Form's (if necessary) and agrees to execute upon the sale of Property, the Ohio Agency Disclosure Statement.

28.     **Professional Advice**. Seller acknowledges that Auction Firm can only render real estate and auction services and agrees to obtain legal or other professional services as necessary. It is recommended Seller consult with legal counsel on any questions concerning this agreement or Seller's obligations herein.

29.     **Execution and Delivery.** This Contract may be signed in counterpart, and delivered via facsimile, e-mail, or other electronic means.

30.     **Foreign Sellers**: Federal Regulations require that foreign Sellers MUST provide a U.S. Taxpayer identification number prior to closing. The application may take 4-6 weeks to process. Failure to have the I.D. Number may delay your closing. If you do not have one, contact the IRS, a tax specialist, or your real estate attorney as soon as possible.

31.     **Seller's Full Disclosure**: Seller agrees to (a) execute the Consumer Guide to Agency Relationships and the Agency Disclosure Statement; (b) complete the Residential Property Disclosure Statement, if applicable; (c) disclose in writing, to Auction Firm and any potential buyers all known material defects or material defects related to the Property which may become known in the future; (d) complete the Lead-Based Paint and Lead-Based Hazards Disclosure Form, if applicable; (e) provide Auction Firm copies of all notices received pursuant to the Ohio Sex Offender Registration and Notification Law which Auction Firm shall provide to potential Buyers of the Property and which shall be disclosed in all Real Estate Purchase Contracts; and (f) disclose to Auction Firm and any potential buyers all information which may affect a buyer's decision whether or not to purchase or bid on the Property or which might be legally required to be provided to Auction Firm or a potential buyer; (g) fully indemnify and hold Auction Firm and Auctioneer harmless from all liability associated with Seller's failure to disclose any and all relevant, material, or other facts on the Property; (h) fully indemnify and hold Auction

Firm and Auctioneer harmless from all liability associated with a buyer's failure to perform; (i) fully indemnify and hold Auction Firm and Auctioneer harmless from any negligence on part of Auction Firm or Auctioneer, and (j) provide potential buyers copies of all inspections conducted on the Property.

32.     Additional Terms. __Furnishings and vehicles included in offering but may be offered separately or included with real property.

_____

_____

_____

(Signatures on following page).

The undersigned have read and accept the terms of this Contract and acknowledge receipt of a copy of same.


SELLER:

_____

By:_____

Address: _____

_____

Phone:_____

Email:_____


AUCTION FIRM:
Gryphon USA


By_____

Name and Title: Richard F. Kruse, Auctioneer
614-885-0020
rfk@gryphonusa.com

Jeremy Pratt
614-905-7858
jgp@gryphonusa.com


By_____

Name & Title: _____, Listing Agent

Seller Approval Addendum

I, Jerry E. Peer, Jr., Receiver of all monetary and real property assets of Mr. Brinson Caleb Silver, Collateral Damage, LLC and Eclipse Home Design, LLC (Seller) of the Property located at **2543 Walnut Ave Venice, CA 90291; Parcel No. 4236-031-023** (Property) have reviewed the documents, offering details and vendor choices described below and approve of their use during the offering and sale of my Property:

_____ Auction Purchase Agreement. (Attached with initials)

_____ Terms and Conditions of Auction. (Attached with initials)

_____ Broker / Auctioneer Property Description. (Attached with initials).

_____ Opening Bid for MLS/Loopnet/syndication and advertising purposes **$750,000**.
*Note – This does not replace the minimum bid as outlined in the Listing Agreement. This is simply the advertised opening bid and list price required in online advertising and syndications.*

_____ Preliminary Auction Date within 30 days of court approval of the Listing Agreement.

_____ Earnest Money Deposit amount of **$25,000**.

_____ Title Company Chicago Title.

_____ Escrow Agent Coastal First Escrow

Seen and Agreed:

_____          _____
Seller                                                        Seller

_____          _____
Printed Name                                             Printed Name

_____          _____
Date                                                          Date

Listing Agreement Checklist

Initial             Item

_____              Listing Agreement
_____              Approved Budget (if any)
_____              Marketing Fees by Wire, Venmo or PayPal
_____              Title Fee to Allodial or other Title Agent
~~_____            Signed Company Policy on Agency~~
~~_____            Signed Lead Based Paint Form~~
~~_____            Signed Property Disclosure Form~~
~~_____            Seller Approval Addendum~~
_____              Any Other State Required Documents
_____              ~~No Sale Fee Form~~

## Gryphon Expense Proposal
### Venice, CA
### Start Date: TBD

| | Ad Size | QTY | Net Investment |
|---|---|---|---|
| **DIGITAL MARKETING** | | | |
| E-mail Blast Deployment: PropertyBlastHomes.com - Home County | | 5 | $329 |
| SubTotal | | | **$329** |
| **WEB** | | | |
| Website:  Custom URL | | | $25 |
| Website: MyStateMLS (syndicated) - Realtor.com, Zillow, Etc. | | | $25 |
| Website: Google Ads | | | $1,000 |
| Website: Facebook Ads | | | $500 |
| Website: Gryphon Facebook Page - Boosted | | | $250 |
| SubTotal | | | **$1,800** |
| **OTHER** | | | |
| Pro Photog & Drone / Boundary Lines | | | $950 |
| Matterport | | | $300 |
| Print, Sort, Mail - Area Neighbors | | | $750 |
| Media Relations & Distribution | | | $835 |
| SubTotal | | | **$2,835** |
| **MARKETING SERVICES** | | | |
| Marketing Campaign Management | | | $1,000 |
| Graphic Design | | | $225 |
| SubTotal | | | **$1,225** |
| **ONLINE PLATFORM** | | | |
| Platform Use Cost | | | $300 |
| SubTotal | | | **$300** |
| **OTHER** | | | |
| Custom Auction Sign / Banner 4x4 w Posts | | | $300 |
| Sign Install | | | $225 |
| Pre-Offiering Title Search | | | $350 |
| Window Cleaning | | | $600 |
| House Cleaning | | | $650 |
| Pool Cleaning | | | $650 |
| Alarm Install | | | $150 |
| Alarm 6 months service | | | $300 |
| Landscape Clean Up | | | $650 |
| Home Inspection | | | $1,050 |
| Termite Report | | | $150 |
| Natural Hazard Disclosure Report | | | $150 |
| SubTotal | | | **$5,225** |
| | | | |
| ***Totals*** | | | **$11,714** |
| ***Sales Tax @ 7.5%*** | | | **$878.55** |
| | | | |
| **FINAL EXPENSE TOTAL** | | | ***$12,592.55*** |

**Exhibit B**