**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION**

**ROOT, INC.**, *et al.*

    *Plaintiffs,*

v.

**BRINSON CALEB SILVER,** *et al.*,

    *Defendants.*

Case No. 2:23-cv-00512

Judge Sarah D. Morrison

Magistrate Judge Elizabeth Preston Deavers

### NON-PARTY MIAMI 555'S OBJECTION TO SALE OF REAL PROPERTY

Non-party, Miami 555 LLC, ("Miami 555"), respectfully files its Objection to the Motion of Receiver, Jerry E. Peer, Jr., to Sell Certain Real Property of Defendant, Eclipse Home Design, LLC, at Private Sale, Free And Clear Of All Interests, Liens, Claims, And Encumbrances And to Distribute Proceeds of Sale [DE 220] (the "Sale Motion"), and in support states:

**Procedural and Factual Background**

1. Miami 555 previously appeared in this case as a non-party in order to protect its interests as the senior lien holder of the property located at 9125 North Bayshore Drive, Miami Shores, Florida 33138, Parcel No. 11-32-05-001-0590, (the "Subject Property").

2. The mortgage securing the Subject Property was recorded as required by the state laws of Florida on June 27, 2022, under document id no.: 20220515421.

3. Eclipse defaulted on the mortgage, so Miami 555 exercised its right to pursue foreclosure, in *Miami 555 LLC v. Eclipse Home Design LLC*, No. 2023-015089-CA-01 (the "State Foreclosure Action"). [Fla. Cir. Ct. Dist. 11, Docket No. 2, at ¶ 19].

4. The State Foreclosure Action was brought after the initiation of the instant lawsuit, but before this Court placed defendants' assets into receivership and appointing the Receiver, Jerry E. Peer, Jr., (the "Receiver") with an Order (the "Order Appointing Receiver").

5. On April 12, 2023, the day after Miami 555 filed its State Foreclosure Action, Miami 555 filed a notice of *lis pendens* against the Subject Property. [Fla. Cir. Ct. Dist. 11, Docket No. 4]

6. The Receiver obtained a stay in the State Foreclosure Action and Miami 555 sought a lift of the stay as to the Subject Property and clarification from the Court that the State Foreclosure Action was not subject to the stay. [*See* DE 191].

7. Both the Receiver and the Plaintiffs opposed a lift of the stay, arguing that this Court had exclusive jurisdiction over the Subject Property. *See* [DE 195] and [DE 196]. Miami 555 asserted that it was the state court that had exclusive jurisdiction over the Subject Property because the State Foreclosure Action predated the date the Receiver was appointed. *See* [DE 191] and [DE 207].

8. On January 5, 2024, this Court agreed with Miami 555 and entered an order granting a lift of the stay and clarifying that the State Foreclosure Action is not subject to the litigation injunction contained in the Order Appointing Receiver. [DE 215].

9. Specifically, this Court held that even assuming the Court had exercised jurisdiction over the Subject Property by incorporating it into the Receivership property, it had not done so as of the date the State Foreclosure Action was filed, and cited *Hanover Am. Ins. Co. v. Tattooed Millionaire Entm't, LLC*, 38 F.4th 501, 506 (6th Cir. 2022). [DE 215 at p. 3].

10. Implicit in its holding, therefore, this Court has determined that the state court exercised jurisdiction over the Subject Property first, and therefore had obtained exclusive in rem jurisdiction.

11. Miami 555 has since continued to pursue its foreclosure judgment in the State Foreclosure Action and has a motion for summary judgement likely to be granted set for January 31, 2024. [Fla. Cir. Ct. Dist. 11, Docket No. 48].

12. Now the Receiver seeks an order from this Court approving the private sale of the Subject Property "free and clear of any and all interests, liens, claims, and encumbrances, as well as any right of redemption, with the interests, liens, claims, and encumbrances attaching to the net proceeds of the sale, which shall be disbursed to the secured creditor(s) holding valid and existing liens, in order of their respective priorities." [DE 220 at ¶ 9].

13. Without citing to any authority for the proposed priority of the creditors, the Receiver indicated the proceeds would be distributed: <u>first</u> to the Clerk of Courts; <u>second</u> to pay any outstanding real property taxes and assessments; <u>third</u> to pay closing costs attributable to the Receiver; <u>fourth</u> to be left in the complete discretion of the Receiver anticipated future administrative expenses defined as the Receiver Holdback; <u>fifth</u> to Miami 555; and <u>sixth</u> any remaining proceeds held by the Receiver. [DE 220 at ¶ 14].

14. Miami 555 objects both to a private sale that could somehow render the Subject Property free and clear of all liens, as well as to the Receiver's unsupported proposed order of priority of proceed distributions.

**Legal Argument**

As already amply briefed and settled, the Florida state court obtained exclusive in rem jurisdiction over the Subject Property when the State Foreclosure Action was filed prior to entry

of the Order Appointing Receiver.  *See* [DE 215]; *see also Hanover Am. Ins. Co. v. Tattooed Millionaire Entm't, LLC*, 38 F.4th 501, 505 (6th Cir. 2022).

First and foremost, because the state court has exclusive in rem jurisdiction, this Court does not have the authority to grant the relief requested by the Receiver.  It is true that, ordinarily, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).  However, "when one court is exercising *in rem* jurisdiction over a *res,* a second court will not assume *in rem* jurisdiction over the same res."  *Marshall v. Marshall*, 547 U.S. 293, 311 (2006).  The Supreme Court has therefore ruled that "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of other courts."  *Penn Gen. Casualty Co. v. Pennsylvania,* 294 U.S. 189, 195 (1935).  This alone warrants denial of the Sale Motion.

By allowing the Receiver to sell the Subject Property, the Court would be inserting itself and exercising jurisdiction over the res, as a receiver is "merely the liquidating agent of the court."  *State of Oregon v. Ingram*, 63 F.2d 417, 420–21 (9th Cir. 1933).  Moreover, Florida law specifically prohibits enforcement of unrecorded liens against property after a *lis penden*s has been filed.

> Except for the interest of persons in possession or easements of use, the recording of such notice of lis pendens . . . constitutes a bar to the enforcement against the property described in the notice of all interests and liens, including, but not limited to, federal tax liens and levies, unrecorded at the time of recording the notice unless the holder of any such unrecorded interest or lien moves to intervene in such proceedings within 30 days after the recording of the notice and the court ultimately grants the motion.

Fla. Stat. § 48.23(2)(d).  Therefore, the Receiver is prohibited from even effecting the enforcement of any creditors' claims that were not recorded prior to Miami 555's *lis pendens*.

But the relief sought by the Receiver in the Sale Motion is not limited to just the sale of the Subject Property and distribution of proceeds to creditors. The Receiver requests that the sale be accomplished along with a declaration that it would be free and clear of any claims. Moreover, the Receiver is effectively asking this Court to disregard both state priority laws and the terms of the mortgage contract by relegating Miami 555 to fifth in priority.

Though the Receiver indicates an intention to distribute funds from the sale of the Subject Property "in order of their respective priorities," he fails to explain or cite to any authority as to how that order was determined. [DE 220 at ¶ 9]. The relief sought by the Receiver is particularly alarming to Miami 555, as it is the first lien holder and the Receiver proposes moving Miami 555 to fifth on the order of priority, without apparent rhyme or reason. Importantly, all guiding law and authority appear to require the opposite result being sought.

In fact, it is well established that "a receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." *Marshall v. People of State of New York*, 254 U.S. 380, 385 (1920). It is equally well-established that "a receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment." *Cates v. Musgrove Petroleum Corp., Inc.,* 376 P.2d 819, 821 (Kan.1962); see also *Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293, 1297 n.2d (10th Cir.1986) (holding that "appointment of a receiver does not determine any rights nor destroy any liens"); and *Ticonic National Bank v. Sprague,* 303 U.S. 406, 412 (1938) (holding in the context of an appointed bankruptcy receiver that "liens, equities or rights arising prior to insolvency and not in contemplation thereof, are not invalidated").

As such, the rights of secured creditors to their security interests are among those protected by law. The Supreme Court has held that "to the extent that one debt is secured and another is not there is manifestly an inequality of rights between the secured and unsecured creditors, which cannot be affected by the principal of equality of distribution." *Ticonic National Bank,* 303 U.S. at 411–412. Finally, it is also well established "that a court of equity, in the absence of fraud, accident or mistake, cannot change the terms of a contract." *Hedges v. Dixon County,* 150 U.S. 182, 189, 14 S.Ct. 71, 37 L.Ed. 1044 (1893); *see also Manufacturers' Fin. Co. v. McKey*, 294 U.S. 442, 449 (1935) (reversing both the appellate court and trial court where the district court allowed a bankruptcy receiver to pay less than the total amounts owed to a creditor finding that because courts are bound by the law, courts supervising receiverships cannot simply ignore applicable state and federal laws).

Plainly, the Receiver cannot arbitrarily reallocate the order of priority based solely on his discretion as to what would be best for the Receivership. The rights of the contracting parties are established according to the laws of the state. *Stanley Works v. Gourland Typewriter Mfg. Co.*, 278 F. 995, 996 (E.D.N.Y. 1922). As noted by one special master in its report and recommendation under strikingly similar facts:

> The Special Master is not aware of any court that has explicitly held that the priority of liens as established by state law can be ignored simply because a receivership is in place. Therefore, it is recommended that the court be governed by the general rule that state law regarding lien priorities is to be respected in receiverships, and . . . that all liens against the property ordered sold by the Receiver would be transferred to the proceeds of the sale with the same priority, character, rank, and dignity as they bore prior to the sale, if any.

*In re Real Prop. Located at Redacted Jupiter Drive, Salt Lake City, Utah*, 2:05-CV-1013, 2007 WL 7652297, at *4 (D. Utah Sept. 4, 2007). The special master further noted "[s]tate lien priority

law is not an 'equitable remedy' of a creditor, but a legal status that a creditor enjoys vis a vis an asset." *Id*.

Here, Florida law is the applicable state priority lien authority. "Where real property is concerned, it is a firm, long standing principle, that priorities of liens on real property are established by date of recordation." *Lamchick, Glucksman & Johnston, P.A. v. City Nat. Bank of Florida*, 659 So. 2d 1118, 1120 (Fla. 3d DCA 1995); *see also* Fla. Stat. § 695.11. "However, because of the different concerns involved in the context of real property, the diligent creditor doctrine cannot be used to allow creditors to "leapfrog" over established real property priorities." *Id*.

It is undisputed – in fact it is acknowledged and asserted by the Receiver himself- that Miami 555 is the only secured creditor as to the Subject Property. [DE 220 at ¶ 9]. Therefore, Florida law dictates that should the Subject Property be sold, Miami 555 shall be afforded first priority. If the Court does not outright deny the Receiver's Sale Motion, Miami 555 respectfully requests that Miami 555's claim be made first in the order of priorities for distribution of sale proceeds.

Based on the law and the merits, as argued *supra*, this Court should deny the Sale Motion. But over and beyond legal authority, this Court should deny the Sale Motion for practical reasons founded in common sense. There is a summary final judgment hearing set only a few days away in the State Foreclosure Action which will almost certainly result in a foreclosure sale date. Frankly, had the Receiver not inserted himself and obtained the stay in the State Foreclosure Action, the Subject Property would likely already have been sold with less expenses, fees, and interest accrual.

If the Subject Property goes through the Florida judicial foreclosure process as it should, no prejudice would result to any of the parties concerned.  Given the impending sale date which is strictly governed by statute as juxtaposed with the vague closing date noted in the proposed purchase agreement [*see* DE 220 ex. A at pp. 1-2, ¶ 4-5], there is a negligible difference in the timeline, as both appear to anticipate roughly 30 days out.  The proposed buyer is of course free to partake in the auction process outlined in Florida Statute § 45.031 and could still purchase the Subject Property for the amount agreed to with the Receiver.  Moreover, there's even the potential for a *higher* bid than the proposed buyer's offer made at the public auction that will result in a benefit to the Receivership.

For all of the foregoing reasons, this Court should deny the Motion of Receiver, Jerry E. Peer, Jr., to Sell Certain Real Property of Defendant, Eclipse Home Design, LLC, at Private Sale, Free And Clear Of All Interests, Liens, Claims, And Encumbrances And to Distribute Proceeds of Sale [DE 220].  Alternatively, if the Court is not inclined to deny the Sale Motion in toto, Miami 555 respectfully requests that this Court find that Miami 555's secured claim on the property is superior in priority, and therefore the sale proceeds should be distributed with Miami 555 first in order.

Respectfully submitted,

By: */s/ James R. Leickly*
James R. Leickly (0038309)
Trial Attorney
400 South Fifth Street, Suite 200
Columbus, Ohio 43215
Telephone No. (614) 329-0133
James@Leicklylaw.com


By: */s/ Alexis Fields*
ALEXIS FIELDS
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**

One West Las Olas Blvd., Suite 500  
Fort Lauderdale, Florida 33301  
Telephone No. (954) 525-4100  
Florida Bar Number: 95953  
Fields@kolawyers.com  
*Admitted pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2024, a true and accurate copy of the foregoing was filed electronically. Notice of this filing has been sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

A copy was also sent by ordinary U.S. Mail, postage prepaid, to the following:

Paige McDaniel  
5576 Alexanders Lake Road  
Stockbridge, GA 30281

By: */s/ Alexis Fields*  
ALEXIS FIELDS