UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROOT, INC., et al., : | |
| : | |
| *Plaintiffs*, : | Case No. 2:23-cv-512 |
| : | Judge Sarah D. Morrison |
| vs. : | Magistrate Judge Elizabeth A. |
| : | Preston Deavers |
| BRINSON CALEB SILVER, et al., : | |
| : | |
| *Defendants*. : | |

## MOTION OF RECEIVER, JERRY E. PEER, JR., TO SELL CERTAIN REAL PROPERTY OF DEFENDANT, ECLIPSE HOME DESIGN, LLC, AT PRIVATE SALE, FREE AND CLEAR OF ALL INTERESTS, LIENS, CLAIMS AND ENCUMBRANCES AND TO DISTRIBUTE PROCEEDS OF SALE

Now comes the Court appointed receiver herein, Jerry E. Peer, Jr., by and through undersigned counsel, and moves the Court for authority to sell the real property owned by Eclipse Home Design, LLC located at and commonly known as 2543 Walnut Avenue, Venice California, 90291; Parcel No. 4236-031-023, pursuant to the terms and conditions of and as more fully described in the *Real Estate Purchase Agreement*, attached hereto as "Exhibit A," free and clear of any and all interests, liens, claims and encumbrances, as well as any right of redemption, with the interests, liens, claims and encumbrances transferred to the proceeds of sale, and to approve the Receiver's proposed distribution of proceeds of sale.

A Memorandum in Support of this Motion is attached hereto.

1

Respectfully submitted,

**PETERSON CONNERS LLP**

 /s/  Jerry E. Peer, Jr.
Gregory S. Peterson (0061915)
Jerry E. Peer, Jr. (0075128)
Istvan Gajary (0089084)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
Telephone: (614) 365-7000
Facsimile: (614) 220-0197
E-mail:  gpeterson@petersonconners.com
              jpeer@petersonconners.com
              igajary@petersonconners.com
*Counsel for Receiver, Jerry E. Peer, Jr.*

**MEMORANDUM IN SUPPORT**

**I.  INTRODUCTION**

1. In accordance with the requirements of this Court's *Order,* filed May 12, 2023 [Doc. # 99], *Order Appointing Receiver*, filed May 17, 2023 [Doc. # 101], and *Order Amending Order Appointing Receiver*, filed June 7, 2023 [Doc. # 120] (hereinafter collectively "Receiver Order"), Jerry E. Peer, Jr. ("Receiver"), was appointed as Receiver of all monetary and real property assets of Mr. Brinson Caleb Silver, Collateral Damage, LLC and Eclipse Home Design, LLC (hereinafter collectively "Defendants").   Since his appointment, Receiver has taken possession and control of the real estate of Defendant located at 2543 Walnut Avenue, Venice California, 90291; Parcel No. 4236-031-023  ("Property").  Pursuant to the Receiver's Order, Receiver has further been engaged for the purpose of negotiating and effecting an orderly sale of the Property in or outside the ordinary course of business.  Receiver Order at p. 9, ¶ 2(k).  Since taking possession of the Property, Receiver has conducted preliminary determinations of the value of the Property in its present condition.  In light of the current market conditions and due to a pending foreclosure action, Receiver has determined that it is in the best interests of the receivership estate, and its respective creditors, to sell the Property at private sale as this will generate the highest net return to the receivership estate.

**II.  LAW AND ARGUEMENT**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 754, 959 and 1692, Rule 66 of the Federal Rules of Civil Procedure, this Court's inherent powers, and Ohio laws where applicable.

3

3. In accordance with the requirements of this Court's Order, filed May 12, 2023 [Doc. # 99], Order Appointing Receiver, filed May 17, 2023 [Doc. # 101], and Order Amending Order Appointing Receiver, filed June 7, 2023 [Doc. # 120] (hereinafter collectively "Receiver Order"), Jerry E. Peer, Jr. ("Receiver"), was appointed as Receiver of all monetary and real property assets of Mr. Brinson Caleb Silver, Collateral Damage, LLC and Eclipse Home Design, LLC (hereinafter collectively "Defendants").

4. Pursuant to the Receiver Order,

> The Receiver is authorized to negotiate and effect an orderly sale, transfer, use, or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of the Receivership Defendants and, from the proceeds thereof, to pay the secured and unsecured indebtedness of the Property, including the Real Property. Payments to creditors by the Receiver shall include trade indebtedness which arises during the course of the Receiver's operation of the Property, which shall be paid first from the sale proceeds, together with the fees and expenses of the Receiver and his attorneys, accountants, and other professionals. The Receiver is authorized to conduct such a sale of the Property in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale …

See Receiver Order, ¶ 2(k).

Further, paragraphs 12(v) and (w) authorized the Receiver to retain a broker to market or sell the Receivership Property and to employ such person or entities as may be necessary to accomplish the Receiver's duties.

5. Further, it is well-established, "[a] judge who finds it necessary to appoint a Receiver should see that the entity, and therefore assets, are liquidated as economically and speedily as possibly unless its continuance is demonstrated to be beneficial to the creditors. *Jones v. Proctorville* (1961 C.A. 6, Ohio) 290 F. 2d 49.

6. Pursuant to this Court's Notation Order Granting Receiver's Motion to Employ Gryphon Asset Advisors, LLC as Auctioneer, filed January 19, 2024 [Doc. # 221], Receiver engaged Gryphon Asset Advisors, LLC ("Auctioneer"), pursuant to the terms and conditions of the Exclusive Listing Agreement for Real Estate Auction ("Auction Agreement") approved by the Sale Order, to conduct a public auction of the real estate identified in the Real Estate Purchase Agreement, attached hereto as "Exhibit A" ("Purchase Agreement).

7. Between February 20, 2024 and March 16, 2024, the Receiver and Auctioneer offered the Property for public sale by and through Auctioneer, through an online auction ("Public Auction"). The Public Auction was well-attended and produced substantial bidding activity. There were sixty-three (63) registered bidders and one hundred thirty-four (134) bids placed.

8. Receiver, through Auctioneer, advertised the Property for sale for approximately four (4) weeks through various forms of media. Marketing efforts included professional photography and videography. The Property was digitally marketed with top tier status on listing sites as well as social media platforms. Further, an email campaign was used to reach over 35,000+/- individual email accounts. Finally, Auctioneer utilized industry standard marketing practices such as signage, social media, outgoing and responsive phone calls, as well as site visits. Seventy-six (76) interested parties attended the two (2) open house events. Auctioneer's efforts generated sixty-three (63) qualified bidders. Bidders were offered an opportunity to review Court documents evidencing the Receiver's authority to offer the asset, terms of sale and a draft purchase agreement in advance of registration and bidding. On Zillow the Property garnered 10,559 views and 520 saves.

9. Bidding began at $750,000 and bid increments were set at $100. As noted above, bidding opened on February 20, 2024 and ran until March 16, 2024.

10. As a result of Receiver's and Auctioneer's best efforts marketing the Real Estate for the Public Sale to potentially interested purchasers, the highest offer/bid received at the conclusion of the Auction was in the amount of Two Million, Six Hundred Fifty Thousand, Eight Hundred and 00/100 Dollars ($2,650,800.00) for the Property.

11. Following the conclusion of the auction, the high bidder informed Receiver, through Auctioneer, that he and his agent misunderstood the terms of the Auction and therefore withdrew its offer and highest bid to purchase the Property. The high bidder then attempted to negotiate a lower purchase price, which was rejected by Receiver.

12. Immediately after the highest bid being withdrawn, Receiver, through his agents, contacted the other participating bidders, none of whom were willing to make an acceptable offer to purchase the Property.

13. Thereafter, Auctioneer continued to receive multiple inquiries and offers from potential purchasers. Three (3) written offers were submitted, ranging between $2,300,000 and $2,475,000. Through the efforts of Receiver and Auctioneer, Daniel Rumennik ("Buyer") has been identified as a potential purchaser for the Property. The Receiver and Buyer have engaged in arm's length and good faith negotiations regarding the sale of the Property. As a result of these negotiations, Receiver and Buyer have entered into the Purchase Agreement being contingent upon the approval of this Court.

14. By this Motion, Receiver seeks this Court's approval of the Purchase Agreement, to sell the Property free and clear of any and all interests, liens, claims, and encumbrances, as well as any right of redemption, with the interests, liens, claims, and encumbrances attaching to the net proceeds of sale, which shall be disbursed to the secured creditor(s) holding valid and existing liens, in order of their respective priorities. Apart from the Treasurer of Los Angeles

County, California, to whom the real estate taxes will be paid at closing, the only secured creditor is Verus Residential Loanco, LLC. In order to increase the net return to the receivership estate, Receiver negotiated a reduction in compensation from $247,000 to $120,000. It is estimated that the net proceeds of sale will be approximately $144,000.00.

15. The Receiver in his business judgment has determined, based upon the circumstances that a sale of Property, pursuant to the terms of the Purchase Agreement, is in the best interest of the creditors of the receivership estate

16. The Receiver requests that any order approving the sale of the Property include findings of the Court that the purchase of the property is commercially reasonable, has been negotiated in good faith and that the offer of Buyer is fair and reasonable and represents the highest and best offer under the circumstances.

17. Any person or entity asserting an ownership interest in the Property or any creditor of Defendant that believes that it has a lien on the Property, which has priority over the mortgages and security interests of Verus Residential Loanco, LLC other than the Los Angeles County Treasurer, must file an objection to this Motion within the time established by this Court.

18. In light of the fact that it is the duty of the Receiver to act for the benefit of all creditors, Receiver requests that the Property be sold pursuant to the terms of the Purchase Agreement. Receiver believes that a sale of the Property at this time is in the best interests of the receivership estate. Receiver believes and represents that this sale is commercially reasonable. Receiver further offers that this private sale is the most efficient and economical means to dispose of the Property.

**III.    DISTRIBUTION OF SALE PROCEEDS**

19. After receipt of all credits provided for under the Purchase Agreement, proceeds of the sale paid at closing shall be distributed in accordance at Closing and/or by Receiver as follows:

19.01 First, to the Clerk of Courts to pay any outstanding court costs;

19.02 Second, to pay outstanding real property taxes and assessments pro-rated through the date of the Closing, if any, or as otherwise provided in the Purchase Contract;

19.03 Third, to pay all closing costs attributable to the Receiver as Seller;

19.04 Fourth, if deemed necessary by Receiver, an amount to be determined by Receiver as sufficient to cover existing and future anticipated administrative expenses, including Receiver and counsel to Receiver fees and expenses ("Receiver Holdback"), which shall be held by Receiver to cover the costs of the Receivership estate. Any amount remaining over and above the Receiver Holdback shall be distributed pursuant to subsections 19.05-19.06 below.

19.05 Fifth, to Verus Residential Loanco, LLC in satisfaction of its note and mortgage against the Property.

19.06 Sixth, once all administrative fees and expenses have been paid and a sufficient Receiver Holdback determined, the remaining proceeds held by Receiver pending further order of this Court.

WHEREFORE, the Receiver respectfully requests that the Court enter an order: (i) authorizing the Receiver to sell the Property free and clear of any and all liens, claims, encumbrances, and other interests with said liens, claims, encumbrances, and other interests attaching to the net proceeds of sale; (ii) approving the Purchase Agreement; (iii) granting the Receiver authority to distribute the sale proceeds as stated in Paragraph 19 of this Motion; and (iv) granting such other and further relief as the Court deems appropriate pursuant to applicable law or in equity.

Respectfully submitted,

**PETERSON CONNERS LLP**

 /s/  Jerry E. Peer, Jr.
Gregory S. Peterson (0061915)
Jerry E. Peer, Jr. (0075128)
Istvan Gajary (0089084)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
Telephone: (614) 365-7000
Facsimile: (614) 220-0197
E-mail:  gpeterson@petersonconners.com
            jpeer@petersonconners.com
            igajary@petersonconners.com
*Counsel for Receiver, Jerry E. Peer, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed electronically on this 2nd day of May, 2024 with the Clerk of Court using the CM/ECF system. Service will be made through the Court's CM/ECF system on all parties and attorneys so registered, and all parties may access this filing through the Court's system.

A copy was also sent by regular U.S.P.S. mail to the following:

Brinson Silver
Butler County Jail
Inmate No. 303850
705 Hanover Street
Hamilton, Ohio 45011

Collateral Damage, Llc
C/O Brinson Silver
Butler County Jail
Inmate No. 303850
705 Hanover Street
Hamilton, Ohio 45011

Eclipse Home Design, Llc
C/O Brinson Silver
Butler County Jail
Inmate No. 303850
705 Hanover Street
Hamilton, Ohio 45011

Paige McDaniel
5576 Alexanders Lake Rd.
Stockbridge, Georgia 30281

    /s/ Jerry E. Peer, Jr.
Jerry E. Peer, Jr. (0075128)

## REAL ESTATE PURCHASE AGREEMENT

THIS REAL ESTATE PURCHASE AGREEMENT (the "Agreement") is made effective as of April 24th, 2024 (the "Effective Date"), by and between Daniel Rumennik ("Buyer") and Jerry E. Peer, Jr. ("Seller" or "Receiver"), the Court appointed receiver for certain real property of Eclipse Home Design, LLC, in that certain civil action filed in the United States District Court for the Southern District of Ohio, Eastern Division ("Court") styled *Root, Inc. v. Collateral Damage, LLC, et al.,* Case No. 2:23-cv-00512 ("Receivership Case").

1. The Property. Buyer hereby offers to purchase, and the Receiver agrees to sell certain real property owned by Eclipse Home Design, LLC that is the subject of the Receivership Case currently within the control and hands of the Receiver (hereinafter "Transaction") located in Venice California and commonly referred to and known as 2543 Walnut Avenue, Venice CA 90291; Parcel No. 4236-031-023 and as more particularly described on **Exhibit "A"** attached hereto and made a part hereof, together with any improvements, fixtures, appurtenant rights, privileges and easements located thereon or benefiting the same (collectively, the "Property") in fee simple, subject to the terms and conditions of this Agreement.

2. Price. Subject to the adjustments and prorations described below, Buyer agrees to pay to Seller the sum of Two Million Four Hundred Seventy-Five Thousand and 00/100 Dollars ($2,475,000.00) as the total purchase price for the Property (the "Purchase Price"). The Purchase Price shall be payable as follows:

> 2.1 Deposit. At the time of execution of this Agreement by Buyer and Seller, Buyer shall deliver to the Title Company, as hereinafter defined, the sum of Twenty-Five Thousand and 00/100 Dollars ($25,000.00) as an earnest money deposit (the "Deposit") in certified funds.
>
> > a. The Deposit shall be credited and applied against the Purchase Price at Closing, as hereinafter defined, or returned to Buyer when the Transaction contemplated hereunder is closed.
> >
> > b. If Seller fails or refuses to perform or if Buyer fails or refuses to perform, the Deposit shall be returned or paid to the non-breaching party in accordance with Section 17 of this Agreement.
>
> 2.2 Cash at Closing. The balance of the Purchase Price shall be payable in cash or other immediately available funds at the Closing, as hereinafter defined.

3. Taxes and Assessments. At Closing, Seller shall pay or credit on purchase price all delinquent taxes, including penalty and interest, all assessments that are a lien on the date of this Agreement and all agricultural use tax recoupments for years prior to the year of Closing. At Closing, Seller shall also pay or credit on the Purchase Price all other unpaid real estate taxes that are a lien for years prior to Closing and a portion of such taxes and agricultural use tax recoupments for year of the Closing, prorated through date of the Closing and based on a 365-day year and, if undetermined, on most recent available tax rate and valuation, giving effect to applicable exemptions, recently voted millage, change in valuation, etc., whether or not certified. All allocations and provisions at Closing shall be final.

> 3.1 Buyer and Seller understand that real estate taxes and assessments are subject to retroactive change by the government authority. The real estate taxes for the Property, for the current year, may change as a result of the transfer of the Property or as a result of a change in the tax rate.

3.2 To the best knowledge and belief of Seller, Seller warrants that no improvements or services (site or area) have been installed or furnished, nor notification received from public authority or owner's association of future improvements of which any part of the costs may be assessed against the premises.

4. <u>Fixtures and Equipment.</u> The consideration shall include all fixtures, equipment, and furniture located in/on the property, including but not limited to: built-in appliances; heating, ventilating, air conditioning (HVAC) and humidifying equipment and their control apparatus; stationary tubs; pumps; water softening equipment; roof antennae; attached wall-to-wall carpeting and attached floor coverings, curtain rods and window coverings including draperies and curtains; attached mirrors; light, bathroom and lavatory fixtures; storm and screen doors and windows, awnings, blinds and window air conditioners, whether now in or on the premises or in storage; garage door openers and controls, attached fireplace equipment; security systems and controls; smoke alarms; satellite TV reception system and components; all exterior plants and trees; and the following: all indoor and outdoor furniture located on the property.. **Seller does not warrant the condition or existence of any fixture or equipment and the Property is being accepted in AS-IS and AS-Inspected condition.**

5. <u>Inspections and Tests.</u> Buyer has previously inspected the property and accepts the Property in its current condition, with all faults, known or unknown.

6. <u>Representations and Warranties.</u> The Parties represent and warrant to the other, both as of the Effective Date of this Agreement and the Closing, as follows:

6.1 <u>Seller's Authority.</u> Seller's sale of the Property is contingent upon final approval of the sale and of the Purchase Price by the Court in the Receivership Case. Subject to the foregoing sentence, no additional consent of any creditor, investor, judicial, administrator, receiver, governmental authority or other party to the execution, delivery or performance is required. Seller represents and warrants that it shall seek an order, which shall be acceptable to the Title Company for purposes of issuing the Title Policy in accordance with Paragraph 8 herein and consistent with the other applicable provisions of this Agreement, from the Court in the Receivership Case approving the Transaction as contemplated by this Agreement for the Property to be sold to Buyer free and clear of any and all interests, liens, claims and encumbrances (the "Order"). The date Seller obtains the Order from the Court is referred to as the "Court Approval Date".

6.2 <u>Other Negotiations.</u> Buyer acknowledges that Receiver may continue to seek and negotiate with other interested parties until the date this Agreement has been approved by the Court in the Receivership Case. On and after the Court Approval Date, Receiver shall close this Transaction, pursuant to its terms, without further negotiation or consideration to other offers. Should this Transaction not close in accordance with this Agreement, Receiver may, at its discretion, elect to pursue other offers to purchase the Property.

7. <u>Deed/Closing.</u> Seller shall convey marketable fee simple in the Property to Buyer title by transferable and recordable fiduciary warranty deed, on a date as the parties agree, which shall occur on or before thirty (30) days after the Court Approval Date (the "Closing"), or on such other date as the parties hereto may agree upon in writing, but in no event later than forty-five (45) calendar days following the Court Approval Date unless otherwise extended by the parties in writing; provided, however, the Transaction contemplated herein has been approved by the Court pursuant to Paragraph 6.1 herein. Title shall be transferred free and clear of any and all interests, liens, claims and encumbrances except (a) those created or

assumed by Buyer, (b) zoning ordinances, (c) legal highways, (d) covenants, restrictions, conditions and easements of record which do not unreasonably interfere with the present lawful use as residential dwellings; and (e) the exceptions identified on Schedule B of the Title Commitment to which Buyer makes no objection. The Closing shall take place at __Chicago Title_____ (the "Title Company").

        8.     <u>Title Insurance.</u> Seller shall furnish and Buyer shall pay for an owner's title insurance commitment and policy in the amount of the purchase price. The title evidence shall be certified to within thirty (30) days prior to Closing with endorsement not before 8:00 a.m. on the business day prior to the date of Closing, and shall show marketable title free and clear of all liens and encumbrances except: (a) those created by or assumed by Buyer; (b) those specifically set forth in this Agreement; (c) zoning ordinances; (d) legal highway and (e) covenants, restrictions, conditions and easements of record that do not unreasonably interfere with present lawful use. Buyer shall pay any additional costs incurred in connection with mortgagee title insurance issued for the protection of Buyer's lender. If Buyer desires a survey, Buyer shall pay the cost thereof. If title to all or part of the Property is unmarketable, as determined by California law, or is subject to liens, encumbrances, easements, conditions, restrictions or encroachments, other than those excepted in this Agreement ("Title Defect"), Seller shall, within thirty (30) calendar days after Seller receives written notice thereof, attempt to remedy remedy or remove any such defect, lien, encumbrances, easement, condition, restriction or encroachment or obtain title insurance without exception therefore. If Seller is unable to remedy or remove any Title Defect, Buyer shall, on or before the tenth (10) day of the date of the expiration of Seller's 30-day cure period, elect in writing to either terminate this Agreement or waive its objection to such Title Defect. Buyer's failure to make the election described in the immediately preceeding sentence shall be deemed an election to waive the Title Defect.

        9.     <u>Utility Charges, Condominium Charges, Interest, Rentals, and Security Deposits.</u> Through the date of possession, Seller shall pay all accrued utility charges and any other charges that are or may become a lien on the Property. Adjustments and Provisions shall be made through the date of Closing for: (a) rentals; (b) interest on any mortgage assumed by Buyer; (c) utility changes; and, (d) condominium fees and/or assess rents.

        10.    <u>Damages or Destruction of Property.</u> Risk of loss to the Property and appurtenances shall be borne by Seller until Closing. If any part of the Property covered by this Agreement shall be substantially damaged or destroyed before this transaction is closed, Seller shall give a written notice to Buyer that the damage or destruction has occurred. Such notice must include all pertinent information regarding insurance policies and claims covering the premises that has been damaged or destroyed. The written notice shall be delivered within forty-eight (48) hours of the event causing the damage or destruction. Buyer may (a) proceed with the transaction and be entitled to all insurance money, if any, payable to Seller under all policies covering the Property not to exceed the Purchase Price or (b) rescind this Agreement, by giving written notice to Seller within ten (10) calendar days after Buyer has written notice of such damage or destruction and thereby release all parties from liability.

                10.1   Failure by Buyer to notify Seller in writing, within the ten (10) calendar days, shall constitute an election by Buyer to proceed with the Transaction.

                10.2   Failure by Seller to provide the required written notice to Buyer shall result in Buyer upon discovery of the damage or destruction, having the right to: insurance proceeds; reimbursement for repairs; or to rescind this Agreement, in which case, the Deposit shall be returned to Buyer pursuant to Paragraph 2.1.

        11.    <u>Condition of the Property.</u> Seller shall deliver the Property to Buyer at the Closing in substantially the same condition as of the Effective Date of this Agreement. Buyer is relying solely upon its

own examination of the Property and inspections herein required, if any, for its physical condition, character and suitability for Buyer's intended use and Buyer is not relying upon any representations by the Brokers, as defined herein. **BUYER ACCEPTS THE PROPERTY "AS-IS, WHERE IS", WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND BY SELLER, INCLUDING ANY REPRESENTATIONS REGARDING ENVIRONMENTAL CONDITIONS AFFECTING THE PROPERTY, OTHER THAN AS SET FORTH IN THIS AGREEMENT AND/OR IN THE DEED.**

   12.  <u>Brokerage.</u> Seller represents and warrants to Buyer that its broker is <u>Tyler Hagerla</u> (collectively "Broker"). Buyer represents and warrants to Seller that it is not represented by any broker or other agent in this Transaction. To the extent that Buyer has been assisted by any brokerage in connection with this Transaction, Buyer shall compensate said Brokerage outside of this agreement, and shall defend, indemnify, and hold Seller, its agents, employees, principals, representatives, directors and shareholders and any affiliates thereof harmless from any and all claims, demands, lawsuits, liabilities, damages and expenses of every nature and kind, brought, asserted or otherwise claimed by another other person or entity seeking entitlement to or payment of any commission, or other compensation, in whole or in part, related to or arising from the Transaction contemplated hereunder. Seller agrees that Broker shall receive a commission of One Hundred Twenty Thousand and 00/100 Dollars ($120,000.00) from Seller, which shall be paid at Closing.

   13.  <u>Notices.</u> All notices shall be sent via certified mail with return receipt requested, by Federal Express or other express mail-next day delivery service, by facsimile (with electronic confirmation of receipt), or by personal delivery or delivery by a courier service and shall be deemed effective upon receipt as confirmed by return receipt, Federal Express delivery, electronic confirmation, or signed receipt obtained from a personal delivery or courier service and shall be sent to the parties at the addresses as follows:

  To Seller (Receiver):

    Jerry E. Peer, Jr., Esq.
    Peterson Conners, LLP
    545 Metro Place South, Suite 435
    Dublin, OH 43017
    Telephone: (614) 745-8845
    Facsimile: (614) 220-0197
    Email: jpeer@petersonconners.com

  To Buyer:

    Daniel Rumennik
    1680 Michigan Ave #700
    Miami Beach Fl 33139

    Telephone: 917-825-1784
    Fax:
    Email: Daniel.rumennik@gmail.com

4

To Title Company:

~~Chicago Title Company -
2365 Northside Dr Suite
  600 San Diego CA 92108~~
Mark Simonsen
~~mark.simonsen@ctt.com~~
~~Coastal First Escrow~~
Rosa@coastalfirstescrow.com
1217 Camino Del Mar Del Mar CA 92014
~~858-481-5128~~
Telephone: _____
Fax: _____
Email: _____

      14.      <u>Closing and Costs</u>. At the Closing, Seller shall pay the costs (i) of its own attorneys' fees, (ii) any transfer or conveyance fees, (iii) any and all delinquent utility and sewer bills, and (iv) real estate taxes and assessments. All other closing costs shall be paid by Buyer.

      15.      <u>Possession.</u> Possession of the Property shall be delivered to Buyer at Closing and shall be subject to any tenant rights remaining at the time of Closing.

      16.      <u>Default; Remedy.</u> If either party fails to perform its obligations hereunder (except as excused by the other's default), the party claiming default shall make written demand for performance. If the defaulting party fails to comply with such written demand within three (3) business days after receipt thereof, the following shall apply: (a) if Seller fails or refuses to timely perform or comply with any of its obligations hereunder or is unable to obtain approval from the Court to sell the Property to Buyer then Buyer may terminate this Agreement upon written notice to Seller, in which event the Deposit shall be returned to Buyer; (b) if Buyer fails or refuses to timely perform or comply with any of its obligations hereunder, then Seller may terminate this Agreement upon written notice to Buyer, in which event the Deposit shall be paid to Seller with no further actions required by the Buyer. The return or forfeit of the Deposit shall in no way prejudice the rights of Seller, Buyer, or Title Company in any action for damages or specific performance.

      17.      <u>Succession and Assignment.</u> This Agreement shall be binding upon and inure to the benefit of the parties named herein and their respective successors and permitted assigns. No party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of each other party; provided, however, that the rights and obligations of Buyer under this Agreement may be assigned in whole, without the prior written consent of Seller, to any affiliate entity to be formed by Buyer.

      18.      <u>Governing Law.</u> This Agreement will be governed by and construed in accordance with the laws of the State in which the Property is located, including its statutes of limitations, but without regard to its rules governing conflict of laws. All claims, disputes, and other matters between the parties will be brought in the United States District Court for the Southern District of Ohio, Eastern Division, which court will have exclusive jurisdiction, and will be the exclusive venue, for any and all such claims, disputes, and other matters between the parties.

      19.      <u>Waiver.</u> The rights and remedies of the parties to this Agreement are cumulative and not alternative. Neither the failure nor any delay by any party in exercising any right, power, or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege. To the maximum extent permitted by applicable law, (a) no claim or right arising out of this Agreement or the

documents referred to in this Agreement can be discharged by one party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other parties; (b) no waiver that may be given by a party will be applicable except in the specific instance for which it is given; and (c) no notice to or demand on one party will be deemed to be a waiver of any obligation of such party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the documents referred to in this Agreement.

20. <u>Modification.</u> This Agreement may not be amended except by a written agreement executed by Seller and Buyer. Any substantive changes that have a material effect on creditors of the estate must be approved by the Court.

21. <u>Interpretation.</u> Seller and Buyer, jointly and severally, acknowledge that they have read this Agreement and had the opportunity to employ legal counsel and negotiate changes to the Agreement. This Agreement is the joint product of the parties and, in the event of any ambiguity herein, no reference shall be drawn against a party by reason of document preparation.

22. <u>Counterparts.</u> This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original and all of which, when taken together, will be deemed to constitute one and the same instrument.

23. <u>Section Headings.</u> The headings of sections in this Agreement are provided for convenience only and will not affect its construction or interpretation.

24. <u>Email/Electronic Signatures.</u> Email/electronic signatures of this Agreement shall be deemed to be originals.

25. <u>Entire Agreement.</u> This Agreement contains the entire agreement between the parties relating to the sale of the Property.

The parties hereto have executed this Agreement as of the day and year first above written.

**ACKNOWLEDGEMENTS**

**FOR BUYER**

*DocuSigned by:*
*Daniel Rumennik*
_____     4/24/2024
Buyer Signature                                                    _____
                                                                                Date

Daniel Rumennik
_____
Buyer Name Printed

1680 Michigan Ave #700
_____     917-825-1784     daniel.rumennik@gmail.com
Buyer Address                                                      Buyer Phone              Buyer Email

Miami Beach Fl 33139
_____
Buyer City/State/Zip

6

**FOR SELLER**

_____    4/24/2024
Jerry Peer                                   _____
Seller Signature                             Date
11595BC11D326D446

     Jerry Peer
_____
Seller Name Printed


_____    _____
Sellers Signature                            Date


_____
Seller Name Printed

7