## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ROOT, INC., et al.,** | : | |
| | : | |
| *Plaintiffs*, | : | **Case No. 2:23-cv-512** |
| | : | **Judge Sarah D. Morrison** |
| **vs.** | : | **Magistrate Judge Elizabeth A.** |
| | : | **Preston Deavers** |
| **BRINSON CALEB SILVER, et al.,** | : | |
| | : | |
| *Defendants*. | : | |

## ORDER GRANTING MOTION OF RECEIVER, JERRY E. PEER, JR., TO SELL CERTAIN REAL PROPERTY OF DEFENDANT, ECLIPSE HOME DESIGN, LLC, AT PRIVATE SALE, FREE AND CLEAR OF ALL INTERESTS, LIENS, CLAIMS AND ENCUMBRANCES AND TO DISTRIBUTE PROCEEDS OF SALE

This matter comes before the Court upon the *Motion of Receiver, Jerry E. Peer, Jr., to Confirm The Public Sale of Certain Real Property of Defendant, Eclipse Home Design, LLC, Free and Clear of All Interests, Liens, Claims, and Encumbrances and to Distribute Proceeds of Sale* ("Motion"), filed herein on May 2, 2024, by Jerry E. Peer, Jr. ("Receiver"), the duly authorized and acting Receiver for of all monetary and real property assets of Mr. Brinson Caleb Silver, Collateral Damage, LLC and Eclipse Home Design, LLC (hereinafter collectively "Defendants"), which seeks approval of the private sale of 2543 Walnut Avenue, Venice California, 90291; Parcel No. 4236-031-023 ("Property") and the approval of the sale on the terms and conditions of the *Real Estate Purchase Agreement* ("Purchase Agreement"), attached to the Motion as "Exhibit A," free and clear of any and all interests, liens, claims and encumbrances, which shall transfer to the proceeds of sale, as well as any right of redemption, and to approve the Receiver's proposed distribution of proceeds of sale.

The Motion was served upon all parties to this action and other interested parties by electronic mail and/or Regular U.S. First Class Mail on May 2, 2024. The Court finds that such notice was adequate and appropriate under the circumstances and that no objections or other responses have been filed.

Therefore, based upon the pleadings, the record of this action, and the Motion and Exhibits attached thereto, THE COURT HEREBY FINDS AND CONCLUDES THAT:

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 754, 959 and 1692, Rule 66 of the Federal Rules of Civil Procedure.

B.      On May 12, 2023 [Doc. # 99], Order Appointing Receiver, filed May 17, 2023 [Doc. # 101], and Order Amending Order Appointing Receiver, filed June 7, 2023 [Doc. # 120] (hereinafter collectively "Receiver Order"), Jerry E. Peer, Jr., was appointed as Receiver of all monetary and real property assets of Defendants.

C.      Pursuant to the Receiver Order,

> The Receiver is authorized to negotiate and effect an orderly sale, transfer, use, or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of the Receivership Defendants and, from the proceeds thereof, to pay the secured and unsecured indebtedness of the Property, including the Real Property. Payments to creditors by the Receiver shall include trade indebtedness which arises during the course of the Receiver's operation of the Property, which shall be paid first from the sale proceeds, together with the fees and expenses of the Receiver and his attorneys, accountants, and other professionals. The Receiver is authorized to conduct such a sale of the Property in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.…

See Receiver Order, ¶ 2(k).

D.      Pursuant to this Court's Notation Order Granting Receiver's Motion to Employ Gryphon Asset Advisors, LLC as Auctioneer, filed January 19, 2024 [Doc. # 221], Receiver engaged Gryphon Asset Advisors, LLC ("Auctioneer"), pursuant to the terms and conditions of

the Exclusive Listing Agreement for Real Estate Auction ("Auction Agreement") approved by the Sale Order, to conduct a public auction of the Property.

E.      Between February 20, 2024 and March 16, 2024, the Receiver and Auctioneer offered the Property for public sale by and through Auctioneer, through an online auction ("Public Auction"). The Public Auction was well-attended and produced substantial bidding activity. There were sixty-three (63) registered bidders and one hundred thirty-four (134) bids placed.

F.      Receiver, through Auctioneer, advertised the Property for sale for approximately four (4) weeks through various forms of media. Marketing efforts included professional photography and videography. The Property was digitally marketed with top tier status on listing sites as well as social media platforms. Further, an email campaign was used to reach over 35,000+/- individual email accounts. Finally, Auctioneer utilized industry standard marketing practices such as signage, social media, outgoing and responsive phone calls, as well as site visits. Seventy-six (76) interested parties attended the two (2) open house events. Auctioneer's efforts generated sixty-three (63) qualified bidders. Bidders were offered an opportunity to review Court documents evidencing the Receiver's authority to offer the asset, terms of sale and a draft purchase agreement in advance of registration and bidding. On Zillow the Property garnered 10,559 views and 520 saves.

G.      As a result of Receiver's and Auctioneer's best efforts marketing the Property for the Public Sale to potentially interested purchasers, the highest offer/bid received at the conclusion of the Auction was in the amount of Two Million, Six Hundred Fifty Thousand, Eight Hundred and 00/100 Dollars ($2,650,800.00) for the Property. Following the conclusion of the Public Auction, the high bidder informed Receiver, through Auctioneer, that he and his agent misunderstood the terms of the Auction and therefore withdrew its offer and highest bid to

purchase the Property. The high bidder then attempted to negotiate a lower purchase price, which was rejected by Receiver. Immediately after the highest bid being withdrawn, Receiver, through his agents, contacted the other participating bidders, none of whom were willing to make an acceptable offer to purchase the Property.

H.     Thereafter, Auctioneer continued to receive multiple inquiries and offers from potential purchasers. Three (3) written offers were submitted, ranging between $2,300,000 and $2,475,000. Through the efforts of Receiver and Auctioneer, Daniel Rumennik ("Buyer") has been identified as a potential purchaser for the Property. The Receiver and Buyer have engaged in arm's length and good faith negotiations regarding the sale of the Property. As a result of these negotiations, Receiver and Buyer have entered into the Purchase Agreement being contingent upon the approval of this Court.

I.     Receiver seeks this Court's approval of the Purchase Agreement, to sell the Property free and clear of any and all interests, liens, claims, and encumbrances, as well as any right of redemption, with the interests, liens, claims, and encumbrances attaching to the net proceeds of sale, which shall be disbursed to the secured creditor(s) holding valid and existing liens, in order of their respective priorities. Apart from the Treasurer of Los Angeles County, California, to whom the real estate taxes will be paid at closing, the only secured creditor is Verus Residential Loanco, LLC. In order to increase the net return to the receivership estate, Receiver negotiated a reduction in compensation from $247,000 to $120,000. It is estimated that the net proceeds of sale will be approximately $144,000.00.

J.     The Receiver in his business judgment has determined, based upon the circumstances, that a sale of Property, pursuant to the terms of the Purchase Agreement, is in the best interest of the creditors of the receivership estate. The Purchase Price and other terms and

4

conditions of the proposed sale are fair and commercially reasonable and represent the highest and best offer under the circumstances. Receiver has adequate business justification to sell the Property pursuant to the terms of the Purchase Agreement.

K.      Proper, timely, adequate and sufficient notice of the Motion and the proposed sale and related relief has been provided to all parties and such notice constitutes due and proper notice and no other or further notice of the Motion is required.

L.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion has been afforded to all interested parties and entities and no objection or request for hearing has been filed.

M.      The sale process conducted by the Receiver was reasonable, non-collusive and conducted at arms' length and in good faith, and the sale of the Property has been conducted in accordance with the terms of the Order Appointing Receiver.

N.      Subject to the provisions of the Purchase Agreement and this Order, all liens, claims, encumbrances, and other interests shall attach to the proceeds from the sale of the Property, in the order of their priority, with the same validity, force, and effect that they had against the Property immediately prior to the sale.

Based upon the pleadings, the record of this action, and the Motion and Exhibits attached thereto and the absence of any objection to the Motion, IT IS, THEREFORE, HEREBY ORDERED that:

1.      The Motion is **GRANTED**, the sale of the Property, pursuant to the terms and conditions set forth in the Purchase Agreement is hereby approved.

2.      On the closing date, the Property shall be sold, conveyed, granted, assigned, transferred and delivered by the Receiver to the Buyer pursuant to the terms and conditions of the

Purchase Agreement.  Except for the lien of any applicable real estate taxes, the Property shall be transferred free and clear of any and all interests, liens, claims and encumbrances, including but not limited to mortgages, security interests, pledges, taxes and tax claims, of the parties to this action, as well as any interests terminated by order of the Court, whether direct or indirect, fixed or contingent, matured or not matured, disputed or undisputed, including all claims arising out of pending litigation and all potential or contingent claims or causes of action (collectively, "Interests"), with the liens, claims and encumbrances of the parties to this action transferred and attached to the proceeds of sale in the hands of the Receiver with the same priority as those liens, claims and encumbrances previously attached to the Property sold.

3.     All of the terms and conditions of the Purchase Agreement are approved in all respects, and the sale of the Property pursuant to the Purchase Agreement is hereby authorized. The omission in this Order of specific reference to any provision of the Purchase Agreement shall not impair or diminish the efficacy, propriety, or approval of such provision.

4.     The Receiver is authorized and directed to execute, deliver and perform under the Purchase Agreement and all other documents contemplated thereby and to consummate the transactions contemplated thereby; the execution, delivery, and performance by the Receiver of the Purchase Agreement and all other documents contemplated thereby, and the consummation of the transactions contemplated thereby, have been and are duly authorized by this Order.  Further, no consents or approvals, other than those expressly provided for in the Purchase Agreement or this Order, are required to consummate the sale of the Property.

5.     The Purchase Agreement and any related agreements, documents, or other instruments may be waived, modified, amended or supplemented by the parties thereto in

accordance with the terms thereof in a manner that has no material adverse effect upon any lienholder not specifically consenting thereto without further order of this Court.

6.      Except as may be expressly permitted by this Order or the Purchase Agreement, all persons and entities holding any Interests or adverse claims of any kind and nature against the Property, the Receiver, or Defendants, are hereafter forever enjoined, stayed and barred from asserting such Interests or adverse claims against the Buyer, the Receiver, their successors and assigns, or against the Property.

7.      The provisions of this Order authorizing the sale of the Property free and clear of the Interests are self-executing and the Receiver, Plaintiff, and Buyer shall not be required to execute or file satisfactions, releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the foregoing provisions hereof; provided, however, that this paragraph shall not excuse either the Receiver or Buyer from performing any and all of their respective obligations under the Purchase Agreement.

8.      This Order (a) shall be and hereby is, effective as a determination that, upon the closing date, except as otherwise provided herein or in the Purchase Agreement, the Interests shall attach only to the proceeds of the sale of the Property in the order of their respective priorities, with the same extent and validity that they had against the Property immediately prior to the sale; and (b) shall be, and hereby is, binding upon and governing the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies and governmental departments and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments respecting conveyance of the Property.

9.      From and after entry of this Order, Defendants, any respective creditors, and/or other parties in interest shall not take or cause to be taken any action that would interfere with the transfer of the Property to the Buyer in accordance with the terms of this Order.

10.      Any and all rights of redemption of Defendants, whether equitable or statutory, have been expressly waived and are forever barred.

11.      After receipt of all credits provided for under the Purchase Agreement, proceeds of the sale paid at closing shall be distributed at Closing and/or by Receiver as follows:

11.01  First, to the Clerk of Courts to pay any outstanding court costs;

11.02  Second, to pay outstanding real property taxes and assessments pro-rated through the date of the Closing, if any, or as otherwise provided in the Purchase Contract;

11.03  Third, to pay all closing costs attributable to the Receiver as Seller;

11.04  Fourth, if deemed necessary by Receiver, an amount to be determined by Receiver as sufficient to cover existing and future anticipated administrative expenses, including Receiver and counsel to Receiver fees and expenses ("Receiver Holdback"), which shall be held by Receiver to cover the costs of the Receivership estate.  Any amount remaining over and above the Receiver Holdback shall be distributed pursuant to subsections 11.05-11.06 below;

11.05  Fifth, to Verus Residential Loanco, LLC in satisfaction of its note and mortgage against the Property; and

11.06  Sixth, once all administrative fees and expenses have been paid and a sufficient Receiver Holdback determined, the remaining proceeds held by Receiver pending further order of this Court.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

APPROVED AND SUBMITTED BY:

**PETERSON CONNERS LLP**


 /s/ Jerry E. Peer, Jr.
Gregory S. Peterson (0061915)
Jerry E. Peer, Jr. (0075128)
Istvan Gajary (0089084)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
Telephone: (614) 365-7000
Facsimile: (614) 220-0197
E-mail:  gpeterson@petersonconners.com
        jpeer@petersonconners.com
        igajary@petersonconners.com
*Counsel for Receiver, Jerry E. Peer, Jr.*